**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SERGIO BONILLA, on behalf of himself and all others similarly situated, <br><br>          Plaintiff, <br><br> v. <br><br> ANCESTRY.COM OPERATIONS INC., a Virginia Corporation; ANCESTRY.COM INC., a Delaware Corporation; ANCESTRY.COM LLC, a Delaware Limited Liability Company; and DOES 1 through 50, inclusive, <br><br>          Defendants. | Case No: <br><br><br> **JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT
FOR VIOLATION OF 765 ILCS 1075/1 *et seq.* AND 815 ILCS 505/1 *et seq.*;
INTRUSION UPON SECLUSION; UNJUST ENRICHMENT**

Plaintiff SERGIO BONILLA, by and through his attorneys, makes the following allegations on information and belief, except as to factual allegations pertaining to Plaintiff, which are based on personal knowledge.

**INTRODUCTION**

1.     Plaintiff brings this class action complaint against ANCESTRY.COM OPERATIONS INC.; ANCESTRY.COM INC; ANCESTRY.COM LLC; and DOES 1-50 (collectively, "Ancestry") for knowingly misappropriating the photographs, likenesses, names, and identities of Plaintiff and the class; knowingly using those photographs, likenesses, names, and identities for the commercial purpose of selling access to them in Ancestry products and services; and knowingly using those photographs, likenesses, names, and identities to advertise, sell, and solicit purchases of Ancestry services and products; without obtaining prior consent from Plaintiff and the class.

2.      Ancestry's business model relies on amassing huge databases of personal information, including names, photographs, addresses, places of birth, estimated ages, schools attended, and other biological information, then selling access to that information for subscription fees. Ancestry's databases comprise billions of records belonging to hundreds of millions of Americans. The main subject of this lawsuit is Ancestry's "U.S., School Yearbooks, 1900-1999" database ("Ancestry Yearbook Database"). To construct its Yearbook Database, Ancestry extracted personal information from school yearbooks, then aggregated the extracted information into digital records that correspond to and identify specific individuals. The Ancestry Yearbook Database includes the names, photographs, cities of residence, and schools attended of many millions of Americans.. According to the Ancestry website, the Ancestry Yearbook Database includes over 47 million individual records from Illinois schools and universities.

3.      Ancestry has not received consent from, given notice to, or provided compensation to the millions of Illinoisans whose names, photographs, biographical information, and identities appear in its Ancestry Yearbook Database.

4.      The names, photographs, cities of residence, schools attended, estimated ages, likenesses, and identities contained in the Ancestry Yearbook Database uniquely identify specific individuals.

5.      Ancestry uses the names, photographs, cities of residence, schools attended, estimated ages, likenesses, and identities in its Ancestry Yearbook Database on and in its products and services. Ancestry sells access to those records to paying subscribers. In exchange for subscription payments ranging from $24.99 to $49.99 per month, depending on the plan, Ancestry subscribers receive the ability to search, view, and download records in Ancestry databases, including the names, photographs, cities of residence, schools attended, estimated ages, likenesses, and identities Ancestry has amassed in its Ancestry Yearbook Database without consent.

6.      Ancestry uses the names, photographs, cities of residence, schools attended, estimated ages, likenesses, and identities in its Ancestry Yearbook Database to advertise and

promote its monthly subscription products and services, including its "U.S. Discovery," "World Explorer," and "All Access" subscription plans.

7.      Ancestry advertises and promotes its products and services to new subscribers by offering a 14-day promotional "free trial" that provides temporary access to search, view, and download records from Ancestry's databases. Users who sign up for the promotional "free trial" provide payment information but are not billed until the promotional "free trial" expires and may cancel before the trial expires without charge. During the promotional "free trial," users are encouraged to search Ancestry Databases, including its Yearbook Database, for the names of any people they may know or be curious about. In response to searches of the Ancestry Yearbook Database, users receive a list records, each of which corresponds to a specific identifiable person, and includes the individual's name, yearbook photo, estimated age, city of residence, school attended, and year of attendance. "Free trial" users may view and download full-resolution versions of yearbook photos of the individuals they have searched.

