**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SERGIO BONILLA, on behalf of himself and all others similarly situated,<br><br>       Plaintiff,<br><br>  v.<br><br>ANCESTRY.COM OPERATIONS INC., a Virginia Corporation; ANCESTRY.COM INC., a Delaware Corporation; ANCESTRY.COM LLC, a Delaware Limited Liability Company; and DOES 1 through 50, inclusive,<br><br>       Defendants. | CASE NO. 1:20-cv-07390<br><br>Hon. Virginia M. Kendall |

## ANCESTRY'S MEMORANDUM IN SUPPORT OF RULE 12(B)(2) AND 12(B)(6) MOTION TO DISMISS

## TABLE OF CONTENTS

**Page**

INTRODUCTION……………………………………………………………………..1

BACKGROUND AND MATERIAL ALLEGATIONS IN PLAINTIFF'S COMPLAINT ...................................................................................................................3

THE DISMISSAL ORDER IN *CALLAHAN* ......................................................4

LEGAL STANDARDS .........................................................................................5

ARGUMENT .........................................................................................................6

I.     THE COURT LACKS PERSONAL JURISDICTION OVER ANCESTRY .........6

II.    PLAINTIFF'S CLAIMS FAIL BECAUSE HE DID NOT SUFFER ANY INJURY AS A RESULT OF THE ALLEGED VIOLATIONS ...................8

III.   ALL OF PLAINTIFF'S CLAIMS ARE FORECLOSED BY SECTION 230 OF THE COMMUNICATIONS DECENCY ACT........................................11

IV.   PLAINTIFF'S "RIGHT OF PUBLICITY" CLAIM FAILS BECAUSE THE CHALLENGED CONDUCT IS EXEMPTED UNDER THE STATUTE ..........13

V.    ALL OF PLAINTIFF'S CLAIMS ARE PREEMPTED BY SECTION 301 OF THE COPYRIGHT ACT...........................................................................15

VI.   PLAINTIFF CANNOT STATE A CLAIM FOR INTRUSION UPON SECLUSION.......................................................................................................18

VII.  PLAINTIFF CANNOT STATE A CLAIM FOR UNJUST ENRICHMENT.......20

VIII. PLAINTIFF CANNOT STATE A CLAIM UNDER THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE PRACTICES ACT.........................21

      1.  Plaintiff fails to plead with particularity many of the elements under the ICFA……………………………………………………………21

      2.  Because plaintiff is not a consumer and does not satisfy the consumer nexus test, he cannot bring a claim under the ICFA…………………………22

CONCLUSION.......................................................................................................24

i

# TABLE OF AUTHORITIES

**Page**

## Cases

*Acosta v. Scott Labor LLC*,
377 F. Supp. 2d 647 (N.D. Ill. 2005) ................................................................. 19

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
751 F.3d 796 (7th Cir. 2014) ..................................................................... 6, 7

*Almeida v. Amazon*,
456 F.3d 1316 (11th Cir. 2006) ................................................................. 15

*Angelo v. Moriarty*,
No. 15 C 8065, 2016 WL 640525 .............................................................. 20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................... 6

*Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*,
805 F.2d 663 (7th Cir. 1986) ..................................................................... 17

*Bank One Milwaukee v. Sanchez*,
336 Ill. App. 3d 319, 783 N.E.2d 217 (Ill. Ct. App. 2003) ........................... 23

*Browning v. AT&T Corp.*,
682 F. Supp. 2d 832 (N.D. Ill. 2009) ......................................................... 18

*Callahan v. Ancestry.com*,
No. 20-cv-08437-LB, 2021 WL 783524 (N.D. Cal. Mar. 1, 2021) .......................... *passim*

*Carafano v. Metrosplash.com, Inc.*,
339 F.3d 1119 (9th Cir. 2003) ................................................................... 12

*Cassetica Software, Inc. v. Computer Scis. Corp.*,
No. 09 C 0003, 2009 WL 1703015 (N.D. Ill. June 18, 2009) ......................... 16

*Cleary v. Philip Morris Inc.*,
656 F.3d 511 (7th Cir. 2011) ..................................................................... 20

*Cmty. Bank of Trenton v. Schnuck Mkts. Inc.*,
887 F.3d 803 (7th Cir. 2018) ..................................................................... 22

*Cohen v. Facebook, Inc.*,
798 F. Supp. 2d 1090 (N.D. Cal. 2011) ........................................................ 9

*Collier v. Murphy*,
No. 02 C 2121, 2003 WL 1606637 (N.D. Ill. Mar. 26, 2003) ......................... 13

*Connick v. Suzuki Motor Co., Ltd.*,
174 Ill. 2d 482, 675 N.E.2d 584 (Ill. 1996) ............................................ 21, 22

*Coy Chiropractic Health Ctr., Inc. v. Travelers Cas. and Sur. Co.*,
409 Ill. App. 3d 1114, 957 N.E.2d 1174 (Ill. App. Ct. 2011) ......................... 21

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ...................................................................................... 6

*Dart v. Craigslist, Inc.*,
665 F. Supp. 2d 961 (N.D. Ill. 2009) ......................................................... 11

ii

*Dobrowolski v. Intelius, Inc.*,
    No. 17 CV 1406, 2017 WL 3720170 (N.D. Ill. Aug. 29, 2017) ....................................... 8

*Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.*,
    190 Ill. App. 3d 524, 546 N.E.2d 33 (Ill. Ct. App. 1989) .................................................. 23

*Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*,
    17 F.3d 1302 (10th Cir. 1994) ........................................................................................... 7

*Fleet v. CBS, Inc.*,
    50 Cal. App. 4th 1911 (1996) ........................................................................................... 17

*Fraley v. Facebook*,
    830 F. Supp. 2d 785 (N.D. Cal. 2011) .............................................................................. 10

*Fus v. CafePress, Inc.*,
    No. 19-CV-06601, 2020 WL 702765 (N.D. Ill. Nov. 30, 2020) ....................................... 8

*FW/PBS, Inc. v. City of Dallas*,
    493 U.S. 215 (1990) ........................................................................................................... 6

*Global Total Office L.P. v. Global Allies, LLC*,
    No. 10 C 1896, 2011 WL 3205487 (N.D. Ill. July 28, 2011) ........................................... 23

*Goddard v. Google, Inc.*,
    640 F. Supp. 2d 1193 (N.D. Cal. 2009) ............................................................................ 12

*Groshek v. Time Warner Cable, Inc.*,
    865 F.3d 884 (7th Cir. 2017) ............................................................................................ 10

*Gubala v. Time Warner Cable, Inc.*,
    846 F.3d 909 (7th Cir. 2017) ............................................................................................ 10

*Hyatt Int'l Corp. v. Coco*,
    302 F.3d 707 (7th Cir. 2002) .............................................................................................. 5

