**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SERGIO BONILLA, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>  v.<br><br>ANCESTRY.COM OPERATIONS INC., a Virginia Corporation; ANCESTRY.COM INC., a Delaware Corporation; ANCESTRY.COM LLC, a Delaware Limited Liability Company; and DOES 1 through 50, inclusive,<br><br>        Defendants. | CASE NO. 1:20-cv-07390<br><br>Hon. Virginia M. Kendall |

<u>**ANCESTRY'S MEMORANDUM IN SUPPORT OF RULE 12(B)(2) AND 12(B)(6) MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**</u>

**TABLE OF CONTENTS**

Page

INTRODUCTION .................................................................................................1

BACKGROUND AND MATERIAL ALLEGATIONS IN PLAINTIFF'S COMPLAINT ..........3

THE DISMISSAL ORDER IN *CALLAHAN*..................................................................4

LEGAL STANDARDS ........................................................................................5

ARGUMENT .......................................................................................................6

I.  THE COURT LACKS PERSONAL JURISDICTION OVER ANCESTRY ....................6

II. PLAINTIFF'S CLAIMS FAIL BECAUSE HE DID NOT SUFFER ANY
    INJURY AS A RESULT OF THE ALLEGED VIOLATIONS......................................10

III. ALL OF PLAINTIFF'S CLAIMS ARE FORECLOSED BY SECTION 230 OF
     THE COMMUNICATIONS DECENCY ACT.............................................................13

IV. ALL OF PLAINTIFF'S CLAIMS ARE PREEMPTED BY SECTION 301 OF
    THE COPYRIGHT ACT ..........................................................................................15

V.  PLAINTIFF'S "RIGHT OF PUBLICITY" CLAIM FAILS BECAUSE THE
    CHALLENGED CONDUCT IS EXEMPTED UNDER THE STATUTE ......................18

VI. PLAINTIFF CANNOT STATE A CLAIM FOR INTRUSION UPON
    SECLUSION...............................................................................................................20

VII. PLAINTIFF CANNOT STATE A CLAIM FOR UNJUST ENRICHMENT..................22

VIII. PLAINTIFF CANNOT STATE A CLAIM UNDER THE ILLINOIS
      CONSUMER FRAUD AND DECEPTIVE PRACTICES ACT....................................22

      A.  Plaintiff fails to plead with particularity many of the elements under the
          ICFA. ................................................................................................................23

      B.  Because plaintiff is not a consumer and does not satisfy the consumer
          nexus test, he cannot bring a claim under the ICFA. ..............................................24

CONCLUSION..........................................................................................................25

# TABLE OF AUTHORITIES

**Page**

## Cases

*Acosta v. Scott Labor LLC*,
377 F. Supp. 2d 647 (N.D. Ill. 2005) ................................................................. 21

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
751 F.3d 796 (7th Cir. 2014) .................................................................... 6, 9

*Almeida v. Amazon*,
456 F.3d 1316 (11th Cir. 2006) ................................................................ 19

*Angelo v. Moriarty*,
2016 WL 640525 (N.D. Ill. Feb. 18, 2016) .................................................. 22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................. 6

*Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*,
805 F.2d 663 (7th Cir. 1986) ............................................................... 16, 17

*Bank One Milwaukee v. Sanchez*,
783 N.E.2d 217 (Ill. Ct. App. 2003) .......................................................... 25

*Bogie v. Rosenberg*,
705 F.3d 603 (7th Cir. 2013) ................................................................ 3, 25

*Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cty.*,
137 S. Ct. 1773 (2017)............................................................................. 7

*Browning v. AT&T Corp.*,
682 F. Supp. 2d 832 (N.D. Ill. 2009) ......................................................... 20

*Callahan v. Ancestry.com*,
2021 WL 783524 (N.D. Cal. Mar. 1, 2021).......................................... passim

*Carafano v. Metrosplash.com, Inc.*,
339 F.3d 1119 (9th Cir. 2003) ................................................................. 14

*Cassetica Software, Inc. v. Computer Scis. Corp.*,
2009 WL 1703015 (N.D. Ill. June 18, 2009) ............................................... 15

*Cleary v. Philip Morris Inc.*,
656 F.3d 511 (7th Cir. 2011) .................................................................... 22

*Cmty. Bank of Trenton v. Schnuck Mkts. Inc.*,
887 F.3d 803 (7th Cir. 2018) ................................................................... 24

*Cohen v. Facebook, Inc.*,
798 F. Supp. 2d 1090 (N.D. Cal. 2011) ................................................. 11, 12

*Collier v. Murphy*,
2003 WL 1606637 (N.D. Ill. Mar. 26, 2003)............................................... 18

*Connick v. Suzuki Motor Co., Ltd.*,
675 N.E.2d 584 (Ill. 1996)................................................................... 23, 24

*Coy Chiropractic Health Ctr., Inc. v. Travelers Cas. and Sur. Co.*,
957 N.E.2d 1174 (Ill. App. Ct. 2011) ......................................................... 23

ii

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) .................................................................................... 6

*Dart v. Craigslist, Inc.*,
    665 F. Supp. 2d 961 (N.D. Ill. 2009) ...................................................... 13

*Denberg v. U.S. R.R. Ret. Bd.*,
    696 F. 2d 1193 (7th Cir. 1983) .................................................................. 7

*Dobrowolski v. Intelius, Inc.*,
    2017 WL 3720170 (N.D. Ill. Aug. 29, 2017) ........................................... 9

*Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.*,
    546 N.E.2d 33 (Ill. Ct. App. 1989) ........................................................ 25

*Fleet v. CBS, Inc.*,
    50 Cal. App. 4th 1911 (1996) ................................................................. 17

*Fraley v. Facebook*,
    830 F. Supp. 2d 785 (N.D. Cal. 2011) ................................................... 12

*Fus v. CafePress, Inc.*,
    2020 WL 7027653 (N.D. Ill. Nov. 30, 2020) ......................................... 10

*FW/PBS, Inc. v. City of Dallas*,
    493 U.S. 215 (1990) .................................................................................... 6

*GCIU–Employer Retirement Fund v. Goldfarb Corp.*,
    565 F.3d 1018 (7th Cir. 2009) .................................................................. 8

*Global Total Office L.P. v. Global Allies, LLC*,
    2011 WL 3205487 (N.D. Ill. July 28, 2011) ......................................... 25

*Goddard v. Google, Inc.*,
    640 F. Supp. 2d 1193 (N.D. Cal. 2009) ................................................ 14

*Greene v. Mizuho Bank, Ltd.*,
    169 F. Supp. 3d 855 (N.D. Ill. 2016) ................................................. 7, 8

*Groshek v. Time Warner Cable, Inc.*,
    865 F.3d 884 (7th Cir. 2017) .................................................................. 12

*Gubala v. Time Warner Cable, Inc.*,
    846 F.3d 909 (7th Cir. 2017) .................................................................. 12

*Hyatt Int'l Corp. v. Coco*,
    302 F.3d 707 (7th Cir. 2002) .................................................................... 6

*Jones v. Dirty World Entm't Recordings LLC*,
    755 F.3d 398 (6th Cir. 2014) .................................................................. 14

*Jules Jordan Video, Inc. v. 144942 Canada, Inc.*,
    617 F.3d 1146 (9th Cir. 2010) ................................................................ 17

