## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

SERGIO BONILLA, on behalf of himself and
all others similarly situated,

       Plaintiff,

   v.

ANCESTRY.COM OPERATIONS INC., a
Virginia Corporation; ANCESTRY.COM INC.,
a Delaware Corporation; ANCESTRY.COM
LLC, a Delaware Limited Liability Company;
and DOES 1 through 50, inclusive,

       Defendants.

CASE NO. 1:20-cv-07390

Hon. Virginia M. Kendall

## <u>REPLY IN SUPPORT OF ANCESTRY'S</u>

## <u>RULE  12(B)(2) AND  12(B)(6)  MOTION TO  DISMISS</u>

## TABLE OF CONTENTS

**Page**

I.    IRRELEVANT FORUM CONTACTS CANNOT JUSTIFY PERSONAL JURISDICTION OVER ANCESTRY ........................................................... 1

II.   PLAINTIFF FAILS TO IDENTIFY ANY ACTUAL INJURY ...................................... 4

III.  PLAINTIFF CANNOT AVOID SECTION 230 OF THE CDA ..................................... 8

IV.  PLAINTIFF CANNOT SHOW HIS CLAIMS FALL OUTSIDE COPYRIGHT PREEMPTION ................................................................................................... 12

V.   PLAINTIFF'S INTRUSION UPON SECLUSION CLAIM FAILS ............................. 13

VI.  PLAINTIFF'S IRPA AND ICFA CLAIMS FAIL ...................................................... 14

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Acosta v. Scott Labor LLC*,
  377 F. Supp. 2d 647 (N.D. Ill. 2005)............................................................13

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
  751 F.3d 796 (7th Cir. 2014)....................................................................1

*Anthony v. Yahoo Inc.*,
  421 F. Supp. 2d 1257 (N.D. Cal. 2006) ......................................................10

*Atl. Recording Corp. v. Project Playlist, Inc.*,
  603 F. Supp. 2d 690 (S.D.N.Y. 2009) ........................................................10

*Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*,
  805 F.2d 663 (7th Cir. 1986)..................................................................12

*Batzel v. Smith*,
  333 F.3d 1018 (9th Cir. 2003)..................................................................9

*Callahan v. Ancestry.com*,
  2021 WL 783524 (N.D. Cal. Mar. 1, 2021)...................................4, 5, 6, 7, 8, 9, 10, 15

*Cassetica Software, Inc. v. Computer Scis. Corp.*,
  2009 WL 1703015 (N.D. Ill. June 18, 2009) ..................................................13

*Collier v. Murphy*,
  2003 WL 1606637 (N.D. Ill. Mar. 26, 2003)..................................................14

*Curry v. Revolution Laboratories, LLC*,
  949 F.3d 385 (7th Cir. 2020)..................................................................1, 2

*Dancel v. Groupon*,
  2018 WL 11195080 (N.D. Ill. Oct. 10, 2018)..................................................6

*Dent v. Renaissance Mktg. Corp.*,
  2015 WL 3484464 (N.D. Ill. June 1, 2015) ................................................7, 12, 13

*Dobrowolski v. Intelius, Inc.*,
  2017 WL 3720170 (N.D. Ill. Aug. 29, 2017)..............................................5, 7, 13

*Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*,
  946 F.3d 1040 (9th Cir. 2019)..................................................................10

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
  521 F.3d 1157 (9th Cir. 2008)..................................................................10

*Fraley v. Facebook, Inc.*,
  830 F. Supp. 2d 785 (N.D. Cal. 2011)....................................................5, 6, 10

*Fus v. CafePress, Inc.*,
  2020 WL 7027653 (N.D. Ill. Nov. 30, 2020)....................................................7

*Gabiola v. Sarid*,
  2017 WL 4264000 (N.D. Ill. Sept. 26, 2017) ..................................................7

*Greene v. Mizuho Bank, Ltd.*,
  169 F. Supp. 3d 855 (N.D. Ill. 2016)..........................................................1

*Gubala v. Time Warner Cable, Inc.*,
   846 F.3d 909 (7th Cir. 2017).....................................................................5

*Hepp v. Facebook, Inc.*,
   465 F. Supp. 3d 491 (E.D. Pa. 2020) .......................................................11

*Illinois v. Hemi Grp. LLC*,
   622 F.3d 754 (7th Cir. 2010)......................................................................3

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
   402 F. Supp. 3d 767 (N.D. Cal. 2019)......................................................14

*Jules Jordan Video, Inc. v. 144942 Canada Inc.*,
   617 F.3d 1146 (9th Cir. 2010)...................................................................13

*KNB Enterprises v. Matthews*,
   78 Cal. App. 4th 362 (2000) .....................................................................13

*Lukis v. Whitepages Inc.*,
   454 F. Supp. 3d 746, 758 (N.D. Ill. 2020),
   *reconsideration denied*, 2020 WL 6287369 (N.D. Ill. Oct. 27, 2020) ........ 2, 3, 5, 7, 8, 15

*Maloney v. T3Media, Inc.*,
   853 F.3d 1004 (9th Cir. 2017)...................................................................12

*Nieman v. Versuslaw, Inc.*,
   , 2012 WL 3201931 (C.D. Ill. Aug. 3, 2012) ...........................................11

