# EXHIBIT A

CASE NO. C21-0053-JCC
UNITED STATES DISTRICT COURT WESTERN DISTRICT OF WASHINGTON AT SEATTLE

# Kolebuck-Utz v. Whitepages Inc.

Decided Apr 22, 2021

CASE NO. C21-0053-JCC

04-22-2021

ANGELA KOLEBUCK-UTZ, individually and on behalf of those similarly situated, Plaintiff, v. WHITEPAGES INC., Defendant.

THE HONORABLE JOHN C. COUGHENOUR

ORDER

This matter comes before the Court on Defendant Whitepages Inc.'s motion to dismiss (Dkt. No. 12). Having thoroughly considered the parties' briefing and the relevant record, the Court hereby DENIES the motion for the reasons explained herein.

## I. BACKGROUND

Defendant owns and operates a website that sells "background reports" and monthly subscription services to access such reports. (Dkt. No. 1 at 1, 4.) To entice users to purchase these products, Defendant allows a user to initially search for a person using that person's name, without charge; the user is then provided a list of possible persons, including identifying information, and given the option of receiving a "free preview" of Defendant's "report" on the searched individual. (*Id*. at 1, 2.) Plaintiff alleges Defendant used her name and likeness in its free previews and advertisements to "entice users to purchase Whitepages' services." (*Id*. at 2, *2 4.) After the user viewed the free preview and clicked on the buttons "View Full Report," "Unlock Full Report," or "Sign Up," Defendant presented the user with the option to purchase a monthly subscription service. (*Id*. at 4.) Plaintiff argues that Defendant's 2 use of her persona violated Ohio's right of publicity law, Ohio Revised Code § 2741.01 *et. seq*., because Defendant did not obtain written consent to use her persona in its advertisements. (*Id*. at 8.)

In this putative class action, Plaintiff seeks compensatory, statutory, and punitive damages and injunctive relief, among other relief, on behalf of herself and similarly situated individuals, for the alleged violation. (*Id*. at 9.)

Defendant moves to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing its use of Plaintiff's name (a) did not violate Ohio Revised Code § 2741.01 *et. seq*., (b) was protected as noncommercial "directory information" under the First Amendment of the U.S. Constitution and Article 1, § 11 of the Ohio Constitution, and (c) was immunized by the Communications Decency Act ("CDA"). (Dkt. No. 12 at 2-10.)

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Twombly*, 550 U.S. at 555).

# III. DISCUSSION

Ohio's right of publicity law provides that "a person shall not use any aspect of an individual's persona for a commercial purpose" unless that person has obtained written consent from the individual. Ohio Rev. Code §§ 2741.01, 2741.02.

*3

**A. Claim Based Upon a Violation of Ohio's Right of Publicity Law**

Plaintiff alleges Defendant used her "persona" for a commercial purpose in violation of Ohio Revised Code § 2741.02. (Dkt. No. 1 at 8.) Defendant argues it used only her name, rather than her persona, and, regardless, even if it did use her persona, Plaintiff's persona does not have "commercial value" and, therefore, cannot constitute a violation of the statute. (*See* Dkt. No. 15 at 3.) The statute defines "persona" as "an individual's name, voice, signature, photograph, image, likeness, or distinctive appearance, if any of these aspects have commercial value." Ohio Rev. Code § 2741.01(A). Here, Plaintiff's complaint clearly alleges that Defendant displayed Plaintiff's name and identifying information on its website, in what has been described as a free preview, as an enticement to purchase Defendant's subscription service. (*See* Dkt. Nos. 1 at 2, 22; 12 at 1.) Although use of identifying characteristics may not be required to represent a violation under the statute, Defendant's alleged use of Plaintiff's uniquely identifiable characteristics, (*see* Dkt. No. 1 at 2), further supports Plaintiff's allegation that it really was Plaintiff's name and persona that Defendant used, rather than the name of a similarly named person. (*See* Dkt. No. 13 at 5 (citing *Lukis v. Whitepages*, 454 F. Supp. 3d 746, 761 (N. D. Ill. 2020).)

1. Commercial Value of Plaintiff's Name

Defendant argues that Plaintiff's name, as a non-public person, could not have commercial value as a matter of law and, even if it could, Plaintiff did not plead adequate facts to establish its commercial value here. (Dkt. No. 12 at 4-6). The Court disagrees. To assert a right of publicity claim, Plaintiff must only plead that there is *some* value in associating a good or service with her identity. *See Harvey v. Systems Effect, LLC*, 154 N.E. 3d. 293, 306 (Ohio App. 2020). In *Roe v. Amazon*, for example, the defendant used the plaintiffs' image without permission on the cover of a book the defendant authored and sold. *See* 170 F. Supp. 3d 1028, 1030 (S.D. Ohio 2016). The plaintiffs were not celebrities and their image did not have "widely marketable commercial value." *Id*. Nevertheless, the court, held that the plaintiffs' image had *4 commercial value because the defendant deliberately used it for commercial gain, thereby infringing on the plaintiffs' rights. *Id*. at 1033. Unlike *Harvey*, where the court found that use of the plaintiff's name was incidental and the defendant did not obtain any commercial value from it, *see* 154 N.E. 3d. at 306, Plaintiff alleges that Defendant used her name to entice users to purchase Defendant's product. (Dkt. No. 1 at 4.) This is sufficient to establish commercial value as a matter of law. Moreover, Plaintiff provides sufficient facts to plausibly allege a violation of Ohio's right of publicity law, based on the allegations of commercial use. (*See id*. at 4-5 (alleging that Plaintiff's persona was used to entice users to sign up for Defendant's monthly subscription service).) Therefore, Plaintiff states a claim for relief based on alleged violations of Ohio's right of publicity law.

