IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SERGIO BONILLA, on behalf of himself and all others similarly situated, <br><br> *Plaintiff*, <br><br> v. <br><br> ANCESTRY.COM OPERATIONS INC., a Virginia Corporation; ANCESTRY.COM INC., a Delaware Corporation; ANCESTRY.COM LLC, a Delaware Limited Liability Company; and DOES 1 through 50, inclusive, <br><br> *Defendants*. | No. 20-C-07390 <br><br> Judge Virginia M. Kendall |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants Ancestry.com Operations Inc., Ancestry.com Inc., and Ancestry.com LLC's (collectively, "Ancestry") Motion to Dismiss [30] Plaintiff's First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). As discussed herein, that Motion is granted in part and denied in part.

**BACKGROUND**

On a motion to dismiss under Rules 12(b)(2) and 12(b)(6), the Court accepts a complaint's well-pleaded factual allegations, with all reasonable inferences drawn in the non-moving party's favor, but not its legal conclusions. *See Smoke Shop, LLC v. United States*, 761 F.3d 779, 785 (7th Cir. 2014). The following factual allegations taken from Plaintiff's First Amended Complaint (Dkt. 29) are assumed true for purposes of this motion. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

The crux of Plaintiff's claim centers on Ancestry's alleged use of Plaintiff's name, identity, image, and likeness to advertise and solicit Ancestry's paid products and services without Plaintiff's consent. (Dkt. 29 at ¶¶1-2). Ancestry's business model includes amassing databases of personal information and subsequently selling access to that information. This includes data gathered from yearbooks and aggregated into digital records that identity specific individuals (¶¶2). The Ancestry Yearbook Database includes over 47 million individual records from Illinois schools and universities. Ancestry advertises and promotes its products and services to new subscribers by offering a 14-day promotional "free trial" to temporarily access Ancestry's database. The purpose of offering this free trial is to induce users to subscribe to Ancestry's paid products and services. (¶¶7-8). Ancestry also advertises by sending promotional emails to users who have signed up for a free account but not a paid subscription. (¶11). These promotional messages contain "hints" corresponding to yearbook records Ancestry believes may be related to the potential customer (¶11).

Plaintiff is a resident of Great Lakes, Illinois. He is not a subscriber of any Ancestry products or services. (¶31). Ancestry uses Plaintiff's name, photos, image, and likeness for a commercial purpose by selling access to his identity in its products. (¶34). Ancestry's Yearbook Database includes a record from a 1995 yearbook where Plaintiff attended school. This record is part of the database Ancestry uses to populate its promotional emails to potential customers. (¶44). Plaintiff has never provided consent for Ancestry to use his name, photograph or likeness in its advertising or solicitation of paid products and services (¶32).

Plaintiff brings this action against Ancestry alleging violation of the Illinois Right of Publicity Act ("IRPA") (Count I), violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") (Count II), intrusion upon seclusion (Count III), and unjust enrichment (Count IV). Ancestry moves to dismiss. (Dkt. 30).

**LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The Court accepts the complaint's factual allegations as true and draws all permissible inferences in Plaintiff's favor. *Schumacher*, 844 F.3d at 675 (quoting *Iqbal*, 556 U.S. at 678). The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Olson v. Champaign Cty.*, 784 F.3d 1093, 1099 (7th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Evaluating whether a plaintiff's claim is sufficiently plausible to survive a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Schumacher*, 844 F.3d 676 (quoting *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011); *Iqbal*, 556 U.S. at 678)).

**DISCUSSION**

I. **Personal Jurisdiction**

   A. **Legal Standard**

Specific jurisdiction "depends on an 'affiliatio[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *see also, e.g.*, *Levy v. Chubb Corp.*, 2001 WL 204793, at *2 (N.D. Ill. Feb. 28, 2001) ("Specific jurisdiction refers to jurisdiction over a defendant in a suit 'arising out of or related to the defendant's contacts with the forum.'"). There are three "essential requirements" for

the exercise of specific jurisdiction over an out-of-state defendant: (1) the defendant's contacts with the forum must show that it "purposefully availed [itself] of the privilege of conducting business in the forum state or purposefully directed [its] activities at the state;" (2) the plaintiff's alleged injury must have arisen out of the defendant's forum-related activities; and (3) any exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice. *Curry v. Revolution Labs., LLC*, 949 F.3d 385, 398 (7th Cir. 2020). The essential point of the personal jurisdiction inquiry is to "ensure that an out-of-state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state." *Id.* The "mere fact that [the defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction," and "the plaintiff cannot be the only link between the defendant and the forum," *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801-802 (citations omitted).

