**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

SERGIO BONILLA, on behalf of himself and
all others similarly situated,

                     Plaintiff,

    vs.

ANCESTRY.COM OPERATIONS INC., a
Virginia Corporation; ANCESTRY.COM INC.,
a Delaware Corporation; ANCESTRY.COM
LLC, a Delaware Limited Liability Company,

                     Defendants.

**CASE NO. 1:20-CV-07390**

**JUDGE VIRGINIA M. KENDALL**

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR**
**SUMMARY JUDGMENT AND RULE 56(d) MOTION TO DEFER OR DENY**

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ............................................................................................ 1

II. LEGAL STANDARDS .................................................................................................... 1

III. ARGUMENT .................................................................................................................. 2

    A. Summary Judgment Should be Denied Because, Even Were Ancestry's Factual Claims True, Neither of Plaintiff's Claims would be Time-Barred............................ 2

        1. The Limitations Period Restarts Each Time Ancestry Republishes Plaintiff's Name and Likeness in an Advertisement.......................................................... 2

        2. The Limitations Period Runs From the Date Plaintiff Discovered his Injury, not the Date of Publication. ............................................................................. 6

        3. Each Payment Ancestry Makes to PeopleConnect, Inc. in Exchange for Plaintiff's Name and Likeness is Injury Re-Starting the Limitations Period. .. 8

        4. The Five-Year Limitations Period for Injury to Personal Property and for Civil Actions not Otherwise Provided For Applies to Plaintiff's IRPA Claim. ...... 10

        5. Equitable Tolling Precludes Dismissal of Plaintiff's Claims. ........................ 11

        6. Plaintiff's Unjust Enrichment Claim is not Time-Barred............................... 12

    B. There are Genuine Issues of Material Facts, Including With Respect to "Facts" Ancestry Misleadingly Asserted in a Recent Interrogatory Response....................... 13

    C. Alternatively, Summary Judgment Should Be Denied or Deferred Under Rule 56(d) Because Plaintiff Lacks Information Essential to Oppose Ancestry's Motion........... 15

    D. Should this Court Grant Ancestry's Motion, this Court Should Grant Leave to Substitute a Plaintiff Whose Record was Uploaded within the Limitations Period. .. 19

IV. CONCLUSION ............................................................................................................... 21

# TABLE OF AUTHORITIES

## Cases

*Apollo Real Estate Inv. Fund v. Gelber*, 398 Ill. App. 3d 773 (Ill. App. Ct. 2009)...................... 12

*Berry v. Ford Modeling Agency*, No. 09-cv-8076, 2012 WL 5470289 (N.D. Ill. Nov. 9, 2012) ... 6

*Blair v. Nevada Landing P'ship*, 369 Ill. App. 3d 318 (2006) ............................................ 2, 3, 10

*Callahan v. PeopleConnect*, 2021 WL 5050079 (N.D. Cal. Nov. 1, 2021) ................................ 11

*Chambers v. American Trans Air, Inc.*, 17 F.3d 998 (7th Cir. 1994) ........................................... 1

*Collier v. Murphy*, No. 02-cv-2121, 2003 WL 1606637 (N.D. Ill. Mar. 24, 2003)...................... 4

*CSC Holdings, Inc. v. Redisi*, 309 F.3d 988 (7th Cir. 2002)........................................................ 12

*Hermitage Corp. v. Contr. Adj. Co.*, 166 Ill. 2d 72 (Ill. 1995) .................................................. 6, 8

*Hukic v. Aurora Loan*, 588 F.3d 420 (7th Cir. 2009) ................................................................. 3, 5

*Jackson Jordan v. Leydig*, 158 Ill. 2d 240 (Ill. 1994) .................................................................... 6

*James L. Yeager, Ph.D. & Midwest Research Labs., LLC v. Innovus Pharms., Inc.*,
     No. 18-cv-397, 2019 WL 447743 (N.D. Ill. Feb. 5, 2019) .................................................... 4

*King v. Cooke*, 26 F.3d 720 (7th Cir. 1994)................................................................................... 2

*Lehman v. Discovery Communications*, 332 F.Supp. 2d 534 (E.D.N.Y. 2004) ............................ 4

*Lugosi v. Universal Pictures*, 25 Cal.3d 813 (Cal. 1979) ............................................................. 9

*Martin v. Living Essentials, LLC*, 653 F. App'x 482 (7th Cir. 2016)......................................... 10

*Miller v. Gonzalez*, 761 F.3d 822 (7th Cir. 2014)....................................................................... 14

*Miller v. Runyon*, 77 F.3d 189 (7th Cir. 1996) ........................................................................... 12

*Phillips v. Ford Motor Co.*, 435 F.3d 785 (7th Cir. 2006).......................................................... 20

*Sessa v. Ancestry.com*, 2021 WL 4248389 (D. Nev. Sep. 16, 2021).......................................... 11

*Shropshear v. Corp. Counsel of City of Chicago*, 275 F.3d 593 (7th Cir. 2001) ........................ 11

*Smith v. OSF HealthCare Sys.*, 933 F.3d 859 (7th Cir. 2019) ............................................... 15, 19

*Smith v. Recordquest, LLC*, 989 F.3d 513 (7th Cir. 2021) ......................................................... 13

*Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc*.,
    61 Ill. 2d 129 (Ill. 1975) ...................................................................................................... 7

*Toney v. L'Oreal USA, Inc*., No. 02-cv-3002,
    2002 WL 31455975 (N.D. Ill. Oct. 30, 2002) ................................................................. 10, 11

*Toth-Gray v. Lamp Liter, Inc*., No. 19-cv-1327,
    2019 WL 3555179 (N.D. Ill. July 31, 2019) ...................................................................... 8, 10

*Troya Int'l, Ltd. v. Bird-X*, No. 12-cv-9785, 2017 WL 6059804 (N.D. Ill. Dec. 7, 2017) ............. 4

