**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SERGIO BONILLA, on behalf of himself and all others similarly situated,<br><br>       Plaintiff,<br><br>    v.<br><br>ANCESTRY.COM OPERATIONS INC., a Virginia Corporation; ANCESTRY.COM INC., a Delaware Corporation; ANCESTRY.COM LLC, a Delaware Limited Liability Company; and DOES 1 through 50, inclusive,<br><br>       Defendants. | CASE NO. 1:20-cv-07390<br><br>Hon. Virginia M. Kendall |

**REPLY IN SUPPORT OF DEFENDANTS'**
**<u>MOTION FOR SUMMARY JUDGMENT</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...................................................................................... 1

ARGUMENT ................................................................................................................... 2

I.    THE "CONTINUING VIOLATION" RULE DOES NOT APPLY WHERE
THERE HAS BEEN NO NEW PUBLICATION ..................................................... 2

II.   PLAINTIFF'S "DISCOVERY" OF THE ALLEGED INJURY IS IRRELEVANT ......... 6

III.  ANCESTRY'S PURPORTED LICENSING PAYMENTS FOR THE
YEARBOOK RECORD HAVE NO BEARING ON THE STATUTE OF
LIMITATIONS ....................................................................................................... 8

IV.  COURTS HAVE CONSISTENTLY REJECTED PLAINTIFF'S ARGUMENT
THAT IRPA IS NOT SUBJECT TO A ONE YEAR STATUTE OF
LIMITATIONS ....................................................................................................... 9

V.   "EQUITABLE TOLLING" HAS NO APPLICATION WHERE, AS HERE,
EVEN MINIMAL DILIGENCE WOULD HAVE REVEALED THE
RELEVANT FACTS ............................................................................................ 10

VI.  PLAINTIFF'S DERIVATIVE UNJUST ENRICHMENT CLAIM DOES NOT
EXTEND THE LIMITATIONS PERIOD .............................................................. 10

VII. THE PURPORTED FACTUAL "DISPUTES" PLAINTIFF IDENTIFIES ARE
NEITHER DISPUTED NOR MATERIAL ............................................................. 11

VIII. PLAINTIFF CANNOT IDENTIFY ANY FACTS ESSENTIAL TO OPPOSE
ANCESTRY'S MOTION AND DEFERRAL PURSUANT TO RULE 56(D) IS
NOT APPROPRIATE ........................................................................................... 13

IX.  PLAINTIFF'S REQUEST FOR LEAVE TO SUBSTITUTE A NEW NAMED
PLAINTIFF IS PREMATURE AND IMPROPER .................................................. 14

CONCLUSION ............................................................................................................... 15

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Berry v. Ford Modeling Agency,*
    2012 WL 5470289 (N.D. Ill. Nov. 9, 2012) ................................................. 7

*Berry v. Ford Models, Inc.,*
    525 F. App'x 451 (7th Cir. 2013) ............................................................... 7

*Blair v. Nevada Landing P'ship,*
    369 Ill. App. 3d 318 (2006) ............................................................... 5, 6, 9

*Cleary v. Philip Morris Inc.,*
    656 F.3d 511 (7th Cir. 2011) .................................................................. 10

*Collier v. Murphy,*
    2003 WL 1606637 (N.D. Ill. Mar. 24, 2003) .............................................. 5

*CSC Holdings, Inc. v. Redisi,*
    309 F.3d 988 (7th Cir. 2002) ................................................................. 10

*Dahms v. Coloplast Corp.,*
    2020 WL 5593279 (N.D. Ill. Sept. 18, 2020) ........................................... 11

*Hinton v. Vonch, LLC,*
    2019 WL 3554273 (N.D. Ill. Aug. 2, 2019) ........................................... 3, 5

*Hukic v. Aurora Loan,*
    588 F.3d 420 (7th Cir. 2009) ................................................................... 4

*In re TRS Recovery Servs., Inc.,*
    2014 WL 1119695 (D. Me. Mar. 20, 2014) ............................................. 14

*In re Williams-Sonoma, Inc.,*
    947 F.3d 535 (9th Cir. 2020) ................................................................. 14

*James L. Yeager, Ph.D. & Midwest Research Labs., LLC v. Innovus Pharms., Inc.,*
    2019 WL 447743 (N.D. Ill. Feb. 5, 2019) ............................................. 4, 5

