# Exhibit 8

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543 | TEL (213) 443-3000 FAX (213) 443-3100

WRITER'S EMAIL ADDRESS
jackbaumann@quinnemanuel.com

March 7, 2022

**VIA E-MAIL**
BEN@BENOSBORNLAW.COM

Benjamin R. Osborn
LAW OFFICE OF BENJAMIN R. OSBORN
102 Bergen Street
Brooklyn, NY 11201

Re: *Bonilla v. Ancestry.com Operations Inc., et al*, Case No. 1:20-cv-07390 (N.D. Ill.)

Counsel:

We write in response to your February 25, 2022 letter regarding Ancestry.com Operations Inc.'s ("Ancestry") Responses and Objections to plaintiff's First Set of Requests for Production of Documents, served on February 16, 2022.

Ancestry objected to Requests 1-3, 7-9, and 11, which seek broad discovery unrelated to plaintiff's individual claim. Among other grounds, Ancestry objected that these requests are unduly burdensome in light of Ancestry's pending motion for summary judgment, which is dispositive and turns on undisputed facts that are unrelated to these Requests. Courts routinely defer discovery where, as here, a dispositive motion addressing a discrete question of law is pending. *See, e.g.*, *Landstrom v. Illinois Dep't of Children & Family Servs.*, 892 F.2d 670, 674 (7th Cir. 1990) (affirming order staying discovery pending resolution of qualified immunity claims); *Sprague v. Brook*, 149 F.R.D. 575, 578 (N.D. Ill. 1993) (disallowing discovery where "[n]one of the factual information sought by the plaintiffs is relevant to" the pending motion, "which may dispose of this case in its entirety") (collecting cases); *Tilley v. United States*, 270 F. Supp. 2d 731, 734 (M.D.N.C. 2003), *aff'd*, 85 F. App'x 333 (4th Cir. 2004) (where summary judgment motion was pending "which, if granted, would dispose of the case, . . . a stay of discovery [was] appropriate if the discovery requested . . . is not relevant to the opposition of the motion").

Accordingly, while Ancestry is optimistic the parties can work in good faith to reach an appropriate resolution of the outstanding discovery issues, to the extent the parties are unable to do so, Ancestry will seek a protective order pending resolution of its motion.

quinn emanuel urquhart & sullivan, llp

1

ATLANTA | AUSTIN | BOSTON | BRUSSELS | CHICAGO | DOHA | HAMBURG | HONG KONG | HOUSTON | LONDON | LOS ANGELES | MANNHEIM |
MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | RIYADH | SALT LAKE CITY | SAN FRANCISCO | SEATTLE | SHANGHAI |
SILICON VALLEY | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | ZURICH

**RFP No. 1**

This Request seeks all current and past agreements "relating to the licensing or purchase of information in the Yearbook Database, including Yearbook Photographs and Yearbook Names." In addition, plaintiff's Request stated that "Agreements produced should include amounts paid and received." Ancestry objected on several grounds, including relevance, proportionality, and undue burden.

Plaintiff asserts this Request is relevant to showing whether Ancestry's use of yearbook information was for a "commercial purpose," whether plaintiff's identity has "commercial value," the amount of "profits derived from the unauthorized use," and whether plaintiff suffered any injury. However, whether Ancestry purchased or licensed the information from a third party does not show whether *Ancestry's* use of that information was "commercial" within the meaning of the Illinois Right of Publicity Act, 765 Ill. Comp. Stat. § 1075/5. It also has no bearing on whether the yearbook information has commercial value to *plaintiff* or whether *plaintiff* suffered any injury. Similarly, any license agreements pursuant to which Ancestry paid a third party for yearbook information sheds no light on whether *Ancestry* profits from use of yearbook information.

In addition, this Request is vastly overbroad. For example, it is not limited to plaintiff (or even the putative class) and instead broadly seeks agreements governing the licensing of *any* yearbooks, including those of others plaintiff does not purport to represent and those outside of any relevant limitations period. And plaintiff does not explain how *all current and past* agreements relating to the licensing or purchase of information in the Yearbook Database, without any temporal or geographic limitation, is relevant or proportional to the needs of this litigation.

Plaintiff's correspondence clarifies that despite the language in the Request stating that "[a]greements produced should include amounts paid and received," plaintiff seeks only existing documents. With this clarification, and in the interest of facilitating a compromise, Ancestry will produce any current agreement relating to the licensing or purchase of plaintiff's yearbook.

**RFP No. 2**

This Request seeks documents sufficient to show Ancestry's revenue "derived from the sale of website subscriptions to ancestry.com in each fiscal quarter" since the time Ancestry began including access to the Yearbook Database as part of its subscription products. Ancestry objected to this Request on several grounds, including overbreadth, undue burden, relevance, and proportionality.

Although plaintiff contends this information is relevant to the profits Ancestry allegedly derived from its use of yearbook information, the Request is not so limited. Instead, it seeks Ancestry's *overall* revenue from its sale of *any* website subscriptions. Ancestry's overall revenue is far-removed from any purported damages to plaintiff—even setting aside that "revenue" is different from "profits," Ancestry's revenue is of course derived from many different sources that have nothing to do with the Yearbook Database. Nor does plaintiff's Request contain an appropriate temporal scope—it seeks information regarding all of Ancestry's revenue from the time it "began

2

including access to the Yearbook Database," which extends beyond the one-year limitations period under IRPA.

