# Exhibit 9

April 1, 2022

<u>Sent via email:</u>
Shon Morgan
shonmorgan@quinnemanuel.com
John W. Baumann
jackbaumann@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017

cc: Counsel of Record

      Re: *Bonilla v. Ancestry.com Operations Inc., et al.*
      Case No. 1:20-cv-07390
      Hon. Virginia M. Kendall

Counsel,

      I write in response to: (1) Ancestry's letter dated March 7, 2022; (2) Ancestry's Responses and Objections to Plaintiff's Second Set of RFPs, dated March 21, 2022; and (3) Ancestry's Responses and Objections to Plaintiff's First set of Interrogatories, dated March 7, 2022. As explained below, Ancestry's responses to most of Plaintiff's discovery requests remain deficient.

      Ancestry's refusal to produce relevant documents and information based on Ancestry's subjective belief that its pending motion for summary judgment will be "dispositive" is inappropriate and unjustified by the law. *See Robbins v. NCO Fin. Sys., Inc.*, No. 2:06-cv-116, 2006 WL 3833352, at *5 (N.D. Ind. Dec. 12, 2006) (granting motion to compel and cautioning defendant that "arguments based upon assumptions regarding the merits of the case are misplaced in a discovery dispute"); *Andrea Distrib., Inc. v. Dean Foods of Wis., LLC*, 15-cv-341, 2016 WL 3199544, at *7 (W.D. Wis. June 7, 2016) ("[t]his court . . . does not afford the parties the luxury of suspending discovery while dispositive motions are pending"). Because the Court has not ordered a stay of discovery pending resolution of Ancestry's motion, Ancestry has no valid basis on which to refuse production of relevant materials. *Cf. Midwest Operating Eng'rs Welfare Fund v. Davis & Son Excavation, LLC*, No. 19-cv-1153, 2021 WL 1192560 (N.D. Ill. Mar. 30, 2021) (discovery stayed pending resolution of summary judgment motion because the moving party sought and obtained a stay). In every case you cited in your March 7 letter, a stay of discovery was granted only after a party moved for and obtained a judge's order. The cases you cite do not support Ancestry's position here, *i.e.*, that Ancestry may refuse discovery of relevant information without a court order because it subjectively believes it will prevail on a pending motion.

1

To date, Ancestry has produced a grand total of five documents, comprising seven pages, that are responsive to Plaintiff's document requests. *See* Ancestry_00000001 to -07.[1] Ancestry has not yet produced a single document responsive to Plaintiff's RFPs Nos. 1, 2, 3, 7, 8, 9, 13, and 14. This is deficient. Ancestry's responses to plaintiff's interrogatories are no better. Ancestry refused to respond to Plaintiff's ROGs Nos. 1 and 2, and Ancestry's response to Plaintiff's ROG 3 is contradicted by counsel's experience and by information Plaintiff included in his Complaint.

While we are hopeful Plaintiff and Ancestry can resolve these pending disputes, if Ancestry continues to refuse production simply because it has filed a motion for summary judgment and for the additional meritless objections discussed below, Plaintiff intends to file a motion to compel. Furthermore, if Ancestry fails to reconcile its response to Plaintiff's ROG 3 with the facts and declines to amend its response, Plaintiff intends to seek appropriate relief from the Court.

**Request for Production No. 1 ("Licensing Agreements")**

In your March 7 letter, you agreed to produce "any current agreement relating to the licensing or purchase of plaintiff's yearbook." Please produce these licensing agreements no later than April 8.

Plaintiff disagrees that the scope of Ancestry's production should be limited to agreements related to "plaintiff's yearbook." Plaintiff has asserted class claims on behalf of a class of Illinois residents. Among other issues, licensing agreements related to the claims of absent class members are relevant to Rule 23's typicality and commonality requirements. *See Miner v. Gov't Payment Serv., Inc.*, No. 14-cv-7474, 2017 WL 3909508, at *3 (N.D. Ill. Sep. 5, 2017) ("as Plaintiff correctly notes, discovery before a class certification ruling is appropriate . . . [and] may be used to help determine whether the class can properly be certified"). At a minimum, in addition to licensing agreements related to Plaintiff's yearbook, Ancestry must produce all licensing agreements related to yearbooks from Illinois schools.

