**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SERGIO BONILLA, on behalf of himself and all others similarly situated, | ) ) ) ) | |
| *Plaintiff*, | ) ) | |
| v. | ) ) | No. 20 C 7390 |
| ANCESTRY.COM OPERATIONS INC., a Virginia Corporation; ANCESTRY.COM INC., a Delaware Corporation; ANCESTRY.COM LLC, a Delaware Limited Liability Company; and DOES 1 through 50, inclusive, | ) ) ) ) ) ) ) | Judge Virginia M. Kendall |
| *Defendants*. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Sergio Bonilla learned that Defendants Ancestry.com Operations Inc., Ancestry.com Inc., and Ancestry.com LLC (collectively, "Ancestry") maintain a searchable database for high-school yearbooks including the one in which his image is contained. Upon learning this, Bonilla sued Ancestry for violating the Illinois Right of Publicity Act ("IRPA") and unjustly enriching itself by using his likeness to solicit Ancestry's paid products and services without his consent. Ancestry now moves for summary judgment asserting that his claim is time-barred. (Dkt. 60). For the following reasons, Defendants' Motion for Summary Judgment is granted.

**BACKGROUND**

Ancestry is a genealogy company that operates Ancestry.com, a public website through which users can search for records in different databases. (Dkt. 62 ¶¶ 1–2). One of the searchable databases is Ancestry's "U.S., School Yearbooks, 1900-1999," referred to as the "Yearbook

1

Database." (*Id.* ¶2). This database collects yearbook records, about 47 million individual records in total from Illinois schools and universities.[1] (*Id.* ¶2). Ancestry offers a fourteen-day "free trial" to new subscribers for its products and various subscription plans for paying customers. (Dkt. 1 ¶¶ 5, 7). The company also sends promotional emails to users who have signed up for a free account but not a paid subscription; these promotional messages contain "hints" corresponding to yearbook records Ancestry believes may be related to the potential customer. (Dkt. 57 at 2).

On June 27, 2019, Ancestry began hosting the 1995 Central High School, from Omaha, Nebraska, yearbook with Bonilla's image, in its Yearbook Database. (Dkt. 62 ¶ 4; Dkt. 1 at 9). Since then, any visitor to Ancestry.com can search for the yearbook, download the record in full, view information about Bonilla, and observe a picture of the original document. (Dkt. 62 ¶ 5). Ancestry has also used the record to populate its promotional emails to potential customers, though has not otherwise displayed the yearbook information to its users. (*Id.*; Dkt. 57 at 2).

Upon learning that his old yearbook was on Ancestry, Bonilla filed a complaint on December 14, 2020, against the defendants, alleging a violation of the Illinois Right of Publicity Act ("IRPA") (Count I); a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Count II); intrusion upon seclusion (Count III); and unjust enrichment (Count IV). (Dkt. 1 at 20–23); *see also* 28 U.S.C. § 1332. Ancestry moved to dismiss for lack of jurisdiction and failure to state a claim. (Dkt. 30); *see also* Fed. R Civ. P. 12(b)(2), (b)(6). This Court granted the motion for Counts II and III and denied it for Counts I and IV. (*See generally* Dkt. 57). Ancestry was—and still is—subject to the Court's personal jurisdiction, and Bonilla alleged a sufficiently concrete injury to confer standing. (*Id.* at 7). Ancestry's various defenses to liability under the IPRA were also unavailing: Ancestry was not immune from liability under the Communications

---

[1] Ancestry is able to accomplish this feat, in part, by paying a licensing fee to third parties, such as PeopleConnect, Inc., for the use of yearbook names and likenesses. (Dkt. 69 at 9).

