## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| JOHN BRAUNDMEIER, and KEVIN WALLACE on behalf of themselves and all others similarly situated,<br><br>        Plaintiff,<br><br>  v.<br><br>ANCESTRY.COM OPERATIONS INC., a Virginia Corporation; ANCESTRY.COM INC., a Delaware Corporation; ANCESTRY.COM LLC, a Delaware Limited Liability Company; and DOES 1 through 50, inclusive,<br><br>        Defendants. | CASE NO. 1:20-cv-07390<br><br>Hon. Virginia M. Kendall |

## ANCESTRY'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................ - 1 -

BACKGROUND ................................................................................................. - 1 -

LEGAL STANDARD .......................................................................................... - 3 -

ARGUMENT ....................................................................................................... - 4 -

I.  PLAINTIFFS ARE BOUND BY THEIR AGENT'S AGREEMENT TO
    ARBITRATE ............................................................................................. - 4 -

    A.  Plaintiffs' Counsel Agreed To Ancestry's Terms............................. - 4 -

    B.  Agency Principles Bind Plaintiffs To Their Counsel's Agreement.................. - 5 -

II. ALTERNATIVELY, PLAINTIFFS MUST ARBITRATE BECAUSE THEY
    RATIFIED THEIR COUNSEL'S ACCEPTANCE OF THE TERMS...................... - 10 -

III. ALL ARBITRABILITY QUESTIONS ARE EXPRESSLY DELEGATED TO
     THE ARBITRATOR ................................................................................ - 10 -

IV.  TO THE EXTENT THE COURT DETERMINES FACTUAL ISSUES MUST
     BE RESOLVED, ANCESTRY SHOULD BE PERMITTED ARBITRATION-
     RELATED DISCOVERY ......................................................................... - 13 -

V.   A STAY OF PROCEEDINGS IS WARRANTED ..................................... - 13 -

CONCLUSION.................................................................................................... - 14 -

# TABLE OF AUTHORITIES

**Page**

<u>**Cases**</u>

*Advance Mortg. Corp. v. Concordia Mut. Life Ass'n*,
 481 N.E.2d 1025 (1985) ...................................................................6

*Anderson v. Flexel, Inc.*,
 47 F.3d 243 (7th Cir. 1995).............................................................8

*AT & T Techs., Inc. v. Commc'ns Workers of Am.*,
 475 U.S. 643 (1986) .......................................................................4

*Bradford v. Denny's Inc.*,
 1998 WL 312009 (N.D. Ill. June 4, 1998).........................6, 8, 10

*Chi. Title Ins. Co. v. Wash. State Off. of Ins. Comm'r*,
 309 P.3d 372 (2013) .......................................................................9

*Chung v. StudentCity.com, Inc.*,
 2013 WL 504757 (D. Mass. Feb. 12, 2013) ....................................7

*Collins v. Citibank*,
 2022 WL 683661, at *1 (N.D. Ill. Mar. 8, 2022) ........................13

*Fischer v. Instant Checkmate LLC*,
 2021 WL 3033586 (N.D. Ill. July 19, 2021)...................................5

*Forby v. One Techs., LP*,
 2016 WL 11746078 (S.D. Ill. Mar. 25, 2016)..................................5

*Garcia v. JCPenney Corp., Inc.*,
 2016 WL 878203 (N.D. Ill. Mar. 8, 2016)....................................11

*Gunn v. Cont'l Cas. Co.*,
 968 F.3d 802 (7th Cir. 2020)...........................................................5

*Gutierrez v. Wells Fargo Bank, NA*,
 889 F.3d 1230 (11th Cir. 2018)....................................................12

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
 139 S. Ct. 524 (2019).....................................................................11

*Hofer v. Gap, Inc.*,
 516 F. Supp. 2d 161 (D. Mass. 2007)..............................................7

*Howsam v. Dean Witter Reynolds, Inc.*,
 537 U.S. 79 (2002) ........................................................................11

*In re Estate of Maslowski*,
 561 N.E.2d 1183 (Ill. App. Ct. 1990).............................................8

*In re Holl*,
 925 F.3d 1076 (9th Cir. 2019)....................................................4, 5

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
 2011 WL 1753784 (N.D. Cal. May 9, 2011) .................................12

*Indep. Living Res. Ctr. San Francisco v. Uber Techs., Inc.*,
 2019 WL 3430656 (N.D. Cal. July 30, 2019)..................................8

*Janiga v. Questar Cap. Corp.*,
  615 F.3d 735 (7th Cir. 2010).................................................................8

*K.F.C. by & though Clark v. Snap, Inc.*,
  2021 WL 2376359 (S.D. Ill. June 10, 2021),.................................5, 12

