**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN BRAUNDMEIER, and KEVIN WALLACE, on behalf of himself and all others similarly situated, | ) ) ) ) | |
| *Plaintiffs*, | ) ) | No. 20 C 7390 |
| v. | ) ) | Judge Virginia M. Kendall |
| ANCESTRY.COM OPERATIONS INC., a Virginia Corporation; ANCESTRY.COM INC., a Delaware Corporation; ANCESTRY.COM LLC, a Delaware Limited Liability Company; and DOES 1 through 50, inclusive, | ) ) ) ) ) ) | |
| *Defendants*. | ) | |

## MEMORANDUM OPINION AND ORDER

Ancestry maintains a large yearbook database that users can access either for free or by paying a small fee. John Braundmeier and Kevin Wallace—who do not have Ancestry accounts—learned that their images can be found using this searchable database. The two individuals entered into an agreement with Benjamin Osborne, an attorney, to represent them in a suit against Ancestry over alleged unlawful practices. Unlike his clients, Osborne has had an Ancestry account from several years prior to his representation. Like many users, Osborne agreed to the terms and conditions to set up his account, which included a mandatory arbitration provision. He also, being a diligent lawyer, verified on the database that Braundmeier and Wallace's images were publicly accessible. Based solely on their attorney's arbitration agreement two years prior to representation and his later client research, Ancestry moves to compel plaintiffs to arbitrate. (Dkt. 99). For the following reasons, the motion is denied. (*Id.*)

1

## **BACKGROUND**

Ancestry is a genealogy company that operates Ancestry.com, a public website through which users can search for records in different databases. (Dkt. 94 ¶ 2). Some of the records can be accessed for free; others require a free trial or subscription. (Dkt. 100 at 1). At issue here is one of Ancestry's services: U.S., School Yearbooks, 1900-1999. (Dkt. 94 ¶ 2). The yearbook database includes the names, photographs, cities of residences, and schools of millions of Americans. (*Id.*) Ancestry boasts that its service has over 47 million records from Illinois schools and universities alone. (*Id.*)

This lawsuit began when Sergio Bonilla, upon discovering that the yearbook database contained images of him, sued Ancestry for alleged violations of the Illinois Right of Publicity Act ("IRPA") (Count I); the Illinois Consumer Fraud and Deceptive Business Practices Act (Count II); intrusion upon seclusion (Count III); and unjust enrichment (Count IV). (Dkt. 1 at 20–23); *see also* 28 U.S.C. § 1332. This Court dismissed Counts II and III for failure to state a claim. (Dkt. 57). Ancestry moved for summary judgment on the remaining counts. (Dkt. 60). Before this Court could decide the motion, Bonilla moved to file an amended complaint to add two plaintiffs, John Braundmeier and Kevin Wallace. (Dkt. 94). The motion was granted. (Dkt. 95). This Court then granted summary judgment for Ancestry because Bonilla's IRPA and unjust-enrichment claims fell outside the statute of limitations. (Dkt. 96).

The two current plaintiffs, Braundmeier and Wallace, have never had Ancestry accounts in any form; accordingly, they have never signed agreements with Ancestry to arbitrate any claims. (Dkt. 113, 114). In May 2022, both individuals retained Benjamin Osborn to represent them in a lawsuit against Ancestry over alleged misappropriations of their images. (*Id.*) At no point did they ever instruct Osborn to enter into an arbitration agreement on their behalf. (*Id.*)

Unlike his clients, Osborn has an Ancestry account, and as part of setting up his account (long before he even met the plaintiffs), Osborn agreed to Ancestry's terms and conditions. (Dkt. 102 ¶ 5). One provision required that "any dispute" be resolved "through final and binding arbitration." (Dkt. 102-7). Additionally, as part of his decision to represent the plaintiffs, Osborn verified certain information about them using his Ancestry account. (Dkt. 102 ¶¶ 13–14). Ancestry now moves to compel the plaintiffs to arbitrate their claims based on their lawyer's prior agreement with Ancestry and later use of the website to conduct client research. (Dkt. 99, 100).

## DISCUSSION

The Federal Arbitration Act ("FAA") provides that "a contract evidencing a transaction involving commerce to settle by arbitration … shall be valid, irrevocable, and enforceable," and if a suit is brought "upon any issue referable to arbitration under an agreement in writing for such arbitration, the court … shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. §§ 2, 3. The law ensures arbitration agreements are enforceable like contracts—"but not more so." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967); *see also Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022) (explaining that the FAA "place[s] such agreements upon the same footing as other contracts" (quoting *Granite Rock Co. v. Teamsters*, 561 U.S. 287, 302 (2010))); *Volkswagen of Am., Inc. v. Sud's of Peoria, Inc.*, 474 F.3d 966, 970 (7th Cir. 2007) ("[T]he FAA's purpose is not to provide special status for [arbitration] agreements."). As such, a party must still agree, consistent with hornbook contract law, to an arbitration clause in order to be bound by it. *United Steelworkers of Am. V. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960) ("[A] party cannot be required to submit to arbitration

3

any dispute which he has not agreed so to submit."). Ancestry acknowledges that neither plaintiff directly consented to arbitration, as they never had accounts nor showed any inclination to litigate outside of a federal forum. Rather, Ancestry submits that the plaintiffs' attorney, Osborne, acted as their agent when he signed the website's arbitration agreement two years before his representation and later used the platform to conduct research for this case.[1]

