**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JOSHUA BRAUNDMEIER, and KEVIN WALLACE, on behalf of himself and all others similarly situated, | |
| Plaintiffs, | Case No. 1:20-cv-07390 |
| v. | Judge Jeffrey I. Cummings |
| ANCESTRY.COM OPERATIONS INC., a Virginia Corporation; ANCESTRY.COM INC., a Delaware Corporation; ANCESTRY.COM LLC, a Delaware Limited Liability Company, | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

## TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT .................................................................................. 1

II.  PROCEDURAL BACKGROUND AND PROPOSED CLASS ............................... 5

III. LEGAL STANDARD............................................................................................. 6

IV. ARGUMENT .......................................................................................................... 7

    A. The Requirements of Rule 23(a) are Satisfied. ............................................... 7

        1.   The proposed Class is so numerous that joinder is impracticable. ................... 7

        2.   There are questions of law and fact common to the proposed Class................ 7

            a.   Ancestry's liability turns on common questions of law and fact. ................... 8

            b.   Entitlement to damages is a common issue of law and fact.......................... 11

            c.   Entitlement to injunctive relief presents common issues of law and fact. ..... 14

        3.   Plaintiffs' claims are typical of those of the proposed Class........................... 14

        4.   Plaintiffs and their counsel are adequate representatives. .............................. 18

    B. The Predominance Requirement of Rule 23(b)(3) is Satisfied................................... 19

    C. The Superiority Requirement of Rule 23(b)(3) is Satisfied....................................... 21

    D. The Class is Clearly Defined Based on Objective Criteria........................................ 23

    E. The Proposed Class Also Satisfies the Requirements of Rule 23(b)(2). ................... 24

    F. In the Alternative, the Proposed Class Satisfies the Requirements of Rule 23 (c)(4). 24

# TABLE OF AUTHORITIES

## Cases

*Bonilla v. Ancestry.com Operations Inc.*,
574 F. Supp. 3d 582 (N.D. Ill. 2021) .......................................................................... 4, 6, 9, 13

*Callahan v. PeopleConnect*,
No. 20-cv-09203, 2021 WL 5050079 (N.D. Cal. Nov. 1, 2021) ................................................ 4

*Camacho v. Control Group Media Co.*,
No. 21-cv-1954, 2022 WL 3093306 (S.D. Cal. July 18, 2022) ................................................ 4

*Cavin v. Home Loan Ctr.*,
236 F.R.D. 387 (N.D. Ill. 2006) ............................................................................................ 18

*Chi. Teachers Union, Local No. 1 v. Bd. of Educ. of Chi.*,
797 F.3d 426 (7th Cir. 2015) .................................................................................................. 24

*Cleary v. Philip Morris Inc.*,
656 F.3d 511 (7th Cir. 2011) .................................................................................................. 13

*Eisen v. Carlisle Jacquelin*,
417 U.S. 156 (1974) ................................................................................................................ 22

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011) ................................................................................................................ 19

*Fischer v. InstantCheckmate LLC*,
2022 WL 971479 (N.D. Ill. Mar. 31, 2022) ..................................... 4, 11, 12, 14, 15, 17, 19, 20

*Fraley v. Facebook, Inc.*,
966 F. Supp. 2d 939 (E.D. Cal. 2013) ...................................................................................... 5

*Gabiola v. Sarid*,
No. 16-cv-02076, 2017 WL 4264000 (N.D. Ill. Sep. 26, 2017) ................................................ 4

*Hernandez v. Wells Fargo Bank, N.A.*,
No. 18-cv-07354 (N.D. Cal. Jan. 29, 2020) ............................................................................ 22

*Hoffower v. Seamless Contacts, Inc.*,
No. 22-cv-2019, Dkt. No. 37 (N.D. Ill. Nov. 22, 2022) ............................................................ 4

*Howard v. Cook Cnty. Sheriff's Office*,
989 F.3d 587 (7th Cir. 2021) .................................................................................................. 18

*Huebner v. Radaris, LLC*,
2016 WL 8114189 (N.D. Cal. Apr. 12, 2016) ..................................................................... 5, 14

*In re Allstate Corp. Securities Litig.*,
   966 F.3d 595 (7th Cir. 2020) ........................................................................ 18

*In re Clearview AI, Inc. Consumer Privacy Litig.*,
   585 F.Supp.3d 1111 (N.D. Ill. Feb. 14, 2022) ............................................ 4

*In re NCAA Student-Athlete Name & Likeness Licensing Litigation*,
   No. 09-cv-1967 CW, 2013 WL 5979327 (N.D. Cal. Nov. 8, 2013) ................ 5

*Keele v. Wexler*,
   149 F.3d 589 (7th Cir. 1998) ........................................................................ 7

*Keller v. Electronic Arts, Inc.*,
   No. 4:09-1967 CW, 2015 WL 5005057 (N.D. Cal. Aug. 18, 2015) ............... 5

*Kellman v. Spokeo, Inc.*,
   599 F. Supp. 3d 877 (N.D. Cal. 2022) .................................................. 4, 17

*Knapke v. PeopleConnect*,
   553 F. Supp. 3d 865 (W.D. Wash. 2021) .............................................. 4, 15

*Lacy v. Cook Cty.*,
   897 F.3d 847 (7th Cir. 2018) ...................................................................... 14

*Lukis v. Whitepages, Inc.*,
   542 F. Supp. 3d 831 (N.D. Ill. 2020) .................................................... 4, 10

*Martinez v. ZoomInfo Techs.*,
   82 F.4th 785 (9th Cir. 2023) ................................................................ 4, 21

*McReynolds v. Lynch*,
   672 F.3d 482 (7th Cir. 2012) ...................................................................... 24

*Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802 (7th Cir. 2012) ................................ 19

*Meyer v. Portfolio Recovery Assocs., LLC*,
   707 F.3d 1036 (9th Cir. 2012) .................................................................... 17

*Mullins v. Direct Dig., LLC*,
   795 F.3d 654 (7th Cir. 2015) ................................................................ 22, 23

*Muro v. Target Corp.*,
   580 F.3d 485 (7th Cir. 2009) ...................................................................... 14

*Nolen v. PeopleConnect, Inc.*,
   No. 20-cv-09203-EMC (N.D. Cal. Dec. 14, 2023) ................................ 5, 16

*Orr v. Shicker*,
   953 F.3d 490 (7th Cir. 2020) ........................................................................ 6

*Perkins v. Linkedin Corp.*,
No. 13-CV-04303-LHK, 2016 WL 613255 (N.D. Cal. Feb. 16, 2016)....................................5

*Ringswald v. County of DuPage*,
196 F.R.D. 509 (N.D. Ill. 2000).......................................................................................7