8.      The sole purpose of offering the promotional "free trial" is to induce users to subscribe to its paid product and service. By providing access to and encouraging use of its Ancestry Yearbook Database as part of its promotional "free trial," Ancestry is using the identities of Plaintiff and the class for the commercial purpose of advertising and promoting the purchase of its subscription products and services.

9.      Ancestry also advertises and promotes its monthly subscription products and services by providing a promotional limited-access version of its website. Any visitor to the Ancestry website may access the promotional limited-access version, even if they have not provided contact information or signed up for the promotional "free trial." Users on the promotional limited-access version are encouraged to search Ancestry Databases, including its Yearbook Database, for the names of any people they may know or be curious about. In response to searches of the Ancestry Yearbook Database, users receive a list records, each of which corresponds to a specific identifiable person, and includes the individual's name, city of residence, and a low-resolution version of a yearbook photo. Users of the promotional limited-access

version of the website may view the low-resolution photo, allowing them to confirm the record corresponds to the person they are searching for. Users cannot view the full-resolution version of the photograph or view additional information about the person such as estimated age, name of school, and yearbook year. If users click to view this information, they are encouraged to "sign up now" for a paid subscription.

10. The sole purpose of offering the promotional limited-access version of the website is to induce users to subscribe to its paid product and service. By providing access to and encouraging use of its Ancestry Yearbook Database as part of its promotional limited-access website for non-subscribers, Ancestry is using the identities of Plaintiff and the class to advertise and promote its subscription products and services.

11. Ancestry also advertises using targeted promotional email messages that include names, photographs, images, likenesses, and other personal information it has amassed in its databases. These targeted promotional email messages are intended to entice potential customers to purchase a paid subscription, and to entice existing customers to upgrade to more expensive plans. For example, in one of its more ghoulish advertising techniques, Ancestry sends to potential subscribers' photographs of the gravesites of their deceased relatives, promising that a paid subscription will reveal even more information about the deceased. On information and belief, Ancestry also sends to potential subscribers' messages containing names, photographs, images, biographical information, and likenesses from its Yearbook Database, including the names, photographs, images, biographical information, and likenesses of Plaintiff and the class.

12. Ancestry appropriated and continues to grow its massive databases of personal information, including its Ancestry Yearbook Database, which contains the names, photographs, cities of residence, schools attended, estimated ages, likenesses, and identities of millions of Illinoisans. Ancestry uses these records both as the core element of its products and services, and to sell and advertise its products and services, without providing any notice to the human beings who are its subjects. Ancestry did not ask the consent of the people whose personal information and photographs it profits from. Nor has it offered them any compensation for the ongoing use

of their names, photographs, likenesses, and identities as part of its products and services, and to sell and advertise its products and services.

13.     Through its actions, Ancestry has harmed and continues to harm Plaintiffs and the class by denying them the economic value of their likenesses, violating their legally protected rights to the exclusive use of their likenesses, and violating their right to seclusion. Ancestry has also earned ill-gotten profits and been unjustly enriched.

14.     These practices, as further detailed in this complaint, violate the Illinois right to publicity as codified in 765 ILCS 1075/1 *et seq.*; the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*; Illinois common law protecting against Intrusion Upon Seclusion; and Illinois common law protecting against Unjust Enrichment.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) (the Class Action Fairness Act ("CAFA")), because: (A) all members of the putative class are citizens of a state different from any defendant. According to available public records, Defendants are all incorporated in either Delaware or Virginia, and are headquartered in Utah. The class members are residents of Illinois. (B) The proposed class consists of at least 100 members. Ancestry advertises that its Ancestry Yearbook Database comprises about 730 million individual records collected from "more than 450,000 yearbooks and more than 62 million pages." A search of the database for records located in "Illinois, USA" returns more than 47 million individual records. Even accounting for the fact that some individuals may appear in multiple records, that some are deceased or no longer live in Illinois while others have moved into the state, and that the class excludes current Ancestry subscribers, the class likely comprises millions of Illinoisans. And (C) the amount in controversy exceeds $5,000,000 exclusive of interest and costs. 765 ILCS 1075/1 *et seq.* provides for damages equal to the greater of $1,000 per violation or the actual damages suffered by Plaintiff, plus exemplary and/or punitive damages in the case of knowing use without consent. Given more than 47 million individual records in Illinois, the amount in controversy is

well over the jurisdictional amount.