*Jones v. Dirty World Entm't Recordings LLC*,
    755 F.3d 398 (6th Cir. 2014) ............................................................................................ 12

*Jules Jordan Video, Inc. v. 144942 Canada, Inc.*,
    617 F.3d 1146 (9th Cir. 2010) .......................................................................................... 17

*Kimzey v. Yelp! Inc.*,
    836 F.3d 1263 (9th Cir. 2016) .......................................................................................... 12

*Lovgren v. Citizens First Nat'l Bank of Princeton*,
    126 Ill. 2d 411, 534 N.E.2d 987 (Ill. 1989) ..................................................................... 20

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ........................................................................................................... 5

*Maloney v. T3Media, Inc.*,
    853 F.3d 1004 (9th Cir. 2017) ..................................................................................... 16, 17

*Marshall's Locksmith Serv. Inc. v. Google, LLC*,
    925 F.3d 1263 (D.C. Cir. 2019) ....................................................................................... 13

*Mucklow v. John Marshall Law School*,
    176 Ill. App. 3d 886, 531 N.E.2d 941 (Ill. App. Ct. 1988) .............................................. 18

*Nieman v. Versuslaw, Inc.*,
    No. 12-3104, 2012 WL 3201931 (C.D. Ill. Aug. 3, 2012) ............................................... 15

iii

*Norton v. City of Chicago*,
  267 Ill. App. 3d 507, 642 N.E.2d 839 (Ill. App. Ct. 1st Dist. 1994) ............................... 22

*Pers. Keepsakes, Inc. v. Personalizationmall.com, Inc.*,
  No. 11 C 5177, 2012 WL 414803 (N.D. Ill. Feb. 8, 2012)............................................... 17

*Raines v. Byrd*,
  521 U.S. 811 (1997)............................................................................................................. 6

*Romero v. Securus Techs., Inc.*,
  216 F. Supp. 3d 1078 (S.D. Cal. 2016) ............................................................................. 8

*Silha v. ACT, Inc.*,
  No. 14 C 0505, 2014 WL 11370440 (N.D. Ill. Sept. 2, 2014).......................................... 9

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ............................................................................................. 8, 10, 11

*Tamburo v. Dworkin*,
  601 F.3d 693 (7th Cir. 2010) ....................................................................................... 6, 7, 8

*Thompson v. Getty Images (US), Inc.*,
  No. 13 C 1063, 2013 WL 3321612 (N.D. Ill. July 1, 2013) ............................................ 14

*Thrasher-Lyon v. Ill. Farmers Ins. Co.*,
  861 F. Supp. 2d 898 (N.D. Ill. 2012) ................................................................... 21, 22, 23

*Toney v. L'Oreal USA, Inc.*,
  406 F.3d 905 (7th Cir. 2005) ................................................................ 9, 11, 15, 16, 17

*Troeckler v. Zeiser*,
  No. 14-cv-40-SMY-PMF, 2015 WL 1042187 (S.D. Ill. Mar. 5, 2015)........................... 19

*United States ex rel. Berge v. Bd. of Trustees*,
  104 F.3d 1453 (4th Cir. 1997)……………………………………………………...…16

*Vrdolyak v. Avvo, Inc.*,
  206 F. Supp. 3d 1384 (N.D. Ill. 2016) ............................................................................. 15

*Walden v. Fiore*,
  571 U.S. 277 (2014).............................................................................................................. 7

*Wrenn v. Exelon Generation, LLC*,
  No. 18 C 2524, 2019 WL 11660918 (N.D. Ill. Mar. 5, 2019) .......................................... 19

**Statutes**

17 U.S.C. § 101 ............................................................................................................................... 16

17 U.S.C. § 102 ............................................................................................................................... 16

17 U.S.C. § 103 ............................................................................................................................... 16

17 U.S.C. § 301(a) ................................................................................................................ *passim*

735 Ill. Comp. Stat. 5/2-209……………………………………………………………………5

765 Ill. Comp. Stat. 1075……………………………………………………..………*passim*

815 Ill. Comp. Stat. 505/1……………………………………………………...…*passim*

47 U.S.C. § 230(c)(1) .................................................................................... 2, 4, 5, 11, 12

**Rules**

Fed. R. Civ. P 12………………………………………………………………….….. *passim*

Fed. R. Evid. 201 ........................................................................................................... 8

**INTRODUCTION**

Ancestry operates the world's largest subscription collection of genealogy databases, encompassing more than 27 billion historical records.  Much of this data is available for free; even more can be accessed by members. Subscribers can review, for example, US census records, military documents, and historical immigration records ranging from passenger lists for most American ports to border-crossing files. Ancestry also makes available millions of digitized family and local history books, newspapers dating to the 18th century, and school yearbooks.

The access to yearbooks prompted the same counsel to file three virtually identical class actions in different federal courts, and the first-filed case has already been dismissed for reasons that apply equally here.[1]  Plaintiff objects that pictures and information from his school yearbook—publicly accessible since 1995—are viewable on Ancestry.com and seeks to advance a broad class action asserting right of publicity and privacy-based theories.

At the threshold, plaintiff does not allege facts that establish personal jurisdiction. Ancestry is not incorporated or headquartered in Illinois, the single yearbook record at issue is from a high school in Omaha, Nebraska, and a mere 6% of the yearbook records in Ancestry's database are from Illinois schools (even then, there is no allegation that the subjects remain Illinois residents).  It is well established the operation of a universally-available website—with "advertisements" viewable by residents of the forum state—is insufficient for personal jurisdiction, even where forum state residents contend they were harmed.

Substantively, plaintiff's supposed indignation over the possible viewing of his school

---

[1]  *See Callahan v. Ancestry.com*, No. 20-cv-08437-LB, 2021 WL 783524, *4-6 (N.D. Cal. Mar. 1, 2021).

photo cannot find legal grounding.  Multiple bases foreclose these claims at the pleading stage:

- **No Injury.**  The benign yearbook excerpts are widely available, and plaintiff contends only that Ancestry offered access to these already-public records.  As the Northern District of California determined in dismissing the *Callahan* action, "Ancestry's using the public profiles to solicit paying subscribers—standing alone—does not establish injury." *Callahan*, 2021 WL 783524, at *4.

- **Section 230 Immunity.**  The Communications Decency Act immunizes companies from claims arising from the publication of content created by third parties.  Here, plaintiff concedes the content at issue emanates from third parties.  As the Northern District of California concluded in *Callahan*, "Ancestry . . . engaged in a publisher's traditional editorial functions . . . [and] has immunity under § 230(c)(1)." *Id.* at *6.

- **The Statutory Exceptions.**  Illinois' "right of publicity" statute exempts use of a name or image where the use attempts to portray or describe an individual and also where the use is for non-commercial purposes.  Here, plaintiff alleges only that his yearbook record appeared on Ancestry's site; he does not allege his name or image was used in commercial sponsorship, for example, by making it appear he endorsed Ancestry or any other product.  The yearbook excerpt falls squarely within these IRPA exemptions.