*Kimzey v. Yelp! Inc.*,
    836 F.3d 1263 (9th Cir. 2016) ................................................................ 14

*Lovgren v. Citizens First Nat'l Bank of Princeton*,
    534 N.E.2d 987 (Ill. 1989) ..................................................................... 22

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) .................................................................................... 6

iii

*Maloney v. T3Media, Inc.*,
  853 F.3d 1004 (9th Cir. 2017) ................................................................. 16

*Marshall's Locksmith Serv. Inc. v. Google, LLC*,
  925 F.3d 1263 (D.C. Cir. 2019)......................................................... 14, 15

*Mucklow v. John Marshall Law School*,
  531 N.E.2d 941 (Ill. App. Ct. 1988) ....................................................... 20

*Nieman v. Versuslaw, Inc.*,
  2012 WL 3201931 (C.D. Ill. Aug. 3, 2012)............................................. 19

*Norton v. City of Chicago*,
  642 N.E.2d 839 (Ill. App. Ct. 1st Dist. 1994) ........................................ 24

*Pers. Keepsakes, Inc. v. Personalizationmall.com, Inc.*,
  2012 WL 414803 (N.D. Ill. Feb. 8, 2012) ............................................... 17

*Raines v. Byrd*,
  521 U.S. 811 (1997) ................................................................................. 6

*Sessa v. Ancestry.com*,
  Case No. 2:20-cv-02292 (D. Nev.) .......................................................... 5

*Silha v. ACT, Inc.*,
  2014 WL 11370440 (N.D. Ill. Sept. 2, 2014) .......................................... 11

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016)................................................................. 10, 12, 13

*Telemedicine Sols. LLC v. WoundRight Techs., LLC*,
  27 F. Supp. 3d 883 (N.D. Ill. 2014) ..................................................... 7, 9

*Thompson v. Getty Images (US), Inc.*,
  2013 WL 3321612 (N.D. Ill. July 1, 2013).......................................... 18, 19

*Thrasher-Lyon v. Ill. Farmers Ins. Co.*,
  861 F. Supp. 2d 898 (N.D. Ill. 2012) .......................................... 23, 24, 25

*Toney v. L'Oreal USA, Inc.*,
  406 F.3d 905 (7th Cir. 2005) ................................................. 11, 12, 16, 17

*Troeckler v. Zeiser*,
  2015 WL 1042187 (S.D. Ill. Mar. 5, 2015) ............................................. 21

*United Airlines, Inc. v. Zaman*,
  152 F. Supp. 3d 1041 (N.D. Ill. 2015) ..................................................... 7

*United States ex rel. Berge v. Bd. of Trustees*,
  104 F.3d 1453 (4th Cir. 1997) ................................................................ 16

*Vrdolyak v. Avvo, Inc.*,
  206 F. Supp. 3d 1384 (N.D. Ill. 2016) .................................................... 20

*Walden v. Fiore*,
  571 U.S. 277 (2014)................................................................................. 9

*Wrenn v. Exelon Generation, LLC*,
  2019 WL 11660918 (N.D. Ill. Mar. 5, 2019)........................................... 21

## Statutes

17 U.S.C. § 101 ................................................................................................ 16

iv

17 U.S.C. § 102 ...................................................................................................... 16

17 U.S.C. § 103 ...................................................................................................... 16

47 U.S.C. § 230 ............................................................................................. 2, 5, 13

17 U.S.C. § 301 ........................................................................................................ 2

735 Ill. Comp. Stat. 5/2-209 .................................................................................. 6

765 Ill. Comp. Stat. 1075/1 .............................................................................. 4, 23

765 Ill. Comp. Stat. 1075/30 ............................................................................... 18

765 Ill. Comp. Stat. 1075/35 ............................................................................... 18

815 Ill. Comp. Stat. 505/1 .......................................................................... 4, 22, 24

815 Ill. Comp. Stat. 505/2Z ................................................................................. 23

## **Other Authorities**

2 Entertainment Law 3d: Legal Concepts and Business Practices § 12:6 ................................... 20

HB 1422, Tr. of House Debate, 90th Ill. Gen. Assem. (April 24, 1997) ...................... 18

**INTRODUCTION**

Ancestry operates the world's largest subscription collection of genealogy databases, encompassing more than 27 billion historical records. Much of this data is available for free; even more can be accessed by members. Subscribers can review, for example, US census records, military documents, and historical immigration records ranging from passenger lists for most American ports to border-crossing files. Ancestry also makes available millions of digitized family and local history books, newspapers dating to the 18th century, and school yearbooks.

The access to yearbooks prompted the same counsel to file three virtually identical class actions in different federal courts, and the first-filed case has already been dismissed for reasons that apply equally here.[1] Plaintiff objects that pictures and information from his school yearbook—publicly accessible since 1995—are viewable on Ancestry.com and seeks to advance a broad class action asserting right of publicity and privacy-based theories.

At the threshold, plaintiff does not allege facts that establish personal jurisdiction. Ancestry is not incorporated or headquartered in Illinois and the single yearbook record at issue is from a high school in Omaha, Nebraska. Plaintiff does not allege Ancestry had any contact with Illinois when it obtained his yearbook excerpt, nor does he allege his yearbook was ever directed toward Illinois residents or resulted in a single sale to an Illinois resident. Instead, the purported "connections" to the forum set forth in plaintiff's amended complaint are untethered to the conduct giving rise to plaintiff's claims and are thus insufficient for personal jurisdiction.

Substantively, plaintiff's supposed indignation over the possible viewing of his school photo cannot find legal grounding. Multiple bases foreclose these claims at the pleading stage:

---

[1] *See Callahan v. Ancestry.com*, No. 20-cv-08437-LB, 2021 WL 783524, *4-6 (N.D. Cal. Mar. 1, 2021).

- ***No Injury***.  The benign yearbook excerpts are widely available, and plaintiff contends only that Ancestry offered access to these already-public records.  As the Northern District of California determined in dismissing the *Callahan* action, "Ancestry's using the public profiles to solicit paying subscribers—standing alone—does not establish injury."  *Callahan*, 2021 WL 783524, at *4.

- ***Section 230 Immunity***.  The Communications Decency Act immunizes companies from claims arising from the publication of content created by third parties.  Here, plaintiff concedes the content at issue emanates from third parties.  As the Northern District of California concluded in *Callahan*, "Ancestry . . . engaged in a publisher's traditional editorial functions . . . [and] has immunity under § 230(c)(1)."  *Id.* at *6.

- ***Copyright Preemption***.  The federal Copyright Act provides the exclusive means to protect copyrightable works such as photos and compilations. *See* 17 U.S.C. § 301(a). Here, plaintiff alleges no other use of his name or image apart from his mere appearance in one excerpt that he does not claim to have copyrighted.

- ***The Statutory Exceptions***.  Illinois' Right of Publicity Act ("IRPA") exempts use of a name or image where the use attempts to portray or describe an individual and also where the use is for non-commercial purposes.  Here, plaintiff alleges only that his yearbook record appeared on Ancestry's site; he does not allege his name or image was used in commercial sponsorship, for example, by making it appear he endorsed Ancestry or any other product.  The yearbook excerpt falls squarely within these IRPA exemptions.

- ***No Intrusion Upon Seclusion***.  The yearbook information at issue belies any suggestion it is "private" or that publication would highly offend a reasonable person.