*Patel v. Zillow, Inc.*,
   2017 WL 3620812 (N.D. Ill. Aug. 23, 2017),
   *aff'd*, 915 F.3d 446 (7th Cir. 2019) ....................................................13, 14

*Perfect 10, Inc. v. CCBill LLC*,
   488 F.3d 1102 (9th Cir. 2007)...................................................................10

*Perfect 10, Inc. v. CCBill, LLC*,
   340 F. Supp. 2d 1077 (C.D. Cal. 2004) .....................................................9

*Sikhs for Justice, Inc. v. Facebook, Inc.*,
   144 F. Supp. 3d 1088 (N.D. Cal. 2015)
   *aff'd sub nom. Sikhs for Justice, Inc. v. Facebook, Inc.*,
   697 F. App'x 526 (9th Cir. 2017)...............................................................8

*Silha v. ACT, Inc.*,
   2014 WL 11370440 (N.D. Ill. Sept. 2, 2014),
   *aff'd*, 807 F.3d 169 (7th Cir. 2015) ...................................................4, 5, 6

*Spiegel v. McClintic*,
   2017 WL 4283727 (N.D. Ill. 2017)............................................................13

*Stayart v. Yahoo! Inc.*,
   651 F. Supp. 2d 873 (E.D. Wis. 2009) ......................................................11

*Telemedicine Sols. LLC v. WoundRight Techs., LLC*,
   27 F. Supp. 3d 883 (N.D. Ill. 2014)...........................................................3

*Thompson v. Getty Images (US), Inc.*,
   2013 WL 3321612 (N.D. Ill. July 1, 2013).................................................13

*Toney v. L'Oreal USA, Inc.*,
   406 F.3d 905 (7th Cir. 2005)................................................................6, 12

*Trannel v. Prairie Ridge Media, Inc.*,
 2013 IL App (2d) 120725, 370 Ill. Dec. 157 (Ill. App. Ct. 2013)....................................5

*uBID, Inc. v. GoDaddy Group, Inc.*,
 623 F.3d 421 (7th Cir. 2010)........................................................................................2

*United Airlines, Inc. v. Zaman*,
 152 F. Supp. 3d 1041 (N.D. Ill. 2015) ..........................................................................1

*Uzuegbunam v. Preczewski*,
 2021 WL 850106 (U.S. Mar. 8, 2021)..........................................................................7

*Villalovos v. Sundance Associates, Inc.*,
 2003 WL 115243 (N.D. Ill. Jan. 13, 2003) ...................................................................5

*Walden v. Fiore*,
 571 U.S. 277 (2014) ................................................................................................1, 3

*Woodard v. Victory Records, Inc.*,
 2016 WL 1270423 (N.D. Ill. Mar. 31, 2016)..............................................................5, 7

*Yeager v. Innovus Pharmaceuticals, Inc.*,
 2019 WL 447743 (N.D. Ill. Feb. 5, 2019) ....................................................................2

## Statutory Authorities

47 U.S.C. § 230................................................................................................................9

## Additional Authorities

*http://www.omahachsarchives.org/archive/obooks/1995.pdf* .....................................7

iv

I.    **IRRELEVANT FORUM CONTACTS CANNOT JUSTIFY PERSONAL JURISDICTION OVER ANCESTRY**

"Specific" jurisdiction is just that—it turns only on forum contacts that relate to *plaintiff's* claims. *United Airlines, Inc. v. Zaman*, 152 F. Supp. 3d 1041, 1049 (N.D. Ill. 2015) (it is a "bedrock principle" that "only suit-related contacts and not, for example, defendant's contacts with the plaintiff or third-parties, can create the required connection with the forum state."); *Greene v. Mizuho Bank, Ltd.*, 169 F. Supp. 3d 855, 866 (N.D. Ill. 2016) ("Specific personal jurisdiction can arise only from the claims of the named plaintiffs, not those of absent class members"). Plaintiff ignores this "bedrock principle" and relies instead on purported contacts with Illinois that have no bearing on *his* claims. *See* Opp. at 3-7 (relying on unrelated alleged contacts, which are addressed in Ancestry's motion (ECF No. 31 at 7-9)).

Plaintiff does not contend Ancestry went to Illinois to obtain *his* Nebraska yearbook—he only hypothesizes Ancestry might have obtained *others'* yearbooks by sending staff to Illinois. Opp. at 4. Likewise, plaintiff does not claim *his* yearbook excerpt was marketed toward or viewed by *any* customer, let alone a customer in Illinois. *Id.* at 4-5 (plaintiff argues Ancestry "entic[es] the user with the promise of tens of millions of records from the state of Illinois," and the "search function on its website encourages the user to search for yearbooks by state; Illinois is one of the available options," but he fails to claim his *own* record is among those because it is not—it is from Nebraska). At bottom, the only fact that connects *plaintiff's* claims to Illinois is his current residence. That is not sufficient. *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014) ("there can be no doubt that the plaintiff cannot be the only link between the defendant and the forum.") (citing *Walden v. Fiore*, 571 U.S. 277 (2014)).