**B. Freedom of Speech Argument**

Defendant next argues that Ohio's right of publicity law's limitation, if any, on its use of Plaintiff's persona represents a First Amendment[1] violation (*See* Dkt. Nos. 12 at 6-10, 15 at 4). In order to assess Defendant's argument, the Court must first determine whether Defendant's alleged use of Plaintiff's persona was commercial or noncommercial speech. While commercial speech is entitled to some First Amendment protections, noncommercial speech is entitled to greater protections. *Bolger v. Youngs Drugs Products Corp.*, 463 U.S. 60, 65 (1983). Laws restricting

commercial speech are analyzed under intermediate scrutiny, while laws restricting noncommercial speech are analyzed under strict scrutiny. *See Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 954, 962 (9th Cir. 2012).

> [1] The Court refers to the First Amendment of the U.S. Constitution and Article 1, §11 of the Ohio Constitution, collectively, as the "First Amendment" in light of the court's holding in *Cleveland v. Trzebuckowski*, 709 N.E.2d 1148, 1152 (Ohio 1999) (citing *State ex rel. Rear Door Bookstore v. Tenth Dist. Court of Appeals (1992)*, 588 N.E.2d 116, 123 (stating "[t]he First Amendment is the proper basis for interpretation of Section 11, Article I, Ohio Constitution")).
>
> --------

### 1. Commercial Speech

Whether something constitutes commercial speech largely depends on whether the content "does no more than propose a commercial transaction." *Virginia State Bd. Of Pharmacy* \*5 *v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 762 (1976). Relevant factors include "(i) [] advertising format, (ii) [] reference to a specific product, and (iii) the underlying economic motive of the speaker." *Dex Media*, 696 F.3d at 958 (quoting *Assoc. of Nat'l. Advertisers, Inc. v. Lungren*, 44 F.3d 726, 728 (9th Cir.1994)) (holding that Defendant Yellowpages' content was noncommercial speech where (1) the advertisements were restricted to only cover a certain percentage of each page and (2) did not reference only one specific product and were created by third parties).

Here, Plaintiff alleges that: (i) Defendant's advertisements using Plaintiff's persona were found on the same web page as Defendant's enticement for its subscription services; (ii) the enticements were described as the "full report" of Plaintiff's identity, available through Defendant's monthly subscription service; and (iii) Defendant's motive was singularly "to entice users to purchase Defendant's services." (*See* Dkt. No. 1 at 2, 4.)

These allegations are sufficient to establish that Defendant's advertisements using Plaintiff's persona were, in fact, commercial speech.

### 2. Intermediate Scrutiny

In applying intermediate scrutiny to a law limiting commercial speech, the Court considers whether: (1) the speech "concern[s] lawful activities and [is] not [] misleading;" (2) the government has a "substantial" interest in restricting the speech; (3) the regulation "directly advances the governmental interest" involved; and (4) the regulation is not "more excessive than is necessary to serve that interest." *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 566 (1980). To support its argument that Ohio's right of publicity law, as applied by Plaintiff to Defendant's advertisements of its subscription services using Plaintiff's persona, violates First Amendment protections, Defendant relies on a case concerning *noncommercial* speech. (*See* Dkt. No. 12 at 9 (citing *Sarver v. Chartier*, 813 F.3d 891, 905 (9th Cir. 2016).) This is not helpful. In support of its motion, Defendant must cite to persuasive or controlling cases addressing the application of the intermediate scrutiny factors required for \*6 similar commercial speech as that alleged by Plaintiff. Defendant fails to do so. (*See generally* Dkt. Nos. 12, 15.) Therefore, Defendant's briefing provides the Court no basis to dismiss Plaintiff's claim on First Amendment grounds.

### C. Communications Decency Act

Finally, Defendant argues dismissal is warranted based on the protections afforded by the CDA, 47 U.S.C. §§ 230(c)(1), (e)(3). (Dkt. No. 12 at 9.) According to Defendant, it does not generate content and, therefore, its use of Plaintiff's persona is protected by the CDA. (*Id.*) But Plaintiff's complaint alleges Defendant *does*, in fact, generate content. (*See* Dkt. No. 1 at 5.) At this stage the Court must accept the allegations in Plaintiff's complaint as true. *See Twombly*, 550 U.S. at 555. Defendant's argument does not

provide a basis for dismissal of Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's motion to dismiss (Dkt. No. 12.)

DATED this 22nd day of April 2021.

/s/

John C. Coughenour

UNITED STATES DISTRICT JUDGE



4