A plaintiff has the burden of establishing personal jurisdiction, and where, as here, the issue is raised by a motion to dismiss and decided on the basis of written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). At this stage, all well-pleaded facts alleged in the complaint are taken as true and any factual disputes are resolved in plaintiff's favor. *Id.*

### B. Analysis

Ancestry is subject to the Court's personal jurisdiction in this case: Plaintiff alleges that Ancestry purposefully directed its activities towards Illinois; Plaintiff's alleged injuries arise from forum-related activities; and exercising personal jurisdiction over Ancestry does not offend

traditional notions of fair play and substantial justice.[1] *See Curry v. Revolution Labs.,* 949 F.3d 385, 398 (7th Cir. 2020).

Plaintiff's amended complaint alleges that Ancestry amassed millions of individual yearbook records, including by digitizing records on-site and by accepting donations shipped to Ancestry by Illinois residents. Plaintiff further alleges that Ancestry regularly advertises to Illinois residents, promotes its subscription services to Illinois residents at libraries, and utilizes video advertisements (Dkt. 29 ¶¶17-22). Plaintiff also alleges that those records, including Plaintiff's record (his name, photograph, image, and likeness) are used for the commercial purpose of advertising and promoting the purchase of its subscription service to Illinois residents. Dkt. 29 at ¶23-24. This qualifies as intentional contacts with the forum state sufficient to determine purposeful direction. *See, e.g., Lukis v. Whitepages, Inc.*, 454 F.Supp.3d 746, 757 (N.D. Ill. 2020). Ancestry is correct that Plaintiff's residency in Illinois, standing alone, would be insufficient to confer personal jurisdiction over Ancestry in this case. *Advanced Tactical Ordnance Sys., LLC*, 751 F.3d at 802 (7th Cir. 2014) ("[T]here can be no doubt that the plaintiff cannot be the only link between the defendant and the forum.") citing *Walden v. Fiore*, 571 U.S. 277 (2014). Were Plaintiff's allegations so limited, the Court would not be able to exercise personal jurisdiction because there would not be sufficient suit-related contacts apart from Plaintiff's residency. But Plaintiff's allegations are not so limited. While Plaintiff's yearbook record is not from Illinois (it is from Nebraska), Plaintiff's allegations are that Ancestry used his name, image, likeness and photograph in advertisements to Illinois residents. The action ultimately rests not solely on Ancestry's acquisition of yearbook records in and out of Illinois, but also on the subsequent use of Plaintiff's name

---

[1] Plaintiff has not alleged that the Court has general jurisdiction over Ancestry. *See* Dkt. 31 at 6, n.3. Nor could he have done so, as Defendants are Virginia and Delaware corporations with their principal place of business in Utah. (Dkt. 29 at 14).

and image in order to promote its services in Illinois. Dkt. 29 at ¶ 43-46. Ancestry's argument that Plaintiff's complaint should be read to infer Plaintiff's records were "more likely used to advertise to Nebraska" (Dkt. 31 at 8) ignores that Plaintiff also alleges that the relatives of people who went to school in states near Illinois are likely to be Illinois residents. Dkt. 29 at ¶24; Plaintiff also alleges that Ancestry sends promotional emails to users that Ancestry believes the recipient may be related to. *Id. at* ¶43; Plaintiff has pled allegations that support reasonable foreseeability of harm felt in Illinois. *Curry*, 949 F.3d at 399; *see also Sessa v. Ancestry.com Ops. Inc.,* 2021 WL 4245359 (D. Nev. Sept. 16, 2021) ("Ancestry has sought to build a Database with nationwide appeal by allegedly collecting as many yearbooks as possible from across the country. Ancestry intentionally targeted all fifty states in doing so. *Cf. Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984) (indicating that where a publisher cultivates a nationwide audience and can count on reaching consumers in all 50 states, it should be expected to be called into court in all 50 states where the elements of specific jurisdiction are otherwise satisfied.")) Plaintiff's allegations, while perhaps not the most robust, do make a prima facie showing of jurisdictional facts.