*Wells v. Talk Radio Network-FM, Inc*., No. 07-cv-4314,
    2008 WL 4888992 (N.D. Ill. Aug. 7, 2008) ...................................................................... 3, 4

**Statutes**

765 ILCS 1075 ........................................................................................................... 8, 10, 12

Fed. R. Civ. P. 56 ......................................................................................................... 14, 15, 19

# I. PRELIMINARY STATEMENT

This Court denied Ancestry's motion to dismiss Plaintiff Bonilla's IRPA and Illinois unjust enrichment claims on December 7, 2021. Dkt. No. 57. Little more than two months later, on February 10, 2022, Ancestry moved for summary judgment on the ground Plaintiff's claim is time-barred. Dkt. No. 60. At the time Ancestry filed its motion, discovery had barely commenced. Ancestry had not yet responded to Plaintiff's first set of RFPs. *See* Part A(1) *below*.

This Court should deny Ancestry's motion for summary judgment for multiple independent reasons. First, even were there no facts in dispute, Ancestry's motion would fail as a matter of law because, under a correct reading of the IRPA's statute of limitations, Plaintiff Bonilla's claims were timely filed even on Ancestry's representation of the facts. *See* Part A *below*. Second, there are genuine issues of material fact in dispute. For example, the parties dispute whether and when Ancestry displayed on-site messages on its Ancestry.com website that incorporated Plaintiff's name and photograph. *See* Part B *below*. Third, this Court should deny or defer the motion under Rule 56(d) because, given the early stage of discovery, Plaintiff lacks information essential to justify its opposition. *See* Part C *below*. Finally, were this Court to grant Ancestry's motion for summary judgment, Plaintiff would respectfully request leave to substitute a new named plaintiff after Ancestry has produced information necessary to determine when Ancestry uploaded each yearbook record from an Illinois yearbook. *See* Part D *below*.

## II. LEGAL STANDARDS

"[A] motion for summary judgment should not be granted unless it is abundantly clear that no material issue of fact exists." *Chambers v. American Trans Air, Inc.*, 17 F.3d 998, 1002 (7th Cir. 1994). A court may grant a Rule 56(d) motion if the party opposing summary judgment "shows by affidavit or declaration that . . . it cannot present facts essential to justify its opposition." A Rule 56(d) motion for additional discovery "is intended as a safeguard against a

premature grant of summary judgment" and courts "should construe the rule liberally." *King v. Cooke*, 26 F.3d 720, 726 (7th Cir. 1994).

## III. ARGUMENT

**A.     Summary Judgment Should be Denied Because, Even Were Ancestry's Factual Claims True, Neither of Plaintiff's Claims would be Time-Barred.**

There are genuine issues of material fact regarding the application of the statute of limitations to Plaintiff's claims. Ancestry responded to a relevant interrogatory with information Plaintiff believes to be incorrect. *See* Part B *below.* In addition, Plaintiff has not yet received information from Ancestry that is necessary to disprove factual assertions in Ancestry's motion for summary judgment. *See* Part C *below.* But even were the Court to decide Ancestry's motion solely on the parties' statements of material fact, the law compels the conclusion that Plaintiff's claims are not time-barred. Ancestry argues that (1) the limitations period runs from the time Ancestry uploaded Plaintiff's yearbook photograph and "began hosting" his name and likeness "on June 27, 2019"; (2) the limitations period for Plaintiff's IRPA claim is one year; and (3) Plaintiffs' unjust enrichment claim shares the same limitations period. *See* Dkt. No. 61, at *2-6. Each of these arguments is incorrect as a matter of law. Accordingly, Ancestry's motion should be denied.

### 1.     The Limitations Period Restarts Each Time Ancestry Republishes Plaintiff's Name and Likeness in an Advertisement.

Relying on *Blair*, Ancestry argues that the limitations period should be measured from the date Ancestry first uploaded Mr. Bonilla's name and photograph as a fifteen-year-old child to its yearbook database. Dkt. 61 at *3-4 (quoting *Blair v. Nevada Landing P'ship*, 369 Ill. App. 3d 318, 321 (2006)). This argument mischaracterizes the nature of Ancestry's advertisements incorporating Mr. Bonilla's identity. As alleged in the Complaint, Ancestry actively generates each advertisement in response to a query by a specific user seeking information about Mr.

Bonilla. Dkt. No. 29, ¶¶37-49. Because each display of an advertisement is "an attempt to reach a new audience" – *i.e.*, the user who searched for Mr. Bonilla – each display "retrigger[s] the statute of limitations." *See Wells v. Talk Radio Network-FM, Inc.*, No. 07-cv-4314, 2008 WL 4888992, at *3 (N.D. Ill. Aug. 7, 2008). Even if Ancestry did not target new users with each advertisement, because Ancestry actively generates each advertisement in response to a query, each display evidences a "conscious intent" to "republish" and therefore re-starts the limitations period. *See Hukic v. Aurora Loan*, 588 F.3d 420, 437-38 (7th Cir. 2009). Ancestry has not yet responded to Plaintiff's request for documents showing how often and on what dates Ancestry displayed advertisements incorporating Mr. Bonilla's identity, *see* Declaration of Benjamin R. Osborn Pursuant to Rule 56(d) ("Rule 56(d) Decl."), Ex. 6, RFP 14. Ancestry falsely claimed in an interrogatory response that it has never displayed on-site messages incorporating Mr. Bonilla's name and photograph, *see* Part B *below*. Nevertheless, it is undisputed that Ancestry displayed advertisements incorporating Mr. Bonilla's identity in response to a user query on at least five occasions in November and December 2020. *See* Plaintiff's Response to Defendants' Statement of Material Facts ("Plaintiff's Response Statement"), at ¶¶1-2. Plaintiff filed suit just over one month later, on December 14, 2020, well within the limitations period. Accordingly, Ancestry's motion for summary judgment should be denied as a matter of law.