*Lehman v. Discovery Communications,*
    332 F. Supp. 2d 534 (E.D.N.Y. 2004) ..................................................... 5

*Lopez v. Admiral Theatre, Inc.,*
    2019 WL 4735438 (N.D. Ill. Sept. 26, 2019) ....................................... 3, 5, 8

*Martin v. Wendy's Int'l, Inc.,*
    183 F. Supp. 3d 925 (N.D. Ill. 2016) ....................................................... 9

*Miller v. Runyon,*
    77 F.3d 189 (7th Cir. 1996) .................................................................. 10

*Ossola v. Am. Express Co.,*
    2015 WL 5158712 (N.D. Ill. Sept. 3, 2015) ....................................... 14, 15

*Parker v. Google, Inc.,*
    422 F. Supp. 2d 492 (E.D. Pa. 2006) ....................................................... 3

*Pippen v. NBCUniversal Media, LLC,*
    734 F.3d 610 (7th Cir. 2013) ........................................................... 3, 4, 6

*Reed v. Bowen*,
    849 F.2d 1307 (10th Cir. 1988) ................................................................ 14

*Shropshear v. Corp. Counsel of City of Chicago*,
    275 F.3d 593 (7th Cir. 2001) .................................................................. 10

*Smith v. Recordquest, LLC*,
    989 F.3d 513 (7th Cir. 2021). .................................................................. 11

*Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.*,
    61 Ill. 2d 129 (Ill. 1975) ........................................................................ 7

*Toney v. L'Oreal USA, Inc.*,
    2002 WL 31455975 (N.D. Ill. Oct. 30, 2002) ........................................... 9

*Wells v. Talk Radio Network-FM, Inc.*,
    2008 WL 4888992 (N.D. Ill. Aug. 7, 2008) ............................................. 4

## **Rules**

Fed. R. Civ. P. 23 .................................................................................... 14

Fed. R. Civ. P. 26 .................................................................................... 14

Fed. R. Civ. P. 56 .................................................................................... 13

## PRELIMINARY STATEMENT

The material facts here are simple and uncontested. Since June 2019, plaintiff's yearbook record has been publicly accessible through Ancestry's website in the same manner plaintiff claims violates his right of publicity. Plaintiff did not bring suit until December 2020, thus his claim is barred by IRPA's one-year limitations period. None of the reasons plaintiff offers to avoid this result can be supported by the record or the law.

*First*, plaintiff's contention that the limitations period "resets" any time a user views his yearbook record on Ancestry's site directly contradicts the single publication rule. The cases are consistent that a website's initial posting of content triggers the limitations period, and neither continuous availability nor access by unique users give rise to a new claim.

*Second*, the date at which plaintiff himself allegedly "discovered" the alleged injury is irrelevant to this type of claim. Plaintiff concedes the information on which he bases his claim was publicly available and readily accessible. The cases treat public availability of an image as constructive notice without further factual inquiry into whether a plaintiff claims to have lacked actual knowledge.

*Third*, plaintiff takes the novel position (unsurprisingly without supporting authority or discernable logic) that the limitation period restarts each time Ancestry renews its licensing arrangement with PeopleConnect for yearbook rights. Of course, plaintiffs' alleged injury is not that Ancestry obtained legal rights to his image, rather it is (purportedly) Ancestry's display of his image, which has been continuous since June 2019. Plaintiff attempts to link such transactions to an unjust profits theory of damages, but fails to connect how amounts Ancestry *paid* could be considered "profits," or to reconcile this theory with the settled principle that continuing damages do not restart the limitations period.

Plaintiffs' remaining arguments are a hodgepodge of throwaways. He advocates for a

longer IRPA limitations period while acknowledging unbroken rejection of that view. He invokes equitable tolling despite conceding the relevant facts were publicly available, not concealed. He also tries to find daylight for his unjust enrichment theory by mischaracterizing a case that never reached the issue and ignoring the many cases that go against him.

Finally, plaintiff attempts to manufacture "disputed" facts, but this assertion (and his unfounded suggestion that Ancestry provided a "false" discovery response) are readily exposed as immaterial wordplay. Ancestry has repeatedly made clear that plaintiff's yearbook record was never featured in any "email" or "message." However, plaintiff now seeks to stretch the word "message" to include any webpage displayed in response to a user's search query on Ancestry's site. In plaintiff's world, if one searches the uscourts.gov website for "Supreme Court," the displayed results are "messages" to plaintiff from the federal government. But even this semantic game does not alter the single publication rule, and subsequent access to previously-posted content does not revive an expired limitations period.