**RFP No. 3**

This Request seeks all documents relating to "why [Ancestry] display(s) On-Site Messages and Marketing Emails that incorporate Yearbook Photographs and/or Yearbook Names, including Documents relating to the value of these in attracting new users and Documents relating to the value of these in converting trial users into paying users." Ancestry objected to this Request on various grounds, including overbreadth, undue burden, relevance, and proportionality.

Plaintiff asserts this Request is relevant to showing whether Ancestry's use of yearbook information in On-Site Message and Marketing Emails was for a "commercial" or non-commercial purpose. However, plaintiff provides no support for his assertion that Ancestry's subjective reasons for using yearbook information are relevant to whether the information was used for a commercial purpose within the meaning of the IRPA, which will instead turn on how the information was used. Nor is there any support for plaintiff's assertion that this information might bear on "punitive damages," which are available only in extreme circumstances where the defendant's conduct "involve[s] outrage similar to that found in a crime[.]" *Doe v. Templeton*, 2004 WL 1882436, at *5 (N.D. Ill. Aug. 6, 2004). Though plaintiff's complaint contains a conclusory request for punitive damages, he has not asserted any allegations that could possibly justify such relief.

In addition—as shown in Ancestry's pending motion for summary judgment—plaintiff's yearbook record has never been displayed as an on-site message and has never been the subject of a marketing e-mail. Accordingly, questions of "why" Ancestry might display yearbook information in these ways are irrelevant to his claim.

However, to further discussions as to a potential compromise on this Request and to further evaluate the associated burden, please provide proposed search terms and any applicable limitations, including a proposed timeframe.

**RFP No. 7**

This Request seeks "[a]ll documents relating to whether you obtained consent from Plaintiff or any members of the Class for the use of their Yearbook Photographs." Ancestry objected to this Request on various grounds, including that it is premature and unduly burdensome. Nonetheless, Ancestry agreed to produce responsive, non-privileged, non-work product documents in its possession, custody, or control, located after a reasonable search, that are sufficient to show if Ancestry obtained consent from plaintiff.

As Ancestry indicated, Ancestry has not yet completed its investigation of this case or taken discovery from plaintiff. Though plaintiff has asserted (and you have represented) plaintiff (individually or through any representative) never signed up for any Ancestry account, Ancestry is entitled to test the validity of that assertion through its own discovery—including discovery concerning, for example, email and IP addresses, plaintiff's browser history, any other documentation of visits to Ancestry's website, and records of plaintiff's interactions with other

3

companies, including, for example, social media companies (such as Facebook, Instagram, etc.), job websites (such as Indeed, LinkedIn, etc.), and other sites that provide access to yearbook information (Classmates, MyHeritage, etc.) to whom he conveyed the information at issue here (name, school attended, age, etc.). Until this discovery occurs, Ancestry cannot confirm whether, in fact, plaintiff consented such that there might be documents responsive to this Request. The same is true of other, unidentified putative class members.

**RFP No. 8**

This Request seeks "[a]ll Documents concerning whether [Ancestry's] use of Yearbook Photographs, Yearbook Names, and other personal information implicates the privacy of the subjects or their intellectual property rights." Ancestry objected on grounds that included overbreadth, undue burden, relevance, and proportionality.

Plaintiff asserts this Request is relevant to whether plaintiff has standing or has suffered an injury and whether plaintiff can recover because the information at issue is not private. However, Ancestry's internal discussions have no bearing on whether plaintiff has suffered injury or has standing, or even the factual question of whether the information at issue is private. These will turn on questions of law and fact that have nothing to do with any internal discussions that might have occurred regarding these issues.

**RFP No. 9**

This Request seeks "[a]ll Documents related to how you obtained the photographs, names, and other information in the Yearbook Database, including Documents sufficient to show whether yearbook publishers intended yearbooks to be published online as part of the Yearbook Database." Ancestry objected to this Request, in part, because it is unclear what it seeks: the photographs, names and other information in the Yearbook Database are obtained from yearbooks. You have now clarified this Request seeks documents related to Ancestry's methods for procuring the yearbooks themselves. That clarification is helpful but the Request remains overbroad. For example, it is not limited to plaintiff (or even the putative class) and instead seeks information relating to how Ancestry obtained *any* yearbooks, including those of others plaintiff does not purport to represent and those outside of any relevant limitations period.

In the interest of facilitating a compromise, Ancestry will produce documents sufficient to show how Ancestry obtained plaintiff's yearbook.

**RFP No. 11**

This Request seeks all documents relating to requests Ancestry "received to remove names, Yearbook Photographs, or other personal information from ancestry.com, including documents sufficient to how [Ancestry] responded to each such request." Ancestry objected to this Request on grounds that included overbreadth, undue burden, relevance, and proportionality.

Plaintiff asserts this Request is relevant to whether Ancestry obtained consent from the putative class members, whether punitive damages are appropriate, whether equitable relief is warranted, and whether there is personal jurisdiction. As discussed above, plaintiff's conclusory contention

4

that Ancestry's use of his yearbook record justifies punitive damages is not sufficient to seek broad discovery unrelated to the merits of his claims. Nor does this Request bear on whether equitable relief is warranted or whether personal jurisdiction exists.

In the interest of facilitating a compromise, Ancestry is amenable to producing documents sufficient to show Ancestry's policies, practices and/or procedures for handling such requests.

*   *   *

Ancestry continues to reserve all rights, and remains open to discussing these issues further, including through a meet and confer process after plaintiff has meaningfully considered Ancestry's responses.

Best regards,

*/s/Jack Baumann*

Jack Baumann


cc: Counsel of Record