Ancestry should also produce all licensing agreements related to yearbooks anywhere in the country. The terms of those agreements, including the amounts Ancestry paid or received in exchange for yearbook names and likenesses, are relevant to establishing the commercial value of a yearbook name and likeness, and the amount of profit Ancestry derived from each yearbook name and likeness. These facts are relevant to at least the following issues: (1) Ancestry's assertion that the IRPA does not apply because Ancestry's use was not for a commercial purpose; (2) the amount of "profits derived from the unauthorized use," *see* 765 ILCS 1075/40(a)(1); (3) the amount of Ancestry's unjust enrichment; and (4) proving use "for commercial purposes." *See id.* at 1075/30.

To the extent Ancestry's reference to "current agreements" is meant to limit the scope of this request to licensing agreements that are currently active, Plaintiff does not agree to this

---

[1] Ancestry has also produced 1,000 pages showing the results of a search on Ancestry.com, which is not responsive to any document request. *See* Ancestry_00000008 to -1007.

2

limitation. Past licensing agreements are relevant. The statutory entitlement to "profits derived" is not limited to profits derived from a "current" licensing agreement. To the extent Ancestry's reference to "current agreements" means "agreements currently in Ancestry's possession," all of Plaintiff's discovery requests are already by definition limited to documents in Ancestry's "possession, custody, or control."

Ancestry claims this request is "vastly overbroad" because it encompasses "past" agreements and because it is not limited in geographic scope. However, Ancestry fails to explain why producing past agreements, and agreements related to yearbooks outside of Illinois, would be unduly burdensome. Most companies maintain contracts, including licensing agreements, in organized and easily accessible files as part of the normal course of business. Accordingly, it is not clear why it would be burdensome for Ancestry to produce such documents.

**Request for Production No. 2 ("Revenue")**

Plaintiff requests documents sufficient to show Ancestry's revenue "derived from the sale of website subscriptions to ancestry.com in each fiscal quarter" since the time Ancestry began including access to the Yearbook Database as part of its subscription products.

Ancestry objects that "revenue is different from profits." This objection fails. Under 765 ILC 1075/45, the plaintiff is "required to prove the . . . gross revenue attributable to the unauthorized use." It is the defendant's burden to then prove "deductible expenses." Accordingly, Plaintiff's request for Ancestry's revenues relates directly to what the plaintiff must prove under the statute.

Ancestry also objects that "Ancestry's revenue is of course derived from many different sources that have nothing to do with the Yearbook Database." This is not a reason to refuse production. First, the request is limited to sales of website subscriptions made after Ancestry began including access to the Yearbook Database as part of its subscription products. Second, Ancestry does not dispute that some of the revenue it earned from website subscriptions is attributable to the Yearbook Database. Even were Ancestry correct that some fraction of revenues from website subscriptions is attributable to sources other than the Yearbook Database, Ancestry's total subscription revenues are clearly relevant to that calculation.

Ancestry also objects that the request "extends beyond the one-year limitations period under the IRPA." As Plaintiff argued in opposition to Ancestry's motion for summary judgment, Plaintiff disputes Ancestry's interpretation of the IRPA's statute of limitations. Even were Ancestry's interpretation of the statute of limitations correct, a limitation on *when a plaintiff may bring a claim* is not the same as a limitation on the *time period for which a plaintiff may seek damages*. There is no temporal limitation in the IRPA on the period for which a plaintiff may seek damages.

Ancestry's objections are not valid. However, to facilitate a potential compromise while Ancestry's motion for summary judgment is pending, Plaintiff is willing to limit the scope of RFP No. 2 to fiscal quarters up to and including one year prior to the date on which plaintiff filed this lawsuit. Please let us know whether Ancestry is willing to produce responsive documents

subject to this limitation while Ancestry's motion is pending. Plaintiff reserves the right to revisit the scope of this request after the Court decides Ancestry's motion.