Decency Act; the Copyright Act did not preempt the cause of action; and Bonilla's claim did not fall within one of the exemptions to the IPRA. (*Id.* at 9–14). Therefore, Bonilla did state a claim for Count I. And because Bonilla could proceed under his ICPA claim, his claim for unjust enrichment also survived. (*Id.* at 19). Shortly thereafter, Ancestry moved for summary judgment. (Dkt. 61). Bonilla opposed the motion, (Dkt. 69), and later filed a motion to compel responses to document requests and interrogatories, (Dkt. 75). Ancestry, in turn, moved for a protective order from discovery requests. (Dkt. 77).

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden falls on the party seeking summary judgment to inform "the district court of the basis for its motion" and identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Quinn v. Wexford Health Sources, Inc.*, 8 F.4th 557, 567 (7th Cir. 2021). If the movant has met their burden, the nonmoving party must come "forward with specific facts showing that there is a genuine issue for trial." *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008). Such a "genuine issue" exists when a "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When assessing whether a genuine issue of material fact exists, a court views the record in the light most favorable to nonmoving party. *Orlowski v. Milwaukee County*, 872 F.3d 417, 421 (7th Cir. 2017).

## DISCUSSION

Ancestry submits that summary judgment is appropriate on the two remaining counts—an alleged violation of the Illinois Right of Publicity Act (Count I), and unjust enrichment (Count IV)—and the discovery dispute is thereby mooted. The Court considers each argument in turn.

### I.     Illinois Right of Publicity Act (Count I)

The Illinois Right of Publicity Act affords individuals the "right to control and to choose whether and how to use an individual's identity for commercial purposes" and prohibits the unauthorized use of personal identity for any commercial purpose. 765 ILCS 1075/30; 1075/10. A person or entity that violates this guarantee may be liable for actual, statutory, and punitive damages. *Id.* 1075-40. To succeed on an IRPA claim, a plaintiff must prove three elements: (1) an appropriation of his identity, (2) without his written consent, (3) for commercial purposes. *Id.* Ancestry contends that, as a threshold matter, Bonilla's IRPA claim is barred by the statute of limitations.

#### A.  Statute of Limitations

While the IRPA does not expressly provide a statute of limitations, this Court has already determined the limitations period is one year. The reasons stated in its prior opinion, *Toth-Gray v. Lamp Liter, Inc.*, No. 19-cv-1327, 2019 WL 3555179, at *4 (N.D. Ill. July 31, 2019), are still relevant. The Illinois Supreme Court has never addressed the appropriate length of time to file a claim under the law. *Martin v. Living Essentials, LLC*, 653 F. App'x 482, 485–86 (7th Cir. 2016). Without guidance from the highest state court, federal courts sitting in diversity look to state appellate courts. *Ludwig v. United States*, 21 F.4th 929, 932 (7th Cir. 2021). In *Blair v. Nevada Landing Partnership*, the Illinois Appellate Court concluded that "since the Right of Publicity Act completely supplanted the common-law tort of appropriation of likeness … the one-year statute of

limitations that pertained to the common-law tort" governs. 859 N.E.2d 1188, 1192 (Ill. App. Ct. 2006). Furthermore, the weight of federal-court authority—both then and now—advises that *Blair*'s one-year statute of limitation governs.[2] Bonilla urges the Court to revisit its previous conclusion and adopt the five-year limitations period from *Toney v. L'Oreal USA, Inc.*, No. 02-cv-3002, 2002 WL 31455975, at \*3 (N.D. Ill. Oct. 30, 2002), but *Toney* was decided four years before *Blair*, without the benefit of a persuasive state-court interpretation. *See Ludwig*, 21 F.4th at 932. Moreover, no court has cited *Toney* for the proposition advanced by Bonilla, and the opinion itself was vacated by the Seventh Circuit, albeit on other grounds. Therefore, because *Blair* is "the only on-point decision," the Court will continue to follow its guidance. *Toth-Gray*, 2019 WL 3555179, at \*4.