*Kaufman v. Am. Exp. Travel Related Servs. Co.*,
  2008 WL 687224 (N.D. Ill. Mar. 7, 2008).............................................5

*Knapke v. PeopleConnect, Inc.*,
  38 F.4th 824 (9th Cir. 2022) ...........................................................9, 13

*Loendorf v. PeopleConnect, Inc.*,
  No. 1:21-cv-00051 (N.D. Ill. Mar. 29, 2021)......................................13

*Maharaj v. Charter Commc'ns, Inc.*,
  2021 WL 5014352 (S.D. Cal. Oct. 27, 2021) .....................................12

*Mateyka v. Schroeder*,
  504 N.E.2d 1289 (Ill. App. Ct. Feb. 19, 1987)...................................12

*Miracle-Pond v. Shutterfly, Inc.*,
  2020 WL 2513099 (N.D. Ill. May 15, 2020) ........................................5

*Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*,
  460 U.S. 1 (1983) .................................................................................4

*Prima Paint Corp. v. Flood & Conklin Mfr. Co.*,
  388 U.S. 395, 400 (1967)......................................................................4

*Rent-A-Ctr., West, Inc. v. Jackson*,
  561 U.S. 63 (2010) .......................................................................10, 11

*Rosen v. SCIL, LLC*,
  343 Ill. App. 3d 1075 (2003)................................................................5

*Rushing v. Williams-Sonoma, Inc.*,
  2020 WL 6787135 (N.D. Cal. Oct. 8, 2020)........................................12

*Sorge v. Calvary Portfolio Servs., LLC*,
  2011 U.S. Dist. LEXIS 97381 (S.D. Ill. Aug. 30, 2011) .....................14

*Sosa v. Onfido, Inc.*,
  8 F.4th 631 (7th Cir. 2021) ...................................................................5

*Strickland v. Washington*,
  466 U.S. 668 (1984)..........................................................................6, 7

*Tel. Invs. USA, Inc. v. Lumen Techs., Inc.*,
  2022 WL 2828751 (N.D. Ill. July 20, 2022) .......................................13

*Universal Fire & Cas. Ins. Co. v. Jabin*,
  16 F.3d 1465 (7th Cir. 1994)................................................................6

*Volkswagen of America, Inc. v. Sud's of Peoria, Inc.*,
  474 F.3d 966, 971 (7th Cir. 2007) ......................................................13

*Williams v. Magnafici*,
  397 N.E.2d 197 (Ill. App. Ct. 1979)...................................................10

## **Statutory Authorities**

9 U.S.C. § 1 ...............................................................................................3

9 U.S.C. § 2 ................................................................................................................3

9 U.S.C. § 3 ...........................................................................................................4, 13

### Rules and Regulations

Fed. R. Civ. P. 11 ......................................................................................................6

Ill. Prof. Conduct R. 1.2(a) ......................................................................................6

Wash. R. of Prof'l Conduct 1.2(a) ...........................................................................9

### Additional Authorities

Restatement (Third) of Agency § 2.02 (2006)...........................................................7

## INTRODUCTION

Before the Court granted summary judgment in favor of the Ancestry defendants on plaintiff Bonilla's claims, John Braundmeier and Kevin Wallace were added as named plaintiffs. However, their claims do not belong in court and instead must be arbitrated. Each new plaintiff expressly agreed, through their counsel in this action—as part of their concerted effort with counsel to become plaintiffs—to arbitrate any grievances with Ancestry. Their agreements also express a clear and unmistakable intent to commit arbitrability issues to the arbitrator. Thus, to the extent plaintiffs challenge their agreements, such disputes must be decided in arbitration.

Pending resolution of any arbitration, the Court should stay all proceedings pursuant to Section 3 of the Federal Arbitration Act. And because this Court is not the proper forum for plaintiffs' claims, Ancestry also seeks a stay pending resolution of its motion to compel arbitration, including a stay of all discovery (except as the Court might deem warranted to resolve this motion).

## BACKGROUND

**Ancestry's Yearbook Database and Plaintiffs' Claims.** Ancestry is a genealogy company that provides its users with access to a variety of historical records. Some records are accessible for free; more are accessible via a free trial or subscription to Ancestry.com. Ancestry uses yearbooks in a non-controversial way: it aggregates them and stores them in a searchable database that is fully accessible to Ancestry subscribers and free trial users, and partially accessible to non-subscribers.