An agent can bind a principal to an arbitration agreement—if, and only if, that agent had the requisite authority. *See Fyrnetics Ltd. v. Quantum Group, Inc.*, 293 F.3d 1023, 1029 (7th Cir. 2002); *see also Rawoof v. Texor Petroleum Co., Inc.*, 521 F.3d 750, 758 (7th Cir. 2008) ("Agency is a consensual, fiduciary relationship between two legal entities created by law, where the principal has the right to control the activities of the agent, and the agent has the power to conduct legal transactions in the name of the principal." (quoting *Knauerhaze v. Nelson*, 836 N.E.2d 640, 660 (Ill. App. Ct. 2005)). Agency law allows for two types of authority: actual authority and apparent authority. *Opp v. Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1064 (7th Cir. 2000). Actual authority exists when the principal gives permission to the agent, whether express or implied, to undertake a course of action. *Bridgeview Health Care Center, Ltd. v. Clark*, 816 F.3d 935, 938–39 (7th Cir. 2016); *see also* Restatement (Third) of Agency § 2.01 (Am. L. Inst. 2006) ("An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act."). "Apparent authority arises when a principal creates, by its words or conduct, the reasonable impression in a third party that the agent has the authority to perform a certain act on its behalf." *Mason & Dixon*

---

[1] Plaintiffs raise the possibility that Ancestry waived arbitration by purportedly delaying the motion to compel until later in litigation. Given the ultimate resolution, the Court does not address this secondary argument.

*Lines, Inc. v. Glover*, 975 F.2d 1298, 1303 (7th Cir. 1992) (quoting *Bank of North Carolina, N.A. v. Rock Island Bank*, 630 F.2d 1243, 1251 (7th Cir. 1980)).

Ancestry relies on implied actual authority, arguing that while neither plaintiff explicitly authorized Osborne to sign arbitration agreements, their actions implied as much.[2] "Implied authority is actual authority that is implied by facts and circumstances and it may be proved by circumstantial evidence." *Opp*, 231 F.3d at 1064 (quoting *Wasleff v. Dever*, 550 N.E.2d 1132, 1138 (1990)). "[A]n agent has implied authority for the performance or transaction of anything reasonably necessary to effective execution of his express authority." *Id.* (quoting *Advance Mortg. Corp. v. Concordia Mut. Life Ass'n*, 481 N.E.2d 1025, 1029 (1985)).

Here, the plaintiffs never impliedly authorized Osborne to agree to arbitration. Osborne signed the arbitration agreement before he began representing the plaintiffs. It strains logic to believe that a principal can authorize an action taken years prior to engaging the agent. Osborne, of course, researched his potential clients, as many lawyers do. But no "facts and circumstances" suggest that the plaintiffs wanted him to enter them into an arbitration agreement. *See Opp*, 231 F.3d at 1064. Indeed, both individuals specifically disclaimed any such intention in declarations before this Court. (Dkt. 113, 114). Nor would it be custom for lawyers to bind their clients to a different forum without their knowledge, and doing so is certainly not incidental, much less necessary, to the plaintiffs' general instruction to litigate the case. *See* Restatement (Third) of Agency § 2.01 (Am. L. Inst. 2006) (noting that business customs or acts "necessary or incidental to achieving principal's objectives" could reasonably be within the scope of actual authority). A

---

[2] The fact that the plaintiffs did not explicitly agree to arbitration distinguishes this case from *Knapke v. PeopleConnect, Inc.*, 38 F.4th 824 (9th Cir. 2022), and *Bonilla v. PeopleConnect, Inc.*, No. 21-C-51 (N.D. Ill. March 29, 2022), ECF No. 74, where the record was inconclusive. Both cases required limited discovery on whether the plaintiffs expressly allowed their respective lawyers to sign arbitration agreements as part of general research. But Ancestry does not take the position that the plaintiffs provided express authority to Osborne—which is a distinction that makes all the difference.

contrary ruling—that a lawyer could unintentionally force clients into arbitration by conducting routine research—would disincentivize fact-checking and burden the litigation process by making lawyers either file complaints with unverified information or seek basic knowledge through onerous discovery. *Cf. Lukis v. Whitepages Inc.*, 549 F. Supp. 3d 798, 808 (N.D. Ill. 2021) ("Any contrary rule would have absurd consequences, allowing attorneys to ratify contracts on behalf of hundreds, thousands, or even millions of people just by filing a class action complaint.").

Ancestry has a fallback position: even if the plaintiffs did not implicitly allow their lawyer to sign an arbitration agreement, they ratified the decision, nonetheless. This argument lacks merit for similar reasons. Ratification is defined as the "adoption and confirmation by one person of an act or contract performed or entered into in his behalf by another who at the time assumed to act as his agent." *Nationwide Mut. Ins. Co. v. Powell*, 292 F.3d 201, 205 (4th Cir. 2002) (citation omitted). For a principal to ratify an agent's agreement, the principal must accept the benefits of the act, have full knowledge of the facts, and be aware of the circumstances or affirmatively elect to accept the unauthorized arrangements. *Id.* Again, the plaintiffs here could not ratify an arbitration agreement before there was ever a principal-agent relationship, as Ancestry seems to posit. *See United States v. Aldridge*, 642 F.3d 537, 541 (7th Cir. 2011). More problematically though, there is no evidence that the plaintiffs discovered this arbitration agreement (or the later research by Osborne), received any benefits, had knowledge of the facts until this motion, and elected in some way to accept the agreement. And such evidence is not likely forthcoming. The record shows that the plaintiffs wanted the opposite—to litigate in a federal forum because, in their view, that choice would be superior to arbitration.

## **CONCLUSION**

For these reasons, Ancestry's Motion to Compel Arbitration is denied. (Dkt. 99).


Virginia M. Kendall
United States District Judge

Date: November 23, 2022