*Ross v. Gossett*,
33 F.4th 433 (7th Cir. 2022) .........................................................................................19

*Sessa v. Ancestry.com*,
561 F. Supp. 3d 1008 (D. Nev. 2021).....................................................................4, 8, 10, 21

*Siegel v. ZoomInfo Techs, Inc.*,
No. 21-cv-2032, 2021 WL 4306148 (N.D. Ill. Sep. 22, 2021)............................................15

*Spindler v. Seamless Contacts, Inc.*,
No. 22-cv-787, 2022 WL 16985678 (N.D. Cal. Oct. 24, 2022) ..............................................4

*Suchanek v. Sturm Foods, Inc.*,
764 F.3d 750 (7th Cir. 2014) .........................................................................................21

*Vinci v. American Can Co.*,
459 N.E.2d 507 (Ohio 1984) ...........................................................................................5

*Williams v. Chartwell Fin. Servs., Ltd.*,
204 F.3d 748 (7th Cir. 2000) .........................................................................................21

**Statutes**

Illinois Right of Publicity Act, 765 ILCS 1075/1 *et seq.*...........1, 3, 5, 6, 11, 12, 13, 15, 16, 20, 25

**Rules**

Federal Rules of Civil Procedure, Rule 23 ..........................1, 4, 7, 12, 14, 18, 19, 21, 23, 24, 25

## I. PRELIMINARY STATEMENT

Using an individual's name, childhood photograph, and personal information without their consent for commercial gain violates well-established Illinois law. Yet this is exactly the conduct Defendants Ancestry.com Operations, Inc., Ancestry.com Inc., and Ancestry.com LLC ("Ancestry") engage in when they advertise paid subscriptions to the website owned and operated by Ancestry, Ancestry.com. Ancestry's non-consensual, commercial use of Illinois residents' names and photographs violates important and long-standing legal rights of each member of the proposed Class in the same manner. The common questions of law and fact raised by Ancestry's non-consensual commercial use predominate over any individualized questions, making this action ideal for class treatment.

Plaintiffs move for class certification of their claims under Illinois' statutory right of publicity, 765 ILCS 1075/1 *et seq*. ("IRPA"), and Illinois unjust enrichment law pursuant to Federal Rules of Civil Procedure 23(b)(3) and 23(b)(2). This is a paradigmatic case for class treatment. Plaintiffs' and Class members' claims arise from Ancestry's class-wide use of their names and yearbook photographs in webpages and marketing emails designed and used to advertise subscriptions to Ancestry.com. By paying licensing and other fees to third parties, Ancestry obtained copies of yearbooks containing the names and childhood photographs of millions of Illinoisans. *See, e.g.*, Exs.[1] 1-2; Ex. 3 ("Godfrey Tr.") at 69:5-20. Ancestry incorporated each Class members' name and childhood photograph into the same advertisements in the same way. *See* Dkt. No. 94 ("SAC") ¶¶3-14, ¶¶34-49 (showing advertising flows for former plaintiff Sergio Bonilla), ¶¶53-78 (same flows exist for Plaintiff Braundmeier), ¶¶82-107 (same flows exist

---

[1] All exhibits are attached to the Declaration of Ben Osborn, filed herewith.

for Plaintiff Wallace); Ex. 18 (video captured from Ancestry.com website showing advertising flow for Plaintiff Braundmeier); Ex. 19 (same for Plaintiff Wallace).

Ancestry publishes three types of advertisements that exploit Plaintiffs' and Class members' names and likenesses. First, Ancestry advertises to website visitors ("visitors" are those who do not have paid or free trial accounts on www.ancestry.com) by encouraging them to search for individuals they may know, or to whom they may be related. Ex. 14 (search page); Ex. 18 (at 1:00); Ex. 19 (at 0:39). After a search is entered, Ancestry displays a page of search results containing "teaser" profiles about people who match the search criteria. SAC ¶45; Ex. 18 (at 1:50); Ex. 19 (at 1:14). Each search result displays a person's name, school city, and a low-resolution version of their yearbook photograph as a child. *Id.*; Godfrey Tr. at 47:4-11. The search results "tease" that Ancestry possesses additional information about the person, including the yearbook date, city where they attended high school, estimated age, birth year, and a higher-resolution version of their photograph as a child. SAC ¶¶45, 68, 97; Ex. 18 (at 2:11); Ex. 19 (at 1:39). When visitors click to view the full version of a "teaser" profile, Ancestry displays the name and low-resolution photograph along with a prompt to "Sign Up Now" for a paid subscription. SAC ¶¶45, 69, 98; Godfrey Tr. at 48:4-10; Ex. 18 (at 2:11 & 2:41); Ex 19 (at 1:39). Thus, Ancestry advertises by displaying Class members' names, cities of school attendance, and low-resolution photographs, with the promise that visitors can learn more and view a higher-resolution photograph of the Class members if they purchase a subscription.

Second, Ancestry advertises to users who sign up for a free trial by providing unlimited access to full profiles for a two-week free trial period. SAC ¶¶40-42, 66, 95; Godfrey Tr. at 31:20-32:1. Like visitors, free trial users are encouraged to search for people they know or are related to. After a search, Ancestry displays results containing full profiles about people who match the search

2

criteria. SAC ¶¶41, 66, 95. Each search result displays the person's name, yearbook date, school, city, estimated age, birth year, and full-resolution photograph. *Id*. If free trial users attempt to search for Class members after the two-week free trial expires, they are informed they must purchase a subscription to continue viewing Class members' names, photographs, and information. *See* SAC ¶40. Thus, Ancestry advertises to free trial users by displaying Class members' names, high-resolution photographs, and personal information.

Third, Ancestry sends marketing emails containing Class members' names, which when clicked, deliver the recipient to a screen soliciting a subscription. SAC ¶¶12, 46, 73, 102; Godfrey Tr. at 51:13-52:1; 54:25-55:24.

All three types of advertisement function in the same manner for every student in Ancestry's database, and therefore every Class member. Because Ancestry displays the same advertisements for every Class member, Ancestry's "use . . . for commercial purposes" of Class members' names and identities is subject to Class-wide proof. *See* 765 ILCS 1075/30. The Class members have no relationship with Ancestry, and Ancestry's failure to obtain their "previous written consent" is therefore also subject to Class-wide proof. *See id.*

Damages are also subject to Class-wide proof. The IRPA recognizes that "each individual's right of publicity" is "[t]he right to control and to choose whether and how to use [that] individual's identity for commercial purposes." 765 ILCS 1075/10. Where a business uses an individual's identity for commercial purposes without their prior written consent, as Ancestry does, that individual may recover the "greater" of (1) "both" "actual damages" suffered by the plaintiff and the defendant's "profits derived from the unauthorized use;" or (2) "$1,000." In this Court's words, the Class members have suffered the injury the IRPA and its common-law predecessor were designed to redress because Ancestry "used [their] image[s], name[s], and likeness[es] in

3

advertisements intended to profit from subscription services." *Bonilla v. Ancestry.com Operations Inc.*, 574 F. Supp. 3d 582, 591 (N.D. Ill. 2021).[2] Because each Class member is entitled to the same statutory minimum damages, even were there variation within the Class in the amount Ancestry paid to license their name and photograph or in the "profits" Ancestry "derived" from its use of each Class members' identity, these variations would not affect the minimum damage amount each Class member is due.