16.     This Court has personal jurisdiction over the claims of Plaintiff and the non-named class members. Ancestry maintains substantial connections to the state of Illinois and this district by, among other things, advertising its subscription products and services to prospective customers in this state and district, providing its subscription products and services to existing customers in this state and district, and using the misappropriated names, photographs, likenesses, images, and identities of residents of this state and district as described in this complaint.

17.     Venue is appropriate pursuant to 28 U.S.C. § 1391(b). A substantial portion of the events and conduct giving rise to the violations alleged in this complaint occurred in this district. A substantial portion of the class members reside in this state and district. Named Plaintiff Sergio Bonilla resides in this district.

## INTRADISTRICT VENUE

18.     Venue in this Division of the District is proper because a substantial part of the events or omissions which give rise to the claim occurred in this division. Plaintiff Sergio Bonilla resides in Lake County.

## PARTIES

**Defendant Ancestry**

19.     Defendant ANCESTRY.COM OPERATIONS INC. is a Virginia corporation with its headquarters in Lehi, Utah. It conducts business under the brand names "Ancestry.com," "Ancestry," and other brand names associated with the various website and services it owns and operates. Ancestry conducts business throughout this District, Illinois, and the United States. Ancestry owns and operates the website Ancestry.com.

20.     Defendant ANCESTRY.COM INC. is a Delaware corporation with its headquarters in Lehi, Utah. Defendant ANCESTRY.COM LLC is a Delaware limited liability company with its headquarters in Lehi, Utah.

21.     There are many related corporate entities associated with the Ancestry.com website. Plaintiff is ignorant of which additional related corporate entities were involved in the

wrongdoing alleged herein. Plaintiff therefore sues these Doe Defendants by fictitious names. Plaintiff will amend this Complaint to allege the true names and capacities of these fictitiously named Doe Defendants when they are ascertained. Each of the fictitiously named Doe Defendants is responsible for the conduct alleged in this Complaint and Plaintiff's damages were actually and proximately caused by the conduct of the fictitiously named Doe Defendants.

**Plaintiff Sergio Bonilla**

22.     Plaintiff Sergio Bonilla is a resident of Great Lakes, Illinois. Mr. Bonilla is not a subscriber of any Ancestry.com products or services and is not subject to any Terms of Service or any other agreement with Ancestry.com.

23.     Sergio Bonilla has not provided consent to Ancestry, written or otherwise, for the use of his name, photograph, or likeness.

24.     Ancestry has never notified, requested consent, or provided compensation to Sergio Bonilla for its appropriation of his identity, photograph, image, and likeness. Mr. Bonilla first became aware that his personal information and photographs are being used by Ancestry through the investigation of this lawsuit.

25.     Ancestry has and continues to use Sergio Bonilla's identity, including his name, photograph, image, and likeness, for a commercial purpose by selling access to his identity in its products, including its "U.S. Discovery," "World Explorer," and "All Access" paid subscription plans. Subscribers who pay monthly subscriptions fees of between $24.99 and $49.99 per month, depending on the plan, receive in exchange the ability to search for, view, and download records in Ancestry's Yearbook Database. This database includes a record corresponding to Mr. Bonilla from a 1995 yearbook from Central High School in Omaha, Nebraska, where Mr. Bonilla attended school. Paying subscribers may search for Mr. Bonilla and view and download the record, which contains his identity, name, photograph, image, and likeness.

26.     Ancestry has and continues to use Mr. Bonilla's identity, including his name, photograph, image, and likeness, for the commercial purpose of advertising and promoting the

7

purchase of its subscription services and products, including its "U.S. Discovery," "World Explorer," and "All Access" paid subscription plans, by using Mr. Bonilla's identity in its 14-day promotional "free trial." Users of the promotional "free trial" may search for, download, and view records in Ancestry's Yearbook Database. "Free trial" users receive access to the same record corresponding to Mr. Bonilla that is available to paying users. Ancestry's sole purpose in using Mr. Bonilla's name, photograph, and likeness in the promotional "free trial" version of its website is to advertise, sell, and solicit the purchase of paid subscription plans.