- **Copyright Preemption.**  The federal Copyright Act provides the exclusive means to protect copyrightable works such as photos and compilations. *See* 17 U.S.C. § 301(a). Here, plaintiff alleges no other use of his name or image apart from his mere appearance in one excerpt that he does not claim to have copyrighted.

- **No Intrusion Upon Seclusion.**  The yearbook information at issue belies any

suggestion it is "private" or that publication would highly offend a reasonable person. It is public information (name, past physical appearance) in a medium intended for distribution (a school yearbook) that continues to be publicly available. And possible regret over teen hairstyles notwithstanding, no reasonable person could be "highly offended" by sharing a school swim team photo.

For these reasons and others set forth below, plaintiff's claims fail pursuant to Rule 12.

## BACKGROUND AND MATERIAL ALLEGATIONS IN PLAINTIFF'S COMPLAINT

Ancestry is a genealogy company that provides users access to a variety of historical records to trace their family histories. *See Ancestry.com.* These sources include obituaries, family trees, marriage records, death records, military records, census records, local history books, and a variety of others. *See id.* Some of these records have been collected by Ancestry, others are contributed by users who upload content. Many of the billions of records available on Ancestry.com have never been accessed by actual users, and exist "unseen" in virtual storage.

Here, plaintiff's claims are premised on Ancestry's inclusion of his school yearbook record in Ancestry's "Yearbook Database." *See ECF No. 1 at ¶ 25.* Ancestry uses yearbooks in a simple, non-controversial way: it aggregates and makes searchable already-public yearbook information plaintiff admits was created by third parties. *See id. at ¶ 38.* Thus, if an Ancestry user searches "Jane Johnson, Rockford, Illinois," Ancestry may indicate it has a yearbook image for a person with that name in that location. Subscribers can take the further step of actually viewing the image to determine if it is the Jane Johnson of interest. *See id. at ¶ 25.* Here, plaintiff Sergio Bonilla bases his claims on a single record from his high school yearbook from Omaha, Nebraska. *Id.* Plaintiff does not contend that his picture or information were actually ever viewed by any Ancestry member. Nor does he articulate or attempt to quantify any

monetary injury from Ancestry's storage of this image and information. Plaintiff further concedes he was unaware Ancestry maintained this record until the "investigation" of this lawsuit. *See id.* at ¶ 24.

Based on Ancestry's inclusion of this decades-old yearbook record in its database, plaintiff asserts four claims on behalf of a putative class of Illinois residents: (1) violation of 765 Ill. Comp. Stat. 1075/1 (Illinois' Right of Publicity Act); (2) violation of 815 Ill. Comp. Stat. 505/1 (Illinois' Consumer Fraud and Deceptive Business Practices Act); (3) intrusion upon seclusion; and (4) unjust enrichment. *Id.* at ¶¶ 56-76.

## THE DISMISSAL ORDER IN *CALLAHAN*

In a companion case filed by the same attorneys in the Northern District of California, the court dismissed a nearly identical complaint that asserted similar state-law misappropriation claims. *Callahan*, 2021 WL 783524, at *4-6. First, the court determined the *Callahan* plaintiffs had not alleged a sufficiently concrete injury to establish Article III standing. *Id.* at *4-5. The court held Ancestry's use of the "public yearbook information . . . to solicit paying subscribers— standing alone—does not establish injury." *Id.* at *4. Although the court acknowledged "standing can be established if the exploitation of users' profiles suggests that the users personally endorse a product or service," it found that "Ancestry's use of the plaintiffs' profiles does not imply an endorsement of Ancestry's products or an equivalent interest." *Id.* at *5. Further, the court determined "plaintiffs do not have a commercial interest in their public profiles that precludes Ancestry's use of the profiles for commercial gain," and that a violation of the statute, standing alone, was insufficient to establish a concrete injury. *Id.* at *4-5.

Second, independent of the *Callahan* plaintiffs' failure to establish a concrete injury, the court also ruled that "Ancestry is immune from liability under the Communications Decency

Act. 47 U.S.C. § 230(c)(1)." *Id.* at *5. The court reasoned that Ancestry "did not create the underlying yearbook records and instead obtained them from third parties." *Id.* Thus, as "an interactive-computer service," Ancestry "is immune from liability for the third-party content." *Id.* The *Callahan* court rejected that Ancestry could be deemed the "information content provider" based on plaintiffs' contentions that "Ancestry extracts yearbook data (names, photographs, and yearbook date), puts the content on its webpages and in its email solicitations, adds information (such as an estimated birth year and age), and adds interactive buttons (such as a button prompting a user to upgrade to a more expensive subscription)." *Id.* at *6. The court reasoned that "Ancestry did not transform data and instead offered data in a form—a platform with different functionalities—that did not alter the content. Adding an interactive button and providing access on a different platform do not create content. They just add functionality." *Id.* Thus, Ancestry had engaged only in a "publisher's traditional editorial functions" and "has immunity under § 230(c)(1)." *Id.*[2]

## LEGAL STANDARDS

**Personal Jurisdiction.** Courts sitting in diversity may exercise personal jurisdiction over nonresident defendants only when the forum state has jurisdiction. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). Illinois exercises personal jurisdiction coextensive with federal due process standards. 735 Ill. Comp. Stat. 5/2-209.

**Article III Standing.** To establish standing under the U.S. Constitution, a plaintiff must prove an "injury in fact" that is causally linked to the conduct complained of and would be redressed by a decision in plaintiff's favor. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61

---

[2] In the third similar case, *Sessa v. Ancestry.com*, Case No. 2:20-cv-02292 (D. Nev.), Ancestry has a pending motion to dismiss filed February 10, 2021.

(1992). "It is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997) (citation omitted). The plaintiff bears the burden to prove subject matter jurisdiction exists. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990).

**Failure to State a Claim.** A complaint must contain "sufficient factual matter" to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Facts that are "merely consistent with" liability fail to state a claim. *Id.* (quotations omitted).

## ARGUMENT

## I.   THE COURT LACKS PERSONAL JURISDICTION OVER ANCESTRY

Plaintiff bears the burden to establish specific jurisdiction.[3]  *See, e.g.*, *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 799 (7th Cir. 2014). Due process permits exercise of specific jurisdiction over a defendant only where "the defendant's *suit-related* conduct [] create[s] a substantial connection with the forum State." *Id.* at 801. Where, as here, the plaintiff's claims sound in tort, "the inquiry focuses on whether the conduct underlying the claims was purposely directed at the forum state." *Tamburo v. Dworkin*, 601 F.3d 693, 702-03 (7th Cir. 2010). The plaintiff must demonstrate (1) intentional conduct "expressly aimed at the forum state," and (2) that the defendant had "knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Id.* at 703. Plaintiff cannot

---

[3]   Plaintiff does not allege Ancestry is subject to general jurisdiction. Nor could he—the Ancestry entities are not incorporated in or headquartered in Illinois, and lack "continuous and systematic [contacts] as to render [them] essentially at home" there. *See Daimler AG v. Bauman*, 571 U.S. 117, 119 (2014) (quotations and citation omitted).

satisfy these requirements here.