It is public information (name, past physical appearance) in a medium intended for distribution (a school yearbook) that continues to be publicly available. And possible regret over teen hairstyles notwithstanding, no reasonable person could be "highly offended" by sharing a school swim team photo.

For these reasons and others set forth below, plaintiff's claims fail pursuant to Rule 12. Plaintiff amended his complaint following receipt of Ancestry's motion to dismiss the original complaint and after the court's dismissal order in *Callahan*. As shown below, plaintiff's minor changes to his complaint do not affect Ancestry's arguments in favor of dismissal. Thus, it is clear further amendment cannot change the outcome. Accordingly, plaintiff's complaint should be dismissed with prejudice to the extent the Court determines it has personal jurisdiction over Ancestry. *See, e.g., Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) (stating that dismissal with prejudice is proper "if it is clear that any amendment would be futile").

**BACKGROUND AND MATERIAL ALLEGATIONS IN PLAINTIFF'S COMPLAINT**

Ancestry is a genealogy company that provides users access to a variety of historical records to trace their family histories. *See* Ancestry.com. These sources include obituaries, family trees, marriage records, death records, military records, census records, local history books, and a variety of others. *See id.* Some of these records have been collected by Ancestry, others are contributed by users who upload content. Many of the billions of records available on Ancestry.com have never been accessed by actual users, and exist "unseen" in virtual storage.

Here, plaintiff's claims are premised on Ancestry's inclusion of his school yearbook record in Ancestry's "Yearbook Database." *See* ECF No. 29 at ¶ 34. Ancestry uses yearbooks in a simple, non-controversial way: it aggregates and makes searchable already-public yearbook information plaintiff admits was created by third parties. *See id.* at ¶ 51. Thus, if an Ancestry

user searches "Jane Johnson, Rockford, Illinois," Ancestry may indicate it has a yearbook image for a person with that name who went to school in that location. Subscribers can take the further step of actually viewing the image to determine if it is the Jane Johnson of interest. *See id.* at ¶ 34. Here, plaintiff Sergio Bonilla bases his claims on a single record from his high school yearbook from Omaha, Nebraska. *Id.* Plaintiff does not contend that his picture or information were actually ever viewed by any Ancestry member. Nor does he articulate or attempt to quantify any monetary injury from Ancestry's storage of this image and information. Plaintiff further concedes he was unaware Ancestry maintained this record until the "investigation" of this lawsuit. *See id.* at ¶ 33.

Based on Ancestry's inclusion of this decades-old yearbook record in its database, plaintiff asserts four claims on behalf of a putative class of Illinois residents: (1) violation of 765 Ill. Comp. Stat. 1075/1 (IRPA); (2) violation of 815 Ill. Comp. Stat. 505/1 (Illinois' Consumer Fraud and Deceptive Business Practices Act ("ICFA")); (3) intrusion upon seclusion; and (4) unjust enrichment. *Id.* at ¶¶ 79-99.

## THE DISMISSAL ORDER IN *CALLAHAN*

In a companion case filed by the same attorneys in the Northern District of California, the court dismissed a nearly identical complaint that asserted similar state-law misappropriation claims. *Callahan*, 2021 WL 783524, at *4-6. First, the court determined the *Callahan* plaintiffs had not alleged a sufficiently concrete injury to establish Article III standing. *Id.* at *4-5. The court held Ancestry's use of the "public yearbook information . . . to solicit paying subscribers— standing alone—does not establish injury." *Id.* at *4. Although the court acknowledged "standing can be established if the exploitation of users' profiles suggests that the users personally endorse a product or service," it found that "Ancestry's use of the plaintiffs' profiles

does not imply an endorsement of Ancestry's products or an equivalent interest." *Id.* at *5. Further, the court determined "plaintiffs do not have a commercial interest in their public profiles that precludes Ancestry's use of the profiles for commercial gain," and that a violation of the statute, standing alone, would be insufficient to establish a concrete injury. *Id.* at *4-5.

Second, independent of the *Callahan* plaintiffs' failure to establish a concrete injury, the court also ruled that "Ancestry is immune from liability under the Communications Decency Act. 47 U.S.C. § 230(c)(1)." *Id.* at *5. The court reasoned that Ancestry "did not create the underlying yearbook records and instead obtained them from third parties." *Id.* Thus, as "an interactive-computer service," Ancestry "is immune from liability for the third-party content." *Id.* The *Callahan* court rejected that Ancestry could be deemed the "information content provider" based on plaintiffs' contentions that "Ancestry extracts yearbook data (names, photographs, and yearbook date), puts the content on its webpages and in its email solicitations, adds information (such as an estimated birth year and age), and adds interactive buttons (such as a button prompting a user to upgrade to a more expensive subscription)." *Id.* at *6. The court reasoned that "Ancestry did not transform data and instead offered data in a form—a platform with different functionalities—that did not alter the content. Adding an interactive button and providing access on a different platform do not create content. They just add functionality." *Id.* Thus, Ancestry had engaged only in a "publisher's traditional editorial functions" and "has immunity under § 230(c)(1)." *Id.*[2]

## LEGAL STANDARDS

**Personal Jurisdiction.** Courts sitting in diversity may exercise personal jurisdiction over

---

[2] In the third similar case, *Sessa v. Ancestry.com*, Case No. 2:20-cv-02292 (D. Nev.), Ancestry has a pending motion to dismiss which is fully briefed and pending resolution.

nonresident defendants only when the forum state has jurisdiction. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). Illinois exercises personal jurisdiction coextensive with federal due process standards. 735 Ill. Comp. Stat. 5/2-209.

**Article III Standing.** To establish standing under the U.S. Constitution, a plaintiff must prove an "injury in fact" that is causally linked to the conduct complained of and would be redressed by a decision in plaintiff's favor. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). "It is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997) (citation omitted). The plaintiff bears the burden to prove subject matter jurisdiction exists. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990).

**Failure to State a Claim.** A complaint must contain "sufficient factual matter" to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Facts that are "merely consistent with" liability fail to state a claim. *Id.* (quotations omitted).

## ARGUMENT

## I.    THE COURT LACKS PERSONAL JURISDICTION OVER ANCESTRY

Plaintiff bears the burden to establish specific jurisdiction.[3] *See, e.g.*, *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 799 (7th Cir. 2014). Due process permits exercise of specific jurisdiction over a defendant only where "the defendant's

---

[3] Plaintiff does not allege Ancestry is subject to general jurisdiction. Nor could he—the Ancestry entities are not incorporated in or headquartered in Illinois, and lack "continuous and systematic [contacts] as to render [them] essentially at home" there. *See Daimler AG v. Bauman*, 571 U.S. 117, 119 (2014) (quotations and citation omitted).

*suit-related* conduct [] create[s] a substantial connection with the forum State." *Id.* at 801. It is "a bedrock principle" that "only suit-related contacts and not, for example, defendant's contacts with the plaintiff or third-parties, can create the required connection with the forum state." *United Airlines, Inc. v. Zaman*, 152 F. Supp. 3d 1041, 1049 (N.D. Ill. 2015). In the context of a putative class action, only the claims of the named plaintiff are relevant to this inquiry—those of the absent class members cannot give rise to jurisdiction. *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cty.*, 137 S. Ct. 1773, 1781 (2017) ("The mere fact that other plaintiffs were prescribed, obtained, and ingested Plavix in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims. . . . What is needed—and what is missing here—is a connection between the forum and the specific claims at issue.") (emphasis added); *Denberg v. U.S. R.R. Ret. Bd.*, 696 F. 2d 1193, 1197 (7th Cir. 1983) (when "a district court [does not have] jurisdiction over the claim of the class representative … it [has] no jurisdiction over the class action either even if the claims of some of the members of the class were within its jurisdiction."); *Greene v. Mizuho Bank, Ltd.*, 169 F. Supp. 3d 855, 866 (N.D. Ill. 2016) ("Specific personal jurisdiction can arise only from the claims of the named plaintiffs, not those of absent class members").