For this reason, each case from which plaintiff selectively quotes is readily distinguishable. Plaintiff relies on *Curry v. Revolution Laboratories, LLC*, 949 F.3d 385, 399 (7th Cir. 2020) as

1

justifying jurisdiction if the defendant can "reasonably foresee" harm will be felt in the forum. Opp. at 4-5. But that was not the basis for the holding in *Curry*—there, the defendant "admittedly sold" to hundreds of Illinois residents the *very product* that plaintiff claimed was deceptively marketed to be confused with plaintiff's own. 949 F.3d at 399. In other words, the defendant had **suit-related contacts** with Illinois. Plaintiff cannot allege the same here.[1] Likewise, in *Yeager v. Innovus Pharmaceuticals, Inc.*, 2019 WL 447743, at *7 (N.D. Ill. Feb. 5, 2019), the defendant had used *plaintiff's* likeness to advertise to Illinois residents. *Id.* ("Plaintiffs allege Innovus deliberately distributed at least one publication in Illinois in February 2017. . . . That publication is one of the publications at issue in Plaintiffs' complaint."). Again, plaintiff cannot allege *his* yearbook excerpts were ever directed at Illinois residents.

Plaintiff's reliance on *uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 430 (7th Cir. 2010) (Opp. at 5) is similarly misplaced. There, the plaintiff alleged violations of the Anti-Cybersquatting Consumer Protection Act and there were at least two sales in Illinois where Illinois customers allegedly cyber-squatted on domain names similar to plaintiff's. 623 F.3d 421, 423, 427-429 (7th Cir. 2010). Similarly, the court in *Lukis v. Whitepages Inc.* found "contacts that demonstrate a real relationship with the state with respect to the transaction at issue" where *plaintiff's information* was obtained from "databases operated by state and local governments in Illinois." 454 F. Supp. 3d 746, 753 756, 758 (N.D. Ill. 2020), *reconsideration denied*, 2020 WL 6287369 (N.D. Ill. Oct. 27, 2020) ("These previews reflect that Whitepages obtained information **about Lukis** from public records" databases in Illinois) (emphasis added) (citation omitted). Here,

---

[1] In *Curry*, the Seventh Circuit noted that "[s]ignificant caution is certainly appropriate when assessing a defendant's online contacts with a forum to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state," and, as a result, the court made clear that the sales were crucial to its holding that personal jurisdiction existed. *Id.* at 400 (quotation marks and citations omitted).

plaintiff cannot claim his Nebraska yearbook record was obtained through Ancestry's contacts with Illinois.[2]

In short, plaintiff bases personal jurisdiction on his current residence—not on any suit-related contacts Ancestry had with Illinois. The Supreme Court has made clear specific jurisdiction cannot attach in such circumstances. *Walden*, 571 U.S. at 285 ("plaintiff cannot be the only link between the defendant and the forum").[3]

---

[2]  *Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 759 (7th Cir. 2010) is also inapt for these same reasons. *Id.* (suit arose out of defendant's selling and shipping cigarettes to Illinois residents).

[3]  Plaintiff attempts to insert facts outside the complaint to allege Ancestry "knew" plaintiff resides in Illinois. *See* Opp. at 6 (pointing to a separate record, not at issue or referenced in the complaint, reflecting the address for "Sergio Bonilla" as it appeared in a phone book from 20 years ago). Setting aside the improper resort to facts outside the pleadings, this is irrelevant. First, this simply highlights that plaintiff's residence is the only connection to Illinois—whether Ancestry knew plaintiff lived in Illinois says nothing of whether Ancestry had contacts with Illinois that relate to the conduct giving rise to the complaint because plaintiff has not (and cannot) allege Ancestry obtained his Nebraska yearbook from Illinois or that it was ever marketed to or viewed by any Illinois resident. Second (and separately), plaintiff's contention Ancestry "knew" the Nebraska yearbook featured a current Illinois resident is not a reasonable inference to be drawn from the 20-year-old telephone book record. The mere existence of a single record among "billions" (ECF No. 29 at ¶ 2) that shows someone with the same name as plaintiff resided in Illinois 20 years ago says nothing of Ancestry's knowledge of the current residence of the "Sergio Bonilla" reflected in the Nebraska yearbook record—plaintiff does not even attempt to draw any connection between the phonebook record and the yearbook record.

Plaintiff also cites Ancestry's motion to dismiss in the companion *Sessa* case to (seemingly) contend Ancestry has taken inconsistent positions. In fact, Ancestry raised the same argument here. *Compare* ECF No. 33-2 at 7 ("That plaintiffs happened to attend high school in Nevada more than 40 years ago gives no indication of their residence at the time of the purported misappropriation"), *with* ECF No. 31 at 10 ("As plaintiff's circumstance illustrates, that a person attended school in a certain state decades ago does not indicate their residence at the time of the purported misappropriation."). The point stands, and plaintiff's circumstance demonstrates why—many people do not stay in the same state after high school; knowledge that a yearbook came from a certain state is not the same as knowledge that the subject *currently lives in* that state, such that the effects would be felt there. *See Telemedicine Sols. LLC v. WoundRight Techs., LLC*, 27 F. Supp. 3d 883, 893 (N.D. Ill. 2014) (in addition to suit-related contacts absent here, jurisdiction can attach only where defendant had "knowledge that the effects would be felt . . . in the forum state.").