In addition, exercising personal jurisdiction over a defendant must "comport with traditional notions of fair play and substantial justice." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). The factors relevant to this requirement include "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Felland v. Clifton*, 682 F.3d 665, 677 (7th Cir. 2012). Here, exercising jurisdiction over Ancestry satisfies this requirement because Plaintiff alleges tortious activity directed toward

Illinois. Illinois has a "strong interest in providing a forum for its residents ... to seek redress for tort injuries suffered within the state and inflicted by out-of-state actors." *Tamburo*, 601 F.3d at 709. *See also Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 760 (7th Cir. 2010) ("[The "fair play and substantial justice"] factors rarely will justify a determination against personal jurisdiction because there are other mechanisms available ... to accommodate the various interests at play.")

## II. Standing

The parties dispute whether Plaintiff has alleged a concrete injury sufficient to confer standing. "[T]he 'irreducible constitutional minimum' of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, (2016) (citation omitted) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.' " *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560). In evaluating a facial attack on standing, the court must "accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff." *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1007 (7th Cir. 2021).

As with other arguments set forth in its Motion, Ancestry relies heavily on the decision in *Callahan v. Ancestry*, a California case, involving similar facts to those at issue here. Dkt. 31 at 10. The district court in *Callahan* concluded that those plaintiffs lacked standing because they raised only a "statutory injury." 2021 WL 2433893 at *3 (N.D. Cal. June 15, 2021). The Supreme Court's more recent decision in *Transunion* (decided after *Callahan*) addresses when a statutory injury can give rise to standing. *Transunion LLC v. Ramirez,* 141 S.Ct. 2190 (June 25, 2021).

The Supreme Court explained that "concrete injury" requires that Plaintiff sustain harm that "has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms." *Id.* at 2200 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340–41 (2016)). The Court found that Congress may authorize a cause of action for concrete harms that were previously inadequate to sustain a legal action (e.g., discriminatory treatment.) Id. at 2204. In the wake of the *Transunion* decision, if a statutorily authorized cause of action has neither a close relationship to a traditional harm nor authorizes a remedy for other concrete harm, the claim fails to present a justiciable "case or controversy" under Article III. *Id.* at 2204–05.

Right of publicity claims, codified by state statute in Illinois, have their origins at common law. *See, e.g., Sessa v. Ancestry.com Ops. Inc.*, 2021 WL 4245359 (D. Nev. Sept. 16, 2021) (citing *PETA v. Bobby Berosini, Ltd.*, 111 Nev. 615, 895 P.2d 1269, 1279, 1285 (1995) (overruled in part on other grounds)). In this case, Plaintiff alleges that Ancestry used his image, name, and likeness in advertisements intended to profit from subscription services (Dkt. 29 at ¶¶34, 37, 46). *See Sessa,* 2021 WL 4245359 at *5 ("Plaintiffs have alleged injury at common law because they assert that Ancestry used their names and likenesses 'to motivate a decision to purchase a particular product or service.'") Therefore, "violations of the IRPA are an easy case under the governing test." *See e.g., Lukis v. Whitepages Inc.*, 2021 WL 3022319 (N.D. Ill. July 16, 2021). The IPRA codifies the common law tort of right of publicity. *See Douglass v. Hustler Mag. Inc.,* 769 F.2d 1128, 1138 (7th Cir. 1985) (referring to "the right to prevent others from using one's name or picture for commercial purposes without consent."); *see also Lukis,* 20121 WL 3022319 at *4 (discussing the legislative history of the IPRA); *see also See Dancel v. Groupon, Inc.*, 949 F.3d 999, 1009 (7th Cir. 2019) ("[T]he IRPA has supplanted the common law right of publicity.") Taking Plaintiff's

allegations that Ancestry used his name, likeness, photograph, and identity for a commercial purpose in violation of the IPRA as true, Ancestry's facial challenge to standing fails.