Whether multiple advertisements using the same name and likeness constitute a "single publication" (for which the limitations period runs from the first publication) or a "continuing violation" (for which each publication re-starts the limitations period) depends on whether the advertisements target different audiences. In *Blair*, a casino displayed the plaintiff's photograph in passive advertisements such as "billboards" and "brochures," all of which "targeted a single audience" of "casino patrons." 369 Ill. App. 3d 318, 324. Because the advertisements were

"displayed predominantly within the casino and to existing casino customers," they were not "intended to reach different audiences" and therefore counted as a "single overt act." *Id.*, at 326. Similarly, in *Troya Int'l, Ltd. v. Bird-X*, the defendant's reposting of a promotional video counted as a single publication because the repostings did not "reach a new audience." No. 12-cv-9785, 2017 WL 6059804, at *14 (N.D. Ill. Dec. 7, 2017).

Conversely, in *James L. Yeager, Ph.D. & Midwest Research Labs., LLC v. Innovus Pharms., Inc.*, No. 18-cv-397, 2019 WL 447743, at *6 (N.D. Ill. Feb. 5, 2019), the defendant's advertisements were a "continuing violation" for which each republication triggered the statute of limitations when the defendant used social media sites like Facebook and Instagram to "continuously advertise to new audiences" in "different geographic locations." The *Yeager* court distinguished both *Blair* and *Troya*, noting in particular the *Blair* court's acknowledgement that "a republication can constitute a new cause of action" if the republication is intended "to reach a new audience." *Id.*, at *5. Similarly, in *Wells v. Talk Radio Network-FM, Inc.*, No. 07-cv-4314 2008 WL 4888992 (N.D. Ill. Aug. 7, 2008), each rebroadcast of a radio advertisement restarted the limitations period because each "rebroadcasting of Plaintiff's voice" "sought to reach a new audience." *Id.*, at *3. *See also Lehman v. Discovery Communications*, 332 F.Supp. 2d 534, 539 (E.D.N.Y. 2004) (each rebroadcast of television program was "intended to reach a new audience and is therefore an additional communication" re-triggering the limitations period); *Collier v. Murphy*, No. 02-cv-2121, 2003 WL 1606637, at *3 (N.D. Ill. Mar. 24, 2003) (same).

Here, because each advertisement targets a new audience, Ancestry's advertisements incorporating Plaintiff's and Class members names and photographs as children are like the re-publications in *Yeager*, *Wells*, *Lehman*, and *Collier*, and unlike those in *Blair* and *Troya*. As alleged in the Complaint, when a non-subscriber searches for Mr. Bonilla, Ancestry delivers on-

site messages prompting the non-subscriber to "Sign Up Now" for a subscription. *See* Dkt. No. 29, ¶42. These messages are targeted at the specific user who Ancestry urges to "Sign Up Now." Ancestry also sends marketing emails incorporating Class members' likenesses to the email accounts of non-subscribers who Ancestry believes may be related to Class members. *See id.*, ¶44. Ancestry's active, audience-specific advertisements represent a more modern approach to digital advertising than the passive marketing communications in *Blair* and *Troya*. In those cases, the defendants used passive media (brochures, billboards, and videos) to market to a diffuse and generalized audience. By contrast, Ancestry uses information about a specific potential customer (that she searched for or may be related to a Class member) to create and display advertisements specifically tailored to that customer. Because each Ancestry advertisement targets a new customer and is displayed only to that customer, the single publication rule cannot apply. *See Hukic v. Aurora Loan*, 588 F.3d 420, 436 (7th Cir. 2009) (explaining that "the single publication rule" applies only "where the same communication is heard at the same time by two or more persons.").

Even if Ancestry did not display Plaintiff's name and likeness to a new target audience with each advertisement, the "single publication" rule still would not apply because Ancestry actively generates each display of Plaintiff's identity in response to a specific user's query. In *Hukic v. Aurora Loan*, the Seventh Circuit explained that the single publication rule is intended to apply only in "the mass publication context" where there is "concern about a multiplicity of lawsuits" and the defendant has "no conscious intent" to "republish" the material after its initial publication. 588 F.3d 420, 437 (7th Cir. 2009). Accordingly, the Seventh Circuit reasoned that the "single publication" rule would not apply to a defendant's repeated publication of credit information to consumer reporting agencies, even if the "information in a later publication was

identical" to an earlier publication. *Id.* Here, as in *Hukic*, Ancestry's advertisements are not a "mass publication." Rather, like the credit reports in *Hukic*, Ancestry creates and delivers each advertisement with "conscious intent" to communicate to the specific user who Ancestry believes may be interested in a Class member. Therefore, the "single publication" rule does not apply, and each display of Plaintiff's name and photograph re-starts the limitations period.

### 2. The Limitations Period Runs From the Date Plaintiff Discovered his Injury, not the Date of Publication.

Even were Ancestry's advertisements incorporating Plaintiff's likeness a "single publication" for statute of limitations purposes, Ancestry's motion should still be denied because the limitations period runs from the time Plaintiff discovered Ancestry was using his likeness in advertisements, not the time Ancestry first published its advertisements.

The discovery rule "delays the commencement of the relevant statute of limitations until the plaintiff knows or reasonably should know that he has been injured and that his injury was wrongfully caused." *Jackson Jordan v. Leydig*, 158 Ill. 2d 240, 249-50 (Ill. 1994). The rule was developed to avoid the "harsh results" that would result from "mechanical application of a statute of limitations in situations where an individual would be barred from suit before he was aware that he was injured." *Hermitage Corp. v. Contr. Adj. Co.*, 166 Ill. 2d 72, 77-78 (Ill. 1995). When deciding whether to apply the discovery rule, a court must "balance[e] the increase in difficulty of proof which accompanies the passage of time against the hardship to the plaintiff who neither knows nor should have known of the existence of his right to sue." *Id.* When "the passage of time does little to increase the problems of proof, the ends of justice are served" by applying the discovery rule. *Id. See also Berry v. Ford Modeling Agency*, No. 09-cv-8076, 2012 WL 5470289, at *3 (N.D. Ill. Nov. 9, 2012) ("In Illinois, commencement of the pertinent limitations period

may be delayed until the plaintiff knew or should have known that he was wrongfully injured.") (citation omitted).