Similarly, no further discovery will assist plaintiff in opposing Ancestry's motion. Plaintiff concedes much of the discovery he seeks has no bearing on the statute of limitations for his claim, but instead would assist plaintiff's counsel in identifying a new client. Courts uniformly reject this misuse of the discovery process; nor does it provide a basis to defer resolution of this motion.

For these reasons and those set out more fully below, Ancestry's motion should be granted.

## ARGUMENT

## I. THE "CONTINUING VIOLATION" RULE DOES NOT APPLY WHERE THERE HAS BEEN NO NEW PUBLICATION

Plaintiff argues the limitations period restarts every time a user happens to search for or view his yearbook record on Ancestry's website. ECF No. 69 at 2-6. That is not the law. Rather, where (as here) plaintiff's theory of publication is premised on content that appears on a web page,

a defendant's "one-time decision to post the images, and its subsequent failure to remove the posts, is insufficient to constitute a pattern of continuing unlawful acts and conduct, as required for a continuing violation, but rather represents a single overt act from which subsequent damages may flow." *Lopez v. Admiral Theatre, Inc.*, 2019 WL 4735438, at *3 (N.D. Ill. Sept. 26, 2019); *see also Hinton v. Vonch, LLC*, 2019 WL 3554273, at *2–3 (N.D. Ill. Aug. 2, 2019) ("According to the complaint, defendants posted the last image . . . more than one year before the complaint was filed . . . But because the images remained visible after the posting . . . the plaintiffs say the violations were 'continuous and ongoing.' . . . This was neither a continuing violation nor a hidden one. Under the single publication rule, an act . . . is complete at the time of the publication") (quoting *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614–15 (7th Cir. 2013)) (quotations, alterations omitted).

Here, the undisputed facts show Ancestry made a one-time decision to post the Bonilla Record on its site on June 27, 2019 and has since made no changes to the record or the manner in which it is displayed. SMF ¶¶ 4-6.[1] As in *Lopez* and *Hinton*, that the Bonilla Record has remained

---

[1] Plaintiff attempts to characterize the webpages displayed in response to user search queries as separate "advertisements" that "Ancestry actively generates," (ECF No. 69 at 2-3), but his own complaint makes clear this is not an accurate portrayal. *See* ECF No. 29 at ¶¶ 37-49 (purported "messages" and "advertisements" are, in fact, "screenshot[s] showing the results of a search for Sergio Bonilla's name on Ancestry.com," and screenshots of the webpages visitors may view if they happen to click certain links). Even a rudimentary understanding of how websites work belies any claim there was a "conscious intent" to republish (*see* ECF No. 69 at 3) each time a search result was transmitted in response to a user query. *See, e.g., Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 497 (E.D. Pa. 2006), *aff'd*, 242 F. App'x 833 (3d Cir. 2007) ("When an ISP automatically and temporarily stores data without human intervention so that the system can operate and transmit data to its users, the necessary element of volition is missing. The automatic activity of Google's search engine is analogous. It is clear that Google's automatic . . . results to users' search queries do not include the necessary volitional element"). And, to the extent there is any doubt, the undisputed facts confirm these purported "advertisements" are nothing more than the webpage results that return in response to user searches. SMF ¶¶ 2, 5.

available for users to find does not continuously restart the limitations period because there has been no further act *by Ancestry* with respect to the display of the record. Were it the case that further acts *by users* could restart the limitations period (as plaintiff contends), the "single publication rule" would be rendered meaningless—a newspaper defendant could be haled into court 30 years after its one-time publication if a reader happens to stumble across that old edition of the paper. This absurdity is exactly what the rule seeks to avoid. *Cf. Pippen*, 734 F.3d at 615 ("The [Single Publication] Act protects speakers and writers from repeated litigation arising from a single, but mass-produced, defamatory publication. . . . excluding the Internet from the single-publication rule would eviscerate the statute of limitations and expose online publishers to potentially limitless liability.").