**Request for Production No. 3 ("Why Ancestry Uses Yearbook Names and Photographs")**

In the March 7 letter, as well as the briefing surrounding Ancestry's motion for summary judgment, Ancestry asserts "plaintiff's yearbook record has never been displayed as an on-site message and has never been the subject of a marketing e-mail." As Plaintiff demonstrated in his opposition to Ancestry's motion, this cannot be correct. Please reconcile Ancestry's claim with the screenshots displayed in the Complaint, which show that Ancestry has displayed plaintiff's yearbook record in an on-site message.

As requested in your March 7 letter, plaintiff proposes the following search terms. Search terms are case-insensitive. The "!" character is meant to match any string of characters, including a null string:

SEARCH 1: (conver! OR acquir! OR attract! OR sell OR sale OR subscrib!) AND yearbook AND (user OR customer OR subscriber OR visitor)

SEARCH 2: "yearbook database" AND (conver! OR acquir! OR attract! OR sell OR sale OR subscrib! OR value OR worth)

Plaintiff suggests the following timeframe. **Beginning**: the date one year prior to the date on which Ancestry first began including access to the Yearbook Database as part of its subscription products. **Ending**: continuing through the end of the discovery period.

Plaintiff believes the most likely period during which Ancestry's officers and employees would have discussed the value of yearbook records is the period immediately prior to Ancestry's decision to add yearbook records to its subscription offerings. Accordingly, while Plaintiff is willing to discuss appropriate temporal limitations, Plaintiff believes any compromises should include some period of time immediately prior to and after the decision to add yearbook records.

Plaintiff reiterates his request that Ancestry provide an org chart and propose custodians, which Plaintiff first requested by email on February 14, and to which Ancestry has not yet responded.

**Request for Production No. 7 ("Consent")**

This Request seeks "[a]ll documents relating to whether you obtained consent from Plaintiff or any members of the Class for the use of their Yearbook Photographs."

Your letter of March 7 states that Ancestry "agree[s] to produce responsive, non-privileged, non-work product documents in its possession, custody, or control, located after a reasonable search, that are sufficient to show if Ancestry obtained consent from plaintiff." But you then appear to contradict this agreement, arguing that "Ancestry cannot confirm whether . . .

4

there might be documents responsive to this Request" without Ancestry taking discovery from plaintiff.

This does not make sense. The request is limited to documents that are in Ancestry's "possession, custody, or control." *See* Plaintiff's First Set of Requests for Production of Documents, definition of "Documents." It does not seek documents from other sources, including those Ancestry speculates may exist. *See* March 7 letter (referring to "email and IP addresses, plaintiff's browser history," and other speculative potential sources). In addition, the request does not seek documents "sufficient to show" whether Ancestry obtained consent. It seeks all documents "relating to" whether Ancestry obtained consent. Please confirm that you will produce all documents in Ancestry's possession, custody, or control, related to whether Ancestry obtained consent from plaintiff. If there are no such documents, please confirm so in writing.

Ancestry has not served a discovery request on Plaintiff, so its assertions regarding what discovery it may be entitled to are irrelevant. Plaintiff disagrees with Ancestry's assertions regarding discovery to which it is entitled and expressly reserves the right to object should Ancestry serve requests seeking said discovery.

Ancestry must also produce documents relating to whether Ancestry obtained consent from absent Class members. This discovery is relevant to the requirements of Rule 23. Please confirm that you will produce all documents in Ancestry's possession, custody, or control, related to whether Ancestry obtained consent from absent Class members.

**Request for Production No. 8 ("Privacy and Intellectual Property Rights")**

Plaintiff's eighth request seeks "Documents concerning whether your use of Yearbook Photographs, Yearbook Names, and other personal information implicates the privacy of the subjects or their intellectual property rights."

Ancestry offers no response to Plaintiff's position that the request is relevant to whether Ancestry "willfully violated" the statue. *See* February 25 letter, *citing* 765 ILCS 1075 *et seq*. Because you have conceded that the requested documents are relevant to Plaintiff's affirmative case, please confirm you will produce responsive documents.