The statute of limitations period for an IRPA claim begins to run, this Court also decided, "when the allegedly infringing publication was first published." *Id.* This rule is known as the "single publication rule." Under the single publication rule, "any one edition of a book or newspaper, or any one radio or television broadcast, exhibition of a motion picture or similar aggregate communication is a single publication." Restatement (Second) of Torts § 577A cmt. a (1977). In other words, the "aggregate communication" stemming from an image, no matter how many times or how often it is viewed, can "give rise to only one cause of action in the jurisdiction where the dissemination occurred, and result in only one statute of limitations period that runs from the point at which the original dissemination occurred." *Oja v. U.S. Army Corps of Eng'rs*, 440 F.3d 1122, 1130 (9th Cir. 2006). Bonilla argues the multiple-publication rule should apply

---

[2] *See e.g. Schnitzer v. Woodford Investments, Inc.*, No. 20-cv-1183, 2021 WL 1030975, at \*2 (C.D. Ill. March 17, 2021); *Lopez v. Admiral Theatre, Inc.*, No. 19-cv-673, 2019 WL 4735438, at \*2 (N.D. Ill. Sept. 26, 2019); *Hinton v. Vonch*, LLC, No. 18-cv-7221, 2019 WL 3554273, at \*2 (N.D. Ill. August 2, 2019); *Toth-Gray*, 2019 WL 3555179, at \*4; *Martin v. Wendy's Int'l, Inc.*, 183 F. Supp. 3d 925, 930 (N.D. Ill. 2016); *Berry v. Ford Modeling Agency*, No. 09-cv-8076, 2012 WL 5470289, at \*3 (N.D. Ill. Nov. 9, 2012); *Maremont v. Susan Fredman Design Grp.*, 772 F. Supp. 2d 967, 971 (N.D. Ill. 2011); *Wells v. Talk Radio Network–FM, Inc.*, No. 07-cv-4314, 2008 WL 4888992, at \*2 (N.D. Ill. Aug. 7, 2008).

instead, meaning a new IRPA claim would arise "for every copy of a mass publication that makes its way from the speaker into the hands of a third party." *Clark v. Viacom Intern. Inc.*, 617 F. App'x 495, 502 (6th Cir. 2015). The Court though sees no reason to abandon its prior decision. *Blair* unambiguously states that "a plaintiff's cause of action in tort usually accrues at the time his or her interest is invaded, which in this case would be when the objectionable material *was first published*." 859 N.E.2d at 1192 (emphasis added).

Putting the pieces together, Bonilla had to bring his lawsuit within one year of his yearbook's first publication. He did not. On June 27, 2019, Ancestry began hosting the 1995 Central High School Yearbook with Bonilla's image. (Dkt. 62 ¶ 4; Dkt. 1 at 9). Bonilla waited until December 14, 2020, to file his complaint, (Dkt. 1), over a year later and outside the statute of limitations. *See Blair*, 859 N.E.2d at 1192.

Bonilla supplies three arguments for why, even accepting the one-year limitations period begins with the first publication, his claim is not time-barred. First, he avers that Ancestry republishes his image by "actively generat[ing] each advertisement in response to a query by a specific user seeking information about Mr. Bonilla," thereby restarting the limitations period with each republication. (Dkt. 69 at 2–3). "[W]here a tort involves a continuing or repeated injury, the limitations period does not begin to run until the date of the last injury or the date the tortious acts cease." *Blair*, 859 N.E.2d at 1192–93. But the continuing-violation exception to the single-publication rule requires "continuing unlawful acts and conduct, not [] continual ill effects from an initial violation." *Id.* at 1193. A photo published in various mediums over an extended period, therefore, does not typically constitute a continuing violation—absent a new unlawful act—because the photo "was used for a single purpose." *Id.* The ill effects of having a photo displayed for so long are relevant only for damages, not the commencement of a new cause of action. *Id.* As

*Blair* explained, "[t]o hold otherwise would cause an attendant problem of an endless tolling of the statute of limitations and could produce a vast multiplicity of suits. Indeed, the purpose of a statute of limitations is to discourage the presentation of stale claims and to encourage diligence in the bringing of an action." *Id.*