The access to yearbooks prompted this lawsuit—plaintiff Bonilla objected that pictures and information from his school yearbook are viewable on Ancestry.com and sought to advance a broad class action asserting right of publicity and privacy-based theories. On December 7, 2021, the Court dismissed plaintiff's Illinois Consumer Fraud and Deceptice Business Practices Act and intrusion upon seclusion claims, but allowed plaintiff's Illinois Right of Publicity Act and unjust

- 1 -

enrichment claims.  Dkt. 57.  Ancestry then promptly moved for summary judgment on plaintiff's remaining claims on the grounds that they were time barred.  Dkt. 60.  The Court granted that motion in full on September 16, 2022.  Dkts. 96, 97.

While Ancestry's motion was pending, plaintiffs' counsel began searching for additional named plaintiffs.  *See* Dkt. 96 at 10 (denying plaintiff Bonilla's motion to compel, and noting he served discovery requests "to identify other plaintiffs with possible claims against Ancestry").  In July 2022, plaintiffs' counsel informed Ancestry they had been engaged by John Braundmeier and Kevin Wallace, and would seek leave to add them as named plaintiffs.  Declaration of Shon Morgan ("Morgan Decl."), ¶ 2, Ex. 1 (R. Borrelli Letter) at 1.  Ancestry's records show that, shortly before reaching out to Ancestry, plaintiffs' counsel Benjamin Osborn used his Ancestry account to search for and view plaintiffs Braundmeier's and Wallace's yearbook records on Ancestry's website.  Declaration of Todd Godfrey ("Godfrey Decl."), ¶¶ 13-14.

Plaintiffs filed the Second Amended Complaint, adding Braundmeier and Wallace, on August 24, 2022.  Dkt. 94.  As with plaintiff Bonilla, plaintiffs Braundmeier and Wallace each base their IRPA and unjust enrichment claims on the searched-for yearbook records in Ancestry's yearbook database.  *See id.*

**The Arbitration Agreement.**  Plaintiffs' counsel, Mr. Osborn (Dkt. 5), has an Ancestry account, which he used to investigate his clients' claims.  Godfrey Decl. ¶¶ 13-14.  To create his account, Mr. Osborn provided his full name and email address and created a password.  *Id.* at ¶ 6, Ex. 1.  Before Mr. Osborn could click the button to continue, he was advised:

> By clicking "Save and continue" below, you agree to the Ancestry Terms and Conditions and Privacy Statement and agree Ancestry may contact you via email about their products and services, such as family tree hints and updates and promotional offers and events, that help you unlock your past to inspire your future. You can unsubscribe or customize your email settings at any time.

*Id.*  This notice was located immediately above the "Save and continue" button in

conspicuous and easy to read font. *Id.* It also contained a visible hyperlink to the Terms. *Id.* Mr. Osborn clicked "Save and continue" and thereby agreed that the Terms would govern his use of Ancestry's website and services. *Id.* at ¶ 7, Ex. 3, § 1 ("By using any of the Ancestry websites . . . you agree to these Terms and Conditions.").

The Terms in effect at the time Mr. Osborn conducted his searches for the yearbook records of Braundmeier and Wallace stated that "any dispute"—with certain limited exceptions not applicable here—would be resolved "through final and binding arbitration." *Id.* at Ex. 7, § 10.[1] The Terms provide that arbitration will be conducted pursuant to JAMS rules and that the arbitrator has "exclusive authority to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability, or formation of these Terms" "including but not limited to any claim that all or any part of these Terms [ ] is void or voidable, whether a claim is subject to arbitration, or the question of waiver by litigation conduct." *Id.* The agreement also contains an express class action waiver. *Id.*

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") applies where, as here, the arbitration agreement appears in a contract involving interstate commerce. *See* 9 U.S.C. § 1; Dkt. 94 at ¶¶ 15, 53, 82 (alleging plaintiffs are residents of Illinois, while "Defendants are all incorporated in either Delaware or Virginia, and are headquartered in Utah").

Section 2 of the FAA provides:

A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement

---

[1] Among other provisions, the Terms to which Mr. Osborn agreed provided that Ancestry might update its Terms and the updates would take effect 30 days after notice of the changes, provided Mr. Osborn continued to use Ancestry's services, which he did. Godfrey Decl. at ¶ 8, Ex. 3, § 10.

in writing to submit to arbitration an existing controversy arising out of such contract, transaction, or refusal, shall be valid, irrevocable, and enforceable….

9 U.S.C. § 2. "Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements . . . ." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983). "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* at 24-25. "[I]t has been established that where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (quotation, citation and alterations omitted).

If a claim is subject to arbitration, a court lacks authority to address the merits of that claim. *See Prima Paint Corp. v. Flood & Conklin Mfr. Co.*, 388 U.S. 395, 400 (1967). And under Section 3 of the FAA, a court must stay the case until the arbitration has concluded. 9 U.S.C. § 3.