At least three courts have granted class certification in highly similar cases involving statutory right of publicity claims. In *Fischer v. InstantCheckmate LLC*, Judge Feinerman certified under Rule 23(b)(3) a class of Illinois residents whose names and personal information appeared in a searchable database published by InstantCheckmate. 2022 WL 971479, at *3, 15 (N.D. Ill. Mar. 31, 2022). InstantCheckmate.com is owned by PeopleConnect, ████████████████ ██████████████████████████████████████████. *See* Ex. 1. Like Ancestry.com, InstantCheckmate.com used search results containing individuals' names and identities to advertise subscriptions. *See Fischer*, 2022 WL 971479, at *8. The *Fischer* court

---

[2] The Ninth Circuit Court of Appeals and at least 11 district courts agree with this Court's ruling that Plaintiffs' allegations establish Constitutional injury-in-fact and statutory injury under state right of publicity statutes. *See, e.g.*, *Martinez v. ZoomInfo Techs*., 82 F.4th 785, 790 (9th Cir. 2023) (the plaintiff "has plausibly pleaded that she suffered sufficient injury to establish standing"); *Sessa v. Ancestry.com*, 561 F. Supp. 3d 1008, 1020-23 (D. Nev. 2021); *Callahan v. PeopleConnect*, No. 20-cv-09203, 2021 WL 5050079, at *14-15 & *18 (N.D. Cal. Nov. 1, 2021) (analyzing statutory standing under Cal. Civ. Code § 3344 and California's UCL); *Knapke v. PeopleConnect*, 553 F. Supp. 3d 865, 878 (W.D. Wash. 2021); *Kellman v. Spokeo, Inc*., 599 F. Supp. 3d 877, 887-91 (N.D. Cal. 2022); *Gabiola v. Sarid*, No. 16-cv-02076, 2017 WL 4264000, at *6 (N.D. Ill. Sep. 26, 2017); *Spindler v. Seamless Contacts, Inc.*, No. 22-cv-787, 2022 WL 16985678, at *3-4 (N.D. Cal. Oct. 24, 2022); *Lukis v. Whitepages, Inc*., 542 F. Supp. 3d 831, 804-05 (N.D. Ill. 2020); *Camacho v. Control Group Media Co*., No. 21-cv-1954, 2022 WL 3093306, at *27-28 (S.D. Cal. July 18, 2022); *Hoffower v. Seamless Contacts, Inc.*, No. 22-cv-2019, Dkt. No. 37, at *1-2 (N.D. Ill. Nov. 22, 2022); *In re Clearview AI, Inc. Consumer Privacy Litig*., 585 F.Supp.3d 1111, 1126-30 (N.D. Ill. Feb. 14, 2022); *Martinez v. ZoomInfo Techs. Inc*., No. 21-cv-5725, 2022 WL 1078630, at *2-4 (W.D. Wash. Apr. 11, 2022).

considered and rejected many of the arguments Ancestry may raise here. Just today, Judge Chen conditionally certified a nearly identical class in *Nolen v. PeopleConnect, Inc.*, No. 20-cv-09203-EMC, Dkt. No. 256 (N.D. Cal. Dec. 14, 2023), a case involving PeopleConnect's use of yearbook names and photographs to promote subscriptions to its website that operates in a nearly identical manner to Ancestry's.[3] Similarly, in *Huebner v. Radaris, LLC*, Judge Chhabria certified under Rules 23(b)(3) and 23(b)(2) a class of individuals asserting California claims against a similar people-search site. 2016 WL 8114189, at *1-2 (N.D. Cal. Apr. 12, 2016). Furthermore, at least two courts have certified for settlement purposes classes of individuals whose names and personas were used to promote social media websites in violation of state right of publicity statutes. *See Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939 (E.D. Cal. 2013) (granting final approval); *Perkins v. Linkedin Corp.*, No. 13-CV-04303-LHK, 2016 WL 613255 (N.D. Cal. Feb. 16, 2016) (same).[4] There is no reason for a different result here. Plaintiffs' motion should be granted.

## II. PROCEDURAL BACKGROUND AND PROPOSED CLASS

On December 14, 2020, then-named Plaintiff Sergio Bonilla filed a class action complaint asserting claims under the IRPA, Illinois unjust enrichment, the Illinois Consumer Fraud and Deceptive Business Practices Act, and intrusion upon seclusion. Dkt. No. 1. On December 7, 2021, this Court denied Ancestry's 12(b)(2) motion to dismiss for lack of personal jurisdiction, denied

---

[3] This order was filed under seal, however Plaintiffs will provide a copy to the Court once a redacted public version is available.

[4] Courts have also certified classes of individuals pursuing right of publicity claims in other contexts. In *In re NCAA Student-Athlete Name & Likeness Licensing Litigation*, No. 09-cv-1967 CW, 2013 WL 5979327, at *10 (N.D. Cal. Nov. 8, 2013), the court certified a class of "current and former student athletes" who alleged "that the NCAA misappropriated their names, images, and likenesses in violation of their statutory and common law rights of publicity." *See also Keller v. Electronic Arts, Inc.*, No. 4:09-cv-1967 CW, 2015 WL 5005057 (N.D. Cal. Aug. 18, 2015). (confirming certification of similar class for settlement purposes); *Vinci v. American Can Co.*, 459 N.E.2d 507 (Ohio 1984) (affirming certification of class of individuals pursuing Ohio misappropriation of name or likeness claims).

Ancestry's 12(b)(6) motion with respect to the IRPA and unjust enrichment claims, and granted Ancestry's 12(b)(6) motion with respect to the Consumer Fraud and Deceptive Business Practices Act and intrusion upon seclusion claims. *Bonilla*, 574 F. Supp. 3d 582.