27. A screenshot showing the results of a search for Sergio Bonilla's name on Ancestry.com is shown below, followed by two screenshots showing the more detailed versions of the record that are delivered if the user clicks the "View Record" and "View" links visible on the page. These pages are accessible both to paying subscribers and to users of Ancestry's promotional 14-day "free trial." Plaintiff's counsel used photo-editing software to blur Mr. Bonilla's face and the names and faces of the four other boys who appear next to Mr. Bonilla. In the original record Ancestry created and is currently using, Mr. Bonilla's face is plainly visible, as are the faces of the four other boys in the photograph, all of whom are aged between 9 and 12 years old at the time of the photograph.





28.     The record corresponding to Sergio Bonilla uniquely identifies Sergio Bonilla. It plainly and conspicuously displays Mr. Bonilla's name, image, photograph, estimated age, school, city of residence, and the date of the yearbook in which the photo appears. Mr. Bonilla's face is plainly visible. The record identifies his participation in the Boy's Swim Team.

29.     Ancestry has and continues to use Mr. Bonilla's identity, including his name, photograph, image, and likeness, for the commercial purpose of advertising, selling, and soliciting the purchase of its subscription services and products, including its "U.S. Discovery," "World Explorer," and "All Access" paid subscription plans, by using Mr. Bonilla's identity in the promotional limited-access version of its website. Any visitor to the Ancestry website may access the promotional limited-access version, even if they have not provided contact information or signed up for the promotional "free trial." Users of the promotional limited-access version of the website may search for records in Ancestry's Yearbook and may view a limited portion of

the information in those records, including the name, city of residence, and a low-resolution version of the photograph corresponding to each record. Users of the promotional limited-access version of the Ancestry website receive access to a limited version of same record corresponding to Mr. Bonilla that is available to paying users.

30.     Ancestry's sole purpose in using Sergio Bonilla's identity, including his name, photograph, image, and likeness, in the promotional limited-access version of its website is to advertise, sell, and solicit the purchase of paid subscription plans. Users who search for Sergio Bonilla's name are shown a limited version of the record corresponding to Mr. Bonilla, which includes Mr. Bonilla's name, city of residence, and a low-resolution version of Mr. Bonilla's photograph.  Users who hover over the "View Record" link corresponding to the record receive a promotional pop-up advertisement from Ancestry displaying Mr. Bonilla's name, a low-resolution version of his photograph, and a message indicating "There's more to see" and promising the user access to Mr. Bonilla's estimated age, birth year, school, yearbook date, school location, and a full-resolution of Mr. Bonilla's photograph if they "Sign Up Now" for a paid subscription.

31.     A screenshot showing the results of a search for Sergio Bonilla's name on the promotional limited-access version of the Ancestry website is shown below, followed by a screenshot showing the promotional pop-up advertisement Ancestry delivers to users who hover over the "View Record" link corresponding to the record.





32.     On information and belief, Ancestry has and continues to use Sergio Bonilla's identity, including his name, photograph, image, and likeness, for the commercial purpose of advertising, selling, and soliciting the purchase of its subscription services and products, including its "U.S. Discovery," "World Explorer," and "All Access" paid subscription plans, by using Mr. Bonilla's name, photograph, and likeness in targeted promotional email messages. Ancestry regularly sends promotional email messages that are intended to entice potential customers to purchase a paid subscription, and to entice existing customers to upgrade to more expensive plans. These email promotions often include the names, photographs, and likenesses of people Ancestry believes may be related to the recipient and encourage the recipient to sign up or upgrade their subscription plan to learn more about the relative. Upon information and belief, Ancestry has and continues to send targeted promotional email messages including Sergio Bonilla's name, photograph, and likeness.

33.     Through its actions, Ancestry has harmed and continues to harm Mr. Bonilla by depriving him the fair economic value of his likeness; violating his exclusive right to control his likeness; and violating his right to freedom from intrusion upon seclusion. Ancestry has earned ill-gotten profits and been unjustly enriched through its use of Mr. Bonilla's name, photograph, and likeness.

## STATEMENT OF COMMON FACTS

34.     Ancestry's business model is based on gathering personal information from various sources, then selling access to that information for a monthly subscription fee. Ancestry uses the personal information it has amassed to advertise, sell, and solicit the purchase of its subscription products and services. Sources from which Ancestry.com collects personal information include school yearbooks, birth records, marriage records, death records, U.S. census records, immigration records, military records, and photographs of grave sites.