 **First**, plaintiff cannot point to any conduct "expressly aimed at the forum state." *Id.* Plaintiff alleges Ancestry (a) hosted a universally-accessible website, including to those who happen to reside in Illinois; (b) "advertise[d]" its services through the same universally-accessible website, such that prospective customers who happen to reside in Illinois may have seen the "advertisements"; and (c) plaintiff and the putative class members, who happen to be Illinois residents, had their names and images "misappropriated." *See* ECF No. 1 at ¶¶ 16-17. None of these acts can  be characterized fairly as "aimed at the forum state." *Tamburo*, 601 F.3d at 703; *See be2 LLC v. Ivanov*, 642 F.3d 555, 559 (7th Cir. 2011) ("If the defendant merely operates a website, even a 'highly interactive' website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution"); *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1305 (10th Cir. 1994) (placement of advertisements in nationally-distributed papers insufficient for personal jurisdiction).  That plaintiff claims to have suffered an injury in the forum state does not suffice.  "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014).

 Plaintiff concedes he had no personal interactions with Ancestry.  *See* ECF No. 1 at ¶¶ 22-24.  Further, plaintiff's claim is premised on a yearbook record from Nebraska, not Illinois. *Id.* at ¶ 25.  The only allegation connecting plaintiff's claimed injury to Illinois is that plaintiff happens to live there, but "after *Walden* there can be no doubt that the plaintiff cannot be the only link between the defendant and the forum." *Advanced Tactical*, 751 F.3d at 802 (quotations omitted).  Put another way, "changing a single variable—[plaintiff's] residency . . . —there

would be absolutely nothing tying" Ancestry's conduct to Illinois.  *See Dobrowolski v. Intelius, Inc.*, No. 17 CV 1406, 2017 WL 3720170, at *5 (N.D. Ill. Aug. 29, 2017).

*Second*, plaintiff cannot allege Ancestry had "knowledge that the effects would be felt . . . in the forum state." *Tamburo*, 601 F.3d at 703.  There is no plausible argument Ancestry knew the effects of its use of a Nebraska yearbook—to the extent there were any—would be felt in Illinois.  Further, as plaintiff's circumstance illustrates, that a person attended school in Illinois decades ago does not indicate their residence at the time of the purported misappropriation.

Accordingly, plaintiff's complaint should be dismissed for lack of personal jurisdiction.

## II.     PLAINTIFF'S CLAIMS FAIL BECAUSE HE DID NOT SUFFER ANY INJURY AS A RESULT OF THE ALLEGED VIOLATIONS

As in *Callahan*, plaintiff here cannot meet his burden to establish a sufficiently "concrete" injury for purposes of Article III standing.  *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016).  "First, the information in the Yearbook database is not private: it is public yearbook information distributed to classmates (and ultimately to Ancestry)." *Callahan*, Case 2021 WL 783524, at *4.  Indeed, plaintiff's own high school archives full color copies of all its yearbooks—including the yearbook at issue here—online for anyone to access.[4]  Where, as here (and in *Callahan*), the information at issue is already a matter of public record, its disclosure cannot cause harm.  *See, e.g., Fus v. CafePress, Inc.*, No. 19-CV-06601, 2020 WL 7027653, *3

---

[4]     Omaha Central High School Archives: Yearbooks, *available at* http://www.omahachsarchives.org/yearbook.php (online, digital copies of high school yearbooks from 1897-2020) (last visited March 8, 2021).  The yearbook record at issue here can be found on page 207 of the following URL: http://www.omahachsarchives.org/archive/obooks/1995.pdf.  This website can be judicially noticed as a matter that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201; *Romero v. Securus Techs., Inc.*, 216 F. Supp. 3d 1078, 1085 (S.D. Cal. 2016) ("The court can take judicial notice of public records and government documents available from reliable sources on the Internet, such as websites run by governmental agencies.") (quotation, citation omitted).

(N.D. Ill. Nov. 30, 2020) (no concrete injury where "most of Fus's information possessed by CafePress at the time of the hack was publicly available").

Second, plaintiff cannot plausibly allege any actual injury resulted from the manner in which this information was used. Mere use of public information does not cause injury, regardless whether defendant profits from such use—more is required, such as a suggestion of personal endorsement in which the plaintiff can assert a property interest. *See, e.g., Silha v. ACT, Inc.*, No. 14 C 0505, 2014 WL 11370440, at *3 (N.D. Ill. Sept. 2, 2014), *aff'd*, 807 F.3d 169 (7th Cir. 2015) ("allegations that Defendants profited from selling Plaintiffs' PII does not amount to an injury in fact for standing purposes."); *Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 910 (7th Cir. 2005) ("[t]he basis of a right of publicity claim concerns the message—whether the plaintiff endorses, or appears to endorse the product in question."); *Cohen v. Facebook, Inc.*, 798 F. Supp. 2d 1090, 1097 (N.D. Cal. 2011) (dismissing "right of publicity" claims where "Plaintiffs have not shown how the mere disclosure to their Facebook friends that they have employed the Friend Finder service (even assuming some of them did not) causes them any cognizable harm, regardless of the extent to which that disclosure could also be seen as an implied endorsement by them of the service."). As the *Callahan* court reasoned, "Ancestry's use of the plaintiffs' profiles does not imply an endorsement of Ancestry's products or an equivalent interest." *Callahan*, 2021 WL 783524, at *5.

Third, for this same reason, plaintiff cannot plausibly allege he had a "commercial interest in [his] public profile[] that precludes Ancestry's use of the profile[] for commercial gain." *Id.* As *Callahan* recognized, this information is already readily accessible through other sources available to anyone interested. *Id.* (discussing *Cohen v. Facebook*, 798 F. Supp. 2d 1090 (N.D. Cal. 2011), where the plaintiffs' misappropriation claims were dismissed for lack of

standing "because the profiles were displayed only to the users' Facebook friends, who already had access to the profiles.").  And as noted above, Ancestry's use did not make it appear plaintiff endorsed Ancestry, such that plaintiff could claim some commercial interest in his own endorsement.  *Id.* (distinguishing *Fraley v. Facebook*, 830 F. Supp. 2d 785 (N.D. Cal. 2011)).