Where, as here, the plaintiff's claims sound in tort, "[t]he Seventh Circuit has distilled . . . a three-pronged 'express aiming' test . . . : (1) intentional conduct (or 'intentional and allegedly tortious conduct'); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Telemedicine Sols. LLC v. WoundRight Techs., LLC*, 27 F. Supp. 3d 883, 893 (N.D. Ill. 2014) (citations, quotations omitted). Plaintiff cannot satisfy these requirements here.

**First**, plaintiff cannot point to any *suit-related* conduct "expressly aimed at the forum

state." *Id.*  Plaintiff alleges Ancestry sent employees to Illinois high schools and universities "where the physical records are maintained" to "scan and digitize" yearbook records.  ECF No. 29 at ¶¶ 16-17, 54.  Setting aside that this is factually wrong, it is entirely irrelevant.  Only plaintiff's claims are relevant to the jurisdictional analysis, not those of absent class members.  *See Greene*, 169 F. Supp. 3d at 866.  Plaintiff's claims are premised on Ancestry's use of a yearbook from a school in *Omaha, Nebraska*.  ECF No. 29 at ¶ 34.  Following plaintiff's logic— that a yearbook must be copied in its original location or donated by someone from that state— this would mean the contacts necessary to obtain his yearbook were with *Nebraska*, not Illinois.

Likewise, plaintiff argues Ancestry used yearbook excerpts to advertise and sell to "relatives" of those depicted in the books and, plaintiff contends, Ancestry must have known "that the relatives of people who went to school in Illinois are likely to themselves be Illinois residents."  *Id.* at ¶¶ 23-24.  Again, following this logic, plaintiff's records must have been used to "advertise" to his relatives in Nebraska, where he went to school, not people in Illinois.

Plaintiff also points to two "local" advertisements for Ancestry—one in the Decatur Herald and Review from 2010 and another in the Chicago Tribune from 2012.  *Id.* at ¶ 20.  As a threshold matter, these advertisements are a decade old and thus temporally attenuated from the conduct at issue here.  *See GCIU–Employer Retirement Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1024–25 (7th Cir. 2009) (affirming dismissal for lack of personal jurisdiction where defendant surrendered its controlling interest in a subsidiary in the forum months before the sale of the subsidiary gave rise to the lawsuit).  More importantly, they are both substantively disconnected from the claims at issue here.  Plaintiff's claims are premised on Ancestry's purported use of *his* yearbook record—the ads included in the complaint do not even reference Ancestry's yearbook database, let alone plaintiff's yearbook records, and instead feature a death record, draft card, and

U.S. Census record from the early 1900s and a CD Rom "Family Tree Maker" that does not even mention Ancestry's website. ECF No. 29 at ¶ 20. These suggest Ancestry used *something else* to advertise its services, not plaintiff's yearbook record. For this same reason, a video advertisement about "a Chicago woman who used Ancestry.com to connect with her cousin" based on "a census record from Chicago" is irrelevant to this Court's jurisdiction—it has nothing to do with plaintiff or his claims. *Id.* at ¶ 22. The same is true of plaintiff's claim that Ancestry "promotes its subscription product" at Illinois libraries—plaintiff does not claim Ancestry used plaintiff's yearbook record (or even the yearbook database generally) to promote its product at those libraries. *Id.* at ¶ 21. Rather, he claims those promotions and seminars were used to advertise Ancestry's products. But that is not the basis for plaintiff's claims.

As concerns plaintiff, he concedes he had no personal interactions with Ancestry. *See* ECF No. 29 at ¶¶ 31-33. Plaintiff also does not claim Ancestry had any interaction with Illinois to obtain his yearbook. And he does not claim his yearbook excerpt was ever "targeted" toward potential customers in Illinois or that its use resulted in any sales to Illinois customers. Instead, his asserted basis for jurisdiction boils down to the fact that plaintiff now happens to live in Illinois. *See id.* at ¶ 18. But that is not sufficient. *See Advanced Tactical*, 751 F.3d at 802 ("after *Walden* there can be no doubt that the plaintiff cannot be the only link between the defendant and the forum.") (quoting *Walden v. Fiore*, 571 U.S. 277 (2014)). Put another way, "changing a single variable—[plaintiff's] residency . . . —there would be absolutely nothing tying" Ancestry's suit-related conduct to Illinois. *See Dobrowolski v. Intelius, Inc.*, No. 17 CV 1406, 2017 WL 3720170, at *5 (N.D. Ill. Aug. 29, 2017).

*Second*, plaintiff cannot allege Ancestry had "knowledge that the effects would be felt . . . in the forum state." *Telemedicine*, 27 F. Supp. 3d at 893. There is no plausible argument

Ancestry knew the effects of its use of a Nebraska yearbook—to the extent there were any—would be felt in Illinois.  As plaintiff's circumstance illustrates, that a person attended school in a certain state decades ago does not indicate their residence at the time of the purported misappropriation.

Accordingly, plaintiff's complaint should be dismissed for lack of personal jurisdiction.

## II.  PLAINTIFF'S CLAIMS FAIL BECAUSE HE DID NOT SUFFER ANY INJURY AS A RESULT OF THE ALLEGED VIOLATIONS

As in *Callahan*, plaintiff here cannot meet his burden to establish a sufficiently "concrete" injury for purposes of Article III standing.  *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016).  "First, the information in the Yearbook database is not private: it is public yearbook information distributed to classmates (and ultimately to Ancestry)."  *Callahan*, Case 2021 WL 783524, at *4.  Indeed, plaintiff's own high school archives full color copies of all its yearbooks—including the yearbook at issue here—online for anyone to access.[4]  Where, as here (and in *Callahan*), the information at issue is already a matter of public record, its disclosure cannot cause harm.  *See, e.g., Fus v. CafePress, Inc.*, No. 19-CV-06601, 2020 WL 7027653, *3 (N.D. Ill. Nov. 30, 2020) (no concrete injury where "most of Fus's information possessed by CafePress at the time of the hack was publicly available").