## II.     PLAINTIFF FAILS TO IDENTIFY ANY ACTUAL INJURY

Plaintiff's purported injuries (ECF No. 33 at 7-13) have already been considered and rejected as insufficient in the companion *Callahan* action in the Northern District of California. *Callahan v. Ancestry.com*, No. 20-cv-08437-LB, 2021 WL 783524, at *4-5 (N.D. Cal. Mar. 1, 2021). The same result should follow here.

***First,*** plaintiff's mere claim that Ancestry was unjustly enriched is not enough. *See* Opp. at 7-9. As *Callahan* explained, "Ancestry's using the public profiles to solicit paying subscribers—standing alone—does not establish injury." *Id. See also Silha v. ACT, Inc.*, 2014 WL 11370440, at *3 (N.D. Ill. Sept. 2, 2014), *aff'd*, 807 F.3d 169 (7th Cir. 2015) ("allegations that Defendants profited from selling Plaintiffs' PII does not amount to an injury in fact for standing purposes").[4]

Although plaintiff contends *Callahan* misread the law by interpreting the statute to require a plaintiff to "invest in or develop the commercial value of their identity" to state a claim (Opp. at 9), this misrepresents the *Callahan* decision and conflates what is required to state a cause of action with demonstrating Article III standing. The court in *Callahan* did not rule that a "commercial interest" is necessary to state a cause of action under the statute. Rather, the court explained a "commercial interest" is *one* of the ways a plaintiff could demonstrate a tangible property interest in the information the defendant used to profit. *Callahan*, 2021 WL 783524 at *5. That property

---

[4]  Contrary to plaintiff's contention (Opp. at 9), in *Silha* both the district court and the Seventh Circuit based their determinations on the well-established proposition that "a plaintiff's claim of injury in fact cannot be based solely on a defendant's gain; it must be based on a plaintiff's loss." 807 F.3d at 174-75. In that circumstance, plaintiffs could not allege a "loss" resulting from the distribution of their private information because they had consented to have the information shared. But the court did not hold (as plaintiff contends) that consent to distribution is the *only* reason a plaintiff may not be able to demonstrate a loss (in other words, consent can be sufficient, but it is not necessary).

interest is necessary to show the plaintiff was harmed, as opposed to alleging only that the defendant gained. *See id.*; *Silha*, 807 F.3d at 174-75 (a "claim of injury in fact cannot be based solely on a defendant's gain; it must be based on a plaintiff's loss").[5]

The court in *Callahan* recognized there are *other* ways a plaintiff can demonstrate a personal interest in the information from which the defendant profited—for example, by alleging the defendant used the plaintiff's image to endorse the product. *Callahan*, 2021 WL 783524 at *5. *Cf. Fraley, v. Facebook, Inc.*, 830 F. Supp. 2d 785, 799 (N.D. Cal. 2011) ("Plaintiffs assert that ***they have a tangible property interest in their personal endorsement of Facebook advertisers' products to their Facebook Friends***, and that Facebook has been unlawfully profiting from the nonconsensual exploitation of Plaintiffs' statutory right of publicity") (emphasis added). However, unlike *Fraley*, plaintiff here cannot avail himself of that theory because "Ancestry's use of the plaintiffs' profiles does not imply an endorsement of Ancestry's products or an equivalent interest." *Callahan*, 2021 WL 783524 at *5 (distinguishing *Fraley*).

Plaintiff relies solely on the profit to Ancestry and not any loss of his own. Opp. at 9 ("Plaintiff's and class members' identities have demonstrable economic value ***to Ancestry***.")

---

[5]  The requirements to state a claim under a statute differ from establishing injury-in-fact for purposes of Article III standing. *See, e.g., Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909, 911 (7th Cir. 2017) ("Gubala's problem is that while he might well be able to prove a violation of section 551, he has not alleged any plausible (even if attenuated) risk of harm to himself from such a violation—any risk substantial enough to be deemed 'concrete.'"). For this reason, plaintiff's exclusive reliance on cases that describe what is required to state a claim under IRPA, without addressing the "actual injury" requirement of Article III, is entirely misplaced. *See Villalovos v. Sundance Associates, Inc.*, 2003 WL 115243, at *5 (N.D. Ill. Jan. 13, 2003) (addressing only IRPA's statutory requirements, not Article III standing); *Dobrowolski v. Intelius, Inc.*, 2017 WL 3720170, at *8 (N.D. Ill. Aug. 29, 2017) (same); *Woodard v. Victory Records, Inc.*, 2016 WL 1270423, at *10 (N.D. Ill. Mar. 31, 2016) (same); *Lukis*, 454 F. Supp. 3d at 759 (same); *Trannel v. Prairie Ridge Media, Inc.*, 2013 IL App (2d) 120725, 370 Ill. Dec. 157 (Ill. App. Ct. 2013) (same).

(emphasis added).  This theory of "harm" has been squarely rejected by the Seventh Circuit.  *Silha*, 807 F.3d at 174-75.