### III. Count I: IPRA

#### A. Communications Decency Act[2]

Ancestry argues that each of Plaintiff's claims should be dismissed because Ancestry is immune from liability under the Communications Decency Act ("CDA"). The CDA provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The CDA applies to online forums that serve as "a mere passive conduit for disseminating (actionable) statements." *Huon v. Denton*, 841 F.3d 733, 742 (7th Cir. 2016). Because affirmative defenses such as CDA immunity frequently turn on facts not before the court at the pleading stage, dismissal is appropriate only when the factual allegations in the complaint unambiguously establish all the elements of the defense. *See Siegel v. Zoominfo Techs., LLC*, 2021 WL 4306148, at *4 (N.D. Ill. Sept. 22, 2021) *citing Hyson USA, Inc. v. Hyson 2U, Ltd.,* 821 F.3d 935, 939 (7th Cir. 2016)

Here, Plaintiff's complaint includes allegations that Ancestry created records of Plaintiffs reflecting the information from the yearbook record, and uses that information to entice potential customers to subscribe to its services. Plaintiff also alleges that non-users are shown a limited version of the record (including a low resolution photograph) with a promotional pop-up advertisement promising access to Plaintiff's identity and likeness if they sign up for a paid subscription. Dkt. 29 at ¶¶38-46. Ancestry recasts Plaintiff's claims on the "mere reposting" of yearbook records, which is inconsistent with Plaintiff's allegations that Ancestry uses those records and the

---

[2] Because the Court finds that the CDA does not bar Plaintiff's claims at the pleading stage, it does not reach Plaintiff's additional argument that his publicity claims implicate intellectual property rights that prevent application of the CDA.

likeness/identity to sell subscription services beyond his individual yearbook record. These allegations, taken as true, do not establish that Ancestry is a "passive conduit" that should receive immunity under the CDA. Plaintiff has alleged that Ancestry collected and organized records and subsequently used Plaintiff's and the putative class members' names, likenesses, and identities in these records they curated for commercial gain. *See Krause v. Rocketreach*, *LLC*, 2021 WL 4282700 (N.D. Ill. Sept. 21, 2021) (rejecting CDA immunity argument where complaint allegations did not establish affirmative defense); *see also Lukis v. Whitepages, Inc.,* 454 F.Supp.3d 746, 763 (N.D. Ill. 2020).

### B. Copyright Preemption[3]

The Copyright Act preempts "all legal and equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106" and are "in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103." 17 U.S.C. § 301(a). Not every claim that involves a copyright will be preempted by the Copyright Act. *See Nova Design Build, Inc. v. Grace Hotels, LLC,* 652 F.3d 814, 816 (7th Cir. 2011). Ancestry argues that Plaintiff's claims are preempted because they arise solely from conduct governed by the Copyright Act.[4]

Ancestry claims that Plaintiff's lack of allegations involving an "endorsement" leave his IPRA claim squarely within preempted territory under the Copyright Act, while Plaintiff argues that copyright preemption does not apply to right of publicity claims under the IRPA. *See* Dkt. 31

---

[3] Ancestry makes its arguments on the CDA and Copyright Preemption with respect to each of Plaintiff's claims. However, Counts II and III are dismissed on other grounds, *see infra*. And Count IV, for unjust enrichment, rises and falls with Count I.

[4] As with Ancestry's arguments pertaining to the CDA and statutory IPRA exemptions, its argument for Copyright Act preemption is an affirmative defense. *Bausch v. Stryker Corp.*, 630 F.3d 546, 561–62 (7th Cir. 2010).

at 16, Dkt. 33 at 16. Neither party is wholly correct. Ancestry's reliance on an "endorsement" requirement to prove an injury under the IPRA is overstated, but right of publicity claims *can* be preempted if the allegations do not sufficiently identify conduct separate from that conduct covered by the Copyright Act. *Toney v. L'Oreal USA, Inc.*, 406 F.3d 905 (7th Cir. 2005) (finding no copyright preemption of IPRA claim "applying the facts of this case to the requirements for preemption."): *see also Dent v. Renaissance Mktg. Corp.*, 2015 WL 3484464, at *4 (N.D. Ill. June 1, 2015) (preemption of "right of publicity" claims "makes sense" where "the alleged use of the plaintiff's identity is confined solely to that plaintiff's performance in a copyrighted work, the entirety of the 'identity' in question really is fixed in the recorded performance—a tangible medium of expression.").