*Dun & Bradstreet* is informative. *See Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.,* 61 Ill. 2d 129 (Ill. 1975). In that case, the defendant published a "credit report" that allegedly "falsely reported the financial state of the plaintiff's business." *Id.,* at 130. The plaintiff sued for defamation. As here, the plaintiff filed suit several months after the defendant claimed a one-year limitations period had expired. *Id.,* at 130. The court ruled that the discovery rule applied to the plaintiff's claim. The court reasoned that the case should be distinguished from "defamations through so-called mass-media publications" because "the person commented on" did not have ready access to the credit report "in his role as a member of the public." *Id.,* at 137. Instead, the credit report "was received by the defendant's subscribers," of which the plaintiff was not one. *Id.* On these facts, the court concluded that "plaintiff's cause of action accrued at the time it knew or should have known of the existence of the allegedly defamatory report," not when the report was first distributed to subscribers. *Id.*

Here, based on the allegations in the Complaint and the facts in Plaintiff's Response Statement, the discovery rule should apply to Plaintiff's IRPA claim. Ancestry distributed its advertisements incorporating Plaintiff's name and likeness only to free-trial subscribers and non-paying users of Ancestry.com. Dkt. No. 29, at ¶¶37-46. Like the plaintiff in *Dun & Bradstreet*, Mr. Bonilla is not a subscriber or user of the defendant's services. Plaintiff's Response Statement ¶6. Prior to November 9, 2020, he was not even aware Ancestry offered subscription access to yearbook photographs, much less that Ancestry was using his name and photograph in advertisements for that service. *Id.* ¶5. Plaintiff could not reasonably be expected to "have known of the existence of his right to sue" when he was not a user of Ancestry.com and therefore not a

potential recipient of its advertisements. *See Hermitage,* at 77. Therefore the discovery rule should apply to his claim. *Id.*; *cf. Toth-Gray v. Lamp Liter, Inc.,* No. 19-cv-1327, 2019 WL 3555179, at *1 (N.D. Ill. July 31, 2019) (measuring the limitations period from the date the defendant first published the plaintiff's photograph on Facebook when the plaintiff was a Facebook user and had "over 3.8 million . . . followers" on the site). Any other outcome would be unfair, unjust, and illogical.

Furthermore, the "balance of hardships" analysis described in *Hermitage* weighs in favor of the discovery rule. Plaintiff sued December 14, 2020, less than six months after the date on which Ancestry claims the limitations period expired. Such a small delay will not "increase [the] difficulty in proof," especially when the majority of the information Plaintiff needs to build his case is publicly available on the defendants' website. Conversely, a "mechanical" application of the statute of limitations would cause "hardship" to the Plaintiff because it would deny his right to protect his privacy and intellectual property rights for reasons entirely outside his control.

The undisputed facts show that Plaintiff first discovered Ancestry was using his name and likeness on November 9, 2020. Plaintiff's Response Statement ¶3. Plaintiff filed his claim less than two months later, on December 14, 2020. Dkt. No. 1. Accordingly, Plaintiff's IRPA claim is within the limitations period, and Ancestry's motion should be denied.

### 3. Each Payment Ancestry Makes to PeopleConnect, Inc. in Exchange for Plaintiff's Name and Likeness is Injury Re-Starting the Limitations Period.

Plaintiff's IRPA claim seeks "profits derived from the unauthorized use" of Plaintiff's and Class members' names and photographs. *See* 765 ILCS 1075/40. Because Plaintiff and Class members are entitled to recover profits, each time Ancestry enters a new licensing agreement or renews an existing licensing agreement by paying or receiving royalties is a new injury to Plaintiff that re-triggers the statute of limitations. *See Lugosi v. Universal Pictures,* 25

Cal.3d 813, 831 (Cal. 1979) (dissenting opinion) (agreeing with the trial court's finding that "each license, and each renewal or extension thereof, constituted a separate tort" re-starting the statute for plaintiff's right of publicity claim arising from the unauthorized licensing of his likeness).

Ancestry pays a licensing fee to PeopleConnect, Inc. in exchange for its use of yearbook names and likenesses. Plaintiff's Response Statement, ¶8. In response to Plaintiff's discovery requests, Ancestry refused to produce agreements under which Ancestry pays or receives a licensing fee in exchange for Plaintiff's and Class members' yearbook names and photographs. Rule 56(d) Decl., Ex. 5, Response to RFP 1. Despite Ancestry's refusal to produce these agreements, it is undisputed that Ancestry has a licensing agreement with PeopleConnect, Inc., because PeopleConnect, Inc. disclosed the existence of this agreement in a sworn Declaration filed before the Northern District of California. Plaintiff's Response Statement, ¶8; Rule 56(d) Decl., ¶6 & Ex. 1. Ancestry may be a party to additional licensing agreements pursuant to which it pays or receives a fee related to Plaintiff's and Class members' names and likeness.[1]

Because Ancestry refused to produce its licensing agreements, the record is insufficiently developed to determine when Ancestry last injured Mr. Bonilla by entering, renewing, extending, or making or receiving a payment pursuant to a licensing agreement covering Mr. Bonilla's name and photograph. Accordingly, Ancestry's has not introduced sufficient evidence to support its motion for summary judgment, and the motion should be denied.