The cases plaintiff cites to urge a contrary result are inapt—in each, the *defendant* engaged in new, conscious acts of publication, including through new channels, and it was those new acts *by the defendant* that restarted the limitations periods. *See Hukic v. Aurora Loan*, 588 F.3d 420, 436 (7th Cir. 2009) (defendant made multiple, distinct false reports to credit reporting agencies, and it was these "separate, discrete acts" by defendant that restarted the limitations period); *Wells v. Talk Radio Network-FM, Inc.*, 2008 WL 4888992, at *1-3 (N.D. Ill. Aug. 7, 2008) (defendant used recordings of a "radio voice personality" on multiple different occasions in subsequent broadcasts, including on new radio stations and in the form of "promotional discs" intended to capture new markets); *James L. Yeager, Ph.D. & Midwest Research Labs., LLC v. Innovus Pharms., Inc.*, 2019 WL 447743, at *6 (N.D. Ill. Feb. 5, 2019) (defendant did not publish the materials once through a single medium, but instead "first published the article in the 'News Star' in Louisiana in July 2016, followed by the 'Gwinnet Daily Post' in Georgia in September 2016, the 'Star Press' in Indiana in September 2016, the 'Greenville Sun' in Tennessee in October 2016,

and so on in local publications in Michigan, Texas, New York, Hawaii, California, Illinois, Colorado, etc.," as well as on social media sites like Facebook and Instagram; the court explicitly distinguished cases where "the defendants used similar channels to advertise or advertised to similar markets," because the defendant there "used several different channels . . . and different geographic locations to continuously advertise to new audiences"); *Collier v. Murphy*, 2003 WL 1606637, at *3 (N.D. Ill. Mar. 24, 2003) (subsequent episodes of a television series that each purportedly used plaintiff's likeness); *Lehman v. Discovery Communications*, 332 F. Supp. 2d 534, 539 (E.D.N.Y. 2004) (subsequent broadcasts of television show that allegedly defamed plaintiff). Plaintiff can point to no such new act *by Ancestry*, and the undisputed facts confirm there was not one. SMF ¶ 4-7.

Likewise, plaintiff fails to distinguish *Blair v. Nevada Landing P'ship*, 369 Ill. App. 3d 318, 321 (2006). *See* ECF No. 69 at 3-4. Plaintiff argues *Blair* involved "passive advertisements" inside a casino targeting a "single audience of casino patrons," and that Ancestry's display of the Bonilla Record differs because each user who searches for the record is a "new audience." *Id.* at 3-5. But were that correct, the limitations period in *Blair* likewise would have continued—every new "casino patron" that entered the facility and saw the advertisements would have been a "new audience." That was not the holding in *Blair*. 369 Ill. App. 3d at 324 ("The fact that a single photo of the plaintiff appeared via several mediums between 1995 and 2004 evidences a continual effect that is relevant to damages, but does not denote a continuing course of conduct for which the limitations period can be tolled."); *cf. Yeager*, 2019 WL 447743 at *6 (the court did not look to whether a new person might have seen the publication, but instead whether the defendant used "similar channels" to advertise to "similar markets"). Here, plaintiff does not contend Ancestry displayed the Bonilla Record other than through its website. As in *Blair*, *Lopez* and *Hinton*, that

users might have subsequently seen the record is irrelevant. *See Lopez*, 2019 WL 4735438 at *3; *Hinton*, 2019 WL 3554273 at *2–3.

To the extent plaintiff argues information made available through the internet remains searchable by new users and thus differs from traditional mass publications like newspapers or billboard displays (ECF No. 69 at 5), the Seventh Circuit has rejected that argument. *Pippen*, 734 F.3d at 615–16 ("no court has been persuaded that the even greater control that Internet publishers have over their content—and the much lower cost of editing or deleting that content—is a reason to exclude them from the [Single Publication] Act's coverage. Indeed, courts have drawn the opposite conclusion: the Internet's greater reach comes with an even greater potential for endless retriggering of the statute of limitations, multiplicity of suits and harassment of defendants.") (quotation, citation omitted).