In response to Plaintiff's position that the request is also relevant to several of the arguments Ancestry raised in its motion to dismiss, Ancestry objects that "Ancestry's internal discussions have no bearing on whether plaintiff has suffered injury or has standing, or even the factual question of whether the information at issue is private." This objection fails. In arguing Plaintiff lacks standing, Ancestry argued that "disclosure cannot cause harm" because yearbook information "is already a matter of public record." Dkt. 17, at *8. While it is Plaintiff's position that this argument is irrelevant because liability under the IRPA arises from "commercial use" rather than "public disclosure," Plaintiff is nevertheless entitled to discovery of information necessary to counter Ancestry's argument. Communications indicating that Ancestry's officers or employees understood they would be distributing yearbook names and photographs to a much

5

larger audience than intended are relevant. Please confirm you will produce responsive documents.

The requested documents are also relevant to Ancestry's argument that Plaintiff and the class do not have a "property interest" in their names and likenesses. Dkt. 17, at *9. Communications indicating that Ancestry officers or employees understood that yearbook names and likenesses belong to the students portrayed are relevant to rebutting Ancestry's argument. Please confirm you will produce responsive documents.

While your March 7 letter refers to "internal discussions" within Ancestry, the request is not so limited. The request seeks "[d]ocuments" on the specified topic, which encompasses both internal and external communications.

**Request for Production 9 ("How Ancestry Obtained Yearbooks and Yearbook Photographs")**

Plaintiff's ninth request seeks documents "related to how you obtained the photographs, names, and other information in the Yearbook Database, including Documents sufficient to show whether yearbook publishers intended yearbooks to be published online as part of the Yearbook Database."

In your March 7 letter, you agree to "produce documents sufficient to show how Ancestry obtained plaintiff's yearbook." Please produce these documents no later than April 8.

Ancestry's objections are not valid. However, to facilitate a potential compromise, Plaintiff is willing to limit the scope of RFP No. 9 to yearbooks from Illinois. While Ancestry's motion for summary judgment is pending, Plaintiff is also willing to limit the temporal scope to yearbooks that Ancestry added to its Yearbook Database on or after a date one year prior to the date on which Plaintiff filed this lawsuit. Please let us know whether Ancestry is willing to produce responsive documents subject to this limitation while Ancestry's motion is pending. Plaintiff reserves the right to revisit the scope of this request after the Court decides Ancestry's motion.

**Request for Production 11 ("Requests to Remove Names")**

Plaintiff's eleventh request seeks documents "relating to requests that you have received to remove names, Yearbook Photographs, or other personal information from ancestry.com."

In your March 7 letter, you agree to "documents sufficient to show Ancestry's policies, practices and/or procedures for handling such requests." Please produce these documents no later than April 8.

While relevant, documents evidencing Ancestry's policies are not sufficient. Ancestry should also produce documents relating to specific requests Ancestry received to remove personal information, because how Ancestry actually responded to these requests is relevant to Plaintiff's claims. Your March 7 letter offers no response to Plaintiff's statement that this request

6

is relevant to whether Ancestry obtained consent from putative class members. Because you have conceded the information is relevant, please confirm you will produce the requested information.

Your letter asserts without argument that the requested information does not "bear on whether equitable relief is warranted or whether personal jurisdiction exists" and is not relevant to "whether punitive damages are appropriate." This is incorrect. If discovery reveals that Ancestry failed to honor requests to remove yearbook information, this would support an argument that Ancestry has engaged in inequitable conduct, thereby supporting a claim for punitive damages and for unjust enrichment. Furthermore, any requests Ancestry received from an Illinois resident or related to an Illinois yearbook are relevant to establishing Ancestry's contacts with the state of Illinois.

In the interest of compromise, we are willing to limit the scope of this request to (1) requests to remove Yearbook Names or Yearbook Photographs, and (2) requests related to yearbooks from schools in Illinois. Please confirm you will produce the requested information subject to these limitations.

**Request for Production 12 and Interrogatory 1 ("Illinois Yearbooks and Dates They Were Added")**

Plaintiff's twelfth request seeks documents "sufficient to identify all yearbooks in the Yearbook Database from schools in Illinois and the date on which each such yearbook was added to the Yearbook Database." Plaintiff's first interrogatory requests that Ancestry identify the same information.