The continuing-violation exception does not apply here because Ancestry posted the Bonilla record on June 27, 2019, and the undisputed facts show the company never changed, altered, reused, or expanded upon the original image. (Dkt. 62 at ¶¶ 4–6); *contra James L. Yeager, Ph.D. & Midwest Research Labs., LLC v. Innovus Pharms., Inc.*, No. 18-cv-397, 2019 WL 447743, at *6 (N.D. Ill. Feb. 5, 2019) ("Innovus here used several different channels (local newspapers, social media, other digital channels) and different geographic locations to continuously advertise to new audiences."); *Wells v. Talk Radio Network-FM, Inc.*, No. 07-cv-4314, 2008 WL 4888992, at *3 (N.D. Ill. Aug. 7, 2008) ("[B]ecause Defendants sought to reach a new audience with the rebroadcasting of Plaintiff's voice and Plaintiff's Complaint was filed within one year of the 2006 broadcast, the Court finds Plaintiff's Count II claims to be timely."). While the yearbook record may appear in response to a user's query, that is part of a search engine's ordinary operation. Customers use Ancestry's databases to find information related to genealogy. The database filters search results within the company voluminous records to aid the user in locating sought-after records. But the company's only "conscious intent" to publish the image comes from the initial upload of the yearbook, after which the technology, not the company, does the real work. *Hukic v. Aurora Loan*, 588 F.3d 420, 437–38 (7th Cir. 2009) (quoting *Winrod v. Time, Inc.*, 78 N.E.2d 708, 714 (Ill. App. Ct. 1948)).

Second, Bonilla asserts that claims under the IRPA follow the discovery rule, which "delays the commencement of the relevant statute of limitations until the plaintiff knows or

reasonably should know that he has been injured." *Jackson Jordan v. Leydig*, 633 N.E.2d 627, 630–31 (Ill. 1994). This assertion, however, runs counter to *Blair*'s unambiguous holding that "the discovery rule is *inapplicable* in light of the single-publication rule unless the publication was hidden, inherently undiscoverable, or inherently unknowable." 859 N.E.2d at 1195 (emphasis added). *Blair*'s rejection of the discovery rule, thus, dooms Bonilla's argument.

Finally, Bonilla suggests that each payment Ancestry makes to PeopleConnect, a company that licenses yearbook names and images, begins the limitations period anew. But Ancestry derives no financial benefit by paying another company; the licensing agreement is an expense incurred by the company, not a profit from the use of someone's image. (Dkt. 73 at 8). Ancestry never republished or reused his image in these transactions. These payments were simply a routine part of the company's business. The moment when the allegedly "objectionable material was first published," then, is the date Ancestry.com started to publicly use the yearbook record—June 27, 2019. *Blair*, 859 N.E.2d at 1192. Bonilla filed his lawsuit over a year later, so his IRPA claim is untimely.

## B.  Equitable Tolling

Bonilla maintains that notwithstanding the fact his suit is untimely, equitable tolling should extend the limitations period. (Dkt. 69 at 11–12). Equitable tolling is the "principle that even if the defendant is not responsible for the plaintiff's failure to sue within the limitations period, the latter can get an extension of time within which to sue if it would have been unreasonable to expect him to be able to sue earlier." *Shropshear v. Corp. Counsel of City of Chi.*, 275 F.3d 593, 595 (7th Cir. 2001). The principle applies "[1] if the defendant has actively misled the plaintiff, or [2] if the plaintiff has been prevented from asserting his or her rights in some extraordinary way, or [3] if the plaintiff has mistakenly asserted his or her rights in the wrong forum." *Clay v. Kuhl*, 727 N.E.2d

217, 223 (Ill. 2000); *see also Ralda-Sanden v. Sanden*, 989 N.E.2d 1143, 1147 (Ill. App. Ct. 2013). Furthermore, a claimant must exercise "due diligence" to earn an extension of the limitations period. *Williams v. Bd. of Review*, 948 N.E.2d 561, 573 (Ill. 2011). "Due diligence is a 'fact-specific inquiry, guided by reference to the hypothetical reasonable person,' or, in this case, a reasonably prudent claimant similarly situated." *Id.* (citation omitted).