## ARGUMENT

## I. PLAINTIFFS ARE BOUND BY THEIR AGENT'S AGREEMENT TO ARBITRATE

### A. Plaintiffs' Counsel Agreed To Ancestry's Terms

When plaintiffs' counsel, Mr. Osborn, registered for his Ancestry account, Ancestry provided clear, conspicuous notice that doing so required him to agree to the Terms, and Mr. Osborn affirmatively clicked the button signifying his assent to those agreements, including the arbitration provisions. Godfrey Decl. at ¶¶ 5-7. "Federal courts . . . have recognized the general enforceability of . . . online agreements that require affirmative user assent." *In re Holl*, 925 F.3d

- 4 -

1076, 1085 (9th Cir. 2019) (citations omitted). *See also Forby v. One Techs., LP*, 2016 WL 11746078, at *7–8 (S.D. Ill. Mar. 25, 2016) (applying Illinois law and finding assent to arbitration where "the hyperlink [to the terms containing the arbitration agreement]. . . is contained within text directly above the 'Continue' button that a user must press in order to continue the sign-up process");[2] *Fischer v. Instant Checkmate LLC*, 2021 WL 3033586, at *6 (N.D. Ill. July 19, 2021) (compelling arbitration where plaintiff clicked "Continue," and was advised that doing so was an affirmation of the terms of service); *Miracle-Pond v. Shutterfly, Inc.*, 2020 WL 2513099, at *4 (N.D. Ill. May 15, 2020) (compelling arbitration where plaintiff clicked "Accept" and thus accepted the Terms of Use); *K.F.C. by & though Clark v. Snap, Inc.*, 2021 WL 2376359, at *1 (S.D. Ill. June 10, 2021), *aff'd sub nom. K.F.C. v. Snap Inc.*, 29 F.4th 835 (7th Cir. 2022) (compelling arbitration where "[t]o create the account, it was necessary for Plaintiff to click on a button to express her assent to Snapchat's Terms of Service").[3]

## B. Agency Principles Bind Plaintiffs To Their Counsel's Agreement

It is undisputed that plaintiffs have retained Mr. Osborn as their counsel. *See, e.g.,* Morgan Decl. ¶ 2, Ex. 1 at 1 ("Our firm, along with our co-counsel at Morgan & Morgan P.A., and The

---

[2]  Although Ancestry's terms contain a Utah choice-of-law provision, the law of the forum state (Illinois) controls the threshold question whether the parties formed a contract. *See, e.g., Kaufman v. Am. Exp. Travel Related Servs. Co.*, 2008 WL 687224, at *4 (N.D. Ill. Mar. 7, 2008). Under Illinois choice-of-law rules, "forum law is applied 'unless an actual conflict with another state's law is shown, or the parties agree that forum law does not apply.'" *Sosa v. Onfido, Inc.*, 8 F.4th 631, 637 (7th Cir. 2021) (quoting *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 808 (7th Cir. 2020)).  No conflict exists here.

[3]  Similarly, courts recognize that a user assents to updated terms and conditions where, as here, the user continues to use the services after the updated terms go into effect. *See, e.g., Miracle-Pond*, 2020 WL 2513099 at *5 ("Illinois courts have repeatedly recognized the enforceability of arbitration provisions added via a unilateral change-in-terms clause"); *Rosen v. SCIL, LLC*, 343 Ill. App. 3d 1075, 1082 (2003) (enforcing arbitration agreement added to cardholder agreement because "[i]f plaintiff did not wish to agree to the new terms in his credit card agreement, he simply should have stopped using the card").

Law Office of Benjamin R. Osborn, was recently retained by the above-named individuals [listing Braundmeier and Wallace] in connection with their potential legal claims against Ancestry.com Operations Inc., regarding its website Ancestry.com."). "In Illinois, an attorney is the agent of her client." *Bradford v. Denny's Inc.*, 1998 WL 312009, at *3 (N.D. Ill. June 4, 1998).

As counsel for plaintiffs, it was not only within the scope of Mr. Osborn's authority to visit Ancestry's website to view plaintiffs' yearbook records, it was his *duty* as counsel to conduct such minimal investigation to confirm the premise for their claims. *Strickland v. Washington*, 466 U.S. 668, 691 (1984) ("counsel has a duty to make reasonable investigations"); Fed. R. Civ. P. 11 (requiring reasonable inquiry prior to asserting claims); Ill. Prof. Conduct R. 1.2(a) (attorney's scope of representation and authority include authority to "take such action as is impliedly authorized to carry out the representation"). And the evidence shows Mr. Osborn did just that— shortly before disclosing to Ancestry that he had been engaged as counsel for plaintiffs, he used his account to conduct searches for their yearbook records on Ancestry's website. Morgan Decl. ¶ 2, Ex. 1; Godfrey Decl. ¶¶ 13-14.