On August 24, 2022, Joshua Braundmeier and Kevin Wallace were added as additional named plaintiffs to the Second Amended Complaint. Dkt. No. 94 ("SAC"). On September 16, 2022, this Court granted Ancestry's motion for summary judgment with respect to then-named Plaintiff Sergio Bonilla because Ancestry first published his name and identity on its website more than one year prior to December 14, 2020. Dkt. No. 96. Ancestry first published Mr. Braundmeier's and Mr. Wallace's names and photographs on August 16, 2021, and April 9, 2021, respectively. SAC ¶¶63, 91. Under this Court's reading of the IRPA's statute of limitations, Plaintiffs' claims are therefore timely. *See* Dkt. No. 96. The Class includes only those whose names and photographs Ancestry published within one year of the filing of the Complaint.

On November 23, 2022, this Court denied Ancestry's motion seeking to compel Plaintiffs Braundmeier and Wallace to arbitrate their claims. Dkt. No. 117.

Plaintiffs respectfully move for an Order certifying the following Class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3):

> All persons: (1) who are Illinois residents or were Illinois residents at any time between December 14, 2019, and the present; (2) who are not paying subscribers, free trial users, or registered users of Ancestry.com and have never donated a yearbook to Ancestry; and (3) whose names and yearbook photographs are or were searchable on the Ancestry.com website, where at least one such yearbook photograph became searchable for the first time on or after December 14, 2019.

### III. LEGAL STANDARD

"The party seeking class certification bears the burden of showing by a preponderance of the evidence that certification is proper." *Orr v. Shicker*, 953 F.3d 490, 497 (7th Cir. 2020).

## IV. ARGUMENT

**A. The Requirements of Rule 23(a) are Satisfied.**

**1. The proposed Class is so numerous that joinder is impracticable.**

The proposed Class satisfies the numerosity requirement. Between December 14, 2019, when the Class period began, and the present, Ancestry licensed from third parties and published on its website the names, photographs, and identities of students from thousands of Illinois schools.[5] In addition to the thousands of Illinois yearbooks it licensed, Ancestry has also published additional Illinois yearbooks it received via donations. *See* Ex. 9 (response to Interrogatory 9, listing "yearbooks [that] were donated to Ancestry such that Ancestry did not pay any fees in exchange for these yearbooks"). Even if each Illinois yearbook contained the name and photograph of only a single Illinois resident, the numerosity requirement would be easily satisfied. *See Ringswald v. County of DuPage*, 196 F.R.D. 509, 512 (N.D. Ill. 2000) ("[A] class of more than 40 members is generally believed to be sufficiently numerous.").

Plaintiffs retained Dr. Michael Naaman, an economist, to assist in calculating Class damages and estimating the size of the Class. Dr. Naaman estimates the proposed Class comprises at least 740,480 members. Naaman Decl. ¶14 at Ex. 1, 25

**2. There are questions of law and fact common to the proposed Class.**

Rule 23(a)(2) requires that there be common questions of law or fact. "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)," and is "typically manifest where...the defendants have engaged in standardized conduct towards members of the proposed class." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (citations

---

[5] *See* Naaman Decl.

omitted). Here, the proposed Class satisfies commonality. Indeed, as demonstrated below, every meaningful issue in this case can be resolved on a common basis:

### a. Ancestry's liability turns on common questions of law and fact.

Ancestry's liability hinges on its publication of advertising webpages displaying Class members' names, identities, and photographs; the identifiability of the Class members portrayed in those webpages; and Ancestry's failure to obtain previous written consent. *See* 765 ILCS 1075/1 *et seq*. All three elements are subject to common proof.

**First**, that Ancestry "use[s]" each Class members' "identity for commercial purposes" may be shown by proof that Ancestry incorporates each Class members' name, personal information, and photograph in advertisements that are, by design, identical in form and advertising content. *See* 765 ILCS 1075/30. Ancestry publishes three forms of relevant advertising. First, for users who have not signed up for a subscription or a free trial, Ancestry displays limited access "teaser" profiles containing the Class members' names, low-resolution photographs, the categories of biographical information Ancestry possesses, and a message that "There's more to see" about the Class member if the user "Sign[s] Up Now" for a subscription. SAC ¶¶45, 69, 98; Ex. 18 (at 2:11); Ex. 19 (at 1:39); *see Sessa v. Ancestry.com*, 561 F. Supp. 3d 1008, 1023 (D. Nev. 2021) (holding parallel allegations "indicate that Ancestry has used Plaintiffs' likeness for commercial purposes."). Below is a screen capture of the "Sign Up Now" screen:

8



Testifying on behalf of the company, Ancestry's Vice President of Global Content confirmed that the flow shown in the SAC, Exhibits 18 and 19, and the screen capture above accurately represent Ancestry's limited access "teaser" profiles, which Ancestry displays in the same way for every individual in its yearbook database. Godfrey Tr. at 60:3-62:19. Second, Ancestry publishes full profiles containing Class member's names, biographical information, and full-resolution photographs as children, which free trial users may search, view, and download during a two-week free trial. *See Bonilla*, 574 F. Supp. 3d at 587 (denying Ancestry's motion to dismiss, holding "[t]he purpose of offering this free trial is to induce users to subscribe to Ancestry's paid products and services."). Again, Ancestry confirmed that the screenshots in the Complaint accurately represent what any free trial user would see after searching for any person in Ancestry's yearbook database. Godfrey Tr. at 58:2-11. Ancestry also confirmed that "███████ ███████████████████████████████████████████████████████████████████" *Id.* at 33:11-21. Third, Ancestry sends promotional "hint emails," which incorporate Class members' names and a link to their yearbook photographs, to users who have not yet purchased a subscription. SAC ¶¶12, 46, 73, 102; Godfrey Tr. at 51:8-52:1. ████████████████████

9

███████████████████████████████████████████████████

████████████████████████ *Id.* at 55:13-16. Because Ancestry incorporates every Class member's name and likeness into the same advertisements in the same way, commercial use may be established by common proof.

**Second**, that Ancestry's advertisements implicate the "identity" of each Class member may be shown by common proof that each of the three advertisements incorporate "attribute[s] of an individual" that "serve[] to identify that individual to an ordinary, reasonable viewer." *See* 765 ILCS 1075/5. As shown above, each advertisement incorporates at least the Class member's name and the city where they attended high school. The free trial advertisements incorporate additional information, including school, year of school attendance, and estimated birth year. Because this information uniquely identifies each Class member, the use of Class member's "identit[ies]" can be shown on a Class-wide basis. *See Sessa*, 561 F. Supp. 3d at 1022 ("The use of an individual's likeness for commercial purposes . . . establishes common law injury for right of publicity claims as long as the individual is recognizable."). It is not required that the photograph alone be sufficiently high-resolution to enable identification. A person's identity is infringed if the information used in the advertisement, taken as a whole and as presented to the prospective purchaser, is sufficient to identify the person. In *Lukis v. Whitepages Inc.*, 454 F. Supp. 3d 746, 761 (N.D. Ill. 2020), a teaser profile listing an individual's "name . . . two telephone numbers, a Chicago address, a Virginia address, and as a relation of [another individual]" could "uniquely identif[y]" the plaintiff and therefore gave rise to a right of publicity claim, even though no image of the plaintiff appeared in the teaser. Here, every advertisement Ancestry publishes incorporates at least the Class members' name, city of school attendance, and low-resolution photograph. As in *Lukis*, this non-photographic information alone is sufficient to identify the Class member.