35.     As part of this business model, Ancestry amassed and continues to grow its "Ancestry Yearbook Database", which contains names, yearbook photos, estimated ages, schools

attended, and additional personal information extracted from school yearbooks. Ancestry aggregates the extracted information into digital records associated with specific individuals. The Ancestry Yearbook Database comprises about 730 million individual records collected from "more than 450,000 yearbooks and more than 62 million pages." Of those 730 million records, about 47 million are marked in the database as corresponding to students in Illinois schools.

36.     Each record in the Ancestry Yearbook Database includes at least the following information: the name of a specific individual; a photograph depicting that individual; the name of the school the individual attended; the year in which the yearbook was printed; and the city in which that individual lived. Some records contain additional personal information, including the individual's estimated age at the time of the photograph, estimated year of birth, and hobbies and interests while in school.

37.     Ancestry did not and does not seek consent from, give notice to, or provide compensation to Plaintiff and the class before placing their personal information in its Ancestry Yearbook Database, selling that information as part of its subscription products, and using that information to sell, advertise, and solicit the purchase of its subscription products.

38.     Although Ancestry does not disclose how it created the Ancestry Yearbook Database, there is a section of Ancestry's website encouraging visitors to donate their old yearbooks to Ancestry. At least some, and possibly all, of the Yearbook Database was built via such donations.

39.     With the exception of the implied consent of the donor herself (who may or may not personally appear in the donated yearbook), Ancestry makes no attempt to contact or gain the consent of any of the people whose names, photographs, likenesses, biographical information, and identities appear in a donated yearbook. Ancestry is apparently alert to the risks its business model runs under copyright law, but it does not even attempt to meet its obligations under the Illinois right to publicity. Ancestry asks the donor to sign a disclaimer that the donated yearbook is either "not bound by copyright restrictions" or "the copyright is held by the donor." But Ancestry does not require or even suggest the donor should ask the consent of the people who

appear in the yearbook to have their names, photographs, and images added to the Ancestry Yearbook Database.

40.     Each record in the Ancestry Yearbook Database uniquely identifies an individual human being. Indeed, the fact these records uniquely identify specific individuals is the primary selling point Ancestry uses to attract new subscribers. In its online promotional materials, Ancestry touts that subscribers will gain access to the records in its Ancestry Yearbook Database, each of which "Pinpoints an individual in a particular time and place" by joining information about the person including name, "school or town," time, "a photo," "interests and hobbies," and "family linkages" because siblings may appear in the same yearbook.

41.     Ancestry has and continues to use the identities of Plaintiff and the class, including their names, photographs, images, and likenesses, for a commercial purpose by selling access to their identities in its products, including its "U.S. Discovery," "World Explorer," and "All Access" paid subscription plans. Subscribers who pay monthly subscriptions fees of between $24.99 and $49.99 per month, depending on the plan, receive in exchange the ability to search for, view, and download records in Ancestry's Yearbook Database. Paying subscribers may view and download records containing the names, photographs, and likenesses of Plaintiff and the class.

42.     Ancestry has and continues to use the identities of Plaintiff and the class, including their names, photographs, images, and likenesses, for the commercial purpose of advertising and promoting its subscription services and products, including its "U.S. Discovery," "World Explorer," and "All Access" paid subscription plans, by using the identities of Plaintiff and the class in its 14-day promotional "free trial." Users of the promotional "free trial" may search for, download, and view records in Ancestry's Yearbook Database. "Free trial" users receive access to the same records that are available to paying users. Ancestry's sole purpose in using the names, photographs, images, and likenesses of Plaintiff and the class in the promotional "free trial" version of its website is to advertise and promote its paid subscription plans.