Finally, the purported violation of Illinois' "right of publicity" statute, standing alone, is not sufficient to create a "concrete injury" for purposes of Article III standing.  *Cf. id.* at *4-5 (violation of California's right of publicity statute insufficient for concrete injury).  As the Supreme Court has recognized, "Article III standing requires a concrete injury even in the context of a statutory violation."  *Spokeo*, 136 S. Ct. at 1549.  Even where private information— as opposed to the publicly-available information at issue here—is protected by statute, the Seventh Circuit has consistently held more than a mere statutory violation is required for purposes of Article III standing: the violation must also cause some identifiable, concrete harm. *Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909, 912-13 (7th Cir. 2017) (cable subscriber alleged that Time Warner Cable had unlawfully retained private information he had provided in violation of the Cable Communications Policy Act, but without allegations of disclosure or misuse, this was insufficient for Article III standing); *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 886-87, 889 (7th Cir. 2017) (plaintiff lacked standing to sue for a violation of the Fair Credit Reporting Act where the defendant obtained a credit report without providing the required disclosures; although the defendant's action violated plaintiff's privacy, it was merely a "statutory violation completely removed from any concrete harm or appreciable risk of harm"). In other words, that the violations made plaintiff "*feel* aggrieved" does not suffice.  *Gubala*, 846 F.3d at 911 (emphasis in original).

Here, it is well established "the purpose of the IRPA is to allow a person to control the

commercial value of his or her identity," and the crux of such a "claim concerns the message—whether the plaintiff endorses, or appears to endorse the product in question." *Toney*, 406 F.3d at 910. To the extent the legislature intended to codify a right to protect against an injury, the injury contemplated necessitates a commercial interest in the value of the person's endorsement. *See id.* As discussed above, "Ancestry's use of the plaintiffs' profiles does not imply an endorsement of Ancestry's products or an equivalent interest." *Callahan*, 2021 WL 783524, at *5. Thus, the type of injury the legislature contemplated is not present here, and plaintiff is left with only "a bare procedural violation, divorced from any concrete harm," based on Ancestry's mere hosting of already-public information. *Spokeo*, 136 S. Ct. at 1549.

## III. ALL OF PLAINTIFF'S CLAIMS ARE FORECLOSED BY SECTION 230 OF THE COMMUNICATIONS DECENCY ACT

Section 230 of the Communications Decency Act provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). This immunity encompasses each of the state-law claims plaintiff asserts here. *See, e.g., Dart v. Craigslist, Inc.*, 665 F. Supp. 2d 961, 965-69 (N.D. Ill. 2009) ("Section 230 preempts contrary state law claims with certain inapplicable exceptions").

In a well-reasoned decision based on established standards for CDA immunity, the *Callahan* court determined "Ancestry is immune from liability under the Communications Decency Act" and dismissed plaintiffs' complaint. *Callahan*, 2021 WL 783524, at *5. The same reasoning applies here.

First, there can be no dispute "Ancestry is an interactive-computer service." *Id.* Plaintiff concedes Ancestry operates a website accessible to multiple users, which is all that is required.

*See* ECF No. 1 at ¶¶ 6-10 (multiple users can access the website); 20-21 (alleging Ancestry owns and operates the website at issue); 47 U.S.C. § 230(f)(2) (defining "interactive computer service" to mean one that "provides or enables computer access by multiple users to a computer server").

Second, as in *Callahan*, plaintiff here concedes Ancestry "did not create the underlying yearbook records and instead obtained them from third parties." *Callahan*, 2021 WL 783524, at *5; ECF No. 1 at ¶ 38 ("At least some, and possibly all, of the Yearbook Database was built via such [third-party] donations."). Where, as here, "a third party willingly provides the essential published content, the interactive service provider receives full immunity regardless of the specific editing or selection process." *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1124 (9th Cir. 2003) (section 230 barred misappropriation of right of publicity claim).

Any attempt by plaintiff to wrest Ancestry into the "restrictive definition of 'information content provider,'" based on its role in uploading the information to the internet or reformatting the third-party content should be rejected. *See Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1196 (N.D. Cal. 2009). As *Callahan* determined, "[a]dding an interactive button and providing access on a different platform do not create content. They just add functionality. . . . Instead of creating content, Ancestry — by taking information and photos from the donated yearbooks and republishing them on its website in an altered format — engaged in a publisher's traditional editorial functions that do not transform an individual into a content provider within the meaning of § 230." *Callahan*, 2021 WL 783524, at *6 (quotations, alterations omitted). *See also Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1270 (9th Cir. 2016) ("Yelp is not liable for disseminating . . . [user-generated] content in essentially the same format to a search engine, as this action does not change the origin of the third-party content."); *Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 415-16 (6th Cir. 2014) (selecting and republishing user generated content is not

"creation or development.").

The court's decision in *Marshall's Locksmith Serv. Inc. v. Google, LLC*, is also instructive. 925 F.3d 1263, 1272 (D.C. Cir. 2019). There, the plaintiffs argued Google was an "information content provider" where it created "enhanced content that was derived from third-party content, but has been so augmented and altered as to have become new content." *Id.* at 1266. The court rejected the notion that "data [] collected from a third party and re-presented in a different format" "constitute[s] the 'creation' or 'development' of information[.]" *Id.* at 1269. Were it otherwise, "nothing would be" immune: "every representation by a search engine of another party's information requires the translation of a digital transmission into textual or pictorial form[.]" *Id.* Likewise, the court rejected the plaintiffs' argument that Google's creation of a map pinpoint to reflect the location of businesses that otherwise did not have an address listed was sufficient to transform Google into an "information content provider." *Id.* at 1270. Although Google created the pinpoint, the court held it was "derived" from third-party content and "constrained by the underlying third-party information," and thus Google was not the information content provider. *Id.*

Here, as in *Callahan* and *Marshall*'s, plaintiff's claims arise entirely from third-party content and Ancestry is thus immune.

## IV. PLAINTIFF'S "RIGHT OF PUBLICITY" CLAIM FAILS BECAUSE THE CHALLENGED CONDUCT IS EXEMPTED UNDER THE STATUTE

Even where there is "use [of] an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent," IRPA nonetheless exempts liability for certain uses to avoid conflict with the First Amendment. 765 Ill. Comp. Stat. 1075/30 & 35; *Collier v. Murphy*, No. 02 C. 2121, 2003 WL 1606637, at *3 (N.D. Ill. Mar.

26, 2003); HB 1422, Tr. of House Debate, 90th Ill. Gen. Assem. (April 24, 1997) at 226 (statement of Rep. Turner) (IRPA's exemptions "protect the First Amendment interest of individuals, such as artists and reporters").

First, IRPA exempts liability where an individual's identity is used to "portray [or] describe" the individual in a "book, article, . . . or other . . . visual . . . work." 765 Ill. Comp. Stat. 1075/35(b)(1). Here, plaintiff claims that Ancestry hosts an excerpt from his yearbook that features his identity—because his claim is premised on use of his identity as it appears in a book or other visual work (his yearbook), this exception applies.