Second, plaintiff cannot plausibly allege any actual injury resulted from the manner in

---

[4]  Omaha Central High School Archives: Yearbooks, *available at* http://www.omahachsarchives.org/yearbook.php (online, digital copies of high school yearbooks from 1897-2020) (last visited March 8, 2021).  The yearbook record at issue here can be found on page 207 of the following URL: http://www.omahachsarchives.org/archive/obooks/1995.pdf. This website can be judicially noticed as a matter that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201; *Romero v. Securus Techs., Inc.*, 216 F. Supp. 3d 1078, 1085 (S.D. Cal. 2016) ("The court can take judicial notice of public records and government documents available from reliable sources on the Internet, such as websites run by governmental agencies.") (quotation, citation omitted).

which this information was used.  Mere use of public information does not cause injury, regardless whether defendant profits from such use—more is required, such as a suggestion of personal endorsement in which the plaintiff can assert a property interest.  *See, e.g., Silha v. ACT, Inc.*, No. 14 C 0505, 2014 WL 11370440, at *3 (N.D. Ill. Sept. 2, 2014), *aff'd*, 807 F.3d 169 (7th Cir. 2015) ("allegations that Defendants profited from selling Plaintiffs' PII does not amount to an injury in fact for standing purposes."); *Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 910 (7th Cir. 2005) ("[t]he basis of a right of publicity claim concerns the message—whether the plaintiff endorses, or appears to endorse the product in question."); *Cohen v. Facebook, Inc.*, 798 F. Supp. 2d 1090, 1097 (N.D. Cal. 2011) (dismissing "right of publicity" claims where "Plaintiffs have not shown how the mere disclosure to their Facebook friends that they have employed the Friend Finder service (even assuming some of them did not) causes them any cognizable harm, regardless of the extent to which that disclosure could also be seen as an implied endorsement by them of the service.").  As the *Callahan* court reasoned, "Ancestry's use of the plaintiffs' profiles does not imply an endorsement of Ancestry's products or an equivalent interest."  *Callahan*, 2021 WL 783524, at *5.

Third, for this same reason, plaintiff cannot plausibly allege he had a "commercial interest in [his] public profile[] that precludes Ancestry's use of the profile[] for commercial gain."  *Id.*  As *Callahan* recognized, this information is already readily accessible through other sources available to anyone interested.  *Id.* (discussing *Cohen v. Facebook*, 798 F. Supp. 2d 1090 (N.D. Cal. 2011), where the plaintiffs' misappropriation claims were dismissed for lack of standing "because the profiles were displayed only to the users' Facebook friends, who already had access to the profiles.").  And as noted above, Ancestry's use did not make it appear plaintiff endorsed Ancestry, such that plaintiff could claim some commercial interest in his own

endorsement.  *Id.* (distinguishing *Fraley v. Facebook*, 830 F. Supp. 2d 785 (N.D. Cal. 2011)).

Finally, the purported violation of Illinois' "right of publicity" statute, standing alone, is not sufficient to create a "concrete injury" for purposes of Article III standing.  *Cf. id.* at *4-5 (violation of California's right of publicity statute insufficient for concrete injury).  As the Supreme Court has recognized, "Article III standing requires a concrete injury even in the context of a statutory violation."  *Spokeo*, 136 S. Ct. at 1549.  Even where private information—as opposed to the publicly-available information at issue here—is protected by statute, the Seventh Circuit has consistently held more than a mere statutory violation is required for purposes of Article III standing: the violation must also cause some identifiable, concrete harm. *Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909, 912-13 (7th Cir. 2017) (cable subscriber alleged that Time Warner Cable had unlawfully retained private information he had provided in violation of the Cable Communications Policy Act, but without allegations of disclosure or misuse, this was insufficient for Article III standing); *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 886-87, 889 (7th Cir. 2017) (plaintiff lacked standing to sue for a violation of the Fair Credit Reporting Act where the defendant obtained a credit report without providing the required disclosures; although the defendant's action violated plaintiff's privacy, it was merely a "statutory violation completely removed from any concrete harm or appreciable risk of harm").  In other words, that the violations made plaintiff "*feel* aggrieved" does not suffice.  *Gubala*, 846 F.3d at 911 (emphasis in original).

Here, it is well established "the purpose of the IRPA is to allow a person to control the commercial value of his or her identity," and the crux of such a "claim concerns the message— whether the plaintiff endorses, or appears to endorse the product in question."  *Toney*, 406 F.3d at 910.  To the extent the legislature intended to codify a right to protect against an injury, the

injury contemplated necessitates a commercial interest in the value of the person's endorsement. *See id.* As discussed above, "Ancestry's use of the plaintiffs' profiles does not imply an endorsement of Ancestry's products or an equivalent interest." *Callahan*, 2021 WL 783524, at *5. Thus, the type of injury the legislature contemplated is not present here, and plaintiff is left (at best) with only "a bare procedural violation, divorced from any concrete harm," based on Ancestry's mere hosting of already-public information. *Spokeo*, 136 S. Ct. at 1549.

## III. ALL OF PLAINTIFF'S CLAIMS ARE FORECLOSED BY SECTION 230 OF THE COMMUNICATIONS DECENCY ACT

Section 230 of the Communications Decency Act provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). This immunity encompasses each of the state-law claims plaintiff asserts here. *See, e.g., Dart v. Craigslist, Inc.*, 665 F. Supp. 2d 961, 965-69 (N.D. Ill. 2009) ("Section 230 preempts contrary state law claims with certain inapplicable exceptions").

In a well-reasoned decision based on established standards for CDA immunity, the *Callahan* court determined "Ancestry is immune from liability under the Communications Decency Act" and dismissed plaintiffs' complaint. *Callahan*, 2021 WL 783524, at *5. The same reasoning applies here.

First, there can be no dispute "Ancestry is an interactive-computer service." *Id.* Plaintiff concedes Ancestry operates a website accessible to multiple users, which is all that is required. *See* ECF No. 29 at ¶¶ 7-9 (multiple users can access the website); 28 (alleging Ancestry owns and operates the website at issue); 47 U.S.C. § 230(f)(2) (defining "interactive computer service" to mean one that "provides or enables computer access by multiple users to a computer server").

Second, as in *Callahan*, Ancestry "did not create the underlying yearbook records and instead obtained them from third parties." *Callahan*, 2021 WL 783524, at *5; ECF No. 29 at ¶ 54 (contending Ancestry obtains the yearbooks from third parties, including through "donations from yearbook owners"). Where, as here, "a third party willingly provides the essential published content, the interactive service provider receives full immunity regardless of the specific editing or selection process." *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1124 (9th Cir. 2003) (section 230 barred misappropriation of right of publicity claim).

Any attempt by plaintiff to wrest Ancestry into the "restrictive definition of 'information content provider,'" based on its role in uploading the information to the internet or reformatting the third-party content should be rejected. *See Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1196 (N.D. Cal. 2009). As *Callahan* determined, "[a]dding an interactive button and providing access on a different platform do not create content. They just add functionality. . . . Instead of creating content, Ancestry — by taking information and photos from the donated yearbooks and republishing them on its website in an altered format — engaged in a publisher's traditional editorial functions that do not transform an individual into a content provider within the meaning of § 230." *Callahan*, 2021 WL 783524, at *6 (quotations, alterations omitted). *See also Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1270 (9th Cir. 2016) ("Yelp is not liable for disseminating . . . [user-generated] content in essentially the same format to a search engine, as this action does not change the origin of the third-party content."); *Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 415-16 (6th Cir. 2014) (selecting and republishing user-generated content is not "creation or development.").