**Second,** plaintiff contends he suffered injury as a result of "the invasion of two legally protected rights": (1) the "right to control and to choose whether and how to use [his] identity for commercial purposes"; and (2) "the right to freedom from intrusion upon seclusion."  Opp. at 10. As to the first, plaintiff asserts a violation of IRPA, in and of itself, suffices to establish standing under Article III.  Plaintiff cites no support for this proposition.  He references *Dancel v. Groupon*, 2018 WL 11195080 (N.D. Ill. Oct. 10, 2018), but that was premised on an endorsement theory not present here—the plaintiffs alleged Groupon used photographs they had posted to Instagram "taken at the location of" the business featured in defendant's "deal offers" to make it appear plaintiffs were "endorsing" that business.  *Dancel v. Groupon*, Case No. 1:18-cv-02027 (N.D. Ill.), ECF No. 2-1 at ¶¶ 2, 15.[6]  In determining these endorsement allegations satisfied Article III, the court found plaintiffs were deprived of "the exact right the IRPA was passed to protect," and cited the Seventh Circuit's holding in *Toney v. L'Oreal USA, Inc.* that "[t]he basis of a right of publicity claim concerns the message—whether the plaintiff endorses, or appears to endorse the product in question."  *Dancel*, 2018 WL 11195080 at *1-2 (quoting *Toney*, 406 F.3d 905, 910 (7th Cir. 2005)).  In other words, the "right" allegedly violated in *Dancel* that gave rise to Article III injury falls in line with the "injury" present in *Fraley*, and which the *Callahan* court correctly determined is not present here—a right to choose whether to *endorse* a product.  *Callahan*, 2021 WL 783524 at *5.  Telling plaintiff's friends, "Sergio Bonilla loves Bob's Book Store" would be quite different from his friend searching Bob's Book Store's inventory and finding a book in which Mr. Bonilla

---

[6]  The order in *Dancel* on which plaintiffs rely is understandably vague on this point—it arose in the unusual context of *plaintiffs* claiming they had not alleged a concrete injury to avoid removal to federal court.  2018 WL 11195080 at *1.

agreed to appear—while the former personal endorsement might have some tangible value to plaintiff, merely confirming the availability of information he already chose to share does not.

Plaintiff next asserts an invasion of privacy is sufficient to establish Article III standing, but this argument fails because "information in the Yearbook database is not private: it is public yearbook information distributed to classmates (and ultimately to Ancestry)." *Callahan*, 2021 WL 783524 at *5. Plaintiff does not cite a single case in which disclosure of public information— like the yearbook excerpts at issue here—was deemed a "privacy" violation sufficient for Article III standing. *See* Opp. at 10-13. Instead, plaintiff once again relies on cases that recite the requirements to state a cause of action under IRPA but do not address Article III standing.[7] As *Callahan* correctly determined, distribution of already-public information cannot plausibly cause injury. *See also Fus v. CafePress, Inc.*, 2020 WL 7027653, *3 (N.D. Ill. Nov. 30, 2020) (no concrete injury where "most of Fus's information possessed by CafePress at the time of the hack was publicly available"). Indeed, separate from its appearance on Ancestry's website, plaintiff's own high school archives full color copies of all its yearbooks—including the yearbook at issue here—online for anyone to access.[8] Plaintiff's claim that Ancestry's reposting of this information somehow injured him by "invading his privacy" is implausible.[9]

---

[7] *Lukis*, 454 F. Supp. 3d at 761 (the court could not have "rejected the argument Ancestry makes here," as plaintiff contends, because it did not address Article III standing, only the statutory requirements under IRPA, which is a separate inquiry); *Gabiola v. Sarid*, 2017 WL 4264000 (N.D. Ill. Sept. 26, 2017) (same); *Dent v. Renaissance Mktg. Corp.*, 2015 WL 3484464, at *1-2 (N.D. Ill. June 1, 2015) (same); *Dobrowolski*, 2017 WL 3720170, at *8 (same); *Woodard*, 2016 WL 1270423, at *9 (same).

[8] The yearbook record at issue here can be found on page 207 of the following URL: http://www.omahachsarchives.org/archive/obooks/1995.pdf.

[9] Plaintiff also cites the Supreme Court's recent decision in *Uzuegbunam v. Preczewski*, 2021 WL 850106, at *2 (U.S. Mar. 8, 2021), but whether plaintiff suffered a "concrete injury" was not at issue—instead the Court held the case was not mooted where the plaintiff maintained a claim

### III.    PLAINTIFF CANNOT AVOID SECTION 230 OF THE CDA

Based on identical facts, the *Callahan* court found Ancestry "immune from liability under the Communications Decency Act" and dismissed plaintiff's complaint. *Callahan*, 2021 WL 783524, at *5. The same reasoning applies here, and plaintiff's attempts to avoid section 230 fail.