>Another case from this district, finding an IPRA claim preempted, explained:

> In *Toney,* the plaintiff's publicity claim was not preempted by the Copyright Act because the state-law publicity claim protected the plaintiff's *identity,* not any particular embodiment of that identity. The state-law claim challenged the use of the plaintiff's identity for a commercial purpose. That the particular embodiment of her identity in question was subject to a copyright owned by the defendants was irrelevant to the plaintiff's claim. The plaintiff was not challenging the defendant's right to use the photograph, but its right to use her identity for commercial purposes.

*Dent v. Renaissance Mktg. Corp.*, 2015 WL 5465006 (N.D. Ill. Oct. 28, 2014). As the Seventh Circuit explained in *Toney* when rejecting a preemption argument:

> A person's likeness—her persona—is not authored and it is not fixed. The fact that an image of the person might be fixed in a copyrightable photograph does not change this. From this we must also find that the rights protected by the IRPA are not "equivalent" to any of the exclusive rights within the general scope of copyright that are set forth in § 106. Copyright laws do not reach identity claims such as Toney's. Identity, as we have described it, is an amorphous concept that is not protected by copyright law; thus, the state law protecting it is not preempted.

Page 11 of 19

> **We also note that the purpose of the IRPA is to allow a person to control the commercial value of his or her identity.** Unlike copyright law, "commercial purpose" is an element required by the IRPA. . . . Clearly the defendants used Toney's likeness without her consent for their commercial advantage. **The fact that the photograph itself could be copyrighted, and that defendants owned the copyright to the photograph that was used, is irrelevant to the IRPA claim.** The basis of a right of publicity claim concerns the message—whether the plaintiff endorses, or appears to endorse the product in question.

*Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 910 (7th Cir. 2005) (emphasis added); *see also Baltimore Orioles v. Major League Baseball Players Ass'n,* 805 F.2d 663 (7th Cir.1986) ("[a] player's right of publicity in his name or likeness would not be preempted if a company, without the consent of the player, used the player's name to advertise its product.") Ancestry focuses on Toney's single sentence discussing endorsement and ignores the context that comes before it. An endorsement is not required for a violation of the IRPA, so is not only way to identify the difference between a claim that is preempted and one that is not. *See, e.g., Dobrowolski v. Intelius, Inc.,* 2017 WL 3720170 ("IRPA does not require that the commercial purpose be an apparent endorsement of the defendant's product or service.") Here, the fact that the yearbook itself could be copyrighted does not preempt a claim based on Plaintiff's allegations that Ancestry used his likeness for its commercial advantage.

Ancestry relies on *Maloney v. T3Media Inc.*, a Ninth Circuit case finding preemption of state law claims based on the Copyright Act. Indeed, *Maloney* itself distinguished a case that is preempted—because the claim was based on the licensing of photographs—from a case that would not be preempted: when a publicity-right claim seeks to vindicate misuse of an individual's likeness, as opposed to merely interfering with the distribution, display, or performance of a copyrighted work. The court in *Maloney* noted that "a publicity-right claim is not preempted when it targets non-consensual use of one's name or likeness on merchandise or in advertising." *Maloney*

*v. T3Media, Inc.,* 853 F.3d 1004, 1010 (9th Cir. 2017). "But when a likeness has been captured in a copyrighted artistic visual work and the work itself is being distributed for personal use, a publicity-right claim interferes with the exclusive rights of the copyright holder and is preempted by section 301 of the Copyright Act." *Id.* Here, Plaintiff's allegations concern the former, targeting the non-consensual use of his name and likeness in Ancestry's advertisements and promotional materials for its paid subscription services. Plaintiff's claim is not preempted by the Copyright Act at this stage of the pleadings because his allegations qualitatively distinguish his IPRA claim from the rights protected by the Copyright Act.