---

[1] As argued in Part C below, Ancestry's refusal to produce these and other relevant documents means this Court should defer or deny Ancestry's motion under Rule 52(d) even if the Court decides not to deny the motion as a matter of law based on the facts currently in the record.

### 4. The Five-Year Limitations Period for Injury to Personal Property and for Civil Actions not Otherwise Provided For Applies to Plaintiff's IRPA Claim.

Plaintiff acknowledges that several district courts, including this Court in *Toth-Gray v. Lamp Liter, Inc.*, No. 19-cv-1327, 2019 WL 3555179 (N.D. Ill. July 31, 2019), have followed *Blair* in applying a one-year limitations period to some IRPA claims. *Id.*, at *4 (*citing Blair v. Nevada Landing Partnership*, 369 Ill. App. 3d 318 (Ill. App. Ct. 2006)). However, as this Court noted, "the Seventh Circuit has repeatedly declined to predict if the Illinois supreme court would endorse *Blair*." *Id.* (quoting *Martin v. Living Essentials, LLC*, 653 F. App'x 482, 485-86 (7th Cir. 2016)). The Seventh Circuit has taken "pains to point out . . . that it considers it an open question whether IRPA claims are subject a one-year of five-year statute of limitations." *Id.* (quoting *Martin v. Wendy's Int'l, Inc*., No. 15-cv-6998, 2017 WL 1545684, at *3-4 (N.D. Ill. April 28, 2017)). One court in this district has held that a five-year statute of limitations applies. *Toney v. L'Oreal USA, Inc*., No. 02-cv-3002, 2002 WL 31455975, at *3 (N.D. Ill. Oct. 30, 2002), *vacated on other grounds*, 406 F.3d 905 (7th Cir. 2005). Others have acknowledged that the issue is unsettled. *See, e.g.*, *Martin*, at 486 (assuming "as a precaution" that a five-year limitations period applies).

Plaintiff submits that *Toney* was rightly decided, and Illinois' five-year limitations period for "injury done to . . . personal property" applies to Plaintiff's IRPA claim. *See Toney*, at *3 (quoting 735 ILCS 5/13-201). The IRPA explicitly recognizes that an individual's right of publicity is her personal property, which may be transferred or assigned. 765 ILCS 1075/15 ("The rights under this Act are *property rights* that are freely transferable") (emphasis added). Even if the commercial exploitation of an individual's name and identity were not "injury" to "personal property," Illinois' catch-all five-year limitations period for "civil actions not otherwise provided for" would apply. *See id.* (quoting 735 ILCS 5-13-205).

The rationale underlying the *Toney* court's conclusion applies with particular force on the facts of this case. Ancestry pays a licensing fee to PeopleConnect, Inc. in exchange for its use of Plaintiff's and Class members' names and likenesses. Plaintiff's Response Statement, ¶8. This underscores that Plaintiff suffered <u>economic</u> injury from Ancestry's uncompensated acquisition and exploitation of his personal property, not just injury from the violation of his privacy rights, and further supports the conclusion that the five-year limitations period for injury to property should apply. *Cf. Sessa v. Ancestry.com*, 2021 WL 4248389 at *6 (D. Nev. Sep. 16, 2021) (Ancestry's use of names and photographs injured the plaintiffs' "property interest in their likenesses"); *Callahan v. PeopleConnect*, 2021 WL 5050079 at *19 (N.D. Cal. Nov. 1, 2021) (use of yearbook names and photographs to advertise website subscriptions is "economic injury" to "intellectual property").

This Court should apply the five-year limitations period applies to Plaintiff's IRPA claims. However, should the Court conclude that it is bound to follow *Blair*, and that its application would require dismissal of Plaintiff Bonilla's claim, Plaintiff respectfully requests this Court certify to the Illinois Supreme Court the question of what limitations period applies to IRPA claims in light of the substantial body of Seventh Circuit and Northern District law recognizing that the question is unsettled.

### 5. Equitable Tolling Precludes Dismissal of Plaintiff's Claims.

"Equitable tolling permits a plaintiff to avoid the bar of the statute of limitations if despite the exercise of all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Shropshear v. Corp. Counsel of City of Chicago*, 275 F.3d 593, 595 (7th Cir. 2001). Unlike equitable estoppel, the application of equitable tolling does not require that "the defendant take[] active steps to prevent the plaintiff from suing in time." *Id.* Instead, a court may equitably toll the statute of limitations if "the plaintiff because of . . . irremediable lack of

information, or other circumstances beyond his control just cannot reasonably be expected to sue in time." *Miller v. Runyon*, 77 F.3d 189, 191 (7th Cir. 1996). "[T]he modern tendency is to toll until the plaintiff knew or by reasonable diligence should have known of both the injury and its governing cause." *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 992 (7th Cir. 2002).

Here, as described in Part A(2) above, Plaintiff is not a subscriber of any Ancestry products or services, and did not even know Ancestry offered a website subscription product providing access to yearbook photos until November 9, 2020. Plaintiff's Response Statement ¶¶3-7. Plaintiff could not "reasonably be expected to file suit on time" because "reasonable diligence" would not have revealed the existence of his claim. Plaintiff's ignorance of his claim is directly attributable to Ancestry's failure to obtain his consent before using his name and likeness in advertisements, as required by the IRPA. *See* 765 ILCS 1075/30; Plaintiff's Response Statement ¶7. For these reasons, this Court should exercise its discretion to equitable toll the statute of limitations and allow Plaintiff to pursue his IRPA claim.

### 6. Plaintiff's Unjust Enrichment Claim is not Time-Barred

Even were Plaintiff's IRPA claim time-barred, his claim for unjust enrichment is not. The statute of limitations for Illinois unjust enrichment claims is five years. *Apollo Real Estate Inv. Fund v. Gelber*, 398 Ill. App. 3d 773, 781 (Ill. App. Ct. 2009). Even were Ancestry correct that the limitations period began when Ancestry claims it first "hosted" Plaintiff's record on June 27, 2019, Plaintiff filed suit less than eighteen months later, well within the limitations period.