## II. PLAINTIFF'S "DISCOVERY" OF THE ALLEGED INJURY IS IRRELEVANT

Plaintiff contends without fair support that the date he "discovered" his alleged injury triggers the limitations period. Illinois courts have reasoned that, "when the plaintiff . . . became aware" of the allegedly infringing material is irrelevant unless the material "was hidden, inherently undiscoverable, or inherently unknowable." *Blair*, 369 Ill. App. 3d at 326. Plaintiff generally asserts he was "unaware" his image was available on Ancestry's site before he saw it, but does not claim the information was "hidden," "undiscoverable," or "unknowable." *See* ECF No. 72. To the contrary, plaintiff alleges the information on which he bases his claim is available to *anyone* who visits Ancestry's site. ECF No. 29 at ¶ 40 ("Any visitor to the Ancestry website may access the promotional limited-access version . . . Users of the promotional limited-access version of the Ancestry website receive access to a limited version of same record corresponding to Mr. Bonilla that is available to paying users."); *see also* ECF No. 69 at 8 (conceding "the information Plaintiff

needs to build his case is publicly available on the defendants' website," and failing to identify any information that is not).

For this reason, plaintiff's reliance on *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.*, 61 Ill. 2d 129 (Ill. 1975) is misplaced. ECF No. 69 at 7-8. There, the publication at issue was a credit report given to a credit reporting agency's subscribers—the plaintiff did not have access to it as a member of the general public. *Id.* at 137-38 (noting those circumstances could be "readily distinguished from those involving alleged defamations through so-called mass-media publication," where the plaintiff "has had access to such published information," "if only in his role as a member of the public").

Here, plaintiff concedes the information necessary to assert his claim is available to the public. That plaintiff failed to see it before filing his claim does not support the delayed discovery rule: "the Court must also consider if Plaintiff *should have known earlier.* The answer is obviously yes." *Berry v. Ford Modeling Agency*, 2012 WL 5470289, at *3 (N.D. Ill. Nov. 9, 2012), *aff'd sub nom. Berry v. Ford Models, Inc.*, 525 F. App'x 451 (7th Cir. 2013) (emphasis added).

Plaintiff also invokes an unsupported "equitable" argument, contending the balance of hardships favors ignoring the statute of limitations because "the majority of the information Plaintiff needs to build his case is publicly available on the defendants' website," and thus the "small delay" in filing his claims would not increase the difficulty in proof. ECF No. 69 at 8. "That, however, is not the law. The Court cannot disregard a limitations period just because Plaintiff assures the Court that the relevant documents are still available." *Berry*, 2012 WL 5470289 at *3.

III.     **ANCESTRY'S PURPORTED LICENSING PAYMENTS FOR THE YEARBOOK RECORD HAVE NO BEARING ON THE STATUTE OF LIMITATIONS**

Plaintiff next argues "each payment Ancestry makes to PeopleConnect, Inc. in exchange for licensing" his yearbook restarts the limitations period because plaintiff is "entitled to recover profits[.]" ECF No. 69 at 8-9. Plaintiff cites no authority to support this argument, which makes little logical sense.

First, plaintiff fails to explain why amounts purportedly paid *by Ancestry* to PeopleConnect constitute "profits derived from the unauthorized use." An *expense* Ancestry may have incurred to license a yearbook necessarily is not a *profit* derived by Ancestry that plaintiff might be entitled to recover. And in all events courts have uniformly rejected the notion that such continuing *damages* flowing from an alleged violation are sufficient to restart the limitations period. *See, e.g. Lopez*, 2019 WL 4735438 at *3 (recognizing "subsequent damages may flow" from the initial act, but it is the act that triggers the limitations period). As shown above and in Ancestry's opening brief, the facts giving rise to plaintiff's claim (*i.e.*, the display of his yearbook record on Ancestry's website) have not changed since June 2019—to the extent plaintiff can allege further damages continue to result from the alleged violation, this does not change that the claim accrued (and the limitations period began to run) more than a year before he filed his complaint. *See* ECF No. 61 at 3-4.

More fundamentally, plaintiff fails to connect any licensing agreement to his claimed injury. Plaintiff contends Ancestry violated his right of publicity through its website display of his yearbook record—he has not claimed Ancestry misused his name or likeness by licensing it from

(or to) PeopleConnect or other third parties.  *See generally* ECF No. 29.[2]  Plaintiff cannot revive the statute of limitations through speculation about conduct entirely untethered to his claims.