This request and interrogatory are relevant to Plaintiff's affirmative case, including a future motion for class certification, because they are relevant to ascertaining which individuals are members of the class. The request and interrogatory are also relevant to Ancestry's argument that the IRPA's limitations period runs from the time Ancestry first uploaded a yearbook into its Yearbook Database. While Plaintiff disagrees with Ancestry's interpretation of the statute of limitations, Plaintiff is entitled to discovery necessary to respond to Ancestry's argument.

Ancestry writes that it "does not intend to produce documents in response to this Request." In support of this blanket refusal, Ancestry lists seven objections, none of which is a valid reason to refuse production. First, Ancestry claims the request is overboard because it (a) is "neither relevant to the claims or defenses of any party nor proportional to the needs of the case," (b) seeks documents "without any appropriate temporal limitation," and (c) seeks documents "concerning those whom plaintiff does not purport to represent" because some non-residents of Illinois appear in Illinois yearbooks. This objection fails. The request is relevant to Plaintiff's claim and the claims of absent Class members because it seeks to establish the dates on which their names and likenesses were added to the Ancestry Yearbook database. Ancestry has taken the position that only those Class members whose names and photographs were added to the Yearbook Database within one year of Plaintiff filing suit have claims within the limitations period. While Plaintiff disputes this interpretation of the law, Plaintiff is entitled to discovery needed to establish which Class members would have non-time-barred claims were Ancestry's interpretation correct. With respect to temporal limitation, Plaintiff disagrees that any temporal

7

limitation is necessary. However, to facilitate compromise, Plaintiff is willing to limit the scope of the request to yearbooks for which individuals' yearbook records were added to the Ancestry database on or after a date one year prior to the date on which Plaintiff filed his claim. Plaintiff reserves the right to revisit the scope of this request after the Court rules on Ancestry's motion for summary judgment. Finally, that some people who are not currently Illinois residents may appear in Illinois yearbooks does not change the fact that the dates on which Illinois yearbooks were uploaded are clearly relevant to absent Class members' claims. In the spirit of compromise, if Ancestry is able to demonstrate that the entire population of a given Illinois school no longer resides in Illinois, Plaintiff will agree to exclude that school from the scope of the request.

Second, Ancestry claims that the documents sought are "as accessible to plaintiff as they are to Ancestry." This objection is false. Plaintiff does not have access to the dates on which specific yearbook records were added to the Ancestry Yearbook Database.

Third, Ancestry claims the request is "unduly burdensome" because it would require Ancestry to catalogue "every yearbook from an Illinois school." This objection is difficult to square with the information on Ancestry's website, which indicates that Ancestry added yearbook records to its Yearbook Database in bulk on a limited number of specific dates. It is also difficult to square with Ancestry's document production, which shows that Ancestry maintains a query-able database of information related to yearbook records. *See, e.g.*, Ancestry_00000004 (database pull). It is likely Ancestry could respond to Plaintiff's request with no more than a simple database query. Nevertheless, to facilitate compromise, while Ancestry's motion for summary judgment is pending Plaintiff is willing to limit the scope of this request to yearbook records that were added to Ancestry's website on or after a date one year prior to the date on which Plaintiff filed this lawsuit. Plaintiff reserves the right to revisit the scope of this request after the Court rules on Ancestry's motion.

Fourth, Ancestry claims this request seeks information that is "commercially sensitive, confidential, proprietary and/or reflective of trade secrets." This objection does not make sense. The date on which Ancestry uploaded a yearbook to a database is not "commercially sensitive," and it certainly does not reflect "trade secrets." It is ironic that while Ancestry apparently has no qualms exploiting the names and likenesses of millions of individuals without their consent, it insists that the dates on which it uploaded those names and likenesses somehow constitute Ancestry's "proprietary" information protected by "trade secrets." Even were Ancestry correct that this information is confidential, the parties have already agreed to a protective order under which Ancestry may chose an appropriate confidentiality designation.