Equitable tolling does not apply here where Ancestry neither misled Bonilla nor prevented him from asserting his rights; and Bonilla never filed his claim in the wrong forum thereby delaying his federal lawsuit. Additionally, the record does not establish "due diligence" on the part of Bonilla. Ancestry hosted the yearbook record on a widely available, public, searchable database that anyone could, through a free trial or subscription, make use of. Therefore, this Court will not excuse his delay in filing a claim.

## II.    Unjust Enrichment (Count IV)

"Unjust enrichment is a common-law theory of recovery or restitution that arises when the defendant is retaining a benefit to the plaintiff's detriment, and this retention is unjust." *Cleary v. Philip Morris, Inc.*, 656 F.3d 511, 517 (7th Cir. 2011); *see also M & O Insulation Co. v. Harris Bank Naperville*, 783 N.E.2d 635, 639 (Ill. App. Ct. 2002); *B & B Land Acquisition, Inc. v. Mandell*, 714 N.E.2d 58, 63 (Ill. App. Ct. 1999). If an unjust-enrichment claim "rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and … will stand or fall with the related claim."[3] *Cleary*, 656 F.3d at 517. This Court previously stated the fate of Bonilla's unjust-enrichment claim was linked to that of his

---

[3] In urging a contrary result, Bonilla misreads *Smith v. Recordquest, LLC*, 989 F.3d 513 (7th Cir. 2021). There, the Seventh Circuit seemed to agree that, under Wisconsin law, the "statutory and unjust enrichment claims rise and fall together." *Id.* at 521. But given the plaintiff filed his lawsuit within the appropriate six-year limitations period, his unjust-enrichment claim was also timely. *Id.*

ICPA claim. (*See* Dkt. 57 at 19). The same is true now. Because Bonilla's ICPA claim no longer stands, his unjust-enrichment claim falls as well.

### III.     Pending Discovery Motions

Given this ruling, Bonilla is not entitled to the four categories of documents he seeks. The first two categories include (1) all the "occasions on which Ancestry displayed Mr. Bonilla's name or yearbook photograph" and (2) the "licensing agreement under which Ancestry pays or receives royalties or fees." (Dkt. 69 at 16–17). Bonilla concedes, however, that these requests become moot if the Court adopts the single-year limitations period based upon the first publication of an image. (*See id.* at 18). The two remaining categories encompass (3) every Illinois yearbook on Ancestry's database "on or after December 14, 2019" and (4) the "yearbook photographs from Illinois schools [that] Ancestry has incorporated in promotional marketing ("hint") emails." (*Id.* at 17–18). Bonilla made these requests to identify other plaintiffs with possible claims against Ancestry,[4] but it is not the defendant's job to help a plaintiff or his attorneys recruit new clients. *Cf. In re Williams-Sonoma, Inc.*, 947 F.3d 535, 540 (9th Cir. 2020) ("[U]sing discovery to find a client to be the named plaintiff before a class action is certified is not within the scope of Rule 26(b)(1).").

---

[4] *See* Dkt. 69 at 17 ("[E]ven were Ancestry correct that Mr. Bonilla's claim is time-barred, Plaintiff's counsel should be granted leave to substitute a named plaintiff whose record Ancestry uploaded on or after December 14, 2019.); *id.* at 18 (same).

## CONCLUSION

For these reasons, Ancestry's Motion for Summary Judgment is granted. (Dkt. 60).

Bonilla's Motion to Compel Responses to Document Requests and Interrogatories, (Dkt. 75), and

Ancestry's Motion for a Protective Order, (Dkt. 77), are denied.

Virginia M. Kendall
United States District Judge

Date: September 16, 2022

11