Plaintiffs do not contend they instructed their counsel *not* to agree to arbitration or otherwise limited his authority—instead, they contend only that they did not explicitly instruct their attorneys "to investigate the Ancestry.com website" or expressly authorize them "to agree to arbitration on [their] behalf." Dkt. 94, ¶¶ 61, 90. But this purported distinction is irrelevant. "In Illinois . . . [a] principal is bound not only for the precise act which he expressly authorized the agent to do, but also for whatever belongs to the doing of it or is necessary to its performance." *Universal Fire & Cas. Ins. Co. v. Jabin*, 16 F.3d 1465, 1471 (7th Cir. 1994) (quotation, citation omitted). *See also Advance Mortg. Corp. v. Concordia Mut. Life Ass'n*, 135 Ill. App. 3d 477, 482, 481 N.E.2d 1025, 1029 (1985) ("an agent has implied authority for the performance or transaction

of anything reasonably necessary to effective execution of his express authority") (quotation, citation omitted); Restatement (Third) of Agency § 2.02 (2006) ("An agent has actual authority to take ... acts necessary or incidental to achieving the principal's objectives.").

Plaintiffs concede they "instructed [their] attorneys to pursue a claim against Ancestry in federal court." Dkt. 94, ¶¶ 58, 87. The investigation counsel conducted was necessary to carry out that instruction. See Strickland, 466 U.S. at 691 ("counsel has a duty to make reasonable investigations"); Fed. R. Civ. P. 11.[4]

Likewise, agreement to Ancestry's Terms, including the arbitration agreement, was a necessary and incidental act for purposes of viewing the records on Ancestry's site to carry out counsel's investigation. See, e.g., Chung v. StudentCity.com, Inc., 2013 WL 504757, *2 (D. Mass. Feb. 12, 2013) (enforcing arbitration agreement against parents who had authorized their daughter to make a website payment because "it was actually necessary to assent to the customer agreement in order to make a payment," and "agreeing to the seller's terms and conditions are a normal part of making any purchase, especially an online purchase."); Hofer v. Gap, Inc., 516 F. Supp. 2d 161

---

[4] Plaintiffs contend their claims are not based on information counsel obtained from Ancestry's website, but instead "information Ancestry's counsel provided to Plaintiffs' counsel." Dkt. 94, ¶¶ 63, 92. However, these allegations are contradicted by the record. Plaintiffs' counsel reached out to Ancestry on July 6, 2022 and informed Ancestry they had already been engaged by Braundmeier and Wallace and "intend[ed] to seek leave of Court to amend the operative complaint . . . to add them as named plaintiffs." Morgan Decl. ¶ 2, Ex. 1 at 1. At that time, plaintiffs' counsel had already searched for and viewed Braundmeier's and Wallace's yearbook records on Ancestry's site and, according to their own letter, determined that Braundmeier and Wallace had claims against Ancestry. Godfrey Decl. ¶¶ 13-14 (Mr. Osborn searched for Braundmeier and Wallace's records in May 2022). Ancestry only subsequently provided information to plaintiff's counsel—specifically, information to confirm whether Braundmeier and Wallace would be subject to the same statute of limitations defense as plaintiff Bonilla. Morgan Decl. ¶ 2, Ex. 2. Thus, the record shows plaintiffs' claims arose *before* Ancestry's counsel provided any information (and *after* Mr. Osborn had conducted his investigation on Ancestry's site). In all events, that plaintiffs' counsel subsequently obtained *additional* information does not change that Mr. Osborn utilized his Ancestry account to carry out his investigation.

- 7 -

(D. Mass. 2007) (enforcing customer agreement against plaintiff who had authorized his friend to make travel arrangements through defendant's website because assent to the customer agreement was a necessary part of that transaction—"Nothing in that arrangement is remarkable in the slightest respect . . . . Each such arrangement is necessarily an agency relationship: the person booking the tickets is acting as an agent on behalf of the other members of the traveling party. Implicit in that agency relationship is the power to bind the principal as to matters within the scope of the relationship, including the acceptance of the terms of a disclaimer."); *Indep. Living Res. Ctr. San Francisco v. Uber Techs., Inc.*, 2019 WL 3430656, at *3-4 (N.D. Cal. July 30, 2019) (compelling arbitration where paralegal acted as plaintiffs' "agent when she tested the wait times for the Uber App's various services" as plaintiffs "dispatched their agents to affirmatively test the Uber application in order to bolster their claim of discrimination" and finding "there is nothing inequitable about binding Plaintiffs to the agreement which gained them access to the Uber App in the first place").