**Third**, that Ancestry failed to obtain Class members' "previous written consent" can be established by showing that Ancestry has no policy for contacting and soliciting consent from the individuals whose decades-old photographs as children appear in its yearbook database. The sole methods by which Ancestry claims it obtains "consent" are by "users . . . donating a yearbook or agreeing to Ancestry's Terms and Conditions." Ex. 9 (response to Interrogatory 6); Godfrey Tr. at 138:11-16 ("[E]xamples where we do receive consent are . . . people signing up for the terms and conditions . . . and . . . those who donate their own individual yearbooks . . . but outside of that, generally no, we do not seek that consent"), 138:23-139:2 (admitting that there are no policies and procedures related to obtaining consent other than the terms of service). This purported consent defense does not affect the certification analysis, because the proposed Class definition excludes both users who have agreed to the Ancestry terms of service and individuals who have donated yearbooks. *See Fischer*, 2022 WL 971479, at *8-9 (rejecting argument that individualized issues of consent would predominate when defendant admitted it did not receive consent apart from the terms of use). Even were it applicable to Class members, Ancestry's purported consent defense is contradicted by the facts. Neither the terms of service nor the yearbook donation form elicits consent for Ancestry's use of yearbook photographs to advertise subscriptions. *See* Exs. 10, 11, 12. Ancestry's 30(b)(6) witness was unable to identify any portion of the terms of service relating to such consent. Godfrey Tr. at 139:19-143:9.

### b. Entitlement to damages is a common issue of law and fact.

Damages may also be established by common proof. The IRPA recognizes that "each individual's right of publicity" is "[t]he right to control and to choose whether and how to use [that] individual's identity for commercial purposes." 765 ILCS 1075/10. A defendant "who violates" the IRPA by using an individual's identity for commercial purposes without permission is "liable" to that individual for statutory minimum damages in the amount of "$1,000." 765 ILCS

1075/40. Accordingly, each Class members' entitlement to statutory minimum damages under the IRPA may be established by the same common proof discussed above, that is, proof that Ancestry used their names and identities for a commercial purpose without previous written consent. *See Fischer*, 2022 WL 971479 (certifying Rule 23(b)(3) damages class seeking $1,000 in minimum statutory damages for each class member after the defendant published profiles about the class members to promote website subscriptions).

Although not required to support their claim for statutory minimum damages under the IRPA, Plaintiffs will also show by common proof that Ancestry earned a benefit from its use of their names and identities. That Ancestry ascribes an economic value to, and earns a benefit from, Class members' likenesses has and will be shown by:

(1) Ancestry's use of Class members' names and likenesses to advertise.

(2) ██████████████████████████████████████████████████████ ███████████████████████████████ *See* Ex. 9 (response to Interrogatory 9) (█████████ ██████); Exs. 1 & 2 (█████████████████████████████); Godfrey Tr. at 92:20-23 (agreeing that "████████████████████████████ ██████████████████████████"), 97:21-98:3, 87:3-12, 86:8-16.[6]

(3) ████████████████████████████████████████████████████████ ███████████████████████████████████████████. Exs. 8 & 15; Godfrey Tr. at 103:6-105:21.

---

[6] Ancestry may argue that ██████████████████████████████████████ █████████████████████████████████████████████████████ *See* Godfrey Tr. at 98:21-99:18. This argument is unsupported by the facts. *See, e.g.*, Ex. 1 (Ancestry "█ ███████████████ Godfrey Tr. at 98:21-99:18 ██████████. It is also irrelevant under the law. ████████████████████████████████████████████████████████ ████████████████████████████████████.

(4) ███████████████████████████████████. Ex. 2; Godfrey
Tr. at 120:5-123:19 ████████████████████
███████████████████████████).

(5) ██████████████████████████████████████
███████████████████████████████████████
████████████████████████████.

(6) ██████████████████████████████████████
████████████████████████*See, e.g.*, Ex. 4, at Ancestry_00001640;
Ex. 5, at Ancestry_00001980 (██████████████████
██████████████████████); Ex. 6, at pg. 4
████████████████████████████████). █



These common facts show that Ancestry earned a benefit from each Class members' identity, and failed to pay each Class member the licensing fees and/or royalties to which they are entitled. Thus, Ancestry "unjustly retained a benefit to the plaintiff's detriment," as required for Plaintiff's unjust enrichment claim. *See Bonilla*, 574 F. Supp. 3d at 597 (quoting *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011)). These facts also provide an alternative basis for damages under the IRPA, because each Class member suffered "actual damages" in the amount of licensing fees and/or royalties they should have received, and Ancestry derived "profits" from its use of Class members' identities. *See* 765 ILCS 1075/40.[7]

---

[7] These facts also provide a basis on which a restitutionary award could be calculated on a Class-wide basis, should Plaintiffs elect to pursue such relief. The licensing fees Ancestry pays and receives establish a market value for the right to make commercial use of a yearbook photograph. Restitution could be measured as the number of Class members' photographs times the market value.

### c. Entitlement to injunctive relief presents common issues of law and fact.

Plaintiffs seek injunctive relief on behalf of the Class. Whether Class members are entitled to such relief, and what modifications Ancestry must make to bring its advertising practices in compliance with the law, are issues common to every member of the Class.

*** 

Thus, while only one common question of law or fact is required, as shown above there are many shared questions of law and fact. The courts in *Fischer* and *Huebner* found commonality in cases presenting the same common issues. *See Fischer*, 2022 WL 971479, at *4 (commonality satisfied in right of publicity case against website owned by PeopleConnect that, like Spokeo, uses profiles of personal information to advertise subscriptions); *Huebner*, 2016 WL 8114189, at *1 (granting class certification under Rule 23 (b)(3) because the defendant people-search website "seems to have acted uniformly in all respects relevant to the plaintiffs' Civil Code § 3344 . . . claims"). The Court should reach the same conclusion here.

### 3. Plaintiffs' claims are typical of those of the proposed Class.

Rule 23(a)(3) requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and [is] based on the same legal theory." *Lacy v. Cook Cty.*, 897 F.3d 847, 866 (7th Cir. 2018). "The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members," so long as "the named representatives' claims have the same essential characteristics as the claims of the class at large." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (citation omitted).