43.     Ancestry has and continues to use the identities of Plaintiff and the class,

including their names, photographs, images, and likenesses, for the commercial purpose of advertising and promoting its subscription services and products, including its "U.S. Discovery," "World Explorer," and "All Access" paid subscription plans, by using the identities of Plaintiff and the class in the promotional limited-access version of its website. Any visitor to the Ancestry website may access the promotional limited-access version, even if they have not provided contact information or signed up for the promotional "free trial." Users of the promotional limited-access version of the website may search for records in Ancestry's Yearbook and may view a limited portion of the information in those records, including the name, city of residence, and a low-resolution version of the photograph corresponding to each record. Users of the promotional limited-access version of the Ancestry website receive access to a limited version of same records that are available to paying users.

44.    Ancestry's sole purpose in using the names, photographs, images, and likenesses of Plaintiff and the class in the promotional limited-access version of its website is to advertise and promote its paid subscription plans. Users may access limited versions of the records Ancestry has amassed corresponding to Plaintiff and the class. The limited-version records include a name, city of residence, and a low-resolution version of a photograph portraying the class member. Users who hover over the "View Record" link corresponding to each record receive a promotional pop-up advertisement from Ancestry displaying the class member's name, a low-resolution version of the photograph, and a message indicating "There's more to see" and promising the user access to the class member's estimated age, birth year, school, yearbook date, school location, and a full-resolution of the class member's photograph if they "Sign Up Now" for a paid subscription.

45.    The vast majority of people whose personal information Ancestry has amassed in its Ancestry Yearbook Database have no business relationship with Ancestry, are not Ancestry subscribers, and are not subject to a Terms of Service or any other agreement with Ancestry.

46.    Through its actions, Ancestry has harmed and continues to harm Plaintiffs and the class by depriving them the fair economic value of their likenesses; violating their exclusive

rights to control their likenesses; and violating their rights to freedom from intrusion upon seclusion. Ancestry has earned ill-gotten profits and been unjustly enriched through its use of the names, photographs, and likenesses of Plaintiffs and the class.

47.     Ancestry's misappropriation of identities, including names, photographs, images, likenesses, and other personal information, and commercial use of those identities in selling and advertising its products and services, violate Illinois' statute protecting the right to publicity, 765 ILCS 1075/1 *et seq.*; Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*; Illinois common law protection against intrusion upon seclusion; and Illinois common law protecting against unjust enrichment.

## CLASS ALLEGATIONS

48.     Plaintiff brings this complaint on behalf of themselves and a class of all Illinois residents who (a) are not currently subscribers of any Ancestry services, (b) have never donated a yearbook to Ancestry, and (c) whose names, photographs, and/or likenesses were extracted from yearbooks by Ancestry and placed on the Ancestry website as part of its Yearbook Database, without Ancestry obtaining their consent. Excluded from the class are (a) Plaintiff's counsel; (b) Ancestry, its officers and directors, counsel, successors and assigns; (c) any entity in which Ancestry has a controlling interest; and (d) the judge to whom this case is assigned and the judge's immediate family.

49.     The members of the proposed class are so numerous that joinder of individual claims is impracticable. As of September 2020, Ancestry represents that its Ancestry Yearbook Database contains 730 million records. Of those, 47 million records correspond to schools in Illinois. Even accounting for the fact that some individuals have multiple records present in the database, that some are deceased or no longer reside in Illinois, and that the class excludes current Ancestry subscribers (Ancestry represents it has 3 million subscribers worldwide), the class numbers in the millions.

50.     There are significant questions of fact and law common to the members of the

class. These issues include:

    a.   Whether Ancestry's collection of personal information about Plaintiff and the class members, including names, yearbook photographs, yearbook years, estimated ages, cities of residence, schools attended, and interest and hobbies, in its Ancestry Yearbook Database, and selling of that information via paid subscription plans, constitute the use of individuals' identities for commercial purposes without previous written consent within the meaning of 765 ILCS 1075/1 *et seq.*;

    b.   Whether Ancestry's use of personal information about Plaintiff and the class members, including names, yearbook photographs, yearbook years, estimated ages, cities of residence, schools attended, and interests and hobbies, by offering access to that information as part of its promotional 14-day "free trial" constitutes the use of individuals' identities for commercial purposes without previous written consent within the meaning of 765 ILCS 1075/1 *et seq.*;

    c.   Whether Ancestry's use of personal information about Plaintiff and the class members, including names, yearbook photographs, and cities of residence, by offering access to that information as part of the promotional limited-access version of its website constitutes the use of individuals' identities for commercial purposes without previous written consent within the meaning of 765 ILCS 1075/1 *et seq.*;