Second, IRPA's exemption for "non-commercial purposes" applies to Ancestry's use of plaintiff's yearbook record. *See* 765 Ill. Comp. Stat. 1075/35(b)(2). As shown above and confirmed in *Callahan,* "Ancestry's use of the plaintiffs' profiles does not imply an endorsement of Ancestry's products." *Callahan*, 2021 WL 783524, at *5. Rather, users are simply made aware that the yearbook photograph is available through Ancestry's site. "The statute's commercial purpose requirement does not prohibit the mere sale of someone's photograph. Rather, the IRPA prohibits the use of an individual's image to promote or entice the purchase of some other product than the photograph itself." *Thompson v. Getty Images (US), Inc.*, No. 13 C 1063, 2013 WL 3321612, at *2 (N.D. Ill. July 1, 2013). In *Thompson*, users could search the defendant's website and view "[l]ow quality, watermarked sample images matching a user's search terms," which the user could then choose to purchase. *Id.* at *1. The court observed that the legislative history showed the statute was intended to protect against such examples as "use of an individual's picture on the back of a CTA bus indicating that he endorsed a particular kind of hair tonic," "an ad by a food establishment stating that its cheeseburger was endorsed by the Speaker of the House," and other like conduct. *Id.* at *2. The court then concluded displaying "a

preview of the exact thing [defendant] seeks to sell" is not "a 'commercial purpose' as the IRPA uses that term." *Id.* Here, as in *Thompson*, plaintiff alleges users who search for his name on Ancestry's site can view "a low-resolution version," which can then be viewed (simply viewed, not "sold") upon enrolling for Ancestry's services. As in *Thompson*, this is not a "commercial purpose" within contemplation of the IRPA. Rather, the use is akin to an online newspaper previewing an article about President Biden's inauguration that includes his image, but requires readers to go through a paywall to access it. This does not suggest President Biden "endorses" the newspaper or any other product it may advertise. Though the name and image might be contained among material that is commercially sponsored, there is no connection between the use and any commercial sponsorship. *See also Almeida v. Amazon*, 456 F.3d 1316, 1326 (11th Cir. 2006) (holding Amazon's display of a book cover depicting plaintiff was not a commercial use under Florida's misappropriation statute).

Moreover, it is well settled that simply excerpting publicly-available documents, as Ancestry has done with the public yearbook record at issue here, constitutes "non-commercial speech." *See Nieman v. Versuslaw, Inc.*, No. 12-3104, 2012 WL 3201931 at *4, 8 (C.D. Ill. Aug. 3, 2012), *aff'd*, 512 F. App'x 635 (7th Cir. 2013) (no IRPA liability for using person's identity in database identifying documents from plaintiff's litigation); *Vrdolyak v. Avvo, Inc.,* 206 F. Supp. 3d 1384, 1388-89 (N.D. Ill. 2016) (online directory constituted non-commercial speech fully protected by the First Amendment).

## V.     ALL OF PLAINTIFF'S CLAIMS ARE PREEMPTED BY SECTION 301 OF THE COPYRIGHT ACT

Right of publicity, ICFA, and other state law and common law claims are preempted by section 301 of the Copyright Act to the extent the claims rest on distribution or display of a

copyrighted work, rather than on the misuse of a plaintiff's likeness. *See, e.g., Toney*, 406 F.3d at 910 ("these state law rights are only valid if they do not interfere with federal copyright protections"); *Cassetica Software, Inc. v. Computer Scis. Corp.*, No. 09 C 0003, 2009 WL 1703015, at *5 (N.D. Ill. June 18, 2009) ("Because [plaintiff]'s state law claims arise exclusively from conduct governed by the Copyright Act, they are preempted"). The key inquiry is whether the plaintiff contends his identity has been used to endorse a product, or if the plaintiff is only challenging the display, reproduction and distribution of the copyrighted images in which plaintiff is featured. *See Toney*, 406 F.3d at 910 ("[t]he basis of a right of publicity claim concerns the message—whether the plaintiff endorses, or appears to endorse the product in question.").[5] If a plaintiff has not identified some independent "use" of his identity—such as an endorsement—the claim is preempted.

For example, in *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1012–13 (9th Cir. 2017), the plaintiffs asserted right of publicity claims where the defendant sold licenses that allowed customers to download photographs of plaintiffs. 853 F.3d at 1007. Although the plaintiffs alleged the defendant exploited their names and likenesses for commercial purposes, the Ninth Circuit, applying the framework established by the Seventh Circuit in *Toney*, deemed the claims preempted—plaintiffs "were asserting rights equivalent to the exclusive rights contained in the

---

[5] The yearbooks at issue here undoubtedly fall within the "subject matter of copyright." *See* 17 U.S.C. §§ 102-103 (copyright protection for "original works of authorship fixed in any tangible medium of expression," including "compilations"). Further, the yearbook is "fixed" in a tangible medium of expression within the meaning of the Act because "its embodiment in a copy . . . is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration." 17 U.S.C. § 101. In any event, even if the yearbook were not entitled to copyright protection (it is), the scope of preemption is broader than the scope of copyright protection—"the shadow actually cast by the Act's preemption is notably broader than the wing of its protection." *United States ex rel. Berge v. Bd. of Trustees*, 104 F.3d 1453, 1463 (4th Cir. 1997).

Copyright Act because they did not identify a use of their names or likenesses independent of the display, reproduction, and distribution of the copyrighted images in which they are depicted." *Id.* at 1008-09. *See also Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 674 (7th Cir. 1986) (preemption where plaintiffs' right of publicity claim was equivalent to an assertion of copyright over the telecasts of their performances); *Pers. Keepsakes, Inc. v. Personalizationmall.com, Inc.*, No. 11 C 5177, 2012 WL 414803, at *8 (N.D. Ill. Feb. 8, 2012) (dismissing various state law claims, including ICFA claims, as preempted by the Copyright Act where they were "simply copyright claims in different clothing").