The court's decision in *Marshall's Locksmith Serv. Inc. v. Google, LLC*, is also instructive. 925 F.3d 1263, 1272 (D.C. Cir. 2019). There, the plaintiffs argued Google was an

"information content provider" where it created "enhanced content that was derived from third-party content, but has been so augmented and altered as to have become new content." *Id.* at 1266. The court rejected the notion that "data [] collected from a third party and re-presented in a different format" "constitute[s] the 'creation' or 'development' of information[.]" *Id.* at 1269. Were it otherwise, "nothing would be" immune: "every representation by a search engine of another party's information requires the translation of a digital transmission into textual or pictorial form[.]" *Id.* Likewise, the court rejected the plaintiffs' argument that Google's creation of a map pinpoint to reflect the location of businesses that otherwise did not have an address listed was sufficient to transform Google into an "information content provider." *Id.* at 1270. Although Google created the pinpoint, the court held it was "derived" from third-party content and "constrained by the underlying third-party information," and thus Google was not the information content provider. *Id.*

Here, as in *Callahan* and *Marshall's*, plaintiff's claims arise entirely from third-party content and Ancestry is thus immune.

## IV. **ALL OF PLAINTIFF'S CLAIMS ARE PREEMPTED BY SECTION 301 OF THE COPYRIGHT ACT**

Right of publicity, ICFA, and other state law and common law claims are preempted by section 301 of the Copyright Act to the extent the claims rest on distribution or display of a copyrighted work, rather than on the misuse of a plaintiff's likeness. *See, e.g., Toney*, 406 F.3d at 910 ("these state law rights are only valid if they do not interfere with federal copyright protections"); *Cassetica Software, Inc. v. Computer Scis. Corp.*, No. 09 C 0003, 2009 WL 1703015, at *5 (N.D. Ill. June 18, 2009) ("Because [plaintiff]'s state law claims arise exclusively from conduct governed by the Copyright Act, they are preempted"). The key inquiry is whether

the plaintiff contends his identity has been used to endorse a product, or if the plaintiff is only challenging the display, reproduction and distribution of the copyrighted images in which plaintiff is featured. *See Toney*, 406 F.3d at 910 ("[t]he basis of a right of publicity claim concerns the message—whether the plaintiff endorses, or appears to endorse the product in question.").[5] If a plaintiff has not identified some independent "use" of his identity—such as an endorsement—the claim is preempted.

For example, in *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1012–13 (9th Cir. 2017), the plaintiffs asserted right of publicity claims where the defendant sold licenses that allowed customers to download photographs of plaintiffs. 853 F.3d at 1007. Although the plaintiffs alleged the defendant exploited their names and likenesses for commercial purposes, the Ninth Circuit, applying the framework established by the Seventh Circuit in *Toney*, deemed the claims preempted—plaintiffs "were asserting rights equivalent to the exclusive rights contained in the Copyright Act because they did not identify a use of their names or likenesses independent of the display, reproduction, and distribution of the copyrighted images in which they are depicted." *Id.* at 1008-09. *See also Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 674 (7th Cir. 1986) (preemption where plaintiffs' right of publicity claim was equivalent to an assertion of copyright over the telecasts of their performances); *Pers.*

---

[5] The yearbooks at issue here undoubtedly fall within the "subject matter of copyright." *See* 17 U.S.C. §§ 102-103 (copyright protection for "original works of authorship fixed in any tangible medium of expression," including "compilations"). The yearbook is "fixed" in a tangible medium of expression within the meaning of the Act because "its embodiment in a copy . . . is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration." 17 U.S.C. § 101. In any event, even if the yearbook were not entitled to copyright protection (it is), the scope of preemption is broader than the scope of copyright protection—"the shadow actually cast by the Act's preemption is notably broader than the wing of its protection." *United States ex rel. Berge v. Bd. of Trustees*, 104 F.3d 1453, 1463 (4th Cir. 1997).

*Keepsakes, Inc. v. Personalizationmall.com, Inc.*, No. 11 C 5177, 2012 WL 414803, at *8 (N.D. Ill. Feb. 8, 2012) (dismissing various state law claims, including ICFA claims, as preempted by the Copyright Act where they were "simply copyright claims in different clothing").

Here, as in *Maloney* and *Baltimore Orioles*, although plaintiff frames his claims in terms of Ancestry's "use" of his name and likenesses, in substance plaintiff challenges Ancestry's model of paid *access* to view his copyrighted yearbooks. Plaintiff does not identify any use of his name or image apart from the mere appearance in the yearbook page—he does not contend his name or image was used to make it appear he "endorse[d] the product in question" in any way. *See Toney*, 406 F.3d at 910; *Callahan*, 2021 WL 783524, at *5 ("Ancestry's use of the plaintiffs' profiles does not imply an endorsement of Ancestry's products").[6]

Had plaintiff wished to limit distribution of these yearbook pages, he could have "simply retain[ed] [or acquired] the copyright." *Fleet v. CBS, Inc.*, 50 Cal. App. 4th 1911, 1921 (1996) (misappropriation claims preempted by Copyright Act); *Baltimore Orioles*, 805 F.2d at 679 ("[T]he Players have attempted to obtain *ex post* what they did not negotiate *ex ante*. . . . The Players remain free to attain their objective by bargaining with the Clubs for a contractual declaration that the Players own a joint or an exclusive interest in the copyright of the telecasts."). That he failed to do so does not allow him to circumvent the federal Copyright Act by asserting state-law claims. Because plaintiff does not base his right of publicity, intrusion upon seclusion, unjust enrichment, or ICFA claims on any conduct outside of Ancestry's use of the copyrighted yearbook, each of his claims is preempted by Section 301 of the Copyright Act.

---

6  *See also Jules Jordan Video, Inc. v. 144942 Canada, Inc.*, 617 F.3d 1146, 1152-55 (9th Cir. 2010) (plaintiffs' claims based on cover pictures used to advertise DVDs were preempted; "The pictures on the covers of the DVDs are 'still shots' of the copyrighted video performance. Thus, Gasper's argument that his right of publicity was violated by defendants' reproduction of the covers is misguided.").

## V. PLAINTIFF'S "RIGHT OF PUBLICITY" CLAIM FAILS BECAUSE THE CHALLENGED CONDUCT IS EXEMPTED UNDER THE STATUTE

Even where there is "use [of] an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent," IRPA nonetheless exempts liability for certain uses to avoid conflict with the First Amendment. 765 Ill. Comp. Stat. 1075/30 & 35; *Collier v. Murphy*, No. 02 C. 2121, 2003 WL 1606637, at *3 (N.D. Ill. Mar. 26, 2003); HB 1422, Tr. of House Debate, 90th Ill. Gen. Assem. (April 24, 1997) at 226 (statement of Rep. Turner) (IRPA's exemptions "protect the First Amendment interest of individuals, such as artists and reporters").

First, IRPA exempts liability where an individual's identity is used to "portray [or] describe" the individual in a "book, article, . . . or other . . . visual . . . work." 765 Ill. Comp. Stat. 1075/35(b)(1). Here, plaintiff claims that Ancestry hosts an excerpt from his yearbook that features his identity—because his claim is premised on use of his identity as it appears in a book or other visual work (his yearbook), this exception applies.