First, plaintiff misreads section 230 to claim it applies only where a defendant obtained the information at issue directly from the author, not a third party. Opp. at 13. That is not the law. As one court explained, the statute's reference to "'another information content provider' distinguishes the circumstance in which the interactive computer service itself meets the definition of 'information content provider' with respect to the information in question. . . . Put another way, 'third-party content' is used to refer to content created entirely by individuals or entities other than the interactive computer service provider." *Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1094 (N.D. Cal. 2015), *aff'd sub nom. Sikhs for Justice, Inc. v. Facebook, Inc.*, 697 F. App'x 526 (9th Cir. 2017). The court in *Callahan* rejected plaintiff's exact argument, concluding "no case supports the conclusion that § 230(a)(1) immunity applies only if the website operator obtained the third-party content from the original author." 2021 WL 783524 at *6. Contrary to plaintiff's suggestion, the court in *Lukis* did not reject CDA immunity based on a non-existent requirement of direct interaction between the publisher and the original author. 454 F. Supp. 3d 746, 763 (N.D. Ill. 2020). Rather, the court found the records at issue were not third-party content—they were the defendant's own creation. *Id.* Compare *Callahan*, 2021 WL 783524 at *5 (Ancestry "did not create the underlying yearbook records and instead obtained them from

_____

for nominal damages to redress a past injury. *Id.* at *3 ("There is no dispute that Uzuegbunam has established the first two elements" of standing).

third parties"). That content emanates from a third party suffices to trigger protection of section 230; no requirement exists of direct interaction between host and "author." *See* 47 U.S.C. § 230.

Similarly, plaintiff contends section 230 "applies only if the website has evidence the creator intended her content to be posted online." Opp. at 13. As plaintiff would have it, the "authors who created and edited the yearbooks" would have had to provide the content to Ancestry for the express purpose of posting it online. *Id.* In support, plaintiff cites *Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003). *Id.* But *Batzel* "withdrew protection only for those internet service providers who would publish on the Internet *private* communications the provider knew or had reason to know were never intended to be published at all." *Perfect 10, Inc. v. CCBill, LLC*, 340 F. Supp. 2d 1077, 1110–11 (C.D. Cal. 2004). Unlike the private email in *Batzel*, the yearbook records here were neither "private" nor "unpublished."[10] *Batzel's* focus was on whether the information was private; it did not establish a further requirement that the author intend it to be published online.

Next—in an about-face from his core allegations—plaintiff contends his claims "are not directed at yearbooks" and are instead aimed at a "pop-up message saying 'There's more to see,'" and "a 'Sign Up Now' button." Opp. at 14. But plaintiff's claims *are* premised on the alleged misappropriation of his likeness through reposting yearbook information, not the content-neutral information (entirely unrelated to plaintiff) that happens to appear on the same webpage. In other words, plaintiff cannot contend the form or content of those links alone support any of his claims. The court in *Callahan* thus unsurprisingly rejected a similar argument by that plaintiff: "Adding an interactive button and providing access on a different platform do not create content. They just

---

[10] Separately, *Batzel* recognized "the focus should be not on the information provider's intentions or knowledge when transmitting content but, instead, on the service provider's or user's reasonable perception," otherwise, "posting of information on the Internet and other interactive computer services would be chilled, as the service provider or user could not tell whether posting was contemplated." 333 F.3d at 1034.

add functionality." 2021 WL 783524, at *6. Were it the case that a website's interactive buttons could render them responsible for third-party content, the CDA would be gutted. *Cf. Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1167 (9th Cir. 2008) ("[T]he broadest sense of the term 'develop' could include the functions of an ordinary search engine—indeed, just about any function performed by a website."). *See also Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 701 (S.D.N.Y. 2009) (defendant not an "information content provider" where it provided "links for users to download that third-party content"). For this reason, *Anthony v. Yahoo Inc.*, 421 F. Supp. 2d 1257, 1263 (N.D. Cal. 2006) (Opp. at 14-15) is inapposite. There, the plaintiff's claim was premised on Yahoo's own *misrepresentation* concerning third-party content, not mere use of that content. *Id.* Because Yahoo was responsible for the *misrepresentation*, the plaintiff was not seeking to hold Yahoo liable as the "publisher or speaker" of the third-party profile. *Id.* Here, plaintiff's claims are premised on the mere reposting of yearbook information, not a separate representation about that content. *Cf. Callahan*, 2021 WL 783524, at *6 (distinguishing *Fraley*, which "involved the transformation of the Facebook user's content (liking a product) into an advertisement that—without the user's consent—suggested the user's endorsement of the product . . . Ancestry did not transform data and instead offered data in a form—a platform with different functionalities — that did not alter the content.").

Finally, in another departure from plaintiff's assertion this is a privacy case, he contends the CDA does not bar his claims because he is actually asserting an "intellectual property" claim. Opp. at 15-16. Only one circuit court has addressed whether a state law "right of publicity" claim is subject to the CDA's exception for "intellectual property" claims, and it rejected this contention. *See Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118-19 (9th Cir. 2007) (holding the CDA preempted a state right of publicity claim); *Enigma Software Grp. USA, LLC v. Malwarebytes,*

*Inc.*, 946 F.3d 1040, 1053 (9th Cir. 2019) ("because Congress did not define the term 'intellectual property law,' it should be construed narrowly to advance the CDA's express policy of providing broad immunity"). *See also Hepp v. Facebook, Inc.*, 465 F. Supp. 3d 491, 499, n.8 (E.D. Pa. 2020) ("the Court's research has yielded no case law from any other appellate court[] that has clearly resolved whether the CDA preempts right of publicity claims").