### C. Statutory Exemptions to IPRA

Ancestry also argues that Plaintiff's claim fails because he alleges conduct that falls within certain exemptions to Illinois' right to publicity statute. *See, e.g., Collier v. Murphy*, No. 02 C. 2121, 2003 WL 1606637, at *3 (N.D. Ill. Mar. 26, 2003) (IRPA exempts liability for certain uses to avoid conflict with the First Amendment). Ancestry's position is that Plaintiff's allegations fall into two exemptions.

First, Ancestry argues the allegations are exempt by section 35(b)(1), which exempts from the IRPA "use of an individual's identity in an attempt to portray, describe, or impersonate that individual in a live performance, a single and original work of fine art, play book, article, musical work, film, radio, television, or other audio, visual, or audiovisual work." 765 ILCS 1075/35(b)(1). This exemption does not apply at this stage. Ancestry frames Plaintiff's claim as a simple "reproduction" of his yearbook record. But Plaintiff's complaint is clear that it is (at least in part) the use of his record in advertisements for Ancestry's subscription service that give rise to this claim, not only the reproduction and hosting of the record. *See,* Dkt. 29 at ¶¶1-8, 38, 42, 44; *see also Lukis v. Whitepages, Inc.*, 454 F.Supp.3d 746, 762 ("Even indulging the generous assumption that the free

previews qualify as a "performance, work, play, book, article, or film," they are alleged to be 'a commercial advertisement for a product…goods, or services,' 765 ILCS 1075/35(b)(1)— specifically, for [defendant's] monthly subscription service…and thus fall outside the scope of Section 35(b)(1) given the provision's 'provided that' clause. It follows, at least at the pleadings stage, that the Section 35(b)(1) exclusion does not shield [defendant] from liability."); *see also Krause v. RocketReach, LLC*, 2021 WL 4282700, at *2 (N.D. Ill. Sept. 21, 2021).

Second, Ancestry points to section 35(b)(2), which exempts "use of an individual's identity for non-commercial purposes, including any news, public affairs, or sports broadcast or account, or any political campaign." 765 ILCS 1075/35(b)(2). Plaintiff does allege that Ancestry uses yearbook records, including his own, for a commercial purpose—to sell subscription services to potential customers. That is notably different than the situation in *Vrdolyak* (cited by Ancestry), which considered a publication with both commercial and non-commercial elements. *See Vrdolyak v. Avvo, Inc.*, 206 F.Supp.2d 1384, 1388-89 (N.D. Ill. 2016). Here, the information at issue is alleged to function as part of the advertisements. That is a "textbook example under the IRPA of using a person's identity for a commercial purpose." *See Lukis v. Whitepages Inc.*, 454 F.Supp.3d 746 (considering whether content served a "commercial purpose" under IPRA). Plaintiff alleges that Ancestry uses yearbook records like his to sell a separate subscription service that goes beyond just his one yearbook record. Therefore, this case is more like *Lukis* that *Thompson v. Getty Services* and the non-commercial exemption to the IPRA does not apply. *See Lukis*, 454 F.Supp.3d 746, 760 (N.D. Ill. 2020) (distinguishing *Thompson,* 2013 WL 3321612, which found that it was non-commercial where Plaintiff's identities were not being used to promote a separate product.)

## IV. Counts II-IV

### A. Count II: ICFA

Ancestry moves to dismiss Count II on two bases: that Plaintiff has failed to state an ICFA claim with the required particularity, and that as a non-consumer Plaintiff failed to adequately allege a consumer nexus. (Dkt. 31 at 22-25). In order to state a claim under the ICFA, Plaintiff must have alleged with particularity: "(1) the defendant undertook a deceptive act or practice; (2) the defendant intended that the plaintiff rely on the deception; (3) the deception occurred in the course of trade and commerce; (4) actual damage to the plaintiff occurred; and (5) the damage complained of was proximately caused by the deception." *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 883 (7th Cir. 2005); *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 856 (Ill. 2005); *Thrasher-Lyon v. Ill. Farmers Ins. Co.,* 861 F. Supp. 2d 898, 908-909 (N.D. Ill. 2012) ("[A]n ICFA action must be pled with particularity.")