Ancestry argues that because Plaintiff's unjust enrichment claim "is premised on the same allegedly wrongful conduct" as the IRPA claim, this Court should dismiss the unjust enrichment claim if the IRPA claim is time-barred. ECF No. 61, at *6. This is incorrect. When an unjust enrichment claim rests on allegations that the defendant's conduct is "unlawful," the limitations period for unjust enrichment applies, even if the underlying law the defendant

violated carries a shorter limitations period. In *Smith v. Recordquest, LLC*, 989 F.3d 513, 522 (7th Cir. 2021), the defendant argued, as Ancestry does here, that because the plaintiff's "statutory and unjust enrichment claims rise and fall together, both are time barred." The Seventh Circuit rejected this argument, finding that Wisconsin's six-year statute of limitations applied to the plaintiff's unjust enrichment claim, not the limitations period for the underlying statutory claim. *Id.* Here, as in *Smith*, Plaintiff's state law claim for unjust enrichment is governed by the limitations period for Illinois unjust enrichment claims, which is five years.

**B.      There are Genuine Issues of Material Facts, Including With Respect to "Facts" Ancestry Misleadingly Asserted in a Recent Interrogatory Response.**

There are genuine disputes of material fact regarding whether and when Ancestry displayed on-site messages in which Mr. Bonilla's name and photograph appeared. On February 18, 2022, Plaintiff requested that Ancestry "[i]dentify all instances in which Plaintiff Sergio Bonilla's name and/or photograph appeared in an On-Site Message or Marketing Email created or delivered by Ancestry." Rule 56(d) Decl. ¶13 & Ex. 2, ROG 3. The interrogatory defined "On-Site Message" to encompass "all communications, pop-ups, text, images, photographs, banners, or other content that may be accessed or viewed on . . . www.ancestry.com." *Id.*, at *4. On March 11, 2022, Ancestry responded by claiming that "there are no instances in which Plaintiff Sergio Bonilla's name and/or photograph appeared in an On-Site Message or Marketing Email created or delivered by Ancestry to a subscriber, potential subscriber, or user of Ancestry.com." Rule 56(d) Decl. ¶14 & Ex. 3, Response to ROG 3.

Ancestry's response is false. The contrary material evidence is in both the initial Complaint and First Amended Complaint. On at least five occasions in November and December 2020, in the course of Counsel's investigation of Plaintiff's claim and preparation of the initial Complaint, Ancestry created and delivered to Counsel on-site messages in which Plaintiff Sergio

Bonilla's name and photograph appeared. Plaintiff's Response Statement, ¶¶1-2. True and correct screenshots of four of these messages appear in both the initial Complaint and First Amended Complaint. Dkt No. 1, ¶27, ¶31; Dkt. No. 29, ¶38, ¶42.

Ancestry's interrogatory response is also inconsistent with its own L.R. 56.1(A) statement. In that statement, Ancestry wrote, "[o]ther than . . . items that a user might see following a search for the Bonilla Record, Ancestry has not otherwise displayed the Bonilla Record to users of its website." Dkt. No. 62, ¶6. Ancestry's statement thus strongly suggests that Ancestry did "display[] the Bonilla Record" to "a user . . . following a search for the Bonilla Record." *See id.* This contradicts Ancestry's interrogatory response claiming that there are "no instances in which Plaintiff Sergio Bonilla's name and/or photograph appeared" in on-site messages.

Whether and when Ancestry delivered on-site messages that incorporated Mr. Bonilla's name and likeness to users of Ancestry.com is material to Ancestry's motion for summary judgment. As shown in Part A(1) above, each display of Mr. Bonilla's name and likeness re-triggered the limitations period. Because there is a genuine dispute of material fact regarding whether and when Ancestry displayed Mr. Bonilla's name and likeness, Ancestry's motion for summary judgment should be denied. *See* Fed. R. Civ. P. 56.

Where, as here, the non-movant provides reason to doubt the credibility of the moving party's factual claims, granting summary judgment is not appropriate. *See Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014) (court cannot "make credibility determinations" or "resolve factual disputes" on a motion for summary judgment).

**C.     Alternatively, Summary Judgment Should Be Denied or Deferred Under Rule 56(d) Because Plaintiff Lacks Information Essential to Oppose Ancestry's Motion.**

Under Rule 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). "A party seeking relief under Rule 56(d) must show by affidavit or declaration specific reasons discovery should be extended." *Smith v. OSF HealthCare Sys.*, 933 F.3d 859, 864 (7th Cir. 2019).

The Seventh Circuit recognizes "the importance of allowing a party the opportunity to take meaningful discovery before granting summary judgment against her." *Smith*, at 866. Where, as here, the movant files for summary judgment "before the close of discovery" and while "there are pending discovery disputes," appellate courts "often remand a denial of additional time for discovery." *Id.*, at 865 (citing appellate decisions finding that the denial of Rule 56(d) motion in these circumstances was an abuse of discretion). Here, Ancestry filed its motion for summary judgment on February 10, 2022, six days before Ancestry had even responded to Plaintiff's first set of requests for production, *see* Rule 56(d) Decl. ¶10 & Ex. 5. (Ancestry Responses and Objections served February 16, 2022), and nearly three weeks before Ancestry produced its (inadequate) first set of documents to Plaintiff. *See* Rule 56(d) Decl. ¶12. As explained below, there are numerous "pending discovery disputes" between the parties, many of which concern information relevant to Plaintiff's opposition to Ancestry's motion for summary judgment. Accordingly, if the Court does not deny Ancestry's motion as a matter of law for the reasons in Part A above, the Court should grant Plaintiff's Rule 56(d) motion to deny or defer Ancestry's motion for summary judgment so that Plaintiff may conduct necessary discovery.