## IV.    COURTS HAVE CONSISTENTLY REJECTED PLAINTIFF'S ARGUMENT THAT IRPA IS NOT SUBJECT TO A ONE YEAR STATUTE OF LIMITATIONS

Plaintiff acknowledges the weight of authority (including this Court) has held a one-year limitations period governs IRPA claims.  ECF No. 69 at 10.  Nonetheless, he asserts a five-year limitations period *should* apply, relying on *Toney v. L'Oreal USA, Inc.*, 2002 WL 31455975, at \*3 (N.D. Ill. Oct. 30, 2002).  *Id.*  However, "*Toney* is an outlier, never cited for that proposition, and was vacated on appeal on other grounds . . . . More recent cases . . . make it absolutely clear that the Right of Publicity Act has a one-year statute of limitations."  *Martin v. Wendy's Int'l, Inc.*, 183 F. Supp. 3d 925, 929–30 (N.D. Ill. 2016) (cleaned up).

Moreover, plaintiff's reasoning as to why the five-year limitations period should apply— that IRPA purportedly addresses "property" injuries that are subject to a longer limitations period—ignores the reason courts have consistently applied a one-year limitations period: IRPA displaced the common-law right of publicity claim, which had a one-year statute of limitations. Thus, courts apply that same limitations period to the statutory claim.  *See, e.g., Blair*, 369 Ill. App. 3d at 322.

---

[2]  Nor could he.  Setting aside that Ancestry has not licensed plaintiff's yearbook to any other party, plaintiff could not plausibly allege a licensing agreement for broad swaths of yearbook records (*see* ECF No. 69-1) constitutes use of *his* "identity" such that it might give rise to an IRPA claim.  *See* 765 Ill. Comp. Stat. 1075/30.

## V.    "EQUITABLE TOLLING" HAS NO APPLICATION WHERE, AS HERE, EVEN MINIMAL DILIGENCE WOULD HAVE REVEALED THE RELEVANT FACTS

Plaintiff contends "equitable tolling" should extend the limitations period, but his own authorities demonstrate the doctrine is inapplicable. Plaintiff's cases recognize that "equitable tolling" occurs only where a plaintiff is "*unable* to obtain vital information bearing on the existence of his claim." *Shropshear v. Corp. Counsel of City of Chicago,* 275 F.3d 593, 595 (7th Cir. 2001) (emphasis added); *see Miller v. Runyon*, 77 F.3d 189, 191 (7th Cir. 1996) (lack of information must be "irremediable"); *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 992 (7th Cir. 2002) (even where equitable tolling does apply, it ends when "by reasonable diligence [plaintiff] *should have known*") (emphasis added).

As shown above, plaintiff's concessions belie any assertion that he could not have discovered the information giving rise to his claims. ECF No. 29 at ¶ 40 ("Any visitor to the Ancestry website may access the promotional limited-access version . . . Users of the promotional limited-access version of the Ancestry website receive access to a limited version of same record corresponding to Mr. Bonilla that is available to paying users."); s*ee also* ECF No. 69 at 8 (conceding "the information Plaintiff needs to build his case is publicly available on the defendants' website," and failing to identify any information that is not).

Merely professing that the plaintiff was not "aware" of his claims provides no basis for equitable tolling. *See* ECF No. 72.

## VI.    PLAINTIFF'S DERIVATIVE UNJUST ENRICHMENT CLAIM DOES NOT EXTEND THE LIMITATIONS PERIOD

The Seventh Circuit has made clear that an unjust enrichment claim that "rests on the same improper conduct alleged in another claim . . . will be tied to this related claim [and] . . . will stand

or fall with the related claim." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). Indeed, this was the theory on which this Court allowed plaintiff's unjust enrichment claim to proceed past the pleading stage. ECF No. 57 at 19. Plaintiff does not dispute this. Nor does plaintiff even attempt to distinguish the wall of authorities that have dismissed derivative unjust enrichment claims where the underlying claim is time barred. *See* ECF No. 61 at 5-6; *Dahms v. Coloplast Corp.*, 2020 WL 5593279, at *6 (N.D. Ill. Sept. 18, 2020), *appeal dismissed*, 2021 WL 4934441 (7th Cir. Aug. 10, 2021) (plaintiff's "tort claims are time-barred. Because the tort claims do not survive summary judgment, the unjust enrichment claim likewise fails").

Instead, plaintiff incorrectly claims the Seventh Circuit "rejected this argument" in *Smith v. Recordquest, LLC*, 989 F.3d 513 (7th Cir. 2021). ECF No. 69 at 13. However, *Smith* determined both the underlying statutory claim *and* the unjust enrichment claim were subject to a six-year limitations period and were thus timely. *Id.* at 521-22 ("Smith's [statutory] claim is a private action for private relief, so it is timely under [the statute's] six-year limitations period. . . . Smith's unjust enrichment claim is also timely."). The court had no occasion to address whether an unjust enrichment claim fails where the underlying statutory claim is time barred. However, as shown in Ancestry's opening brief, courts that *have* addressed this issue have uniformly concluded a derivative unjust enrichment claim must fail with the underlying claim. *See* ECF No. 61 at 5-6. Plaintiff offers no reason the same result should not follow here.