Fifth, Ancestry objects that the request is overly broad, irrelevant, and unduly burdensome because it "seeks names and information of putative class members prior to class certification." This objection fails because it misconstrues Plaintiff's request, and because it is unsupported by the law. The request does not seek the names or contact information of absent class members. Rather, the request seeks the dates on which specific yearbooks were uploaded to Ancestry's database. This is relevant to Plaintiff's affirmative case because Ancestry has taken the position that only Class members whose yearbook records were added to the Ancestry Database on or after a date one year prior to the date on which Plaintiff filed suit have claims that are not time-barred under the IRPA. While Plaintiff disagrees with Ancestry's legal position, if

8

Ancestry's interpretation of the IRPA's statute of limitations is correct, the requested information will be necessary to ascertain which individuals are members of the Class. If, as Plaintiff contends, Ancestry's interpretation of the statute of limitations is incorrect, the requested information is relevant to Rule 23's typicality and commonality requirements because it is necessary to establish which absent Class members have claims that fall within the IRPA's limitations period.

Even were Ancestry correct that the request seeks names and contact information for absent Class members, Ancestry's objection would still be unsupported by the law. Courts regularly allow discovery of "names and other identifying data for potential class members." *Martin v. Comcast Corp.*, Case No: 12-cv-6421, 2015 WL 163052, at *3 (N.D. Ill. Jan. 13, 2015) ("Many courts, including this one, have ordered that this kind of discovery is appropriate."); *Drake v. Aerotek, Inc.*, 14-cv-216, 2014 WL 7408715, at *1 (W.D. Wis. Dec. 30, 2014) (allowing discovery of names and contact information for absent class members when "relevant . . . to show typicality and commonality"). *See also* Williams v. Chartwell Fin. Servs., Ltd., 204 F.3d 748, 759 (7th Cir. 2000) ("The plaintiffs have a right to contact members of the putative class . . . and any discovery limitations should be carefully drawn") (citations omitted).

Sixth, Ancestry objects that this request is "duplicative of Interrogatory No. 1." This is not a valid reason to refuse production. If appropriate, Ancestry may respond to a request for production and an interrogatory with the same information.

Seventh, Ancestry objects that the request is "unduly burdensome" because it is "irrelevant to the case-dispositive issues before the court in Ancestry's motion for summary judgment." As shown at the beginning of this letter, Ancestry's subjective belief that its pending motion will be "case-dispositive" is irrelevant to its discovery obligations. The Court denied Ancestry's motion to dismiss Plaintiff's IRPA and unjust enrichment claims, and discovery has commenced. Plaintiff's request is relevant to the typicality and commonality requirements of Rule 23. Accordingly, Ancestry has no valid basis on which to refuse production.

In response to Plaintiff's ROG No. 1, Ancestry writes that it "does not intend to substantively respond to this Interrogatory at this time" and repeats the same objections it made to Plaintiff's document request. For the reasons explained above, Ancestry's objections are not valid.

**Request for Production 13 and Interrogatory 2 ("Yearbook Names Incorporated in a Hint Message")**

Plaintiff's thirteenth request seeks documents "sufficient to identify all Yearbook Names from schools in Illinois that have been incorporated in a Hint Message." Plaintiff's second interrogatory requests that Ancestry identify the same information. This request and interrogatory are relevant to Plaintiff's affirmative case, including a future motion for class certification, because they are necessary to establish which members of the Class have had their names and likenesses incorporated in Ancestry Hint Messages.

9

In response, Ancestry writes that it "does not intend to produce documents in response to this Request." In support of this blanket refusal, Ancestry lists seven objections, none of which is a valid reason to refuse production.

First, Ancestry repeats its first objection to Plaintiff's RFP No. 12. Plaintiff references and incorporates his response to that objection above, including the suggested limitations to the scope of this request while Ancestry's motion for summary judgment is pending.

Second, Ancestry claims this request is "unduly burdensome" because it requires that Ancestry "catalogue and index every Hint Message to identify those that contain" names and likenesses from Illinois yearbooks. To facilitate compromise, while Ancestry's motion for summary judgment is pending Plaintiff is willing to limit the scope of this request to Hint Messages that Ancestry sent on or after a date one year prior to the date on which Plaintiff filed this lawsuit. Plaintiff reserves the right to revisit the scope of this request after the Court rules on Ancestry's motion. If the number of such messages exceeds ten thousand, Plaintiff is also willing to discuss a potential compromise under which Ancestry would (1) inform Plaintiff of the total number of such messages; and (2) produce a representative sample.