It is well-settled that "an agent may bind a principal to an arbitration agreement." *Janiga v. Questar Cap. Corp.*, 615 F.3d 735, 743 (7th Cir. 2010); *Bradford*, 1998 WL 312009 at *3 (compelling arbitration where attorney agreed to arbitrate on client's behalf). *See also Anderson v. Flexel, Inc.*, 47 F.3d 243, 249 (7th Cir. 1995) (recognizing the "'longstanding legal presumption' that an attorney has the authority to act on behalf of the client he represents'"); *In re Estate of Maslowski*, 561 N.E.2d 1183, 1186 (Ill. App. Ct. 1990) (there is a rebuttable presumption under Illinois law that attorney "has the authority to act for a client" that the attorney "professes to represent").

Indeed, the Ninth Circuit recently vacated a district court's order denying a motion to compel arbitration under similar circumstances in another action filed by plaintiff's counsel here.

In *Knapke v. PeopleConnect, Inc.*, plaintiffs similarly challenged the provision of access to yearbooks stored in defendant's online database. 38 F.4th 824, 836 (9th Cir. 2022). In pursuing those claims, plaintiff's counsel visited PeopleConnect's website to examine the plaintiffs' yearbook records—to do so, plaintiff's counsel created a PeopleConnect account, which required counsel to agree to PeopleConnect's terms of service, including its arbitration agreement. *Id.* As the Ninth Circuit explained, under Washington law (like Illinois law), an agent's authority necessarily includes the authority to take the "usual and necessary acts associated with the authorized services," which "can include agreeing to contracts," and attorneys "also possess the same implied authority to act on behalf of their clients." *Id.* at 834 (citing *Chi. Title Ins. Co. v. Wash. State Off. of Ins. Comm'r*, 309 P.3d 372, 382 (2013) and Wash. R. of Prof'l Conduct 1.2(a) ("A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation.")).

Although in *Knapke* remand was required to allow further discovery into when the attorney-client relationship was created (*id.* at 834-35), here the record is clear, and agency principles and fairness dictate finding that Mr. Osborn bound his clients by his agreement to the Ancestry terms. Acting in his capacity as plaintiffs' agent, he investigated their claims by visiting Ancestry's website using his Ancestry account. In doing so, Mr. Osborn agreed his use of the site was subject to Ancestry's Terms. Godfrey Decl. ¶ 11, Ex. 7 at § 1. ("By using any of the Ancestry websites . . . you agree to these Terms and Conditions"). Those Terms contain an explicit provision requiring the submission of "any dispute" to binding arbitration. *Id.*[5]

---

[5] In a further bid to avoid their counsel's agreements, plaintiffs allege they were "not aware" of any agreements between their attorneys and Ancestry or any accounts held by their attorneys. Dkt. 94, ¶¶ 59-60, 88-89. This is irrelevant—to be bound, a principal need not have knowledge of every act of her agent once the agent is given authority to act. In all events, the

## II.    ALTERNATIVELY, PLAINTIFFS MUST ARBITRATE BECAUSE THEY RATIFIED THEIR COUNSEL'S ACCEPTANCE OF THE TERMS

Even were Mr. Osborn's agreement to Ancestry's Terms outside the scope of his authority (it was not), a principal is nonetheless bound by an "unauthorized act of his agent if 'the principal learns of an unauthorized transaction, then retains the benefits of the transaction[.]'" *Bradford*, 1998 WL 312009, at *5 (quotation, citation omitted).

As shown above, plaintiffs' counsel's use of Ancestry's website was a necessary act for purposes of bringing their claims against Ancestry.  Indeed, it was through that use that plaintiff's counsel determined Braundmeier and Wallace had purported claims against Ancestry.  Morgan Decl. ¶ 2, Ex. 1.  By filing their complaint and pursuing those claims, plaintiffs have necessarily retained the benefits of their counsel's transaction and thus ratified it.  *Williams v. Magnafici*, 397 N.E.2d 197, 199 (Ill. App. Ct. 1979) ("Another means of ratification by conduct occurs where the principal retains the benefit of the transaction.").