Here, Plaintiffs' claims arise from the same course of conduct, are based on the same legal theories, and seek the same relief as those of Class members. As shown above, Plaintiffs' names

14

and identities were incorporated in Ancestry's advertising flow in the same manner as those of all Class members. Plaintiffs never registered on Ancestry.com. Exs. 13 & 20 (responses to Interrogatory 14). By definition, neither did the absent Class members. Plaintiffs seek the same relief as absent Class members, most notably statutory minimum damages in the amount of $1000 per photograph and an injunction prohibiting Ancestry from advertising subscriptions using Class members' names, information, and yearbook photographs without their written consent.

Ancestry may argue, as InstantCheckmate did in *Fischer*, that Plaintiffs' claims are subject to various issues and "unique" defenses that render their claims atypical. *See Fischer*, 2022 WL 971479, at *4-7. None of its potential arguments hold water.

**Viewing by a Member of the Public**: Ancestry may argue that Plaintiffs' claims are atypical because, for some members of the Class, it is possible the advertisements incorporating their photographs have not yet been viewed by a member of the public, because no one has yet searched for their names on www.ancestry.com. This argument fails because, as multiple courts have held, whether an advertisement was viewed by a member of the public is not relevant to a right of publicity claim. The claim turns on the defendant's commercial use, not whether a third party witnessed the use. The IRPA "does not impose a viewership requirement." *Fischer*, 2022 WL 971479, at *11; *see also Siegel v. ZoomInfo Techs, Inc.*, No. 21-cv-2032, 2021 WL 4306148, at *3 (N.D. Ill. Sep. 22, 2021) (rejecting argument that "actual view[ing]" must be alleged to state an IRPA claim); *Knapke v. PeopleConnect, Inc.*, 553 F. Supp. 3d 865, 876 (W.D. Wash. 2021) (while common law false light claims require "some allegation that members of the public saw the offending image," there is "no valid basis" to import this requirement into the right of publicity) (Ohio claims). Plaintiffs' and Class members' claims arise from Ancestry's creation of advertisements that make unauthorized commercial use of their identities. The Class is not required

to show whether or how often the advertisements were viewed by members of the public or displayed by Ancestry in response to a search query. *See Fischer*, 2022 WL 971479, at *10 ("how many (if any) InstantCheckmate users saw a putative class member's search result . . . is immaterial to whether InstantCheckmate violated the IRPA"). As Judge Chen of the Northern District of California wrote when rejecting a similar argument by a company that also uses yearbook photographs to advertise subscriptions:

> [E]ven if an advertisement connected to Plaintiff's image were never generated by users, the fact that the advertisement *could* be generated at any point by any person is the gravamen of Plaintiff's complaint. This is what is reflected in [the right of publicity's] lack of visual display and third-party viewership requirements.

*Nolen v. PeopleConnect Inc*., 20-cv-09203-EMC, 2023 WL 4303645, at *6 (N.D. Cal. June 30, 2023) (emphasis in original).

Similarly, Ancestry may argue that it is possible Ancestry has not yet sent a "hint email" incorporating Plaintiffs' names and yearbook photographs to a potential subscriber. Again, this argument fails on the law. First, ███████████████████████████████████ ████████████████████████████████████████████ Godfrey Tr. at 55:13-24. ████████████████████████████████ ███████████████████████ is a "commercial use" for which Ancestry failed to obtain "written consent," and is therefore a violation of the IRPA. *See Nolen*, 2023 U.S. Dist. LEXIS 113630, at *6 ("the fact that the advertisement *could* be generated at any point by any person is the gravamen of Plaintiff's complaint; analyzing California right of publicity claims). Second, ██ ████████████████████████████████████████████ does not alter the fact that Ancestry has publicly distributed every Class member's photograph as part of its free trial and limited access advertisements. Nor does it change the fact that every Class member's claim arises from the same fundamental course of conduct: the commercial use of a yearbook

photograph to advertise subscriptions without consent. *See Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1042 (9th Cir. 2012) (the named plaintiffs' claims need only be "reasonably co-extensive with those of absent class members; they need not be substantially identical."). Plaintiffs do not seek different relief depending on whether a specific Class members' photograph has previously been included in a hint email. Plaintiffs seek the same relief for all Class members: statutory damages of $1,000 for each time their name and photograph appears in the Ancestry database, and an injunction prohibiting use in any form of advertisement without written consent.

In related right of publicity cases against websites like Ancestry, plaintiffs have sought to certify both: (1) a broad class of all individuals whose names and personas are searchable on the site; and (2) a narrower subclass of individuals whose names and personas are known to have been searched and viewed by a prospective subscriber prior to purchasing a subscription. *See Fischer*, 2022 WL 971479, at *12-13 (plaintiffs sought to certify broad "SEO Directory" and "Injunctive Relief" classes and a narrower "Search Results" subclass); *Kellman v. Spokeo, Inc.*, 21-cv-08976-WHO, Dkt. No. 92 (N.D. Cal. May 3, 2023) (plaintiffs' motion to certify broad "Published" classes and narrower "Viewed-Prior-to-Purchase" subclasses). Here, Plaintiffs do not seek to certify a "viewed-prior-to-purchase" subclass, because Ancestry has represented ████████████████

████████████████████████████████████████████████████████████

████████████████████████████. Ex. 21 ¶¶2-3. Ancestry has also represented ████████████

████████████████████████████████████████████████████████████

████████████████████. *Id*. Ancestry represented ████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████ *Id*.; *see also* Exs. 16 and 17 (supporting declarations from Ancestry employees). Plaintiffs reserve the right to seek certification of a

"viewed prior-to-purchase" subclass should further discovery reveal that Ancestry's claims of "████████" are false or over-stated.

### 4. Plaintiffs and their counsel are adequate representatives.

Rule 23(a)(4) requires that the parties and their counsel will "fairly and adequately protect the interests of the class." This inquiry "screens for conflicts of interest among class members." *Howard v. Cook Cnty. Sheriff's Office*, 989 F.3d 587, 609 (7th Cir. 2021). "[T]he mere possibility that a trivial level of intra-class conflict may materialize as the litigation progresses does not prevent class certification." *Id.*, at 610 (quotation omitted). The inquiry also asks whether Plaintiffs have counsel who are "experienced, competent, qualified and able to conduct the litigation vigorously." *Cavin v. Home Loan Ctr.*, 236 F.R.D. 387, 393 (N.D. Ill. 2006). Here, both parts of the inquiry resolve in favor of certification.