    d.   Whether Ancestry's use of personal information about Plaintiff and the class members, including names and yearbook photographs, by including that information in targeted promotional email messages constitutes the use of individuals' identities for commercial purposes without previous written consent within the meaning of 765 ILCS 1075/1 *et seq.*;

    e.   Whether Plaintiff and the class consented to the use of their identities, names, photographs, images, and likenesses in Ancestry products and advertisements;

     f.   Whether Ancestry's use of personal information about Plaintiff and the class without consent was "willful" such that Plaintiff and the class may be entitled to punitive damages;

     g.   Whether Ancestry's use of identities, names, photographs, images, and likenesses constitutes a use for non-commercial purposes such as news or public affairs within the meaning of 765 ILCS 1075/35;

     h.   Whether Ancestry's conduct as described in this complaint violated Illinois' Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*;

     i.   Whether Ancestry was unjustly enriched as a result of the conduct described in this complaint; and

     j.   Whether class members are entitled to injunctive, declaratory and monetary relief as a result of Ancestry's conduct as described in this complaint.

51.     Plaintiff's claims are typical of those of the proposed class. Plaintiff and all members of the proposed class have been harmed by Ancestry's misappropriation and misuse of their identifies, names, photographs, images, likenesses, and other personal information.

52.     The proposed class representative will fairly and adequately represent the proposed class. The class representative's claims are co-extensive with those of the rest of the class, and he is represented by qualified counsel experienced in class action litigation of this nature.

53.     A class action is superior to other available methods for the fair and efficient adjudication of these claims because individual joinder of the claims of all members of the proposed class is impracticable. Many members of the class do not have the financial resources necessary to pursue this claim, and even if they did, the size of their interest in the case may not be large enough to merit the cost of pursuing the case. Individual litigation of these claims would be unduly burdensome on the courts in which individualized cases would proceed. Individual litigation would greatly increase the time and expense needed to resolve a dispute concerning Ancestry's common actions towards an entire group. Class action procedures allow for the

benefits of unitary adjudication, economy of scale, and comprehensive supervision of the controversy by a single court.

54.     The proposed class action may be certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure. Ancestry has acted on grounds generally applicable to the proposed class, such that final injunctive and declaratory relief is appropriate with respect to the class as a whole.

55.     The proposed class action may be certified pursuant to Rule 23(b)(3). Questions of law and fact common to class members predominate over questions affecting individual members, and a class action is superior to other available methods for fairly and efficiency adjudicating the controversy.

**FIRST CAUSE OF ACTION**
**(765 ILCS 1075/1 *et seq.*)**

56.     Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

57.     Illinois' statute protecting the right to publicity 765 ILCS 1075/1 *et seq*., prohibits and provides damages for using an individual's identity for commercial purposes without having obtained previous written consent.

58.     By engaging in the forgoing acts and omissions, Ancestry used Plaintiff's and class members' identities for commercial purposes without having obtained previous written consent.

59.     Each use of a class member's identity is a separate and distinct violation of 765 ILCS 1075/1 *et seq.* giving rise to damages.

60.     Plaintiff seeks declaratory, injunctive, and monetary damages for himself and on behalf of each member of the proposed class as provided for in 765 ILCS 1075/1   *et seq.*, including statutory damages equal to the greater of $100 per violation, actual damages, or profits Ancestry derived from its unauthorized use; punitive damages in light of Defendants' willful violation; and the award of attorneys' fees and costs in the event Plaintiff prevails in this action.

20

## SECOND CAUSE OF ACTION
### (815 ILCS 505/1 *et seq.*)

61.     Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

62.     Ancestry has and is engaged in deceptive or unfair practices as those terms are defined in the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*.

63.     As described in this complaint, Ancestry's misappropriation and use Plaintiff's and class members' identities without consent offends public policy established in Illinois statutory and common law, is unethical and unscrupulous, and creates substantial injury to Plaintiff and the class by denying them the legally protected to control their identities.

64.     By engaging in the conduct described in this complaint, including profiting from the sale and use in advertising of personal information it misappropriated without consent, Ancestry engaged in and continues to engage in deceptive and unfair practices prohibited by Illinois law.