Here, as in *Maloney* and *Baltimore Orioles*, although plaintiff frames his claims in terms of Ancestry's "use" of his name and likenesses, in substance plaintiff challenges Ancestry's model of paid *access* to his copyrighted yearbooks. Plaintiff does not identify any use of his name or image apart from the mere appearance in the yearbook page—he does not contend his name or image was used to make it appear he "endorse[d] the product in question" in any way. *See Toney*, 406 F.3d at 910; *Callahan*, 2021 WL 783524, at *5 ("Ancestry's use of the plaintiffs' profiles does not imply an endorsement of Ancestry's products").[6]

Had plaintiff wished to limit distribution of these yearbook pages, he could have "simply retain[ed] [or acquired] the copyright." *Fleet v. CBS, Inc.*, 50 Cal. App. 4th 1911, 1921 (1996) (misappropriation claims preempted by Copyright Act); *Baltimore Orioles*, 805 F.2d at 679 ("[T]he Players have attempted to obtain *ex post* what they did not negotiate *ex ante*. . . . The Players remain free to attain their objective by bargaining with the Clubs for a contractual

---

[6] *See also Jules Jordan Video, Inc. v. 144942 Canada, Inc.*, 617 F.3d 1146, 1152-55 (9th Cir. 2010) (plaintiffs' claims based on cover pictures used to advertise DVDs were preempted; "The pictures on the covers of the DVDs are 'still shots' of the copyrighted video performance. Thus, Gasper's argument that his right of publicity was violated by defendants' reproduction of the covers is misguided.").

declaration that the Players own a joint or an exclusive interest in the copyright of the telecasts."). That he failed to do so does not allow him to circumvent the federal Copyright Act by asserting state-law claims. Because plaintiff does not base his right of publicity, intrusion upon seclusion, unjust enrichment, or ICFA claims on any conduct outside of Ancestry's use of the copyrighted yearbook, each of his claims is preempted by Section 301 of the Copyright Act.

## VI.  **PLAINTIFF CANNOT STATE A CLAIM FOR INTRUSION UPON SECLUSION**

To state a claim for intrusion upon seclusion under Illinois law, "plaintiff must show that: '(1) the defendant committed an unauthorized intrusion or prying into the plaintiff's seclusion; (2) the intrusion would be highly offensive or objectionable to a reasonable person; (3) the matter intruded on was private; and (4) the intrusion caused the plaintiff anguish and suffering.'" *Browning v. AT&T Corp.*, 682 F. Supp. 2d 832, 835 (N.D. Ill. 2009) (citation omitted). Plaintiff cannot satisfy these requirements.

First, plaintiff concedes that others with access to the yearbooks chose to donate those books to Ancestry. ECF No. 1 at ¶ 38 ("At least some, and possibly all, of the Yearbook Database was built via [] donations [of yearbooks to Ancestry]."). Thus, plaintiff cannot show Ancestry's use of the yearbooks was "unauthorized" or that there was any "seclusion" to be intruded upon. *See, e.g., Mucklow v. John Marshall Law School*, 176 Ill. App. 3d 886, 531 N.E.2d 941, 946 (Ill. App. Ct. 1988) (plaintiff failed to show that access to school record by professor was unauthorized).

Second, the information at issue is not "highly offensive to a reasonable person." Almost every person who attended school in the United States (including plaintiff) has voluntarily had *exactly* this type of information published about them—in school yearbooks. The information at issue—plaintiff's participation on a high school swim team—is entirely benign. Even setting

aside that plaintiff already voluntarily disclosed this information in his public yearbook, its dissemination would not otherwise offend any reasonable person. *See* Highly offensive to a reasonable person, 2 Entertainment Law 3d: Legal Concepts and Business Practices § 12:6 ("Generally, accurate photographic depictions of an individual are not considered highly offensive to a reasonable person.").

Third, the yearbook information is not private; on the contrary, it is publicly-available information—plaintiff's name, physical appearance, and his participation on the swim team are not private matters. As this Court explained in *Wrenn v. Exelon Generation, LLC*, No. 18 C 2524, 2019 WL 11660918, at *10 (N.D. Ill. Mar. 5, 2019), "[p]rivate facts for purposes of this tort include 'family problems, romantic interests, sex lives, health problems, future work plans,'" not things that are readily and publicly accessible such as "names, telephone numbers, addresses or social security numbers' or matters of public record." For example, in *Troeckler v. Zeiser*, No. 14-cv-40-SMY-PMF, 2015 WL 1042187, at *3 (S.D. Ill. Mar. 5, 2015), the court determined information gathered from GPS tracking was not private because the movements captured could have occurred in the public view.

Likewise, here nothing in the yearbook can be characterized as "private"—both because the activity (swim team participation) was not private in the first instance, and because the fact of plaintiff's participation was subsequently distributed in a public yearbook. As this Court previously explained, "plaintiff must also allege that he attempted to keep private facts private. 'Persons cannot reasonably maintain an expectation of privacy in that which they display openly.'" *Acosta v. Scott Labor LLC*, 377 F. Supp. 2d 647, 650 (N.D. Ill. 2005). Here, plaintiff made no effort to maintain the privacy of his yearbook information; on the contrary, he consented to its public distribution. Indeed, Ancestry was able to obtain the yearbooks from a

third party as a result of that public distribution.

Fourth, even if plaintiff could allege he suffered any "anguish and suffering" (he cannot), his complaint appears to focus on Ancestry's distribution of his information, not on any alleged intrusion (which, as explained above, is non-existent).   However, any claimed "injury must flow from the intrusion, . . . not . . . publication." *See Angelo v. Moriarty*, No. 15 C 8065, 2016 WL 640525, at *5 (intrusion claim failed where plaintiffs claimed the publication of surreptitious recordings was "highly offensive," but failed to claim the injury resulted from the recording itself); *Lovgren v. Citizens First Nat'l Bank of Princeton*, 126 Ill. 2d 411, 417, 534 N.E.2d 987 (Ill. 1989) (plaintiff failed to plead intrusion upon seclusion because "the alleged offensive conduct and subsequent harm resulted from the defendant's act of publication, not from an act of prying.").

Accordingly, plaintiffs' third cause of action should be dismissed.

## VII.   PLAINTIFF CANNOT STATE A CLAIM FOR UNJUST ENRICHMENT

Where, as here, "an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim." *See Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011).   As set forth above, plaintiff cannot plausibly allege Ancestry benefitted at his expense. *See supra* at Part I.   Further, because there is no actionable right of privacy or publicity here, plaintiff cannot claim to be owed compensation. *See supra* at Parts III and IV.   Accordingly, plaintiff's fourth cause of action should be dismissed.

## VIII.   PLAINTIFF CANNOT STATE A CLAIM UNDER THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE PRACTICES ACT.

The Court should dismiss plaintiff's claims under the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/1 *et seq.*, because (1) plaintiff fails to plead the requisite elements, and (2) plaintiff is not a consumer and does not satisfy the consumer nexus test.

### 1.   Plaintiff fails to plead with particularity many of the elements under the ICFA.

To plead a cause of action under the ICFA, plaintiff must allege "with particularity": "(1) an unfair or deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) that the deception occurred in the course of conduct involving trade or commerce; (4) actual damage to the plaintiff; and (5) that such damages were proximately caused by the defendant's deception." *Thrasher-Lyon v. Ill. Farmers Ins. Co.*, 861 F. Supp. 2d 898, 908-909 (N.D. Ill. 2012) (*citing Coy Chiropractic Health Ctr., Inc. v. Travelers Cas. and Sur. Co.*, 409 Ill. App. 3d 1114, 957 N.E.2d 1174 (Ill. App. Ct. 2011) *as modified on denial of reh'g* (May 9, 2011)).  Where, as here, the complaint alleges consumer fraud, the allegations "must be pled with the same particularity and specificity as that required under common law fraud," including the who, what, when, where, and how of the fraud or misrepresentation. *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill. 2d 482, 501, 675 N.E.2d 584 (Ill. 1996).