Second, IRPA's exemption for "non-commercial purposes" applies to Ancestry's use of plaintiff's yearbook record. *See* 765 Ill. Comp. Stat. 1075/35(b)(2). As shown above and confirmed in *Callahan*, "Ancestry's use of the plaintiffs' profiles does not imply an endorsement of Ancestry's products." *Callahan*, 2021 WL 783524, at *5. Rather, users are simply made aware that the yearbook photograph is available through Ancestry's site. "The statute's commercial purpose requirement does not prohibit the mere sale of someone's photograph. Rather, the IRPA prohibits the use of an individual's image to promote or entice the purchase of some other product than the photograph itself." *Thompson v. Getty Images (US), Inc.*, No. 13 C 1063, 2013 WL 3321612, at *2 (N.D. Ill. July 1, 2013). In *Thompson*, users could search the

defendant's website and view "[l]ow quality, watermarked sample images matching a user's search terms," which the user could then choose to purchase. *Id.* at *1. The court observed that the legislative history showed the statute was intended to protect against such examples as "use of an individual's picture on the back of a CTA bus indicating that he endorsed a particular kind of hair tonic," "an ad by a food establishment stating that its cheeseburger was endorsed by the Speaker of the House," and other like conduct. *Id.* at *2. The court then concluded displaying "a preview of the exact thing [defendant] seeks to sell" is not "a 'commercial purpose' as the IRPA uses that term." *Id.* Here, as in *Thompson*, plaintiff alleges users who search for his name on Ancestry's site can view "a low-resolution version," which can then be viewed (simply viewed, not "sold") upon enrolling for Ancestry's services. As in *Thompson*, this is not a "commercial purpose" within contemplation of the IRPA. Rather, the use is akin to an online newspaper previewing an article about President Biden's inauguration that includes his image, but requires readers to go through a paywall to access it. This does not suggest President Biden "endorses" the newspaper or any other product it may advertise. Though the name and image might be contained among material that is commercially sponsored, there is no connection between the use and any commercial sponsorship. *See also Almeida v. Amazon*, 456 F.3d 1316, 1326 (11th Cir. 2006) (holding Amazon's display of a book cover depicting plaintiff was not a commercial use under Florida's misappropriation statute).

Moreover, it is well settled that simply excerpting publicly-available documents, as Ancestry has done with the public yearbook record at issue here, constitutes "non-commercial speech." *See Nieman v. Versuslaw, Inc.*, No. 12-3104, 2012 WL 3201931 at *4, 8 (C.D. Ill. Aug. 3, 2012), *aff'd*, 512 F. App'x 635 (7th Cir. 2013) (no IRPA liability for using person's identity in database identifying documents from plaintiff's litigation); *Vrdolyak v. Avvo, Inc.,* 206 F. Supp.

3d 1384, 1388-89 (N.D. Ill. 2016) (online directory constituted non-commercial speech fully protected by the First Amendment).

VI.    **PLAINTIFF CANNOT STATE A CLAIM FOR INTRUSION UPON SECLUSION**

To state a claim for intrusion upon seclusion under Illinois law, "plaintiff must show that: '(1) the defendant committed an unauthorized intrusion or prying into the plaintiff's seclusion; (2) the intrusion would be highly offensive or objectionable to a reasonable person; (3) the matter intruded on was private; and (4) the intrusion caused the plaintiff anguish and suffering.'" *Browning v. AT&T Corp.*, 682 F. Supp. 2d 832, 835 (N.D. Ill. 2009) (citation omitted). Plaintiff cannot satisfy these requirements.

First, plaintiff concedes that others with access to the yearbooks chose to provide those books to Ancestry. *See* ECF No. 29 at ¶ 54 (contending Ancestry obtains the yearbooks from third parties, including through "donations from yearbook owners"). Thus, plaintiff cannot show Ancestry's use of the yearbooks was "unauthorized" or that there was any "seclusion" to be intruded upon. *See, e.g., Mucklow v. John Marshall Law School*, 176 Ill. App. 3d 886, 531 N.E.2d 941, 946 (Ill. App. Ct. 1988) (plaintiff failed to show that access to school record by professor was unauthorized).

Second, the information at issue is not "highly offensive to a reasonable person." Almost every person who attended school in the United States (including plaintiff) has voluntarily had *exactly* this type of information published about them—in school yearbooks. The information at issue—plaintiff's participation on a high school swim team—is entirely benign. Even setting aside that plaintiff already voluntarily disclosed this information in his public yearbook, its dissemination would not otherwise offend any reasonable person. *See* Highly offensive to a reasonable person, 2 Entertainment Law 3d: Legal Concepts and Business Practices § 12:6

("Generally, accurate photographic depictions of an individual are not considered highly offensive to a reasonable person.").

Third, the yearbook information is not private; on the contrary, it is publicly-available information—plaintiff's name, physical appearance, and his participation on the swim team are not private matters.  As this Court explained in *Wrenn v. Exelon Generation, LLC*, No. 18 C 2524, 2019 WL 11660918, at *10 (N.D. Ill. Mar. 5, 2019), "[p]rivate facts for purposes of this tort include 'family problems, romantic interests, sex lives, health problems, future work plans,'" not things that are readily and publicly accessible such as "names, telephone numbers, addresses or social security numbers' or matters of public record."  For example, in *Troeckler v. Zeiser*, No. 14-cv-40-SMY-PMF, 2015 WL 1042187, at *3 (S.D. Ill. Mar. 5, 2015), the court determined information gathered from GPS tracking was not private because the movements captured could have occurred in the public view.

Likewise, here nothing in the yearbook can be characterized as "private"—both because the activity (swim team participation) was not private in the first instance, and because the fact of plaintiff's participation was subsequently distributed in a public yearbook.  As this Court previously explained, "plaintiff must also allege that he attempted to keep private facts private. 'Persons cannot reasonably maintain an expectation of privacy in that which they display openly.'"  *Acosta v. Scott Labor LLC*, 377 F. Supp. 2d 647, 650 (N.D. Ill. 2005).  Here, plaintiff made no effort to maintain the privacy of his yearbook information; on the contrary, he consented to its public distribution.  Indeed, Ancestry was able to obtain the yearbooks from a third party as a result of that public distribution.

Fourth, even if plaintiff could allege he suffered any "anguish and suffering" (he cannot), his complaint focuses on Ancestry's distribution of his information, not on any alleged intrusion

(which, as explained above, is non-existent).   However, any claimed "injury must flow from the intrusion, . . . not . . . publication."  *See Angelo v. Moriarty*, No. 15 C 8065, 2016 WL 640525, at *5  (N.D. Ill. Feb. 18, 2016) (intrusion claim failed where plaintiffs claimed the publication of surreptitious recordings was "highly offensive," but failed to claim the injury resulted from the recording itself);  *Lovgren v. Citizens First Nat'l Bank of Princeton*, 126 Ill. 2d 411, 417, 534 N.E.2d 987 (Ill. 1989) (plaintiff failed to plead intrusion upon seclusion because "the alleged offensive conduct and subsequent harm resulted from the defendant's act of publication, not from an act of prying.").

Accordingly, plaintiffs' third cause of action should be dismissed.

## VII.   PLAINTIFF CANNOT STATE A CLAIM FOR UNJUST ENRICHMENT

Where, as here, "an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim."  *See Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011).  As set forth above, plaintiff cannot plausibly allege Ancestry benefitted at his expense.  *See supra* at Part II.   Further, because there is no actionable right of privacy or publicity here, plaintiff cannot claim to be owed compensation.  *See supra* at Parts V and VI.  Accordingly, plaintiff's fourth cause of action should be dismissed.

## VIII.   PLAINTIFF CANNOT STATE A CLAIM UNDER THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE PRACTICES ACT.

The Court should dismiss plaintiff's claims under the ICFA, 815 Ill. Comp. Stat. 505/1 *et seq.*, because (1) plaintiff fails to plead the requisite elements, and (2) plaintiff is not a consumer and does not satisfy the consumer nexus test.