Plaintiff cannot cite any case within the Seventh Circuit addressing this issue and instead points to years-old dicta that did not reach whether the intellectual property exception applies to state-law publicity claims. *Nieman v. Versuslaw, Inc.*, 2012 WL 3201931, at *9 (C.D. Ill. Aug. 3, 2012) ("the Court need not resolve these issues as the Court has already determined that Plaintiff has not stated a claim"); *Stayart v. Yahoo! Inc.*, 651 F. Supp. 2d 873, 888 (E.D. Wis. 2009), *aff'd*, 623 F.3d 436 (7th Cir. 2010) ("the Court is unable to conclude that there is an obvious resolution to Stayart's state law claims"). As the Ninth Circuit and other courts have explained, the CDA exception applies only to ***federal*** intellectual property claims because this "preserves the scope of immunity within a predictable body of federal law" and it would be dangerous to condition CDA immunity on the "diverse potentially applicable state laws" that "vary and are not uniform in their purposes and policy goals." *Hepp*, 465 F. Supp. 3d at 500-01; *Perfect 10*, 488 F.3d at 1118.

In all events, even the dicta plaintiff invokes demonstrates this action is no "intellectual property" dispute. In *Stayart*, the court distinguished two types of "publicity" claims—the first arises from a "pure right to publicity theory" where the claim is based on lost "commercial value" in one's name (*e.g.*, a celebrity). *See id.* at 887. The second is an "appropriation theory" where the plaintiff claims "bruised feelings" based on how her name was used. *Id.* As *Stayart* determined, only the first can be "considered an intellectual property claim." *Id.* Here, plaintiff

repeatedly disclaims need to prove his name has any "commercial value," confirming this case is not of the ilk that could be considered an "intellectual property" dispute.

## IV. PLAINTIFF CANNOT SHOW HIS CLAIMS FALL OUTSIDE COPYRIGHT PREEMPTION

Plaintiff argues that *Toney v. L'Oreal USA, Inc.* held the Copyright Act can never preempt right of publicity and derivative claims. Opp. at 16. Not so. As subsequent cases interpreting *Toney* have held, right of publicity claims can be preempted—the relevant question is whether the use of the "identity" is coterminous with distribution of a copyrighted work. *Dent v. Renaissance Mktg. Corp.*, 2015 WL 3484464, at *4 (N.D. Ill. June 1, 2015) (preemption of "right of publicity" claims "makes sense" where "the alleged use of the plaintiff's identity is confined solely to that plaintiff's performance in a copyrighted work, the entirety of the 'identity' in question really is fixed in the recorded performance—a tangible medium of expression."); *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1011 (9th Cir. 2017) (preemption where "likeness has been captured in a copyrighted artistic visual work and the work itself is being distributed for personal use").[11] Here, plaintiff challenges Ancestry's model of paid *access* to his copyrighted yearbooks. He does not identify any use of his name or image apart from the mere appearance in the yearbook page. For this reason, the cases on which plaintiff relies are distinguishable—there, the alleged unauthorized use of the plaintiffs' identity extended beyond the copyrighted work, such as an implication of endorsement or affiliation with a product. *Toney*, 406 F.3d at 910 (the "basis of a right of publicity claim concerns the message—whether the plaintiff endorses, or appears to endorse the product in

---

[11] As plaintiff recognizes, the Seventh Circuit *has* held IRPA claims can be preempted by the Copyright Act. *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663 (7th Cir. 1986). *Toney* did not purport to abrogate *Baltimore Orioles* and instead clarified the case does not stand for the proposition that right of publicity claims are "preempted *in all instances* by federal copyright law." *Toney*, 406 F.3d at 910-911 (emphasis added).

question."); *Dent*, 2015 WL 3484464, at *5 (no preemption where "[d]efendants represented that they were affiliated with or authorized by the Shufflin' Crew in selling the Shuffle."); *Dobrowolski*, 2017 WL 3720170, at *7 (distinguishing *Thompson v. Getty Images (US), Inc.*, 2013 WL 3321612 (N.D. Ill. July 1, 2013), "where the plaintiff's photograph was the product itself").

Plaintiff next relies on a California state law case that misinterpreted federal copyright law to hold only the copyright holder can invoke preemption. Opp. at 18 (citing *KNB Enterprises v. Matthews*, 78 Cal. App. 4th 362, 374 (2000)). Federal courts have explicitly rejected this position. *Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1154–55 (9th Cir. 2010) ("We do not read . . . the Copyright Act so narrowly. Whether a claim is preempted under Section 301 does not turn on what rights the alleged infringer possesses"). Indeed, this Court has implicitly rejected this position to find a copyright holder's claims were preempted by section 301 when invoked by a non-copyright holder. *Cassetica Software, Inc. v. Computer Scis. Corp.*, No. 09 C 0003, 2009 WL 1703015, at *5 (N.D. Ill. June 18, 2009).

## V.     PLAINTIFF'S INTRUSION UPON SECLUSION CLAIM FAILS

That plaintiff did not explicitly consent to Ancestry's use of publicly available information (ECF No. 33 at 23; ECF No. 29 at ¶ 32) does not mean Ancestry intruded into plaintiff's *private* matters. *See e.g., Patel v. Zillow, Inc.*, 2017 WL 3620812, at *10 (N.D. Ill. Aug. 23, 2017), *aff'd*, 915 F.3d 446 (7th Cir. 2019) ("Zillow Zestimates are based on public and user-submitted information, not private information. Plaintiffs therefore do not plead an intrusion into private matters."); *Spiegel v. McClintic*, 2017 WL 4283727, *8 n.10 (N.D. Ill. 2017) (no intrusion upon seclusion where allegedly false reports were based on public incidents).