Ancestry is correct—Plaintiff's ICFA allegations do not meet the higher level of pleading specificity required. Rule 9(b) requires that the plaintiff state "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Svc's, Inc.*, 536 F.3d 663, 668 (7th Cir. 2008). In other words, the plaintiff must allege the "who, what, when, where, and how" of the alleged fraud. *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 338 (7th Cir. 2019); *see also Cmty. Bank of Trenton v. Schnuck Mkts. Inc.,* 887 F.3d 803 (7th Cir. 2018). The Amended Complaint lacks any such specificity. Plaintiff only alleges that "Ancestry has and is engaged in deceptive or unfair practices as those terms are defined in the [ICFA]." Dkt. 29 ¶ 85. This is a legal conclusion that is not entitled to the presumption of truth and does not meet even the liberal pleading standard. *See Twombley* at 555. Particularity would require, for instance, pleading what statements Ancestry has made that are deceptive, to whom, and when the deceptive statements were made. Arguing during briefing that

Ancestry left a "false impression" without pleading how that was done does not meet the pleading standard required for claims of fraud.

Plaintiff's ICFA claim fails for the additional reason that he does not plead facts sufficient to meet the consumer nexus test required to maintain an ICFA as a non-consumer. Plaintiff does not contend he is a consumer of Ancestry and in fact has pled that he is not. *See* Dkt. 29 at ¶ 31. Therefore, he must plead "(1) that [Plainitff's] actions were akin to a consumer's actions to establish a link between [it] and consumers; (2) how defendant's representations . . . concerned consumers other than [plaintiff]; (3) how defendant's particular [action] involved consumer protection concerns; and (4) how the requested relief would serve the interests of consumers." *See, e.g., Thrasher-Lyon,* 861 F. Supp.2d. at 912. Plaintiff's argument is that Ancestry's advertising scheme "implicates serious consumer protection concerns." (Dkt. 33 at 25). This argument, though, is not based on any allegations in the complaint but rather a new argument that Ancestry has both "created the false impression Plaintiff and class members are affiliated with Ancestry.com" and "exploits the identifies of millions of individuals." (Dkt. 33 at 24). Taking the second argument first, Plaintiff does not allege that the people whose identities he claims Ancestry exploited are consumers,[5] and thus that cannot be the basis for a consumer nexus. And while he argues that Ancestry has created a "false impression" and deceived its customers through use of Plaintiff's and other's photos and information, the complaint lacks any allegations to support that conclusion. Plaintiff alleges (1) that Ancestry advertises its subscription services using Plaintiff's and other's identities, and (2) that Ancestry tries to attract users that would like to view more information about Plaintiff and other putative class members. But the missing link in Plaintiff's allegations is fatal: he does

---

[5] If anything, Plaintiff's allegations are that individuals whose identities are being used by Ancestry are *not* consumers. *See* Dkt. 29 at ¶66 (describing those individuals as "[t]he vast majority of people [who] . . . have no business relationship with Ancestry, are not Ancestry subscribers, and are not subject to a Terms of Service or any other agreement with Ancestry.")

not allege any deception or raise any concerns with consumer protection. In fact, he alleges the opposite: that consumers can in fact subscribe to get more information about the individuals. Dkt. 29 at ¶¶7, 59. Based on Plaintiff's allegations, consumers can access exactly the information Ancestry offers in its advertisements. Count II is dismissed.

### B. Count III: Intrusion Upon Seclusion

The elements of an intrusion upon seclusion claim under Illinois law are: "(1) an unauthorized intrusion or prying into a plaintiff's seclusion; (2) the intrusion would be highly offensive or objectionable to a reasonable person; (3) the matters upon which the intrusion occurred were private; and (4) the intrusion caused anguish and suffering." *Vega v. Chi. Park Dist.*, 958 F. Supp. 2d 943, 959 (N.D. Ill. 2013) (internal quotation marks omitted). "[T]he nature of this tort depends upon some type of highly offensive prying into the physical boundaries or affairs of another person," and "[t]he basis of the tort is not publication or publicity." *See Patel v. Zillow, Inc.*, No. 17-CV-4008, 2017 WL 3620812, at *9 (N.D. Ill. Aug. 23, 2017), *aff'd*, 915 F.3d 446 (7th Cir. 2019).