As detailed in Plaintiff's Rule 56(d) declaration filed concurrently with this Opposition, Plaintiff lacks material information necessary to oppose Ancestry's assertion that the IRPA's statute of limitations bars Mr. Bonilla's claim. *See* Rule 56(d) Decl. ¶¶13-32. Although Plaintiff has served discovery requests seeking the missing information (*see id.*, Exs. 2, 4, 6), the information is not currently available to Plaintiff either because Ancestry responded to the relevant requests by refusing to produce responsive documents (*see id.*, Exs. 3, 5), or because Ancestry has not yet produced documents responsive to the relevant requests. The missing information includes:

(1) Identification of all occasions on which Ancestry displayed Mr. Bonilla's name or yearbook photograph to a non-paying user as part of a "Sign Up Now" message (*see* Dkt. No. 29, at ¶42), as part of promotional "free trial" access (*see id.*, at ¶38), or as part of "hint" email sent to a prospective subscriber (*see id.*, at ¶44). *See* Rule 56(d) Decl. ¶¶13-18; Ex. 2, RFP 14; Ex. 6, ROG 3 (discovery requests seeking this information served on February 18, 2022). This information is necessary to Plaintiff's opposition to Ancestry's summary judgment motion because, as shown in Part A above, each time Ancestry displays Mr. Bonilla's photograph in an on-site advertisement is a republication that re-triggers the IRPA's statute of limitations. Ancestry has not yet responded to Plaintiff's document request. Rule 56(d) Decl. ¶17. Ancestry responded to Plaintiff's interrogatory with a response Plaintiff believes to be untrue because it is contradicted by screenshots in the Complaint and by Counsel's personal experience of the Ancestry.com website. *See* Rule 56(d) Decl. ¶14-15; Part B *above*.

(2) Licensing agreements under which Ancestry pays or receives royalties or fees in exchange for Plaintiff's and Class members' yearbook photographs, including Ancestry's licensing agreement with PeopleConnect, Inc. *See* Rule 56(d) Decl. ¶¶19-24, Ex. 4, RFP No. 1 (discovery request seeking this information served on January 3, 2022). This information is necessary to Plaintiff's opposition to Ancestry's summary judgment motion because, as demonstrated in Part A above, each time Ancestry enters a new licensing agreement, renews an existing licensing agreement, or pays or receives a royalty related to Mr. Bonilla's or Class members' yearbook photographs is a new injury that re-triggers the IRPA's statute of limitations. The parties are actively conferring regarding this request, and Ancestry has not yet produced any licensing agreements. Rule 56(d) Decl., ¶¶20-23.

(3) Identification of which Illinois yearbooks in Ancestry's database contain records that Ancestry uploaded to its database on or after December 14, 2019. *See* Rule 56(d) Decl. ¶¶25-28; Ex. 2, ROG 1 & Ex. 6, RFP 12 (discovery requests seeking this information). This information is necessary to Plaintiff's opposition to Ancestry's summary judgment motion because, as demonstrated in Part D below, even were Ancestry correct that Mr. Bonilla's claim is time-barred, Plaintiff's counsel should be granted leave to substitute a named plaintiff whose record Ancestry uploaded on or after December 14, 2019. Ancestry refused to produce information in response to ROG 1. Rule 56(d) Decl. ¶¶26. Ancestry has not yet responded to RFP 12. *Id.* ¶27.

(4) Identification of which yearbook photographs from Illinois schools Ancestry has incorporated in promotional marketing ("hint") emails. *See* Rule 56(d) Decl. ¶¶29-32; Ex. 2, ROG 2 & Ex. 6, RFP 13 (discovery requests seeking this information). This

information is necessary to Plaintiff's opposition to Ancestry's summary judgment

motion because, as demonstrated in Part C below, even were Ancestry correct that

Mr. Bonilla's claim is time-barred, Plaintiff's counsel should be granted leave to

substitute a named plaintiff whose name and likeness Ancestry incorporated in a

promotional marketing "hint" email or on-site "hint" message on or after December

14, 2019. Ancestry refused to produce information in response to ROG 2. Rule 56(d)

Decl. ¶¶30. Ancestry has not yet responded to RFP 13. *Id.* ¶31.

Ancestry will likely argue that the Rule 56(d) information Plaintiff lacks is not "essential

to justify its opposition" because, on Ancestry's legal theory, the only date that matters is the

date on which Ancestry first uploaded Mr. Bonilla's photograph to its yearbook database. *See,*

*e.g.*, Dkt. No. 61, at *5 n.1. (arguing the "discovery rule" does not apply to Mr. Bonilla's IRPA

claim). On February 18, 2022, Plaintiff's counsel conferred with Ancestry to request a stipulated

briefing schedule under which the deadline for Plaintiff's opposition would be tied to Ancestry's

production of the missing information. Rule 56(d) Decl. ¶33 & Ex. 9. Ancestry refused. *Id.* As

explained in Part A above, Plaintiff disputes Ancestry's legal theory regarding how the IRPA's

statute of limitations applies to these facts. If Plaintiff is correct that each display of Mr.

Bonilla's name and photograph in an on-site advertisement re-started the limitations period, or

that each time Ancestry entered a licensing agreement or paid a royalty re-triggered the

limitations period, then the missing Rule 56(d) information in categories (1) and (2) above is

essential to Plaintiff's opposition. Even were Ancestry's legal arguments regarding the statute of

limitations correct, the missing Rule 56(d) information in categories (3) and (4) above is

essential to Plaintiff's opposition because Plaintiff's counsel need this information to identify a

substitute named plaintiff whose record Ancestry uploaded or included in a promotional email on or after December 14, 2019.