## VII.   THE PURPORTED FACTUAL "DISPUTES" PLAINTIFF IDENTIFIES ARE NEITHER DISPUTED NOR MATERIAL

Plaintiff first asserts Ancestry's response to his interrogatory request seeking instances in which the Bonilla Record appeared in "marketing emails" or "on-site messages" is "false" and "inconsistent with [Ancestry's] own L.R. 56(A) statement." ECF No. 69 at 13-14. Neither

assertion is correct.

As set forth in Ancestry's Statement of Undisputed Material Facts (ECF No. 62), the "Bonilla Record has never been the subject of any hint emails sent by Ancestry." *Id.* at ¶¶ 3, 7. Plaintiff cannot dispute this. ECF No. 70 at ¶ 7. Consistent with this fact, Ancestry confirmed in response to plaintiff's interrogatory that "there are no instances in which Plaintiff Sergio Bonilla's name and/or photograph appeared in an On-Site Message or Marketing Email created or delivered by Ancestry to a subscriber, potential subscriber, or user of Ancestry.com." ECF No. 71-3 at 13.

Plaintiff's contention that Ancestry's interrogatory response is "false" is based on his attempt to distort the word "message" beyond recognized meaning, such that the term "message" would include any webpage displayed in response to a user search query. ECF No. 69 at 13-14 (referring to the screenshots in the complaint, which the complaint concedes are "the results of a search for Sergio Bonilla's name on Ancestry.com," as "messages" "delivered to Counsel"). But plaintiff ignores that Ancestry objected to his vague definition of "On-Site Message" precisely because it was unclear what this term was intended to include, and Ancestry explicitly stated that it interpreted this term to mean "messages sent by Ancestry through the website Ancestry.com to specific users." ECF No. 71-3 at 13. Plaintiff cannot dispute that Ancestry's response—as it is actually written—is accurate. His "dispute" is nothing more than irrelevant wordplay intended to foment confusion.

Plaintiff's only real "dispute" rests on his assertion that users (including plaintiff's counsel) visited Ancestry's website and searched for the Bonilla Record. But even accepting this as true, it is immaterial. As shown in Part I, that a record remains available on a website for users to access does not restart the limitations period—instead, the relevant question is when those records were first made available. Here, it is undisputed this occurred more than a year before plaintiff filed

suit and his claims are thus time barred.  *See* ECF No. 70 at ¶ 5.

## VIII.  PLAINTIFF CANNOT IDENTIFY ANY FACTS ESSENTIAL TO OPPOSE ANCESTRY'S MOTION AND DEFERRAL PURSUANT TO RULE 56(D) IS NOT APPROPRIATE

The four categories of information plaintiff contends are necessary to oppose Ancestry's motion have no bearing here.  *See* ECF No. 69 at 16-18.  Plaintiff argues he needs (1) identification of all instances in which a user searched for the Bonilla Record on Ancestry's site[3]; and (2) any "licensing agreements" relating to plaintiff's yearbook.  *Id.* at 16-17.  Plaintiff concedes, however, that this information is not necessary to the extent the Court does not accept plaintiff's arguments that user searches or licensing agreement renewals reset the limitations period.  *Id.* at 18.  As shown above, plaintiff's arguments about the significance of these facts are wrong as a matter of law; thus, it will not assist plaintiff to dive deeper down these rabbit holes.

Plaintiff also contends he needs Ancestry to identify *other* Illinois yearbooks uploaded to its database on or after December 14, 2019, and *other* Illinois yearbook records that have been included in "hint" emails.  ECF No. 69 at 17-18.  Plaintiff does not even attempt to argue this information is relevant to whether the statute of limitations for *his* claim has lapsed.  Instead, he contends this information is needed to identify a new plaintiff whose claims are not time barred. *Id.*  Plaintiff offers absolutely no support for his assertion the Court should delay resolution of a summary judgment motion to allow plaintiff's counsel to fish for a new client.  Rule 56(d) makes clear deferring resolution is appropriate only where the non-moving party "cannot present facts

---

[3]  Plaintiff also asserts he needs identification of all occasions on which the Bonilla Record was included as part of a "hint" email (ECF No. 69 at 16), but plaintiff already has that information—as set forth in Ancestry's interrogatory responses and its Statement of Undisputed Material Facts, the Bonilla Record has never been included in such an email.  ECF Nos. 62 at ¶ 7; 71-3 at 13.