Third, Ancestry claims the request is "unduly burdensome" because it requires Ancestry to "create documents." However, Ancestry provides no support for its contention that it would be unduly burdensome to provide the following information for each Hint Messages sent with the name and likeness of a student from an Illinois school: "name of individual; name of school; location of school within Illinois (city and county); year of yearbook publication; date (day, month, and year) on which the yearbook was added the Yearbook Database; and date(s) on which the Yearbook Name was incorporated in a Hint Message.[,]" including." Ancestry's document production shows Ancestry maintains a query-able database of information related to hint messages. *See* Ancestry_00000004 (database pull referring to "database table storing record of hints sent in weekly hints emails"). The same document shows that Ancestry can query that database specifically for Hint Messages that include information from the "US Yearbooks collection." *Id.* Ancestry's document production also shows that Ancestry can conduct database queries that are limited by state. *See, e.g.*, Ancestry_00000007 (database pull showing that Ancestry has 103,128 subscribers with a billing address in Illinois). Accordingly, based on Ancestry's production, it appears Ancestry could respond fulsomely to Plaintiff's document request simply by typing a few lines of SQL instructions. This is not "unduly burdensome."

Ancestry's fourth, fifth, sixth, and seventh objections are substantially similar to its fourth, fifth, sixth, and seventh objections to Plaintiff's Request for Production 12. For the reasons explained above, these objections fail.

In response to Plaintiff's ROG No. 2, Ancestry writes that it "does not intend to substantively respond to this Interrogatory at this time" and repeats the same objections it made to Plaintiff's document request. For the reasons explained above, Ancestry's objections are not valid.

**Request for Production 14 and Interrogatory 3 ("Ancestry's Displays of Plaintiff Bonilla's Name and Likeness")**

Plaintiff's fourteenth request seeks "All On-Site Message or Marketing Emails created or delivered by Ancestry in which Plaintiff Sergio Bonilla's name and/or photograph appeared." Plaintiff's third interrogatory requests that Ancestry identify "all instances" in which Ancestry displayed On-Site Messages or Marketing Emails incorporating Plaintiff Bonilla's name and likeness.

Ancestry responded to Plaintiff's third interrogatory by claiming that "there are no instances in which Plaintiff Sergio Bonilla's name and/or photograph appeared in an On-Site Message or Marketing Email created or delivered by Ancestry to a subscriber, potential subscriber, or user of Ancestry.com." As Plaintiff showed in his response to Ancestry's motion for summary judgment, Plaintiff knows this claim is inaccurate. Ancestry has displayed on-site messages incorporating Plaintiff's name and photograph. Several of these messages are included as screenshots in the Complaint.

Similarly, Ancestry responded to Plaintiff's fourteenth request with the claim that "there are no such documents." For the reasons stated above, Plaintiff knows that this claim is inaccurate.

Please explain the factual basis for the claim that "there are no instances in which Plaintiff Sergio Bonilla's name and/or photograph appeared in an On-Site Message." Please describe the process you undertook to verify this claim. Please reconcile your claim with the screenshots shown in the Complaint, which clearly demonstrate that Mr. Bonilla's name and photograph were displayed in on-site messages on the Ancestry website. Please state whether you will agree to modify Ancestry's responses to RFP No. 14 and ROG 3 in light of the facts shown in the Complaint. Please provide your response no later than April 8.

\*\*\*

We appreciate your prompt review of this letter. While the exchange of letters has been helpful in clarifying the party's positions, we suggest it would be a more efficient use of the parties' time and resources to meet and confer via telephone or Zoom. Please provide dates and times for a call the week of April 4-8 so that we may discuss outstanding issues and determine whether a motion to compel is necessary.

Respectfully,

Benjamin R. Osborn

*/s/ Benjamin R. Osborn*
ben@benosbornlaw.com
(347) 645-0464
Law Office of Benjamin R. Osborn
102 Bergen St.
Brooklyn, NY, 11201