## III.    ALL ARBITRABILITY QUESTIONS ARE EXPRESSLY DELEGATED TO THE ARBITRATOR

As the Supreme Court has recognized "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their  agreement covers a particular controversy." *Rent-A-Ctr., West, Inc. v. Jackson*, 561 U.S. 63, 69 (2010).  "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Id.* at 70.  If the parties have "clearly and

---

knowledge of an attorney is imputed to his client.  *Bradford*, 1998 WL 312009 at *5 ("Denny's assertion that it did not know that it could object to the arbitration is unpersuasive. . . . knowledge of an attorney is knowledge of, or imputed to, the client, notwithstanding whether the attorney has actually communicated such knowledge to the client.") (quotation, citation omitted).

unmistakably" agreed that questions of arbitrability must be decided by the arbitrator, such provisions must be enforced. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (internal quotation and citation omitted); *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract." Rather, "[i]n those circumstances, a court possesses no power to decide the arbitrability issue.").

Here, the arbitration agreement clearly and unmistakably delegates issues of arbitrability to the arbitrator. *See* Godfrey Decl. at ¶ 11, Ex. 7 at § 10 ("The arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability, or formation of these Terms or the Privacy Statement, including but not limited to any claim that all or any part of these Terms or Privacy Statement is void or voidable, whether a claim is subject to arbitration, or the question of waiver by litigation conduct."). Courts have repeatedly held this language evinces such an intent. *See, e.g., Rent-A-Ctr.*, 561 U.S. at 71 (provision delegating to arbitrator the exclusive authority to resolve any dispute relating to the agreement's enforceability, including any claim that all or any part of the agreement was void or voidable, was valid delegation agreement).

Because plaintiffs "clearly and unmistakably" agreed to delegate questions of arbitrability to the arbitrator, to the extent they challenge, for example, the scope, enforceability or validity of their agreements, the class action waiver, or argue waiver by litigation conduct,[6] those issues must

---

[6] Although not an issue for the Court, plaintiffs' suggestion that Ancestry somehow "waived" its right to compel arbitration because it defended Bonilla's non-certified individual claims (*see* Dkt. 94 at ¶¶ 62, 91) is unsupportable. Ancestry's successful disposition of plaintiff Bonilla's individual claims on other grounds has no bearing on its agreements with plaintiffs Braundmeier and Wallace. *See, e.g., Garcia v. JCPenney Corp., Inc.*, 2016 WL 878203, at *7 n.4 (N.D. Ill. Mar. 8, 2016) ("It is important to note that by not having filed its motion to compel at this stage,

be decided by the arbitrator. *E.g., K.F.C. by & through Clark*, 2021 WL 2376359 at *3 ("Because the delegation clause . . . appears to be valid, the court must refer to the arbitrator the question of the arbitration agreement's enforceability—including issues related to . . . the effectiveness of any disavowal on the part of the Plaintiff.");[7] *Maharaj v. Charter Commc'ns, Inc.*, 2021 WL 5014352, at *9 (S.D. Cal. Oct. 27, 2021) (enforcing delegation provision where "the Delegation Clause clearly and unmistakably indicates that the parties intended to arbitrate all gateway arbitrability issues, including waiver, scope, and unconscionability").

---

JCPenney has not waived its right to enforce its arbitration agreement. In fact, JCPenney could not have filed its motion to compel arbitration directed at putative class members as they are not parties to the lawsuit."); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 1753784, at *4 (N.D. Cal. May 9, 2011) (no waiver because defendants could not "have moved to compel arbitration against [unnamed class members] prior to the certification of a class in this case because, as defendants point out, 'putative class members are not parties to an action prior to class certification'" and their identities were previously unknown"); *Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1237-38 (11th Cir. 2018) ("it cannot be said that Wells Fargo's failure to seek arbitration with the unnamed class members prior to class certification manifested inconsistency with its arbitration rights, considering that it would have been impossible in practice to compel arbitration against speculative plaintiffs and jurisdictionally impossible for the District Court to rule on those motions before the class was certified"); *Rushing v. Williams-Sonoma, Inc.*, No. 16-CV-01421-WHO, 2020 WL 6787135, at *1 (N.D. Cal. Oct. 8, 2020) ("[Defendant] could not move to arbitrate claims against [the new named plaintiff] or against unnamed class members before class certification. Accordingly, it did not have an existing right to compel arbitration and could not have acted inconsistently with that right."). Indeed, Ancestry asserted its right to arbitrate as soon as it could—when plaintiffs' counsel indicated they would seek leave to amend to add these plaintiffs. *See* Dkt. 92 (stipulation as to filing of SAC and briefing schedule on motion to compel); *see also* Dkt. 59 (asserting arbitration as affirmative defense in answer to plaintiff Bonilla's complaint).