There is no meaningful conflict between Plaintiffs and the absent Class members. Plaintiffs seek the same monetary compensation for themselves that they do for absent Class members, *i.e.*, $1,000 per photograph in statutory damages. An injunction prohibiting Ancestry from using Class members' names and photographs to advertise subscriptions would similarly benefit all Class members. The claims of all Class members arise under the same Illinois laws. Because the "proof will be common for all plaintiffs," as Plaintiffs prove their claims, they will prove those of the absent Class members. *See In re Allstate Corp. Securities Litig.*, 966 F.3d 595, 604 (7th Cir. 2020).

Plaintiffs and their counsel will continue to prosecute this action competently and vigorously. Plaintiffs submit with this motion declarations demonstrating their ability and interest in representing the Class and prosecuting this action. *See* Braundmeier Decl.; Wallace Decl. The law firms seeking to represent the Class include qualified lawyers experienced in the successful prosecution of consumer class actions. To support the determinations required under Rules 23(a)(4) and 23(g), the firms each submit with this motion declarations and/or firm resumes

setting forth their relevant experience and expertise. *See* Osborn Decl. ¶¶12-19; Borrelli Decl. and Ex. A; Ram Decl. and Ex. A. These firms stand ready, willing, and able to devote the resources necessary to litigate this case vigorously and see it through to the best possible resolution. Counsel have already devoted ample resources to this matter, including litigating substantial motion practice (*see, e.g.*, Dkt. Nos. 57, 96, 117) and conducting discovery.

## B. The Predominance Requirement of Rule 23(b)(3) is Satisfied.

Rule 23(b)(3) requires that common questions of law or fact predominate over individual ones. "[T]he predominance requirement is met when common questions represent a significant aspect of a case and can be resolved for all members of a class in a single adjudication*." Ross v. Gossett*, 33 F.4th 433, 439 (7th Cir. 2022) (quotation omitted). Courts "routinely have found that common questions predominate where the case claims the existence of a widespread or uniform practice." *Id.* The issue is not "whether the plaintiffs would prevail" on the common issues, but rather whether common questions represent a significant aspect of the case. *Id.* "Individual questions need not be absent. . . The rule requires only that those questions not predominate over the common questions affecting the class as a whole." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012).

As shown above in the discussion of commonality, liability and entitlement to relief have and will be proved for every Class using the same evidence. *See Erica P. John Fund, Inc. v. Halliburton Co*., 563 U.S. 804, 809 (2011) (the predominance inquiry "begins, of course, with the elements of the underlying cause of action.") (quotation omitted). Indeed, while common issues need only "predominate," as shown above, every significant issue in this case is common. Like the defendant *Fischer*, Ancestry may argue that various individualized issues preclude a finding of predominance. *See Fischer*, 2022 WL 971479. None of these potential arguments would hold water.

**Consent**: Ancestry may argue that determining whether Ancestry obtained "previous written consent" from each Class member requires individualized proof. *See* 765 ILCS 1075/30. However, as discussed above, the only methods by which Ancestry claims to receive consent are via a person's agreement to the terms of service, and via a person's completion of a yearbook donation form. *See* Ex. 9 (response to Interrogatory 6). Because the Class excludes anyone who has agreed to the terms or donated a yearbook, by Ancestry's admission it has not obtained consent – written or otherwise – from any Class member.

Ancestry speculates that individuals "could consent by providing consent to a third party who, in turn, provided consent to Ancestry," *id.*, but failed to identify even a single instance of a Class member relaying consent to Ancestry via a third party, Godfrey Tr. at 145:3-9 (admitting that "I [testifying on behalf of the company] don't have any knowledge" of "any records of explicit written consent . . . through a third party."). *See generally*, *id*. at 144:24-155:9. Ancestry's speculations, even if true, are irrelevant to Plaintiffs' claims. The relevant question under the IRPA is whether Class members gave their "written consent" <u>to Ancestry for use in advertising its website</u>, not to some third party for some other use. *See Fischer*, 2022 WL 971479, at *9 ("[W]hatever consent a putative class member gave to a non-party to use or share her identity has no bearing on whether that putative class member consented to [the defendant]'s use of her identity.").

**Privacy:** Ancestry may argue that the degree to which individual Class members voluntarily share their own personal information and photographs with the public – for example by posting information on social networking sites of their choosing – presents an individualized issue. This argument fails on the law. Plaintiffs' and Class members' claims arise not from the disclosure of otherwise "private" information, but rather from Ancestry's *commercial use* of their

information to advertise subscriptions without consent. *See Sessa,* 561 F. Supp. 3d at 1022 n.3 ("[R]ight of publicity claims do not depend on publication of private photos, but rather the use of one's likeness for commercial purposes"); *see also Martinez v. ZoomInfo Techs Inc.*, No. 21-cv-5725, 2022 WL 1078630, at *5 (W.D. Wash. Apr. 11, 2022). That some Class members may voluntarily share some photographs and personal information on social networking sites of their own choosing does not affect their right to prevent Ancestry from using their names and photographs without consent to advertise its product.

## C. The Superiority Requirement of Rule 23(b)(3) is Satisfied.

Rule 23 provides a non-exhaustive list of factors for consideration when determining whether a class action is superior to other methods for adjudicating the controversy:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

> (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and]

> (D) the difficulties likely to be encountered in the management of a class action.

*See Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 759 (7th Cir. 2014) (quoting Fed. R. Civ. P. 23(b)(3)). These factors weigh in favor of class treatment here.

With respect to the first factor, the Class members' claims are so relatively small – $1,000 per photograph – that it would cost more to litigate an individual case than they could hope to recover. *See Williams v. Chartwell Fin. Servs., Ltd*., 204 F.3d 748, 761 (7th Cir. 2000) (class certification may be particularly appropriate "where the small amounts of money involved . . . inhibit individualized litigation.").

The second and third factors also weigh in favor of certification. This case has been pending for nearly three years. Plaintiffs' counsel are not aware of any other action asserting Illinois right of publicity claims against Ancestry. This Court has become familiar with the factual and legal issues by handling motions to dismiss, for summary judgment, to compel arbitration, and to compel production. *See Hernandez v. Wells Fargo Bank, N.A.*, No. 18-cv-07354 (N.D. Cal. Jan. 29, 2020) (third factor weighed in favor of certification because "this Court has overseen this case for well over a year and is familiar with the underlying issues"). Holding separate trials for claims that could be tried together would be costly, inefficient, and a burden on the court system.