65.     As a result of Ancestry's actions, Plaintiff and the class have been injured. Plaintiff and members of the class each lost the value of their names and images. Plaintiff and members of the class also lost the right to refuse consent and protect their own privacy, as guaranteed by Illinois law.

## THIRD CAUSE OF ACTION
### (Intrusion Upon Seclusion)

66.     Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

67.     Plaintiff and class members have a reasonable expectation of privacy in their personal information, including their photographs and biographical details.

68.     Ancestry intentionally intruded on the seclusion of Plaintiff and the class by appropriating their identities, including their names, photographs, images, likenesses, and

biographical information, and using the appropriated information to advertise and sell online services.

69.     Ancestry's misuse of personal information reveals private facts in which a reasonable person would expect privacy. It maintains, sells, and advertises using records that reveal intimate details about subjects' private lives, including ages, locations, biographical details, and photographs.

70.     Plaintiff and members of the class were harmed by Ancestry's intrusion into their private affairs as detailed in the compliant.

71.     Among other remedies, Plaintiff and members of the class seek damages, including punitive damages in light of Ancestry's conscious disregard of Plaintiff's and class members privacy rights and exploitation of their personal information for profit.

## FOURTH CAUSE OF ACTION
### (Unjust Enrichment)

72.     Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

73.     Plaintiff and members of the class have conferred an unwarranted benefit on Ancestry. Ancestry's business model centers around selling subscriptions for access to personal information that rightfully belongs to Plaintiff and members of the class. Ancestry uses the personal information it misappropriated to sell its services without consent. Each subscription sold and each advertisement sent represents an unwarranted benefit conferred by the class.

74.     Under principles of equity and good conscience, Ancestry should not be permitted to retain the benefits it gained as a result of its actions.

75.     Plaintiff and members of the class have suffered loss as a direct result of Ancestry's conduct.

76.     Among other remedies, Plaintiff, on his own behalf and on behalf of absent class members, seeks the imposition of a constructive trust and restitution of proceeds Ancestry

received as a result of the conduct described in this complaint, as well as an award of attorneys' fees, costs, and interest.

## PRAYER FOR RELIEF

77. WHEREFORE Plaintiff, on behalf of himself and all others similarly situation, hereby demands judgment against Defendant Ancestry as follows:

(a) For an order certifying the proposed class and appointing Plaintiff and his counsel to represent the class;

(b) For a declaration that Ancestry's acts and omissions constitute a knowing misappropriation of names, likeness, photographs, and other personal information, and infringe on protected privacy rights, in violation of Illinois law;

(c) For preliminary and permanent injunctive relief enjoining and preventing Ancestry from continuing to operate its Ancestry website and expand its databases without appropriate safeguards to ensure people's personal information is not used illegally without their consent;

(d) For an order enjoining Ancestry from continuing the unlawful and unfair conduct described in this complaint;

(e) For restitution for Plaintiff and members the class for the value that Defendants derived from misappropriating their likenesses;

(f) For an award of damages, including without limitation damages for actual harm, profits earned by Ancestry in the operation of its websites selling access to misappropriated personal information, and statutory damages;

(g) For an award of reasonable attorneys' fees and costs incurred by Plaintiff and the class members; and

(h) For an award of other relief in law and equity to which Plaintiff and the class members may be entitled.

## JURY TRIAL DEMAND

Plaintiff hereby demands a jury trial for all individual and Class claims so triable.

Respectfully submitted,

Dated: December 14, 2020

By: _Shannon M. McNulty_

Shannon M. McNulty
CLIFFORD LAW OFFICES, P.C.
120 N. LaSalle Street, 31st Floor
Chicago, Illinois 60602
312.899.9090
312.251.1160 Facsimile
SMM@cliffordlaw.com

Michael F. Ram (To be admitted _Pro Hac Vice_ )
mram@forthepeople.com
Marie N. Appel (To be admitted _Pro Hac Vice_ )
mappel@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6923

Benjamin R. Osborn (To be admitted _Pro Hac Vice_)
102 Bergen St.
Brooklyn, NY 11201
Telephone: (347) 645-0464
ben@benosbornlaw.com

_Attorneys for Plaintiff_
_and the Proposed Class_