Here, plaintiff has failed to identify *any* deceptive practice, statement, or omission by Ancestry, let alone done so with the requisite particularity.  Plaintiff's ICFA claim is entirely dependent on his assertion that Ancestry violated IRPA (765 Ill. Comp. Stat. 1075/1 *et seq.*). ECF No. 1 at ¶ 63.  However, under the ICFA, only violations of certain, specifically enumerated

statutes give rise to a separate ICFA claim—the Right of Publicity Act is not one of them.  *See*
815 Ill. Comp. Stat. 505/2Z.

Beyond his claim that Ancestry violated IRPA, he makes only the conclusory assertion
that "Ancestry has and is engaged in deceptive or unfair practices as those terms are defined in
the [ICFA]."  ECF No. 1 at ¶ 62.  This is insufficient under any pleading standard—plaintiff has
not identified any deceptive conduct, claimed that he relied on such deception, or pointed to any
damages flowing from such deception.  *See, e.g.*, *Cmty. Bank of Trenton v. Schnuck Mkts. Inc.*,
887 F.3d 803, 822 (7th Cir. 2018) ("ICFA plaintiffs must identify some stand-alone …
fraudulent act or practice," material omission, or statement that was false or deceptive) (internal
quotations omitted); *Connick*, 174 Ill. 2d at 502 (plaintiffs' complaint failed where it did "not
allege with specificity how the manual's guidelines were false or deceptive").

2. **Because plaintiff is not a consumer and does not satisfy the consumer nexus test, he
    cannot bring a claim under the ICFA.**

Plaintiff cannot bring a claim under ICFA because he is not a consumer and does not
satisfy the consumer nexus test.  *See* *Norton v. City of Chicago*, 267 Ill. App. 3d 507, 642 N.E.2d
839 (Ill. App. Ct. 1st Dist. 1994) (plaintiffs lacked standing to bring their ICFA action because
they were not consumers); *Thrasher-Lyon*, 861 F. Supp. 2d at 908-909 (N.D. Ill. 2012) (no
standing under the ICFA where plaintiff did not satisfy the consumer nexus test).

Under the ICFA, a consumer is "any person who purchases or contracts for the purchase
of merchandise not for resale in the ordinary course of his trade or business but for his use or that
of a member of his household."  815 Ill. Comp. Stat. 505/1(e).  Here, plaintiff has not alleged
that he purchased or contracted to purchase anything from Ancestry.  On the contrary, plaintiff
admitted he is not a consumer as defined by the ICFA.  ECF No. 1 at ¶  22 ("Mr. Bonilla is not a

subscriber of any Ancestry.com products or services and is not subject to any Terms of Service or any other agreement with Ancestry.com.").

Plaintiff also fails the consumer nexus test. To satisfy the consumer nexus test, a plaintiff must plead and otherwise prove "(1) that [its] actions were akin to a consumer's actions to establish a link between [it] and consumers; (2) how defendant's representations . . . concerned consumers other than [plaintiff]; (3) how defendant's particular [action] involved consumer protection concerns; and (4) how the requested relief would serve the interests of consumers." *Thrasher-Lyon*, 861 F. Supp. 2d at 912 (*citing Global Total Office L.P. v. Global Allies, LLC*, No. 10 C 1896, 2011 WL 3205487, at *2 (N.D. Ill. July 28, 2011). For example, in *Thrasher-Lyon*, plaintiff failed "to set forth any factual allegations plausibly supporting any consumer concerns to satisfy the consumer nexus test. For instance, Plaintiff fails to allege how Defendants' actions or representations concerned consumers other than Plaintiff or how their actions involved consumer protection concerns." *Id.* at 912; *Cf. Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.*, 190 Ill. App. 3d 524, 534, 546 N.E.2d 33 (Ill. Ct. App. 1989) (holding the consumer nexus test was satisfied where "defendant published false information about its prices for services"); *Bank One Milwaukee v. Sanchez*, 336 Ill. App. 3d 319, 324, 783 N.E.2d 217 (Ill. Ct. App. 2003) (holding plaintiff satisfied the consumer nexus test based on her allegations that "a merchant bound her to a commercial transaction through a fraudulent act").

Here, plaintiff cannot explain how the conduct complained of harms consumers or implicates consumer protection concerns. On the contrary, plaintiff focuses on how Ancestry's conduct allegedly impacts non-consumers. Indeed, he purports to represent "[t]he vast majority of people [who] . . . have no business relationship with Ancestry, are not Ancestry subscribers, and are not subject to a Terms of Service or any other agreement with Ancestry." ECF No. 1 at ¶

45.  Thus, plaintiff admits he lacks a connection to consumers of Ancestry's products or services and that the (non-fraudulent) conduct he complains of does not impact Ancestry consumers.

Accordingly, plaintiff's second cause of action should be dismissed.

## CONCLUSION

For the foregoing reasons, Ancestry's motion to dismiss should be granted.

Dated:   March 8, 2021                    Respectfully submitted,

                                          By: /s/ *Lazar Raynal*
                                               Lazar Raynal

                                          QUINN EMANUEL URQUHART &
                                          SULLIVAN, LLP
                                          Lazar Raynal
                                          191 N. Wacker Drive, Suite 2700
                                          Chicago, IL 60606
                                          (312) 705-7400
                                          lazarraynal@quinnemanuel.com

                                          Shon Morgan (*pro hac vice forthcoming*)
                                          John W. Baumann (*pro hac vice forthcoming*)
                                          865 South Figueroa Street, 10th Floor
                                          Los Angeles, CA 90017
                                          (213) 443-3000
                                          shonmorgan@quinnemanuel.com
                                          jackbaumann@quinnemanuel.com

                                          Cristina Henriquez (*pro hac vice forthcoming*)
                                          555 Twin Dolphin Drive, 5th Floor
                                          Redwood Shores, CA 94065
                                          (650) 801-5000
                                          cristinahenriquez@quinnemanuel.com

                                          *Attorneys for Defendant/Counter-Plaintiff*
                                          *State Mutual Insurance Company*

**<u>CERTIFICATE OF SERVICE</u>**

I, the undersigned, certify that on March 8, 2021, I caused a copy of Ancestry's

Memorandum In Support of Rule 12(b)(2) and 12(b)(6) Motion to Dismiss to be filed

electronically with the Clerk of the Court using the CM/ECF system.  Notice of this filing will be

sent to counsel of record via the Court's CM/ECF automated filing system.


By: <u>/s/ *Lazar Raynal*</u>
     Lazar Raynal