**A.     Plaintiff fails to plead with particularity many of the elements under the ICFA.**

To plead a cause of action under the ICFA, plaintiff must allege "with particularity": "(1) an unfair or deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) that the deception occurred in the course of conduct involving trade or commerce; (4) actual damage to the plaintiff; and (5) that such damages were proximately caused by the defendant's deception." *Thrasher-Lyon v. Ill. Farmers Ins. Co.*, 861 F. Supp. 2d 898, 908-909 (N.D. Ill. 2012) (*citing Coy Chiropractic Health Ctr., Inc. v. Travelers Cas. and Sur. Co.*, 409 Ill. App. 3d 1114, 957 N.E.2d 1174 (Ill. App. Ct. 2011) *as modified on denial of reh'g* (May 9, 2011)).  Where, as here, the complaint alleges consumer fraud, the allegations "must be pled with the same particularity and specificity as that required under common law fraud," including the who, what, when, where, and how of the fraud or misrepresentation. *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill. 2d 482, 501, 675 N.E.2d 584 (Ill. 1996).

Here, plaintiff has failed to identify *any* deceptive practice, statement, or omission by Ancestry, let alone done so with the requisite particularity.  Plaintiff's ICFA claim is entirely dependent on his assertion that Ancestry violated IRPA (765 Ill. Comp. Stat. 1075/1 *et seq.*). ECF No. 29 at ¶¶ 86-87.  However, under the ICFA, only violations of certain, specifically enumerated statutes give rise to a separate ICFA claim—the Right of Publicity Act is not one of them.  *See* 815 Ill. Comp. Stat. 505/2Z.

Beyond his claim that Ancestry violated IRPA, he makes only the conclusory assertion that "Ancestry has and is engaged in deceptive or unfair practices as those terms are defined in the [ICFA]."  ECF No. 29 at ¶ 85.  This is insufficient under any pleading standard—plaintiff has not identified any deceptive conduct, claimed that he relied on such deception, or pointed to any damages flowing from such deception.  *See, e.g., Cmty. Bank of Trenton v. Schnuck Mkts. Inc.*,

887 F.3d 803, 822 (7th Cir. 2018) ("ICFA plaintiffs must identify some stand-alone …
fraudulent act or practice," material omission, or statement that was false or deceptive) (internal
quotations omitted); *Connick*, 174 Ill. 2d at 502 (plaintiffs' complaint failed where it did "not
allege with specificity how the manual's guidelines were false or deceptive").

**B.    Because plaintiff is not a consumer and does not satisfy the consumer nexus test, he cannot bring a claim under the ICFA.**

Plaintiff also cannot bring a claim under ICFA because he is not a consumer and does not
satisfy the consumer nexus test.  *See Norton v. City of Chicago*, 267 Ill. App. 3d 507, 642 N.E.2d
839 (Ill. App. Ct. 1st Dist. 1994) (plaintiffs lacked standing to bring their ICFA action because
they were not consumers); *Thrasher-Lyon*, 861 F. Supp. 2d at 908-909 (N.D. Ill. 2012) (no
standing under the ICFA where plaintiff did not satisfy the consumer nexus test).

Under the ICFA, a consumer is "any person who purchases or contracts for the purchase
of merchandise not for resale in the ordinary course of his trade or business but for his use or that
of a member of his household."  815 Ill. Comp. Stat. 505/1(e).  Here, plaintiff has not alleged
that he purchased or contracted to purchase anything from Ancestry.  On the contrary, plaintiff
admitted he is not a consumer as defined by the ICFA.  ECF No. 29 at ¶ 31 ("Mr. Bonilla is not
a subscriber of any Ancestry.com products or services and is not subject to any Terms of Service
or any other agreement with Ancestry.com.").

Plaintiff also fails the consumer nexus test.  To satisfy the consumer nexus test, a plaintiff
must plead and otherwise prove "(1) that [its] actions were akin to a consumer's actions to
establish a link between [it] and consumers; (2) how defendant's representations . . . concerned
consumers other than [plaintiff]; (3) how defendant's particular [action] involved consumer
protection concerns; and (4) how the requested relief would serve the interests of consumers."

*Thrasher-Lyon*, 861 F. Supp. 2d at 912 (*citing Global Total Office L.P. v. Global Allies, LLC*, No. 10 C 1896, 2011 WL 3205487, at *2 (N.D. Ill. July 28, 2011). For example, in *Thrasher-Lyon*, plaintiff failed "to set forth any factual allegations plausibly supporting any consumer concerns to satisfy the consumer nexus test. For instance, Plaintiff fails to allege how Defendants' actions or representations concerned consumers other than Plaintiff or how their actions involved consumer protection concerns." *Id.* at 912; *Cf. Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.*, 190 Ill. App. 3d 524, 534, 546 N.E.2d 33 (Ill. Ct. App. 1989) (holding the consumer nexus test was satisfied where "defendant published false information about its prices for services"); *Bank One Milwaukee v. Sanchez*, 336 Ill. App. 3d 319, 324, 783 N.E.2d 217 (Ill. Ct. App. 2003) (holding plaintiff satisfied the consumer nexus test based on her allegations that "a merchant bound her to a commercial transaction through a fraudulent act").

Here, plaintiff cannot explain how the conduct complained of harms consumers or implicates consumer protection concerns. Instead, plaintiff focuses on how Ancestry's conduct allegedly impacts non-consumers. Indeed, he purports to represent "[t]he vast majority of people [who] . . . have no business relationship with Ancestry, are not Ancestry subscribers, and are not subject to a Terms of Service or any other agreement with Ancestry." ECF No. 29 at ¶ 66. Thus, plaintiff admits he lacks a connection to consumers of Ancestry's products or services and that the (non-fraudulent) conduct he complains of does not impact Ancestry consumers.

Accordingly, plaintiff's second cause of action should be dismissed.

## CONCLUSION

For the foregoing reasons, Ancestry's motion to dismiss should be granted. To the extent the Court determines it has personal jurisdiction over Ancestry, plaintiff's complaint should be dismissed with prejudice. *See, e.g., Bogie*, 705 F.3d at 608.

Dated:   April 9, 2021

Respectfully submitted,

By: /s/ *Lazar Raynal*
    Lazar Raynal

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Lazar Raynal
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
(312) 705-7400
lazarraynal@quinnemanuel.com

Shon Morgan (*pro hac vice*)
John W. Baumann (*pro hac vice*)
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
shonmorgan@quinnemanuel.com
jackbaumann@quinnemanuel.com

Cristina Henriquez (*pro hac vice*)
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
(650) 801-5000
cristinahenriquez@quinnemanuel.com

*Attorneys for Defendants Ancestry.com*
*Operations Inc., Ancestry.com Inc., and*
*Ancestry.com LLC*

**CERTIFICATE OF SERVICE**

I, the undersigned, certify that on April 9, 2021, I caused a copy of Ancestry's

Memorandum In Support of Rule 12(b)(2) and 12(b)(6) Motion to Dismiss Plaintiff's First

Amended Complaint to be filed electronically with the Clerk of the Court using the CM/ECF

system.  Notice of this filing will be sent to counsel of record via the Court's CM/ECF automated

filing system.


By: _/s/ Lazar Raynal_
      Lazar Raynal