Further, even if the yearbook information were private at some point, plaintiff lost any reasonable expectation of privacy because he never "attempted to keep private facts private." *Acosta v. Scott Labor LLC*, 377 F. Supp. 2d 647, 650 (N.D. Ill. 2005). Plaintiff did not share the

13

yearbook with a "limited group of social connections" of his choosing (Opp. at 23), but instead shared it without limits with others who could (and did) redistribute the information. *See In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 783 n.3 (N.D. Cal. 2019) (limited sharing distinguished from "a user whose settings allow information to be shared not only with friends, but friends of friends," such that he "loses any expectation of privacy.").

Similarly, although plaintiff claims a reasonable jury could conclude the conduct at issue is highly offensive, Illinois courts routinely dismiss intrusion upon seclusion claims on a motion to dismiss when, as here, a plaintiff fails to show the conduct at issue is highly offensive. *See e.g., Patel*, 2017 WL 3620812, at *10. Here, it would be unreasonable to find it is highly offensive that Ancestry offers access to already-public information plaintiff consented to disseminate without restrictions. *See id.* at *10 ("the type of information regarding homes available on Zillow . . . is publicly available. Thus, the alleged intrusion based on gleaning information about Plaintiffs' property is not highly offensive or objectionable."). Plaintiff's cases simply demonstrate that what qualifies as highly offensive is entirely absent here. *See In re Facebook, Inc.*, 402 F. Supp. 3d at 796 (religious preferences and political views).[12]

## VI.   PLAINTIFF'S IRPA AND ICFA CLAIMS FAIL

*IRPA's Exceptions Apply.*   Plaintiff appears to assert IRPA's exemption for portrayals in a book cannot apply because the "single and original" yearbook is not at issue, but rather Ancestry's reproduction of that yearbook. Opp. at 19-20. However, this misinterprets the statute. *Collier v. Murphy*, 2003 WL 1606637, at *3 (N.D. Ill. Mar. 26, 2003) ("The legislative intent is clear . . . the word 'single' refers, in the context of this section, to a 'work of fine art,' rather than to the list of other artistic works that follow. Few television productions are limited to a single

---

[12]   Plaintiff fails to address a number of Ancestry's arguments that also dispose of this claim.

work.  Again, accepting plaintiff's interpretation would not only violate the rules of grammar, it would nullify the exemption and do violence to common sense.").  Plaintiff's remaining arguments rehash his contention that his claims are not based on the yearbook information and are instead premised on content Ancestry created.  Opp. at 19-20.[13]

**_Plaintiff Cannot Plead An ICFA Claim._**  The operative complaint alleges only that "Ancestry has and is engaged in deceptive or unfair practices as those terms are defined in the [ICFA]."  ECF No. 29 at ¶ 85.  This is not enough under any pleading standard, let alone Rule 9(b).  Further, any claim Ancestry created a "false impression" of affiliation (a claim that does not appear in the complaint and is instead improperly raised for the first time in opposition) is contradicted by the facts plaintiff _does_ allege, which demonstrate no such representations concerning affiliation appear anywhere on Ancestry's site.  In any event, plaintiff (1) admits he is not a consumer, and (2) does not show how the conduct complained of harms consumers or implicates consumer protection concerns as his claims explicitly pertain to non-consumers.  _See, e.g.,_ ECF No. 29 at ¶ 66 (purporting to represent "[t]he vast majority of people [who] . . . have no business relationship with Ancestry, are not Ancestry subscribers, and are not subject to a Terms of Service or any other agreement with Ancestry").

---

[13]  Once again, plaintiff's reliance on _Lukis_ is misplaced.  Opp. at 19-20.  There, the defendant created its own background reports by compiling information from different sources.  _Lukis,_ 2020 WL 6287369 at *1.  Here, Ancestry simply republished a page from a yearbook— "Ancestry did not create the third-party content[.]"  _Callahan,_ 2021 WL 783524 at *1.

Dated:   May 7, 2021                Respectfully submitted,

By: */s/ Shon Morgan*
     Shon Morgan

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Lazar Raynal
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
(312) 705-7400
lazarraynal@quinnemanuel.com

Shon Morgan (*Pro Hac Vice*)
John W. Baumann (*Pro Hac Vice*)
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
shonmorgan@quinnemanuel.com
jackbaumann@quinnemanuel.com

Cristina Henriquez (*Pro Hac Vice*)
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
(650) 801-5000
cristinahenriquez@quinnemanuel.com

*Attorneys for Defendants Ancestry.com Operations*
*Inc., Ancestry.com Inc., and Ancestry.com LLC*

16

**CERTIFICATE OF SERVICE**

I, the undersigned, certify that on May 7, 2021, I caused a true and correct copy of the foregoing to be filed electronically with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to counsel of record via the Court's CM/ECF automated filing system.


By: */s/ Shon Morgan*
      Shon Morgan