In Count III, Plaintiff alleges that Ancestry intruded into his seclusion by misusing his personal information, revealing private facts in which a reasonable person would expect privacy. Dkt. 29 at ¶90-93. This claim cannot survive for several reasons. Ancestry first argues that Plaintiff has failed to adequately plead this claim because he cannot show the use of his yearbook information was unauthorized. Plaintiff claims he has pled this, citing to his complaint allegations that he never provided consent to Ancestry. Dkt. 33, citing Dkt. 29 at ¶32. That response misconstrues what is required. Ancestry's Yearbook Database is based on information collected from (among other sources) individuals, libraries, and schools. *See, e.g.,* Dkt. 29 ¶10. There are no allegations that Ancestry's collection of this information was unauthorized—that is, taken without

permission from the owners of the yearbooks. Further, the allegation Plaintiff refers to only pleads that Plaintiff did not consent to *the use* of his name, photograph, or likeness. It is silent on the intrusion, which much form the basis for this claim. Further, matters of public record like a name, address, date of birth, and marriage are not private facts that give rise to a claim. And to the extent Plaintiff alleges the information gathered by Ancestry was private, his claim also fails because by participating in yearbook photos, he did not keep those facts private. *See Acosta v. Scott Labor LLC*, 377 F. Supp.2d 647, 650 (N.D. Ill. 2005) ("[P]ersons cannot reasonably maintain an expectation of privacy in that which they display openly.") (internal citation omitted); *see also Wrenn v. Exelon Generation, LLC*, 2019 WL 11660918, at *10 (N.D. Ill. Mar. 5, 2019).

Next, Plaintiff has failed to show the conduct he alleges is "highly offensive" to a reasonable person. *See Patel v. Zillow*, 2017 WL 3620812 at *10 (dismissing claim at motion to dismiss because plaintiff did not plead a highly offensive intrusion). As the court pointed out in *Patel*, "the *publication* of unlawful information alone says nothing about whether there was a highly offensive *intrusion* to glean the information ultimately published." *Id.* (emphasis in original). That is exactly the case here. While Plaintiff may feel that the publication of his information was highly offensive, he has not carried his burden at this stage to plead that the intrusion—that is, the collection of his yearbook record—was highly offensive.

Finally, Plaintiff does not adequately allege that the intrusion—to the extent one is alleged—caused him anguish or suffering. He argues in opposition that he "experienced distress at the knowledge his identity was being exploited to sell a product with which he had no relationship." *See* Dkt. 33 at 24, citing Dkt. 29 at ¶¶32-33, 49. Plaintiff's argument misconstrues the elements of the tort of intrusion upon seclusion: the alleged damage must flow from the *intrusion*, not the later publication. *See, e.g., Patel*, 2017 WL 3620812 at *10 (N.D. Ill. Aug. 23, 2017), *citing*

*Thomas v. Pearl*, 998 F.2d 447, 452 (7th Cir. 1993); *see also Angelo v. Moriarty,* 2016 WL 640625 (N.D. Ill. Feb. 18, 2016). Count III is dismissed.

### C. Count IV: Unjust Enrichment

Ancestry moves that Plaintiff's claim for unjust enrichment be dismissed because Plaintiff cannot plausibly allege that Ancestry benefitted on his expense. Dkt. 31 at 22. To state an unjust enrichment claim under Illinois law, "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011). Plaintiff counters that he has adequately pled Ancestry was enriched through Ancestry's purported exploitation of his identity. Dkt. 33 at 24, Dkt. 29 at ¶48. Because the Court finds that Plaintiff can proceed on his ICPA claim (*see supra*), his claim for unjust enrichment also survives. *See Cleary*, 565 F.3d at 517 (recognizing that where "an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim").

### CONCLUSION

For the reasons stated herein, Ancestry's Motion to Dismiss is granted in part and denied in part. The Court finds that it has personal jurisdiction. Counts II and III are dismissed.

_____
Virginia M. Kendall
United States District Judge

Date: December 7, 2021