As the Seventh Circuit noted, "it can be risky to deny discovery based on a theory that the law makes the discovery irrelevant," especially where, as here, "that legal proposition is contested and the area of law is evolving quickly." *Smith v. OSF HealthCare Sys.*, 933 F.3d 859, 868 (7th Cir. 2019) (vacating grant of summary judgment motion and denial of Rule 56(d) motion for abuse of discretion).

For these reasons, even if this Court does not deny Ancestry's motion as a matter of law for the reasons in Part A above, this Court should deny or defer Ancestry's motion pursuant to Rule 56(d).

**D.      Should this Court Grant Ancestry's Motion, this Court Should Grant Leave to Substitute a Plaintiff Whose Record was Uploaded within the Limitations Period.**

Should this Court determine that Mr. Bonilla's IRPA claim is time-barred based on the application of a one-year statute of limitations running from the time Ancestry uploaded Mr. Bonilla's record, Plaintiff's counsel would respectfully request leave to substitute a named plaintiff whose record Ancestry uploaded on or after December 14, 2019, or whose yearbook photograph Ancestry incorporated in a promotional email on or after December 14, 2019 (the date one year prior to the filing of Mr. Bonilla's complaint). Because Ancestry is solely in possession of the information needed to determine when Ancestry uploaded a specific yearbook record to its database or included a specific yearbook record in a promotional email, Plaintiff respectfully requests that leave be granted until a date two months after Ancestry has provided the information requested in Plaintiff's ROGs 1 and 2 and RFPs 12 and 13. *See* Rule 56(d) Decl. ¶¶24-32.

When a named plaintiff falls out of the class, courts routinely grant leave to allow counsel to substitute new named plaintiffs. *Phillips v. Ford Motor Co.*, 435 F.3d 785, 787 (7th Cir. 2006) ("Substitution of unnamed class members for named plaintiffs who fall out of the case . . . is a common and normally an unexceptionable ('routine') feature of class action litigation both in the federal courts and in the Illinois courts.") (listing cases). Leave to substitute named plaintiffs is allowed even "if no motion to certify has [yet] been filed." *Id.* As the Seventh Circuit explained:

> [C]ourts thus disregard the jurisdictional void that is created when the named plaintiffs' claims are dismissed and, shortly afterwards, surrogates step forward to replace the named plaintiffs. . . This may seem irregular; but maybe there isn't really a jurisdictional void, since the class member who steps forward to take the place of the dismissed plaintiff has a real controversy with the defendant.

*Id.*, at 787. When counsel substitute a new named plaintiff, the new named plaintiff's claim "relat[es] back to the date of the filing of the original complaint." *Id.*, at 788. Accordingly, even were Ancestry's position on the IRPA's statute of limitations correct, a substitute named plaintiff's claim would not be time-barred so long as Ancestry uploaded her record on or after December 14, 2019, one year before Plaintiff filed his class action Complaint.

Should this Court grant leave to substitute, counsel are likely to succeed in locating a new plaintiff whose record Ancestry uploaded on or after December 14, 2019, because the record shows that Ancestry uploaded most of its yearbook records after that date. As alleged in the Complaint, Ancestry's yearbook database "includes over 47 million individual records from Illinois schools and universities." Dkt. No. 29, ¶51. Based on representations on Ancestry's website, it is an undisputed fact that of the 737 million total yearbook records from all states, 317 million were uploaded on December 19, 2019, an additional 51 million were uploaded on August 5, 2020, and an additional 38 million were uploaded on August 16, 2021. Rule 56(d) Decl., ¶34 & Ex. 10. Accordingly, roughly 55% of the yearbook records on Ancestry.com – or an estimated 26 million records from yearbooks in Illinois – were uploaded on or after December 14, 2019.

Accordingly, there are likely millions of individuals in Illinois whose IRPA claims against Ancestry would not be time-barred even were Ancestry's legal arguments correct.

## IV. CONCLUSION

For the reasons above, this Court should deny Ancestry's motion for summary judgment because the undisputed material facts demonstrate Plaintiff filed suit within the limitations period. Alternatively, this Court should deny Ancestry's motion because there is a genuine dispute of material fact regarding when and how Ancestry displayed Plaintiff's name and likeness in on-site messages. Alternatively, this Court should deny or defer Ancestry's motion pursuant to Rule 56(d) because Ancestry has failed to produce requested discovery relevant to Plaintiff's opposition to Ancestry's motion. If this Court grants Ancestry's motion with respect to Mr. Bonilla's claim, Plaintiff's counsel would respectfully request leave to substitute a new named plaintiff.


Respectfully submitted,


Dated: March 14, 2022            By:   */s/ Benjamin R. Osborn*
                                            Benjamin R. Osborn

                              Benjamin R. Osborn (*pro hac vice*)
                              LAW OFFICE OF BENJAMIN R. OSBORN
                              102 Bergen St.
                              Brooklyn, NY 11201
                              Phone: (347) 645-0464
                              Email: ben@benosbornlaw.com

                              Shannon M. McNulty
                              CLIFFORD LAW OFFICES, P.C.
                              120 N. LaSalle Street, 31st Floor
                              Chicago, Illinois 60602
                              312.899.9090
                              SMM@cliffordlaw.com

Michael F. Ram (*pro hac vice*)
mram@forthepeople.com
Marie N. Appel (*pro hac vice*)
mappel@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Telephone: (415) 358-6293

*Attorneys for Plaintiffs and the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

I, Shannon M. McNulty, an attorney, hereby certify that on March 14, 2022, I served the above and foregoing Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment and Rule 56(d) Motion to Defer or Deny, and all accompanying Declarations and Exhibits referenced therein, by causing a true and accurate copy of such papers to be filed and served on all counsel of record via the Court's CM/ECF electronic filing system.


*/s/ Shannon M. McNulty*

Shannon M. McNulty
smm@cliffordlaw.com
CLIFFORD LAW OFFICES, P.C.
120 N. LaSalle Street, Suite 3600
Chicago, IL 60602
312.899.9090