*essential to justify its opposition*," Fed. R. Civ. P. 56(d), not where discovery might identify claims on behalf of some non-party to the motion.

Moreover, courts have repeatedly rejected attempts to use the discovery process for the improper purpose of allowing plaintiff's counsel to identify a new client. *See, e.g., Ossola v. Am. Express Co.*, 2015 WL 5158712, at *8 (N.D. Ill. Sept. 3, 2015), *objections overruled*, 2015 WL 13402269 (N.D. Ill. Dec. 22, 2015) ("Plaintiffs have not provided any authority—or even argument—demonstrating they are entitled to class discovery without a single adequate plaintiff, and the court's independent research has likewise revealed none. The unspoken truth, which the Plaintiffs' briefs avoid discussing, is that they need discovery to identify an appropriate representative. But it bears repeating that fishing for a client is not a permissible purpose of discovery"); *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 540 (9th Cir. 2020) ("using discovery to find a client to be the named plaintiff before a class action is certified is not within the scope of Rule 26(b)(1)"); *Reed v. Bowen*, 849 F.2d 1307, 1313-14 (10th Cir. 1988) ("No court has held . . . that counsel has a right to use the power of the courts, through the Rules of Civil Procedure, to find a client who could be intervened as a plaintiff in a suit which has no party plaintiff. That is true with respect both to class action cases analyzed under Fed. R. Civ. P. 23 and Fed. R. Civ. P. 26").

## IX. PLAINTIFF'S REQUEST FOR LEAVE TO SUBSTITUTE A NEW NAMED PLAINTIFF IS PREMATURE AND IMPROPER

Plaintiff requests leave to substitute a new named plaintiff whose claims are not time barred in the event Ancestry's motion is granted. However, plaintiff has not identified any new named plaintiff and his request is thus premature. *See, e.g., In re TRS Recovery Servs., Inc.*, 2014 WL 1119695, at *4 n. 3 (D. Me. Mar. 20, 2014) ("The plaintiffs request 'an opportunity to find

14

substitute representatives' if I reject these proposed named plaintiffs as representatives of the respective classes. . . . The request is premature. I do not know if there are substitutes, what class period they will assert, or the nature of their involvement.").

Further, to the extent plaintiff attempts to tie this request for "leave" to his request that Ancestry provide further discovery to allow plaintiff's counsel to identify a new class representative, this is improper. *See* ECF No. 69 at 19 (requesting "leave be granted until a date two months after Ancestry has provided the information requested in Plaintiff's ROGs 1 and 2 and RFPs 12 and 13."). "[I]t bears repeating that fishing for a client is not a permissible purpose of discovery[.]" *Ossola*, 2015 WL 5158712 at *8; *supra* at Part VIII.

## <u>CONCLUSION</u>

Because plaintiff's IRPA claim is barred by the statute of limitations, and plaintiff's derivative unjust enrichment claim fails with his IRPA claim, Ancestry is entitled to judgment as a matter of law.

Dated:   March 28, 2022

Respectfully submitted,

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By: /s/ *Shon Morgan*
        Shon Morgan

Shon Morgan (*pro hac vice*)
John W. Baumann (*pro hac vice*)
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
shonmorgan@quinnemanuel.com
jackbaumann@quinnemanuel.com

Daniel Lombard
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
(312) 705-7400
daniellombard@quinnemanuel.com

Cristina Henriquez (*pro hac vice*)
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
(650) 801-5000
cristinahenriquez@quinnemanuel.com

*Attorneys for Defendants Ancestry.com*
*Operations Inc., Ancestry.com Inc., and*
*Ancestry.com LLC*

**<u>CERTIFICATE OF SERVICE</u>**

I, the undersigned, hereby certify that on March 28, 2022, I caused a true and correct copy of the foregoing to be filed electronically with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to counsel of record via the Court's CM/ECF automated filing system.

*/s/ Shon Morgan*
Shon Morgan