[7]     In any event, plaintiffs cannot avoid arbitration through any purported "repudiation." The contracts at issue were executed on plaintiffs' behalf by their counsel with authority and plaintiffs reaped the benefit of obtaining information from Ancestry to investigate their claims. Repudiation is not allowed under those circumstances. *See, e.g., Mateyka v. Schroeder*, 504 N.E.2d 1289, 1295 (Ill. App. Ct. Feb. 19, 1987) (under Illinois law, "parties cannot repudiate the acts of another done on their behalf and at the same time accept the fruits and benefits of those acts unless, within a reasonable time after learning that the acts of the other were unauthorized, they return the benefits").

## IV.   TO THE EXTENT THE COURT DETERMINES FACTUAL ISSUES MUST BE RESOLVED, ANCESTRY SHOULD BE PERMITTED ARBITRATION-RELATED DISCOVERY

Although the record here contains all facts needed to compel arbitration, to the extent the Court finds factual issues must be resolved to determine whether plaintiffs are bound to arbitrate, Ancestry is entitled to arbitration-related discovery. *See, e.g., Loendorf v. PeopleConnect, Inc.*, No. 1:21-cv-00051 (N.D. Ill. Mar. 29, 2021) (Kendall, J.), Dkt. 74 (granting leave to conduct limited, arbitration-related discovery to resolve factual issues that bear on whether plaintiff was bound to terms of service); *accord Knapke*, 38 F.4th at 832 (remanding for discovery on issues, including the issue of when the agency relationship came into being, that might be material to whether counsel bound plaintiffs to arbitrate their IRPA claims against PeopleConnect). Ancestry would seek discovery relevant to the scope of the agency relationship, relevant knowledge and ratification.

## V.   A STAY OF PROCEEDINGS IS WARRANTED

Under the FAA, a district court must stay an action compelled to arbitration. *See* 9 U.S.C. § 3; *Tel. Invs. USA, Inc. v. Lumen Techs., Inc.*, 2022 WL 2828751, at *9 (N.D. Ill. July 20, 2022) (staying case pending arbitration proceedings); *Volkswagen of America, Inc. v. Sud's of Peoria, Inc.*, 474 F.3d 966, 971 (7th Cir. 2007) ("For arbitrable issues, a § 3 stay is mandatory.").

Additionally, because this Court is not the proper forum for plaintiffs' claims, Ancestry also seeks an order staying all proceedings pending resolution of its motion to compel arbitration (including a stay of all discovery). Plaintiffs should not be permitted to ignore their arbitration agreement, pursue a lawsuit in federal court, and force Ancestry to participate in litigation in violation of the terms of the parties' agreement. For these reasons, courts routinely stay all proceedings pending the resolution of a motion to compel arbitration. *See, e.g., Collins v. Citibank*, 2022 WL 683661, at *1 (N.D. Ill. Mar. 8, 2022) (staying discovery of questions irrelevant to

motion to compel arbitration pending resolution of that motion); *Sorge v. Calvary Portfolio Servs., LLC*, No. 11-cv-0297-DRH-SCW, 2011 U.S. Dist. LEXIS 97381, at *2 (S.D. Ill. Aug. 30, 2011) (staying discovery pending resolution of motion to compel arbitration and explaining "the rules governing discovery in arbitration proceedings differ significantly from the Federal Rules of Civil Procedure, if their Motion to Compel Arbitration is granted much, if not all, of the discovery in this case would be superfluous").

## CONCLUSION

For the reasons shown above, Ancestry's motion to compel arbitration should be granted and all proceedings in this action should be stayed pending (1) a decision on this motion, and (2) completion of arbitration. Any arbitrability defenses must be resolved by the arbitrator. If the Court cannot make a determination based on the existing record, Ancestry should be afforded an opportunity to obtain discovery as to the relevant arbitration issues.

Dated:   September 23, 2022

Respectfully submitted,

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By: */s/ Shon Morgan*
        Shon Morgan

Shon Morgan (*pro hac vice*)
John W. Baumann (*pro hac vice*)
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
shonmorgan@quinnemanuel.com
jackbaumann@quinnemanuel.com

Daniel Lombard
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
(312) 705-7400

Cristina Henriquez (*pro hac vice*)
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
(650) 801-5000
cristinahenriquez@quinnemanuel.com

*Attorneys for Defendants Ancestry.com
Operations Inc., Ancestry.com Inc., and
Ancestry.com LLC*

**<u>CERTIFICATE OF SERVICE</u>**

I, the undersigned, certify that on September 23, 2022, I caused a copy of Ancestry's Memorandum In Support of Motion to Compel Arbitration to be filed electronically with the Clerk of the Court using the CM/ECF system.  Notice of this filing will be sent to counsel of record via the Court's CM/ECF automated filing system.


By: <u>/s/ *Shon Morgan*</u>
Shon Morgan