The fourth "management" factor focuses on the "practical problems that may render the class action format inappropriate for a particular suit." *Eisen v. Carlisle Jacquelin*, 417 U.S. 156, 163 (1974). Here, Plaintiffs do not foresee any serious manageability problems, and certainly none that would render thousands of individual actions a better alternative. *See Mullins v. Direct Dig., LLC*, 795 F.3d 654, 664 (7th Cir. 2015) (the "superiority requirement . . . is comparative: the court must   assess efficiency with an eye toward other available methods" for resolving the dispute). Plaintiff submits with this motion the Declaration of Brandon Schwartz, an experienced claims administrator, attesting to the feasibility of Class notice. *See* Schwarz Decl. Mr. Schwartz describes a notice plan that he estimates would reach 90% of Illinois Class members. *Id*. The plan would also provide notice to individuals who migrated out of Illinois during the relevant period. The plan incorporates digital banners, print media, press releases, a toll-free hotline, and an informational website. *See Mullins*, 795 F.3d at 665 (class notice may be accomplished "through third parties, paid advertising, and/or posting in places frequented by class members.").

For these reasons, the superiority requirement is satisfied.

#### D. The Class is Clearly Defined Based on Objective Criteria

This Circuit recognizes an implicit "ascertainability" requirement within Rule 23. *Id.*, at 659. This requirement is satisfied if the class is "defined clearly and based on objective criteria." *Id.* The Plaintiff need not prove at the certification stage "that there is a reliable and administratively feasible way to identify all who fall within the class definition." *See id.*, at 657, 659 (ascertainability focuses on "the adequacy of the class definition itself," not on "whether, given an adequate class definition, it would be difficult to identify particular members of the class.").

The implicit ascertainability requirement is satisfied here. The proposed Class is defined by clear and objective criteria, none of which is dependent on the Class members' subjective state of mind. First, Class members are or were residents of Illinois during the Class period. Second, Class members are not registered users of www.ancestry.com. Finally, Class members' names and yearbook photographs are searchable on www.ancestry.com.

Although Plaintiffs are not required to show that it would be administratively feasible to identity the Class members, *see id.*, at 659, here, Plaintiffs have shown administrative feasibility. *See* Schwartz Decl. (attesting to the feasibility of Class member identification). That a given claimant is or was an Illinois resident during the relevant period can be verified by the claimant averring their state of residence and providing their Illinois address. That a claimant is not a registered user of www.ancestry.com may be established by averment and by Ancestry checking the claimant's email address against their database of registered users. Ancestry collects emails as part of the registration process. Godfrey Tr. at 133:2-9. That a claimant's name and photograph is searchable on Ancestry.com can be established by the claimant searching for their own name and yearbook photograph on the site. Courts in this Circuit routinely adopt similar methods for Class member identification. *See, e.g.*, *Mullins*, 795 F.3d at 669 ("[A] district judge has discretion to

allow class members to identify themselves with their own testimony and to establish mechanisms to test those affidavits as needed.").

**E. The Proposed Class Also Satisfies the Requirements of Rule 23(b)(2).**

Rule "23(b)(2) is the appropriate rule to enlist when the plaintiffs' primary goal is . . . to require the defendant to do or not do something that would benefit the whole class." *Chi. Teachers Union, Local No. 1 v. Bd. of Educ. of Chi.*, 797 F.3d 426, 441 (7th Cir. 2015). Here, Plaintiffs seek an injunction prohibiting Ancestry from using names and yearbook photographs to advertise subscriptions without written consent, a practice that Ancestry engages in with respect to every member of the Class. Because Plaintiffs seek uniform injunctive relief from practices generally applicable to the class, the Class should be certified under Rule 23(b)(2).

**F. In the Alternative, the Proposed Class Satisfies the Requirements of Rule 23 (c)(4).**

Should this Court determine that only certain issues are appropriate for Class treatment, Plaintiffs respectfully request in the alternative that the Court certify those issues under Rule 23(c)(4). Even if "separate trials may be necessary" to resolve some issues, "Rule 23(c)(4) provides that when appropriate, an action may be brought or maintained as a class action with respect to particular issues." *McReynolds v. Lynch*, 672 F.3d 482, 491 (7th Cir. 2012). Certification of an issues class is appropriate with respect to "genuinely common issues . . . the accuracy of the resolution of which is unlikely to be enhanced by repeated proceedings." *Id.*

Here, for the reasons discussed above, certification of certain issues is appropriate because they are shared in common between the Class members, and because the accuracy of resolution would not be improved by individual trials. Such issues include:

- whether Ancestry used Class members' names and likenesses to advertise website subscriptions in an advertisements identical or substantially similar those shown in the SAC;

- whether Ancestry's use of names and yearbook photographs to advertise subscriptions without previous written consent is a commercial use in violation of the IRPA;

- whether Ancestry's regular practices and policies include obtaining written consent from Class members prior to using their names and likenesses, as required by the IRPA;

- whether Ancestry ascribes economic value to and derives an economic benefit from its commercial use of Class members' names and likenesses;

- whether the provision for statutory damages in the IRPA entitles each Class member to $1,00 for each name and yearbook photograph Ancestry includes in its database;

- whether Class members are entitled to injunctive relief, including changes to the Ancestry website that would de-associate the display of Class members' names and photographs from solicitations of website subscriptions or require Ancestry to obtain written consent.

These issues can and will be resolved with generalized proof on a Classwide basis.

## V. CONCLUSION

For the reasons above, Plaintiffs respectfully request the Court GRANT their motion to certify the Class pursuant to Rules 23(b)(3) and 23(b)(2) or, alternatively, under Rule 23(c)(4).

Dated: December 14, 2023        Respectfully Submitted,

By: /s/ *Raina C. Borrelli*
     Raina C. Borrelli
     Samuel J. Strauss
     TURKE & STRAUSS LLP
     613 Williamson St., Suite 201
     Madison, WI 53703
     Telephone: (608) 237-1775
     Facsimile: (608) 509-4423
     raina@turkestrauss.com
     sam@turkestrauss.com

Benjamin R. Osborn (*pro hac vice*)
LAW OFFICE OF BENJAMIN R. OSBORN
102 Bergen Street
Brooklyn, NY 11201
Telephone: (347) 645-0464
ben@benosbornlaw.com

Michael F. Ram (*pro hac vice*)
Marie N. Appel (*pro hac vice*)
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6923
mram@forthepeople.com
mappel@forthepeople.com

*Attorneys for Plaintiffs and the Proposed Class*

## CERTIFICATE OF SERVICE

I, Raina C. Borrelli, hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record via the ECF system.

DATED this 14th day of December, 2023.

TURKE & STRAUSS LLP

By: */s/ Raina C. Borrelli*
    Raina C. Borrelli
    raina@turkestrauss.com
    TURKE & STRAUSS LLP
    613 Williamson St., Suite 201
    Madison, WI 53703
    Telephone: (608) 237-1775
    Facsimile: (608) 509-4423