— **EXHIBIT 11** —

# Terms and Conditions - Revision as of October 6, 2010

Before using or subscribing to Ancestry.com, please review the following terms and conditions (the Agreement) which define your rights, responsibilities and benefits as a user of Ancestry.com.

**Ancestry.com License and Terms and Conditions of Use**

Ancestry.com is an Internet service (the "Service") owned and operated by Ancestry.com Operations Inc. ("Ancestry.com", "Ancestry", "we", "our" or "us"). "You" or "your" means an adult user of the Service for itself and you as parent or guardian for any minor who you allow to access the Service, for whom you will be held strictly responsible. Your use of the Service indicates that you are bound by this Agreement with us. If you don't agree with any of these terms and conditions, don't use the Service. We may alter this Agreement at our discretion and your continued use after any change indicates your acceptance of that change. If you don't want to be bound by a change, discontinue use of the Service.

Ancestry.com contains graphics, information, data, editorial and other content accessible by any registered Internet user and similar content which is accessible only to our subscribing members ("the Content"). Whether in the free section or in the subscription section of the Service, all Content is owned and/or copyrighted by Ancestry, or third party providers and may be used only in accordance with this limited use license. Ancestry.com is protected by copyright as a collective work and/or compilation, pursuant to U.S. copyright laws, international conventions, and other copyright laws.

**Limited Use LICENSE**

You are licensed to use the Content only for personal or professional family history research, and may download Content only as search results relevant to that research. The download of the whole or

- **Liability Disclaimer**

  Ancestry and its suppliers provide all Content on this Site without any warranty.

- **Registration**

  Use of the Site requires registration. Site security is the responsibility of the user.

- **Fees and Payments**

  Subscription membership is continuous until terminated by the user.

- **Communications**

  Ancestry can e-mail users although users can choose not to receive such communications.

- **Termination**

  Ancestry reserves the right to terminate user access to the Site.

Exhibit 0017

significant portions of any work or database is prohibited. Resale of a work or database or portion thereof, except as specific results relevant to specific research for an individual, is prohibited. Online or other republication of Content is prohibited except as unique data elements that are part of a unique family history or genealogy. Violation of this License may result in immediate termination of your membership and may result in legal action for injunction, damages or both. You may use access software provided on the Service only while on line and may not download, copy, reuse or distribute that software, except where it is clearly stated in connection with software that it is made available for offline use and a license for that use is provided in connection with that software.

**User provided content**

Portions of the Service will contain user provided content, to which you may contribute appropriate content. For this content, Ancestry is a distributor only. By submitting content to Ancestry, you grant Ancestry, the corporate host of the Service, a license to the content to use, host, distribute that Content and allow hosting and distribution of that Content, to the extent and in that form or context we deem appropriate. Should you contribute content to the site, you understand that it will be seen and used by others under the license described herein. You should submit only content which belongs to you and will not violate the property or other rights of other people or organizations. Ancestry is sensitive to the copyright of others. For more concerning copyright issues, view our corporate policy. We will not edit or monitor user provided content, with the exception that, to promote privacy, an automated filtering tool will be used to suppress, and omit from display, information submitted to the tree areas of the site which appears to pertain to a living person. We also reserve the right to remove any user provided content that comes to our attention and that we believe, in our sole discretion, is illegal, obscene, indecent, defamatory, incites racial or ethnic hatred or violates the rights of others, or is in any other way objectionable.

**LIABILITY DISCLAIMER**

The information, products, and services included on this Web Service may include inaccuracies or typographical errors. Changes are periodically made to the information herein. We and our third party suppliers provide all Content in this Service "AS IS", and without any warranty of any kind.

**Ancestry, and its third party suppliers make no representations concerning the suitability, reliability or accuracy of the Content or the service provided on the Service for any purpose. We and our third party suppliers disclaim all warranties, expressed or implied, in connection with the Content and the services provided on the Service, including conditions of merchantability, fitness for a particular purpose, title and non-infringement. In no case will we or our third party providers be liable for any direct, indirect, punitive, special or other damages including,**

- Modifications

  Ancestry reserves the right to modify this Agreement or the Site at any time.

- Miscellaneous

  This agreement is governed by Utah state and United States of America federal law.

Not Confidential

**without limitation, lost or delay of use, lost profits, loss of data or any other damage in contract, tort, equity or any other legal theory, even if advised of the possibility thereof.**

Ancestry may, from time to time, provide opportunities to users of the Service to link to or buy services from third parties. Sites of those third parties will be subject to terms and conditions different from those found here. **Ancestry makes no warranty concerning third party provided goods or services, and you agree that any recourse for dissatisfaction or problems with those goods or services will be sought from the third party provider and not from Ancestry.**

Because some states/jurisdictions do not allow exclusions as broad as those stated above or limitations of liability for consequential or incidental damages, the above limitations may, in whole or in part, not apply to you. IF YOU ARE DISSATISFIED WITH ANY PORTION OF THIS WEB SERVICE, OR WITH ANY OF THESE TERMS OF USE, YOUR SOLE AND EXCLUSIVE REMEDY IS TO DISCONTINUE USING THIS SERVICE.

**Additional Guest or Subscribing Member Terms**

1. REGISTRATION AND SECURITY

1.1 As part of the registration process, you will select a username and password. You must provide Ancestry with accurate, complete, and up-to-date registration information. Failure to do so will constitute a breach of this Agreement. You understand that you may not (i) select or use a name of another person with the intent to impersonate that person; (ii) use the rights of any person other than yourself without authorization; or (iii) use a name that we, in our sole discretion, deem inappropriate. As you submit information, you understand that the network of Internet Sites including Ancestry.com, Genealogy.com, Ancestry.co.uk, MyFamily.com, RootsWeb.com, and FamilyHistory.com are owned and operated by Ancestry.com Operations Inc., incorporated in Delaware, USA. The Sites are operated in the United States of America and operated to be in compliance with the laws of the United States. Access is governed by these terms and conditions under the laws of the State of Utah and the United States. Registration as a user of or subscriber to any of the Sites or services provided on them results in your customer information being stored and processed in the United States, and you, in registering or subscribing, specifically consent to that storage and processing. You may access that information at any time to confirm its correctness and to keep it current in connection with your registration or subscription. **If you are subscribing or registering for use of this site from outside of the United States of America, you consent to the**

**storage and processing in the United States of the personal data you submit, within the scope of the PRIVACY STATEMENT of Ancestry You may and should review and correct this information regularly.**

1.2 You shall notify us by regular mail or by e-mail at support@ancestry.com of any known or suspected unauthorized use(s) of your account, or any known or suspected breach of security, including loss, theft, or unauthorized disclosure of your password or billing information. You will be responsible for maintaining the confidentiality of your password. You will never be required to reveal your password to any representative or agent of Ancestry, its owners or agents.

1.3 You must be 18 years or older to subscribe.

1.4 You are responsible for all usage or activity on Ancestry via your password account. Distribution of your password to others for access to Ancestry is expressly prohibited and shall constitute a breach of this Agreement. Any fraudulent, abusive, or otherwise illegal activity may be grounds for termination of your account, at our sole discretion, and you may be referred to appropriate law enforcement agencies.

2. FEES AND PAYMENTS

2.1 **Continuous Service Membership**. Subscription membership in the Service is on a continuous service basis with the exception of subscriptions which are purchased as gifts by one person for another. These gift subscriptions will not be automatically renewed on the subscription end date. **For all other subscriptions, this means that once you have become a subscribing member, your subscription will be automatically renewed and your billing choice will be charged based on the subscription program (annual, quarterly, monthly, etc.) you have chosen.** Billing charges will be processed within 24 hours your order is taken and products included in memberships will be shipped shortly thereafter with a separate billing unless shipped within that 24 hours. Except in the case of monthly subscriptions, you will be notified by e-mail 15 days before your subscription will end, asked to correct any information which has changed and reminded of the opportunity to "opt out" of your renewal. **From the United States, you may cancel by phone and must call Ancestry at 1-800-262-3787 at least two days before the renewal date for the cancellation to be effective or you may cancel at least two days before the renewal date via your** MyAccounts page while logged on at Ancestry.com by following the Cancel Subscription link on that page and following the process there.

International customers may also call 1-801-705-7620 during business hours or send an e-mail to internationalcancelsonly@ancestry.com and provide the following information:

Given name and surname
Username
Subscription type (UK/Ireland collection, etc.)
E-mail address used when subscribing
Phone number including country code
Country

2.2 **Cancellations**. Initial Annual Subscription. An initial annual subscription comes with the option to cancel during the first 7 days and receive a full refund, **unless the subscription began with a free trial period.** The 7 day period begins on the day you register for the subscription Service, which is also the day you are given access to the subscription area of the Service. An exception is refunds relating to gift subscriptions in which case the seven days begins on the date of purchase no matter what date you chose to activate the Service. **If you subscribe to the Service following a free or other trial period, that trial period takes the place of the 7 day cancellation period, and once the paid subscription begins, no refund will be provided. Cancellations during the 7 days may be made by phone if you are a United States customer by calling us at 1-800-262-3787 and providing the same information that you provided when you subscribed or you may cancel at least two days before the renewal date** via your MyAccounts page while logged on at Ancestry.com by following the Cancel Subscription link on that page and following the process there. International customers may also call 1-801-705-7620 during business hours or send an e-mail to internationalcancelsonly@ancestry.com and provide the following information:

Given name and surname
Username
Subscription type (UK/Ireland collection, etc.)
E-mail address used when subscribing
Phone number including country code
Country

**Your cancellation call must be received by end of business (5:00 p.m. Mountain Time) on the 7th subscription day.** Refunds are subject to return of goods. Please allow a reasonable time for the refund to reach you or be charged back to your account. All refunds will be given to the original credit card on which the purchase was made. **All other subscriptions, including monthly subscriptions,**

**quarterly subscriptions, initial annual subscriptions after the 7 days or annual renewals may be canceled by you at any time but no refund will be made for unused subscription periods.**

2.3 Subscription costs may be changed by Ancestry at any time and each renewal of your subscription will be at the then standard renewal cost for the period that you originally selected when you subscribed.

3. COMMUNICATIONS BETWEEN ANCESTRY AND YOU

Ancestry will send electronic mail to you, for the purpose of informing you of changes or additions to Ancestry, or of any Ancestry related products and services. You may opt out of this notification service by replying to the electronic mail that was sent with the word "unsubscribe" (without the quotes) in the subject line. For further information on our use of member information, see the Privacy Statement on the Service.

4. TERMINATION

Should you breach this Agreement we will revoke your license to use the Service and suspend your right of access. In such a case, no portion of your subscription payment will be refunded. Should we decide to suspend your subscription service for any reason other than breach, we will refund to you the unused portion of your subscription payment, which will be your sole and exclusive remedy upon such a suspension of service.

5. MODIFICATIONS TO THIS AGREEMENT AND THE SERVICE

Ancestry has the right, at its sole discretion, to modify this Agreement or the Service, including the Content of the Service, at any time. Changes in Service will be posted on Ancestry.com, or sent via e-mail, or postal mail to you. If any portion of this Agreement or any change of this Agreement of the Service is unacceptable to you or will cause you to no longer be in compliance with the Agreement, you may cancel your subscription by calling Account Services at Ancestry (1-800-262-3787). (See section 2 regarding cancellation of subscription.) Continued use of the Service now or following posted notices of changes in this Agreement, (notice is given by changing the date of last revision), means that you have accepted and are bound by the changes.

## 6. MISCELLANEOUS

6.1 This Subscriber Agreement is governed by the law of the State of Utah, without regard to its principles on conflicts of laws, and the federal law of the United States of America. Any action to enforce this Agreement shall be brought in the federal or state courts located in Salt Lake City.

6.2 Official correspondence must be sent via postal mail to:

Ancestry.com
Attn: Customer Solutions
360 W 4800 N
Provo, UT 84604

Support Center    Ancestry Blog    Site Map    Gift Memberships    Careers

Other Sites:  | United States |

Select language:  | English (EN) |

© 1997-2022 Ancestry · · · · ·

— **EXHIBIT 12** —

# Ancestry Terms and Conditions

**Select a language**

English

Deutsch

Español

Français

Italiano

Svenska

Português

**Effective Date:** 10 May 2021

## 1.  Introduction and Services:

Welcome to Ancestry®! By using any of the Ancestry websites, services, and mobile apps that link to these terms—Ancestry®, AncestryDNA®, AncestryHealth®, Newspapers.com™, Find a Grave®, Fold3.com®, Archives®, and WeRemember®—as well as other related brands (the "Services"), you agree to these Terms and Conditions (the "Terms"). Any new features included in the Services in the future will also be subject to these Terms.

You also agree to our Cookie Policy, Renewal and Cancellation Terms, and Ancestry Community Rules, each of which are incorporated herein by reference. Please read these documents and our Privacy Statement (which describes how we collect, process, use, and share your data) carefully because they contain important information about your rights and responsibilities when you use the Services. You are entering into these Terms with a specific Ancestry entity depending on what Service you are using and where you are geographically located (see Ancestry Companies below for more information).

Additional terms may apply which will be disclosed to you when you sign up for a new Service or take advantage of a new promotion or special offer, which terms become part of your agreement with us if you use those Services, promotions, or offers. If any additional terms conflict with these Terms, those additional terms will prevail. If you have any questions about these Terms or our Services, please contact us.

To help you to read these Terms, we have broken them down into the following sections:

1.  Introduction and Services

    1.1  Eligibility to Use the Services

    1.2  Eligibility to Use the DNA Services

    1.3  Use of the Services

   1.4 Additional Terms Applicable to Your Use of DNA Services

2. Content

   2.1 Ancestry Content

   2.2 Your Content

      2.2.1 Personal Information

      2.2.2 User Provided Content

      2.2.3 Ownership of Your Content

   2.3 Copyright and Trademarks

3. Renewals and Cancellations for Ancestry Services

4. Termination or Suspension of Your Account

5. Warranty

6. Limit of Liability

7. Your Indemnity

8. Services Offered by Other Companies

9. Controlling Law

10. Dispute Resolution, Arbitration and Class Action Waiver

11. Miscellaneous

12. AncestryHealth® Additional Terms and Conditions

1.1.  <u>Eligibility to Use the Services</u>. Unregistered guests, free registered guests, paid subscribers, and people who purchase and/or activate a DNA kit are all "**Users**" under these Terms. You may need to create an account to use the Services. You must provide accurate, complete and current information when you register. The Services are intended for residents in the countries where they are being offered. For example, Services being offered at ancestry.ca are intended for users in Canada.

If you are between the ages of 13 and 18, you may use the Services (excluding any Services requiring a DNA test) with your parent's or guardian's permission. Children under the age of 13 are not permitted to use any Services. We do not knowingly seek or collect any Personal Information directly from children under the age of 13. If Ancestry becomes aware that we have unknowingly collected any personal data directly from a child under the age of 13, we will take commercially reasonable efforts to delete such data from our system.

1.2. <u>Eligibility to Use the DNA Services</u>: You must be at least 18 years old to purchase or activate a DNA test kit. To help us ensure the integrity and quality of our database and protect your privacy, each adult who submits a saliva sample for a DNA test must create their own account and activate their own test. DNA test kit activators must also explicitly consent to the processing of sensitive personal

information. A parent or legal guardian may activate a DNA test, (excluding an AncestryHealth® test), provide us Personal Information, and send us the saliva sample of their own minor child for processing using their account. By activating a DNA test for, or submitting any Personal Information about, a minor you represent that you are the minor's parent or legal guardian. You also agree that you have discussed the DNA test with the minor and the minor has agreed to the collection and processing of their saliva.

1.3. Use of the Services

In exchange for your access to the Services, you agree that you will:

- Comply with the Ancestry's Cookie Policy, Renewal and Cancellation Terms and Community Rules;
- Comply with all applicable laws;
- Be responsible for all usage and activity on the Services made via your account or with your log in information;
- Contact us if you suspect your account has been used without your authorization or you believe your user name and password have been stolen;
- Not resell the Services or resell, reproduce, or publish any content or information found on the Services, except as explicitly described in these Terms;
- Not circumvent, disable or otherwise interfere with security-related features of the Services; and,
- Not circumvent, disable or otherwise interfere with features that prevent or restrict use or copying of any content or enforce limitations on use of the Services or the content therein, including by using any self-developed or third-party developed bots, crawlers, spiders, data miners, scraping, or other automatic access tools.

**Unexpected Results**: When using our Services, you may discover unexpected facts about yourself, your family, or your health (e.g. you may discover an unknown genetic sibling or parent, surprising facts about your ethnicity, unanticipated genetic test results, or unexpected information in public records). Once discoveries are made, we can't undo them.

1.4. Additional Terms Applicable to Use of DNA Services

As used in these Terms, "**DNA Services**" refers to the use of our DNA collection kit, processing and handling of your DNA sample, genetic testing of your DNA sample, and our web or mobile app-based tools that provide you with ethnicity and other genetically related results and associated services, including AncestryHealth®, if applicable. In addition to the requirements described above, you also agree to the following terms for your use of DNA Services:

- You will not resell DNA test kits;
- Any saliva sample you provide is either your own or the saliva of a person for whom you are a parent or legal guardian;
- 

Ancestry_00000725

If you are outside the U.S, you will not send us a sample if sending us a sample would violate any export ban or other restriction in the country in which you reside or from which you are sending the sample;

• You will not use the DNA Services outside of the country to which your DNA test kit was shipped;

• By providing a saliva sample or User Provided Content to us, you acquire no rights in any research or commercial products developed by us or our collaborators and will receive no compensation related to any such research or product development; and,

• You will not use the information obtained from the DNA Services (including any downloaded DNA Data (defined in the Privacy Statement)) in whole, in part and/or in combination with any other database, for any medical, diagnostic, or paternity testing purpose, in any judicial proceeding, or for any discriminatory purpose or illegal activity.

Ancestry's provision of DNA Services. You also agree that we may directly or through other companies who help us provide the DNA Services:

• Provide your saliva sample and DNA to other companies that help us provide the Services, such as laboratories;

• Extract your DNA from your saliva;

• Perform genetic tests in the United States (or, in the future, in other countries) on the resulting DNA using test methods available now or developed;

• Compare your DNA results with other DNA Data in the Ancestry database to provide the Services, including matching you to others in our database with whom you share DNA (you are in control as to whether or not to see and be seen by your DNA matches);

• Disclose to you, and others that you authorize, the results of the tests performed;

• Store your DNA results;

• Store your saliva and any extracted DNA in the United States or destroy any remaining saliva or DNA sample after your sample has been processed, as determined by you; in any case, once submitted to us, your saliva and DNA sample cannot be returned to you;

• Allow certain of our laboratory partners to use a portion of activated or inactivated saliva samples to calibrate or validate instruments, equipment, or laboratory methods used in providing DNA Services; and,

• Use your Genetic Information and other Personal Information as described in these Terms and the Privacy Statement.

We protect your information as described in our Privacy Statement. If you choose to download a copy of your DNA Data, that copy is not protected by our security measures and you are solely responsible for storing, securing, and protecting that downloaded data. Ancestry has no responsibility if you elect to share or transfer your downloaded DNA Data with others, either intentionally or inadvertently. Your DNA Data is intended only for your personal use.

<u>Note to Users who have received a bone marrow or stem cell transplant</u>: The purpose of the DNA Services is to provide genetic and genealogy results and related reports for your informational, recreational, educational and research use. If you have received a bone marrow or stem cell transplant, your AncestryDNA test may provide unexpected results because your saliva may contain cells with your DNA as well as cells with your donor's DNA. DNA for the test is extracted from the cells, and the combination of DNA sources can result in a failed test or a test that provides results based on your donor's DNA. Therefore, we recommend that those who have received a bone marrow or stem cell transplant do not take the AncestryDNA® test. If you have already taken the test, please contact us for further assistance.

## 2. Content

2.1.  <u>Ancestry Content</u>: The Services contain photos, videos, documents, records, indexes of content, and other content provided by Ancestry ("**Ancestry Content**."). Except for WebSearch records, which are governed by the terms of the third parties that host the records, all Ancestry Content is owned by or licensed to us and may be used only in accordance with these Terms, including Ancestry Content that may be in the public domain ("**Public Domain Content**"). You agree:

- To use the Ancestry Content only as necessary for your personal use of the Services or your professional family history research;
- To download the Ancestry Content only as search results relevant to such research or where expressly permitted by Ancestry;
- To keep all copyright and other proprietary notices on any Ancestry Content you download or print;
- Not to distribute, republish, or sell significant portions of any Ancestry Content; and,
- To contact us to obtain our written permission if you want to use more than a small portion of individual photos and documents that are Public Domain Content.

2.2.  <u>Your Content</u>: Ancestry facilitates your providing a variety of content into the Services, including Personal Information (defined in the Privacy Statement), content such as pictures, videos, stories about a deceased relative, your comments in trees, community discussions, or about records and responses to surveys and questionnaires ("**User Provided Content**").

2.2.1  <u>Personal Information</u>: For more information on the types of Personal Information you may provide us and your respective rights, see our Privacy Statement.

2.2.2  <u>User Provided Content:</u> With respect to User Provided Content, you agree that:

- You are solely responsible for your User Provided Content;
- You have all the necessary legal rights to upload or post your User Provided Content;

Not Confidential

- Any User Provided Content you provide complies with the [Ancestry Community Rules](#);

- You will provide Ancestry, upon our request, with any documentation necessary to evidence your compliance with these Terms; and

- Any User Provided Content that you have shared publicly (e.g. by including such User Provided Content in a public Ancestry family tree, as part of your public profile in one of the Services or in a public posting on one of our Services) may be used by other users as part of, or in conjunction with, the Services. We will not be required to remove any User Provided Content that you have made public or has otherwise been shared from the family trees or public profiles of other users.

**Ancestry has no responsibility or liability related to User Provided Content.** We do not routinely monitor User Provided Content for violations of these Terms, including the [Ancestry Community Rules](#), but we reserve the right to do so (including using automated monitoring tools). We reserve the right, but do not have the obligation, to remove or disable access to any User Provided Content that we believe violates these Terms, including the [Ancestry Community Rules](#). Serious or repeat violations or offenses will subject the responsible User to account termination, at Ancestry's sole discretion.

2.2.3  Ownership of Your Content: You own your Personal Information and User Provided Content. You can delete your Personal Information from Ancestry by logging into your Account Settings (for additional information, see the [Privacy Statement](#)). So long as your content remains on our system, we need certain rights from you for your and others' use of the Services. By using the Services, you grant us the right to collect, host, transfer, process, analyze, communicate and store your Personal Information (including your Genetic Information, defined in these Terms and in the [Privacy Statement](#) in order to (a) provide the Services to you and other Users, (b) for the purposes described in these Terms and our [Privacy Statement](#), (c) to help our Users discover more about their families and family histories and build their family trees, and (d) for any other purpose to which you expressly agree, such as sharing with others.

Also, by submitting User Provided Content through any of the Services, you grant Ancestry a sublicensable, worldwide, royalty-free license to host, store, copy, publish, distribute, provide access to, create derivative works of, and otherwise use such User Provided Content to the extent and in the form or context we deem appropriate on or through any media or medium and with any technology or devices now known or hereafter developed or discovered. This includes the right for Ancestry to copy, display, and index your User Provided Content. Ancestry will own the indexes it creates. We will also have the right to continue to use your User Provided Content, even if you stop using the Services, but only as necessary for us to provide and improve the Services.

2.3  Copyright and Trademark: Each of the Services is protected by copyright as a collective work or compilation, pursuant to U.S. copyright laws, international conventions, and other copyright laws. The trademarks, service marks, and logos contained in the Services are owned by or licensed to us.

We and our licensors retain title, ownership, and all other rights and interests in and to all Ancestry Content in the Services.

If you have concerns that User Provided Content posted by other Users may infringe your rights, contain illegal material, or violate these Terms, please contact us. We are also sensitive to the copyright and other intellectual property rights of others. For complaints regarding copyright infringement or illegal content, including any Digital Millennium Copyright Act takedown requests, click here.

### 3. Renewals and Cancellations for Ancestry Services

Your purchases of and subscription(s) to any of the Services are subject to the Renewal and Cancellation Terms.

### 4. Termination or Suspension of Your Account

We may limit, terminate, or suspend your access to the Services without a refund if you breach or act inconsistently with the letter or spirit of these Terms, including the Ancestry Community Rules. In such a case, you will not be entitled to a refund of subscription fees or the purchase price of a DNA test kit.

### 5. Warranty

While we hope you enjoy using our Services, there are things we don't promise about our Services.

**Except as expressly set out in these Terms, we provide the Services and the Ancestry Content to you on an "AS-IS" basis. To the maximum extent permitted by law, we disclaim all warranties express or implied, including the implied warranties of non-infringement, merchantability, and fitness for a particular purpose. We do not make any promises (a) about the Ancestry Content, (b) about User Provided Content, (c) about the specific functionality of the Services, (d) about the quality, accuracy, reliability, or availability of the Ancestry Content or Services, or (e) that the Services will be free from viruses or other harmful components.**

We are constantly changing and improving our Services, so we may add or remove functionality or features from the Services and we may suspend or stop a Service altogether.

### 6. Limit of Liability

Ancestry_00000729

We limit our liability to the fullest extent allowed by law. We will not be liable for any unintentional damage, any actual, incidental, or consequential damage, or for any loss or claim of any kind. Some jurisdictions do not allow us to have a broad limit on our liability. If you live in one of those jurisdictions, some of these limitations may not apply to you. If you are dissatisfied with any portion of the Services or with any statement in these Terms, your sole remedy is to stop using the Services and, if you are using any of our subscription Services, cancel your subscription as described here. Our total liability in any matter related to the Services or these Terms is limited to the aggregate amount you paid us during the 12-month period preceding the event giving rise to the liability. This limitation of liability applies fully to residents of New Jersey.

**7. Your Indemnity**

You agree that you will indemnify and hold Ancestry, and its affiliates and subsidiaries their respective officers, directors, employees, agents, successors, and assigns (the "**Ancestry Parties**") harmless from any claims, damages, or other expenses (including attorney's fees) that result from your use of the Services and (a) your violation of these Terms or other documents incorporated herein by reference; (b) your violation of another person's rights; or (c) any claim related to your User Provided Content, including a claim that your User Provided Content caused damage to another person. This indemnification obligation will continue after you stop using the Services. In addition, you release the Ancestry Parties from all claims, demands, actions, or suits in connection with your User Provided Content, including any liability related to our use or non-use of your User Provided Content, claims for defamation, invasion of privacy, right of publicity, emotional distress, or economic loss.

**8. Services Offered by Other Companies**

Our Services may contain links to other sites operated by third parties, including but not limited to, third-party sites that may display Ancestry trademarks ("**Third-Party Site(s)**"). These links are available for your convenience and are intended only to enable access to these Third-Party Sites and for no other purpose. A link to a Third-Party Site from our websites does not constitute sponsorship, endorsement, approval, or responsibility for any Third-Party Site. The terms and conditions of use and privacy statement of a Third-Party Site may differ substantially from our Terms and Privacy Statement. Please read the terms and conditions of use and privacy documentation for all Third-Party Sites carefully.

Ancestry does not warrant or make any representation about the substance, quality, functionality, accuracy, fitness for a particular purpose, merchantability, or any other representation about any Third-Party Site or its content, products, and services. We have no responsibility related to any Third-Party Site.

Ancestry_00000730

**9. Controlling Law**

If you access the Services on our websites in the United States, the laws of the State of Utah and as applicable, those of the United States of America, govern these Terms and the use of the Services. All claims not subject to arbitration and brought in the United States will be subject to the jurisdiction of the courts of the State of Utah. If you access the Services on our websites anywhere other than in the United States, the laws of Ireland govern these Terms.

**10. Dispute Resolution, Arbitration and Class Action Waiver**

**PLEASE READ THIS SECTION CAREFULLY. IT AFFECTS YOUR LEGAL RIGHTS, INCLUDING YOUR RIGHT TO FILE A LAWSUIT IN COURT.**

We work hard to keep our customers satisfied. If a dispute arises between you and Ancestry, our goal is to provide a cost-effective means of quickly resolving the dispute. If you have any concern or dispute about the Services, you agree to first try to resolve the dispute informally by contacting us.

**For U.S. Customers:**

You and Ancestry agree that these Terms affect interstate commerce and that the Federal Arbitration Act governs the interpretation and enforcement of these arbitration provisions.

If any dispute between us is not resolved within 30 days after contacting us, then you and Ancestry agree that we will resolve it through final and binding arbitration, with the following three exceptions:
1. You may assert your dispute, if it qualifies, in small claims court.
2. Both you and Ancestry may bring a suit in court in the state of Utah only for a claim of infringement or other misuse of intellectual property rights. In this case, we both waive any right to a jury trial.
3. If it qualifies, you may bring a claim to the attention of a relevant federal, state, or local agency that may seek relief against us on your behalf.

If you have a subscription and you terminate for our breach after providing us with a 30-day cure period during which we are unable to cure, we will refund any pre-paid fees on a pro-rated basis to you.

Arbitration Rules: Arbitration will be conducted by JAMS in accordance with the JAMS Streamlined Arbitration Procedure Rules for claims that do not exceed $250,000 and the JAMS Comprehensive Arbitration Rules and Procedures for claims exceeding $250,000 in effect at the time the arbitration is initiated, excluding any rules or procedures governing or permitting class actions. The arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability, or formation of these

Ancestry_00000731

Terms or the Privacy Statement, including but not limited to any claim that all or any part of these Terms or Privacy Statement is void or voidable, whether a claim is subject to arbitration, or the question of waiver by litigation conduct. The arbitrator shall be empowered to grant whatever relief would be available in a court under law or in equity. The arbitrator's award shall be written and shall be binding on the parties and may be entered as a judgment in any court of competent jurisdiction. To start an arbitration, you must do the following: (a) write a Demand for Arbitration that includes a description of the claim and the amount of damages you seek to recover (you may find a copy of a Demand for Arbitration at www.jamsadr.com); (b) send three copies of the Demand for Arbitration, plus the appropriate filing fee, to JAMS, Two Embarcadero Center, Suite 1500, San Francisco, California 94111; and (c) send one copy of the Demand for Arbitration to Ancestry at Ancestry Legal Department, 153 Townsend Street, Suite 800, San Francisco, CA 94107. Arbitration may take place in the county where you reside at the time of filing. You and Ancestry further agree to submit to the personal jurisdiction of any federal or state court in San Francisco County, California in order to compel arbitration, to stay proceedings pending arbitration, or to confirm, modify, vacate, or enter judgment on the award entered by the arbitrator.

Fees: You will be required to pay $250 to initiate an arbitration against us. If the arbitrator finds the arbitration to be non-frivolous, Ancestry will pay all other fees invoiced by JAMS, including filing fees and arbitrator and hearing expenses. You are responsible for your own attorneys' fees unless the arbitration rules and/or applicable law provide otherwise.

No Class Actions: **You and Ancestry each agree that each party may only resolve disputes with the other on an individual basis and may not bring a claim as a plaintiff or a class member in a class, consolidated, or representative action.** If any court or arbitrator determines that the class action waiver set forth in this paragraph is void or unenforceable for any reason or that an arbitration can proceed on a class basis, then the arbitration provisions set forth above shall be deemed null and void in their entirety and the parties shall be deemed to have not agreed to arbitrate disputes.

Changes to This Section: Ancestry will provide thirty (30) days' notice of any changes affecting the substance of this section by posting notice of modifications to the Terms on the Services, sending you a message, or otherwise notifying you when you are logged into your account. Amendments will become effective thirty (30) days after they are posted on the Services or sent to you.

Changes to this section will otherwise apply prospectively only to claims arising after the thirtieth (30th) day. If a court or arbitrator decides that this subsection on "Changes to This Section" is not enforceable or valid, then this subsection shall be severed from the section entitled "Dispute, Resolution, Arbitration and Class Action Waiver," and the court or arbitrator shall apply the first Arbitration and Class Action Waiver section in existence after you began using the Services.

Survival: This Dispute Resolution, Arbitration and Class Action Waiver section shall survive any termination of your account or the Services.

Ancestry_00000732

**For Customers Outside the U.S.:**

You agree that the Irish Courts will have exclusive jurisdiction over all disputes (contractual or non-contractual) related to this Agreement. If you are a European Union consumer you will benefit from any mandatory provisions of the law of the country in which you are resident. Nothing in this Agreement, including the paragraph above, affects your rights as a consumer to rely on such mandatory provisions of local law. Nothing contained in this clause shall limit Ancestry's rights to bring enforcement proceedings in another jurisdiction or to seek interim, protective or provisional relief in the courts of another jurisdiction.

Additional Dispute Information for EU Members: Information pursuant to Regulation 524/2013: The European Commission provides a platform for Online Dispute Resolution (ODR), available at http://ec.europa.eu/consumers/odr/.

### 11. Miscellaneous

Ancestry Companies: You are entering into these Terms with a specific Ancestry entity depending on what Service you are using and where you are geographically located. Please see the list of Ancestry entities by Service and geography here. All references to **"Ancestry", "us", "we", or "our"** in these terms refer to the relevant Ancestry entity on that list. We reserve the right to change the Ancestry entity which is a party to these Terms at any time as a result of a corporate reorganization or otherwise.

Modifications to these Terms: We have the right to modify these Terms or any additional terms that apply to a Service at any time, including to reflect changes to the law or changes to our Services. We will notify you of any material changes by posting information through the Services or via email. Such material changes will not apply retroactively and will become effective thirty days after they are posted, except that changes addressing new functions in the Services or changes made for legal reasons will be effective immediately. Except as explicitly provided herein, your continued use of the Services after a change to the Terms will mean you accept the changes. If any changes are unacceptable to you, you may stop using the Services and, if applicable, cancel your subscription as described here.

Entire Agreement: These Terms, including all rules, guidelines, and other documents incorporated herein by reference, state the entire agreement between you and Ancestry regarding your use of the Services and supersede any prior agreements we may have relating to the Services.

Notification of Changes to the Services: Ancestry may contact you within the Services, via email or physical mail to inform you of changes to the Services or these Terms. You agree that contact in any of these ways will satisfy any legal communication requirements, including that communication be in writing.

Not Confidential

**Feedback**: If you submit feedback or suggestions about Ancestry or our Services, we may use your feedback or suggestions for any purpose without any obligation to you.

**Assignment**: We reserve the right to assign or transfer our rights and obligations under this Agreement. These terms are personal to you and, as a result, you may not, without the written consent of Ancestry, assign or transfer any of your rights and obligations under this Agreement. There shall be no third-party beneficiaries to this Agreement.

**If Ancestry is Acquired**: If Ancestry or its businesses are acquired or transferred to another entity (in whole or part and including in connection with bankruptcy or similar proceedings), Ancestry has the right to share your Personal Information, User Provided Content with that entity. These Terms will continue to apply to the Services until you receive notification of changes to the Terms or Services.

**Severability**: Except as explicitly provided herein, the unenforceability of any section or clause in these Terms will not affect the enforceability of the remaining Terms. We may replace any unenforceable section or clause with a similar one that is enforceable.

**No Waiver**: Our failure to enforce any provision of these Terms is not a waiver of our rights under that provision.

**Fair Credit Reporting Act**: Ancestry is not a consumer reporting agency as defined in the Fair Credit Reporting Act ("**FCRA**"), and the information that you can access on the Services has not been collected in whole or in part for the purpose of furnishing consumer reports, as defined in the FCRA. YOU SHALL NOT USE THE SERVICES AS A FACTOR IN (1) ESTABLISHING AN INDIVIDUAL'S ELIGIBILITY FOR PERSONAL CREDIT OR INSURANCE OR ASSESSING RISKS ASSOCIATED WITH EXISTING CONSUMER CREDIT OBLIGATIONS, (2) EVALUATING AN INDIVIDUAL FOR EMPLOYMENT, PROMOTION, REASSIGNMENT OR RETENTION (INCLUDING BUT NOT LIMITED TO EMPLOYMENT OF HOUSEHOLD WORKERS SUCH AS BABYSITTERS, CLEANING PERSONNEL, NANNIES, CONTRACTORS, AND OTHER INDIVIDUALS), OR (3) ANY OTHER PERSONAL BUSINESS TRANSACTION WITH ANOTHER INDIVIDUAL (INCLUDING, BUT NOT LIMITED TO, LEASING AN APARTMENT).

*These Terms and Conditions were consolidated from separate prior versions. For prior versions of the terms and conditions applicable to the Services, click here.*

**12. AncestryHealth® ADDITIONAL TERMS AND CONDITIONS (US Customers Only)**

By activating an AncestryHealth® DNA test and using any AncestryHealth® products or services, you agree to the Terms as well as these AncestryHealth® Additional Terms and Conditions.

**NOTICE: AncestryHealth® IS NOT AVAILABLE TO RESIDENTS LOCATED OUTSIDE THE UNITED STATES OR IN NEW YORK, RHODE ISLAND, AND NEW JERSEY.**

12.1. Eligibility to Use the AncestryHealth® Services

To purchase or activate an AncestryHealth® DNA kit:

- You must be at least 18 years old. An AncestryHealth® DNA kit cannot be activated for a minor child, even if you are that child's parent or legal guardian.
- You must be a resident in an eligible state of the United States. Residents of New York, Rhode Island, and New Jersey are not eligible to use the AncestryHealth® Service, but may purchase gifts for people located in an eligible state.
- **If you have received a bone marrow or stem cell transplant, you are not eligible to use the AncestryHealth® Service.**

12.2. Terms Applicable to Your Use of AncestryHealth® Services

As used in these Terms, the "**Health Services**" refers to the use of our AncestryHealth® DNA test kit, including the DNA collection kit, processing and handling of your DNA sample, genetic testing of your DNA sample, and our web or mobile app-based tools and services that provide you with your health results for the tests you ordered.

Ancestry's provision of Health Services: You agree that we may directly or through other companies who help us provide the Health Services:

- Provide your contact details, your health history, test results, and health report(s) to an independent physician network;
- Perform genetic health tests in the United States on the resulting DNA as requested by you and approved by the independent physician network. Each health test will be conducted only once per order and no secondary testing or findings will be conducted on the results; and
- Store your test results and health reports in accordance with these AncestryHealth® Additional Terms and Conditions, the Terms, and the Privacy Statement including the AncestryHealth® Additional Privacy Statement.

Note that in limited circumstances, based on the quality or quantity of the saliva or DNA sample you provide, some or all of the health reports may be unavailable to you.

12.3. Physician Network. The approval of test orders, reviewing and providing oversight of the health reports, as well as the provision of genetic counseling will be provided by an independent physician network, currently PWNHealth. You understand and agree that this relationship is between you and PWNHealth and is subject to their Terms of Use and Notice of Privacy Practices.

12.4. Accessing and Sharing Your Data and Reports. You will have access and the ability to download your DNA Data obtained from the microarray technology, test results and any reports. Ancestry may charge you a fee to download your next-generation sequencing DNA Data once the download feature is available.

We protect your information as described in our Privacy Statement. If you choose to download a copy of your DNA Data, test results, or reports, such copies are not protected by our security measures and

you are solely responsible for storing, securing, and protecting that downloaded data. Ancestry will have no responsibility if you elect to share or transfer your download DNA Data, test results, or reports with others, either intentionally or inadvertently. Please note, that if you share your test results or reports with your personal physician, this information may become part of your medical record.

Other Sites: United States

Select language: English (EN)

© 1997-2022 Ancestry · · · · ·

— **EXHIBIT 13** —

| | |
|---|---|
| JOSHUA BRAUNDMEIER, and KEVIN WALLACE, on behalf of themselves and all others similarly situated, | 1:20-cv-07390-VMK-GAF |
| Plaintiffs, | **PLAINTIFF JOSHUA BRAUNDMEIER'S ANSWERS AND OBJECTIONS TO ANCESTRY'S FIRST SET OF INTERROGATORIES** |
| v. | |
| ANCESTRY.COM OPERATIONS INC., *et al.*, | Judge Virginia M. Kendall |
| Defendants. | Magistrate Judge Gabriel A. Fuentes |

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Joshua Braundmeier ("Plaintiff") submits the following objections and responses to Defendants Ancestry.com Operations Inc., Ancestry.com Inc., and Ancestry.com LLC's ("Defendants") First Set of Interrogatories.

Plaintiff has responded to these Requests to the best of his present abilities. However, discovery, investigation, and trial preparation in this matter have not been completed and will continue as long as permitted by statute or stipulation. Although Plaintiff is conducting a diligent search and reasonable inquiry to comply with these Requests, as more expressly detailed below, Plaintiff anticipates that, in the course of further investigation and discovery, additional information may be obtained and/or discovered that might affect the responses provided herein. To be clear, an offer to produce documents does not admit that documents exist or are in the possession of Plaintiff. Therefore, the following responses to Defendants' Requests are without prejudice to, and with the express reservation of, Plaintiff's right to introduce documents or information discovered or deemed responsive up to and through the date of trial. However,

Doc ID: b631434d03c115995f1b1c4002e6425a45d9ebf0

Plaintiff undertakes no duty to supplement these responses, except as expressly set forth below or as is required by the Federal Rules of Civil Procedure.

## **DEFINITIONS**

1. "You," "Your," or "Plaintiff" shall mean Plaintiff Joshua Braundmeier and any of their agents, representatives, attorneys, assigns, and any other entities or persons acting or purporting to act on their behalf, including counsel in this matter. The definition of "Plaintiff", "You", and "Your" may change for the purposes of discovery requests if and to the extent Plaintiff amends the Second Amended Complaint to add or remove named plaintiffs.

2. "Defendants" or "Ancestry" shall mean Defendants Ancestry.com Operations Inc., Ancestry.com Inc., and Ancestry.com LLC, and any of their agents, representatives, and/or any other persons or entities appearing to act on their behalf.

3. "Action" shall mean the above captioned matter, *Joshua Braundmeier et al. v. Ancestry.com Operations Inc. et al*., Case No. 1:20-cv-07390.

4. "Complaint" shall mean the Second Amended Complaint filed in this Action on August 24, 2022.

5. "Yearbook Records" shall mean the yearbooks at issue in the Complaint.

6. "Yearbook Information" shall mean anything contained in or that could be derived from the Yearbook Records, including but not limited to photographs, pictures, student names, name of school, school location, grade, estimated age, and school activities.

7. "Document" is used in the broadest possible sense as interpreted under the Federal Rules of Civil Procedure and encompasses both hard copy documents and electronically stored information. By way of example "documents" includes, without limitation, all originals, copies, and drafts of any written, printed, or graphic matter, and all "writings" as defined in Federal Rule

Doc ID: b631434d03c115995f1b1c4002e6425a45d9ebf0

of Evidence 1001, including, without limitation, the following: abstracts, advertisements, agendas, agreements, analyses of any kind, appointment calendars, articles, assignments, audio recordings, blueprints, books, brochures, charts, circulars, compilations, contracts, diaries, letters, email, reports (including reports or notes of telephone or other conversations), memoranda, brochures, books, ledgers, drawings, photographs, videos, specifications, drafts, catalogs, instructions, invoices, bills of materials, minutes, orders, publications, purchase orders, proposals, working papers, text messages, social media communications, and other writings of whatsoever nature, whether on paper or other information storage means, including film and computer memory devices; all drafts prepared in connection with any such writings, whether used or not; and where any such items contain any marking not appearing on the original or are altered from the original, then such items shall be considered to be separate original documents.

8.      "Communication" shall be construed to the fullest extent under the Federal Rules of Civil Procedure and shall mean, without limitation, the transmittal, disclosure, transfer, or exchange of information (in the form of facts, ideas, inquiries, or otherwise), by any means whatsoever, including orally or in writing, and by any medium whatsoever, including in person, via telephone or via digital or electronic communication.

9.      "Identify" or "Describe": (a) When used relating to any natural persons, shall mean to provide, to the extent known, the person's full name, present or last known business address, and phone number. (b) When used relating to any non-natural person, "identify" shall mean to state the name of the business, legal, or governmental entity or association, and the present or last known address and telephone number of such business, legal, or governmental entity or association. (c) When used relating to any Document, "identify" shall mean to give, to the extent then known, the (i) type of Document; (ii) general subject matter; (iii) date of the Document; (iv)

3

Doc ID: b631434d03c115995f1b1c4002e6425a45d9ebf0

author(s), addressee(s) and recipients(s); and (v) Bates numbers if produced in this action. When used relating to any agreement, "identify" shall mean to give, to the extent known, its date and the place where it occurred, and identify all persons who were parties to the agreement and each person who has knowledge of the agreement, and all other persons present when it was made, and the subject matter of the agreement. (e) When used in reference to one or more acts, events, instances, occasions, circumstances, meetings, conversations, allegations, or contentions, shall mean to state all facts concerning the subject matter in detail, including the date and place thereof, to identify the individual participants, to summarize separately for each individual participant what she or he said or did, and to identify each Document or Communication used or prepared in connection therewith or making any reference thereto.

10.     "Person" shall mean any natural person or legal entity, including a corporation, partnership, proprietorship, group, association, organization, business entity, governmental body, agency, or trust, and its predecessors, successors or current and former parents, subsidiaries, affiliates, partners, officers, directors, employees, representatives, agents (including attorneys, accountants and investment or other advisors), or any other person or entity acting, or purporting to act, on its behalf.

11.     "Refer to," "Relate to," and "Relating to" shall mean concerning, referring to, summarizing, reflecting, constituting, containing, embodying, pertaining to, involved with, mentioning, discussing, consisting of, comprising, showing, commenting upon, evidencing, or describing the subject matter.

## **INSTRUCTIONS**

The following instructions shall apply to each of the Interrogatories herein:

Doc ID: b631434d03c115995f1b1c4002e6425a45d9ebf0

1.      Answers to these Interrogatories are to be based upon all knowledge or information available to Plaintiff, including, but not limited to, (1) all information or knowledge derivable from business or other records and (2) all knowledge or information possessed by any Person, including but not limited to, any employee, agent, attorney, expert witness, consultant, representative or other advisor, subject to the instruction, direction, or control of Plaintiff.

2.      You are to answer each Interrogatory by providing all responsive information. If You are unable to answer any of the following Interrogatories fully and completely, after exercising due diligence to secure the information necessary to make full and complete answers, so state. In addition, answer each such Interrogatory to the fullest extent possible, specifying Your knowledge and Your inability to answer the remainder, and state whatever information or knowledge You may have concerning the unanswered portions of the Interrogatory, together with the identity of each Document or source from which more complete information is obtainable.

3.      If You object to any Interrogatory, You should specifically and separately state the reason for the objection so as to permit the Court to determine the legal sufficiency of Your objection or position, and provide the most responsive information You are willing to provide without a court order. If You object to any interrogatory, specify the part to which You object, state Your objections, state all factual and legal justifications that You believe support Your objections, and respond to the remainder to which You do not object.

4.      Pursuant to Fed. R. Civ. P. 26(b)(5), if You withhold otherwise responsive information based on a claim the information is privileged, please provide a privilege log that includes: the nature of the material not disclosed; the date and time the material was created or sent; the identity of each author and recipient; the number of pages, attachments, and exhibits; and all information on which You base Your claim of privilege.

Doc ID: b631434d03c115995f1b1c4002e6425a45d9ebf0

5.     If Your response to a particular Interrogatory is a statement that You lack the ability to provide a response to that Interrogatory, You must specify whether the inability to provide a response is because the particular item or category of information never existed, has been destroyed, has been lost, misplaced, or stolen, or has never been, or is no longer, in Your possession, custody, or control, in which case the name and address of any Person known or believed by You to have possession, custody, or control of that information or category of information must be identified.

6.     If information responsive to any Interrogatory is contained in a Document, please produce any such Document or provide information sufficient to identify any such Document, including Bates number where applicable.

7.     These Interrogatories shall be deemed continuing in nature. You shall supplement Your responses in accordance with Fed. R. Civ. P. 26(e) within a reasonable time if You obtain or become aware of any further information responsive to these Interrogatories.

8.     In construing these Interrogatories, the terms "any," "all," "every," and "each" shall be construed to include the other(s) as necessary to bring within the scope of these Interrogatories all information that might otherwise be construed to be outside of the scope of the Interrogatories. In addition, the terms "and," "or," and "and/or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Interrogatories all information that might otherwise be construed to be outside of the scope of the Interrogatories become aware of any further information responsive to these Interrogatories.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.     Plaintiff objects to Defendants' definition of "Yearbook Information" as vague and ambiguous and overbroad, particularly its use of the phrase "anything contained in or that

Doc ID: b631434d03c115995f1b1c4002e6425a45d9ebf0

could be derived from the Yearbook Records." Plaintiff will interpret "Yearbook Information" to mean photographs, student names, name of school, and school location from the Yearbook Records.

2.      Plaintiff objects to Defendants' definition of "You" or "Your" as overly broad because it encompasses entities or persons who are not parties to this lawsuit. Plaintiff has no relevant "agents," "representatives," or "assigns" apart from the undersigned counsel, that are pertinent to this lawsuit, and has authorized no other persons or entities to act on his behalf. Plaintiff also objects to Defendants' definition of "You" or "Your" as vague and ambiguous to the extent that it does not define "acting on their behalf." Plaintiff will respond to Defendants' Requests by providing only information and documents available from sources within his possession, custody, or control.

3.      Plaintiff further objects to Defendants' definition of "You" or "Your" and Defendants' Instruction No. 1 to the extent that the references to "attorneys" calls for documents and information protected from discovery by the attorney-client privilege, the attorney work product doctrine, the right of privacy of any person or entity, or any other applicable privilege or protection. Plaintiff will not produce privileged or protected material but will log withheld responsive, privileged documents according to the Agreed Stipulation and Order Governing the Discovery of Electronically Stored Information (Dkt. 67). Plaintiff will respond to Defendants' Requests by providing only information and documents available from sources within his possession, custody, or control.

4.      Plaintiff objects to Instruction No. 4 as inconsistent with the negotiated procedure in the Agreed Stipulation and Order Governing the Discovery of Electronically Stored Information (Dkt. 67), with which Plaintiff will comply.

Doc ID: b631434d03c115995f1b1c4002e6425a45d9ebf0

5.      Plaintiff objects to Instruction No. 5 as imposing obligations inconsistent with the Federal Rules of Civil Procedure. Plaintiff is not required by the Federal Rules of Civil Procedure to provide the requested explanation and information.

6.      Plaintiff objects to Defendant's definition of "Ancestry" as overbroad, vague, and ambiguous. Plaintiff does not know who "any of [Ancestry's] agents, representatives, and/or any other persons or entities appearing to act on their behalf" would be and so can, and will, only interpret Ancestry to mean the named Defendants in this action.

## ANSWERS TO INTERROGATORIES

**INTERROGATORY NO. 1:**       Identify all Persons to whom You have granted any license, permission, or authorization to use Your name, likeness, identity, or persona, if any, including but not limited to by contract, gift, conveyance, assignment, devise, or testamentary trust.

**ANSWER:**    Plaintiff objects to the relevance of the requested information as the information, whatever it may be, has no bearing on any claims or defenses in this action. *See Tseng v. PeopleConnect, Inc.*, 2023 WL 2655920 (N.D. Cal. Mar. 27, 2023). Pursuant to 765 ILCS 1075/1 *et seq.,* it was Defendants' obligation to obtain Plaintiff' "written consent" before making commercial use of his name, photographs, likenesses, and personas and, Plaintiff alleges, Defendants failed to obtain that prior written consent. Specifically, Plaintiff alleges "*Ancestry* has not received consent from, given notice to, or provided compensation to the millions of Illinoisans whose names, photographs, biographical information, and identities appear in its Ancestry Yearbook Database" and that "*Ancestry* did not ask the consent of the people whose personal information and photographs it profits from." Complaint at ¶¶ 4, 12. Whether Plaintiff has consented to a different, entirely unrelated entity's use of his personal information is irrelevant to whether Plaintiff gave his consent to Defendants for purposes of "advertising, selling or soliciting

Doc ID: b631434d03c115995f1b1c4002e6425a45d9ebf0

the purchase of its subscription services and products." *Id*. at ¶43. Plaintiff objects to this request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it is not limited in time or scope. For example, this request could conceivably include anytime Plaintiff signed a petition, a letter of support, a political endorsement, a website "cookie" related use agreement, HIPPA release at a healthcare institution, a payroll document, etc.

Subject to and without waiving any objections, and to the extent that Plaintiff is able to understand what is sought in this request, and to the best of his recollection, Plaintiff has never knowingly granted any Person any license, permission, or authorization to use his name, likeness, identity, or persona.

**INTERROGATORY NO. 2:**      For each Person set forth in Your response to Interrogatory No. 1 separately Describe all facts regarding the nature and circumstances of Your grant of any license, permission or authorization to use Your likeness, identity, or persona, including Identifying any Documents evidencing such license, permission or authorization.

**ANSWER:**     Plaintiff objects to the relevance of the requested information as the information, whatever it may be, has no bearing on any claims or defenses in this action. *See Tseng v. PeopleConnect, Inc.*, 2023 WL 2655920 (N.D. Cal. Mar. 27, 2023). Pursuant to 765 ILCS 1075/1 *et seq.,* it was Defendants' obligation to obtain Plaintiff' "written consent" before making commercial use of his name, photographs, likenesses, and personas and, Plaintiff alleges, Defendants failed to obtain that prior written consent. Specifically, Plaintiff alleges "*Ancestry* has not received consent from, given notice to, or provided compensation to the millions of Illinoisans whose names, photographs, biographical information, and identities appear in its Ancestry Yearbook Database" and that "*Ancestry* did not ask the consent of the people whose personal information and photographs it profits from." Complaint at ¶¶ 4, 12. Whether Plaintiff has

Doc ID: b631434d03c115995f1b1c4002e6425a45d9ebf0

consented to a different, entirely unrelated entity's use of his personal information is irrelevant to whether Plaintiff gave his consent to Defendants for purposes of "advertising, selling or soliciting the purchase of its subscription services and products." *Id*. at ¶43. Plaintiff objects to this request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it is not limited in time or scope.

Because there is no responsive information to provide in response to Interrogatory No. 1, Plaintiff will not respond to this interrogatory.

**INTERROGATORY NO. 3:**          Identify all facts supporting Your allegation that You have suffered an injury that You attribute to Ancestry.

**ANSWER:**    Plaintiff objects to this request to the extent it seeks information protected by the attorney client privilege and work product doctrines. Plaintiff also objects to this request as unduly burdensome and overbroad in that it is not limited in terms of scope or time. Discovery is ongoing, and Plaintiff's answer to this request is, in part, dependent on information and documents in Defendants' possession. Plaintiff further objects because the request seeks information that may already be in the possession, custody, or control of Defendants and/or other third parties and would thus be equally, if not more, available to Defendants. Plaintiff objects that this request is impermissibly premature as it calls for expert opinions or testimony. Plaintiff will make his expert disclosures in compliance with the timeframe provided by the Federal Rules and this Court's Orders. Plaintiff expressly reserves the right to supplement this response as new information is discovered and once Defendants have completed their related production.

Subject to and without waiving any objections, Plaintiff identifies the following facts: Plaintiff has suffered actual damages both economic, including actual damages in the amount of the profits Ancestry derived from its unauthorized use, and emotional, by causing Plaintiff worry,

Doc ID: b631434d03c115995f1b1c4002e6425a45d9ebf0

uncertainty, and a sense that his privacy has been invaded. Plaintiff has suffered injury through the misappropriation and infringement of his valuable intellectual property without compensation; through the invasion of his privacy rights protected by statute and common law; through Ancestry's unjust profiting from their unauthorized exploitation of his name, persona, and personal information; through Ancestry's violation of his statutorily protected right to control the commercial use of his name and likeness; and through disturbing his peace of mind.

**INTERROGATORY NO. 4:**      Identify every email address, telephone number, and billing address You have used since 2009.

    **ANSWER:**      Plaintiff objects to the relevance of the requested information as it has no bearing on any claims or defenses in this action. Plaintiff objects to this request as unduly burdensome and overbroad given the lengthy temporal scope.

**\*\* CONFIDENTIAL – START \*\***

    Subject to and without waiving any objections, ████████████████

████████████████████████████████████████████████████

████████████████████████████

**\*\* CONFIDENTIAL – END\*\***

**INTERROGATORY NO. 5:**      State Your full name and every name, including any nicknames, You have used in the past.

    **ANSWER:**      Plaintiffs respond as follows: Joshua Michael Braundmeier.

**INTERROGATORY NO. 6:**      State the name and address of each school or other academic institution You have attended.

11

Doc ID: b631434d03c115995f1b1c4002e6425a45d9ebf0

**ANSWER:** Plaintiff objects to the relevance of the requested information as it has no bearing on any claims or defenses in this action. Plaintiff further objects to this request as overbroad as it is not limited in time and scope.

Subject to and without waiving any objections, Plaintiff attended Springfield High School, 101 S Lewis St, Springfield, IL 62704; Gillespie High School, 612 Broadway St, Gillespie, IL 62033.

**INTERROGATORY NO. 7:** List every Person with whom You have shared, or to whom You have released, Your Yearbook Information since the publication of the yearbooks.

**ANSWER:** Plaintiff objects to the relevance of the requested documents as they, whatever they may be, have no bearing on any claims or defenses in this action. Pursuant to 765 ILCS 1075/1 *et seq.*, it was Defendants' obligation to obtain Plaintiff' "written consent" before making commercial use of his name, photographs, likenesses, and personas and, Plaintiff alleges, Defendants failed to obtain that prior written consent. Plaintiff objects to this request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it is not limited in time or scope. The use of the undefined words "share" and "release" renders this request vague and ambiguous and overbroad. Plaintiff is unable to search for responsive documents and the universe would include, under Defendants' overbroad definition of Yearbook Information, any document that contained Plaintiff's name or photograph, in addition to other undefined data points. Plaintiff interprets this request to seek only those documents, if any, showing that Plaintiff authorized the release of his own Yearbook Records or Yearbooks. To the extent this request seeks documents showing Plaintiff "released" or "shared" his "Yearbook Information" (under either Defendant or Plaintiff's definition of this term), Plaintiff will not respond because it is irrelevant, overbroad, and unduly burdensome.

12

Doc ID: b631434d03c115995f1b1c4002e6425a45d9ebf0

Subject to and without waiving any objections, to the best of his recollection, Plaintiff did not purchase any Yearbook in which he appeared, and Plaintiff has not knowingly authorized the release of his own Yearbook Records or Yearbooks that he appeared in.

**INTERROGATORY NO. 8:** For each Person set forth in Your response to Interrogatory No. 7, separately Describe the date, facts, and circumstances surrounding the sharing or releasing of Your Yearbook Information.

**ANSWER:** Plaintiff objects to the relevance of the requested documents as they, whatever they may be, have no bearing on any claims or defenses in this action. Pursuant to 765 ILCS 1075/1 *et seq.*, it was Defendants' obligation to obtain Plaintiff' "written consent" before making commercial use of his name, photographs, likenesses, and personas and, Plaintiff alleges, Defendants failed to obtain that prior written consent. Plaintiff objects to this request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it is not limited in time or scope. The use of the undefined words "share" and "release" renders this request vague and ambiguous and overbroad. Plaintiff is unable to search for responsive documents and the universe would include, under Defendants' overbroad definition of Yearbook Information, any document that contained Plaintiff's name or photograph, in addition to other undefined data points. Plaintiff interprets this request to seek only those documents, if any, showing that Plaintiff authorized the release of his own Yearbook Records or Yearbooks. To the extent this request seeks documents showing Plaintiff "released" or "shared" his "Yearbook Information" (under either Defendant or Plaintiff's definition of this term), Plaintiff will not respond because it is irrelevant, overbroad, and unduly burdensome.

Because there is no responsive information to provide in response to Interrogatory No. 7, Plaintiff will not respond to this interrogatory.

Doc ID: b631434d03c115995f1b1c4002e6425a45d9ebf0

**INTERROGATORY NO. 9:** Identify any account You have had with any website that permits the searching of names or pictures, including but not limited to, PeopleConnect, ClassMates, and e-Yearbook.

**ANSWER:** Plaintiff objects to the relevance of the requested information as the information, whatever it may be, has no bearing on any claims or defenses in this action. Plaintiff objects to this request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it is not limited in time or scope, particularly this request's use of the phrases "any account" and "any website." Plaintiff also objects that this request's use of the phrase "permits the searching of names or pictures" renders the request vague and ambiguous and overbroad. Plaintiff will interpret this interrogatory to be seeking whether Plaintiff has created an account with a website that permits the searching of yearbooks or yearbook records.

Subject to and without waiving any objections, to the best of his recollection, Plaintiff will produce the emails he received from Classmates.com, which suggest he may have had an account years ago, though he does not remember having an account.

**INTERROGATORY NO. 10:** State whether You have ever searched for any Person, including but not limited to Yourself, on any website that permits searching for names or pictures, including any websites relating to genealogy or heritage, and describe all facts regarding the circumstances of each search, including the dates of each search, the website You used to search, and each Person You searched for.

**ANSWER:** Plaintiff objects to the relevance of the requested information as the information, whatever it may be, has no bearing on any claims or defenses in this action. Plaintiff objects to this request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it is not limited in time or scope, particularly this request's use of the phrases

Doc ID: b631434d03c115995f1b1c4002e6425a45d9ebf0

"any Person," "any website," and "any websites." Plaintiff also objects that this request's use of the phrase "permits searching for names or pictures" renders the request vague and ambiguous and overbroad. Plaintiff will interpret this interrogatory to be seeking whether Plaintiff has ever searched genealogy and heritage websites.

Subject to and without waiving any objections, to the best of his recollection, Plaintiff has not searched for any Person on any genealogy or heritage website.

**INTERROGATORY NO. 11:** Identify all Documents evidencing or constituting any agreement or contract You made relating to Your Yearbook Records, if any.

**ANSWER:** Plaintiff objects to the relevance of the requested information as the information, whatever it may be, has no bearing on any claims or defenses in this action. Pursuant to 765 ILCS 1075/1 *et seq.,* it was Defendants' obligation to obtain Plaintiff's "written consent" before making commercial use of his name, photographs, likenesses, and personas and, Plaintiff alleges, Defendants failed to obtain that prior written consent. Specifically, Plaintiff alleges "Ancestry has not received consent from, given notice to, or provided compensation to the millions of Illinoisans whose names, photographs, biographical information, and identities appear in its Ancestry Yearbook Database" and that "Ancestry did not ask the consent of the people whose personal information and photographs it profits from." Complaint at ¶¶ 4, 12. Whether Plaintiff has consented to a different, entirely unrelated entity's use of his personal information is irrelevant to whether Plaintiff gave his consent to Defendants for purposes of "advertising, selling or soliciting the purchase of its subscription services and products." *Id.* at ¶43. Plaintiff objects to this request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it is not limited in time or scope.

15

Doc ID: b631434d03c115995f1b1c4002e6425a45d9ebf0

Subject to and without waiving any objections, Plaintiff answers as follows: Plaintiff cannot recall any occasions when he made an agreement or contract relating to his yearbook record.

**INTERROGATORY NO. 12:**     Identify and describe each instance that You requested that any information about You, including but not limited to Your name, age, photograph, club membership or descriptions of public activities, be removed from a publicly available database, website, catalog, or directory.

**ANSWER:**     Plaintiff objects to this request as overbroad and unduly burdensome in that it is not limited in temporal scope and relates to "any information." Plaintiff objects to the request as overbroad, unduly burdensome, and seeking information not relevant to the claims and defenses in this action. Plaintiff's claims, including those under 765 ILCS 1075/1 *et seq*., do not require a person to actively protect his or her privacy in the way this request suggests. Rather, a defendant is required to ask for prior written consent.

Subject to and without waiving any objections, to the extent Plaintiff is able to understand this request, Plaintiff answers as follows: apart from the filing of this lawsuit, Plaintiff cannot recall any occasions when he requested that his personal information be removed from any publicly available website.

**INTERROGATORY NO. 13:**     Identify every social media account or profile that You maintain, including but not limited to LinkedIn, Facebook, Twitter, Instagram, TikTok, Twitch, Vimeo, Tumblr, Pintrest, Google+, Snapchat, Reddit, Myspace, YouTube, Tinder, or Flickr.

**ANSWER:**     Plaintiff objects to the relevance of the requested information as the information, whatever it may be, has no bearing on any claims or defenses in this action. *See Tseng v. PeopleConnect, Inc.*, 2023 WL 2655920 (N.D. Cal. Mar. 27, 2023). Pursuant

Doc ID: b631434d03c115995f1b1c4002e6425a45d9ebf0

to 765 ILCS 1075/1 *et seq.,* it was Defendants' obligation to obtain Plaintiff's "written consent" before making commercial use of his name, photographs, likenesses, and personas and, Plaintiff alleges, Defendants failed to obtain that prior written consent. Specifically, Plaintiff alleges "Ancestry has not received consent from, given notice to, or provided compensation to the millions of Illinoisans whose names, photographs, biographical information, and identities appear in its Ancestry Yearbook Database" and that "Ancestry did not ask the consent of the people whose personal information and photographs it profits from." Complaint at ¶¶ 4, 12. Whether Plaintiff has consented to a different, entirely unrelated entity's use of his personal information is irrelevant to whether Plaintiff gave his consent to Defendants for purposes of "advertising, selling or soliciting the purchase of its subscription services and products." *Id.* at ¶43. Plaintiff objects to this request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it is not limited in time or scope. Plaintiff also objects that this request is vague and ambiguous on account of Defendants not defining the term "maintain." Plaintiff objects to the term "Pintrest" as unintelligible.

Accordingly, Plaintiff will not respond to this interrogatory.

**INTERROGATORY NO. 14:**    Identify by date every time You, including through Your counsel, have visited the website www.ancestry.com.

**ANSWER:**    Plaintiff objects to this request as it seeks information protected by the attorney client-privilege or work-product doctrines, and Plaintiff will not respond to this part of the interrogatory. Plaintiff also objects to this request to the extent that it seeks information which is equally available to Defendants.

Subject to and without waiving such objections, Plaintiff has not visited the website ancestry.com.

Doc ID: b631434d03c115995f1b1c4002e6425a45d9ebf0

**INTERROGATORY NO. 15:**      Identify the Person(s) who took the screenshots in the Complaint and state the date(s) those screenshots were taken.

**ANSWER:**   Plaintiff objects to this request as it seeks information protected by the attorney client-privilege or work-product doctrines, and Plaintiff will not respond to this part of the interrogatory.

Subject to and without waiving such objections, Plaintiff has never used, or created an account, with Ancestry.

**INTERROGATORY NO. 16:**      Identify every record containing Your name, appearance, likeness, photograph, image, identity, persona, or distinctive appearance that appears on ancestry.com and that You contend has been used in a manner that violates Your right of publicity.

**ANSWER:**   Plaintiff objects to this request as it seeks information protected by the attorney client-privilege or work-product doctrines. Discovery is ongoing, and Plaintiff's answer to this request is, in part, dependent on information and documents in Defendants' possession. Plaintiff further objects because the request seeks documents already in the possession, custody, or control of Defendants and/or other third parties and are thus equally, if not more, available to Defendants. Plaintiff objects that this request is impermissibly premature as it calls for expert opinions or testimony. Plaintiff will make his expert disclosures in compliance with the timeframe provided by the Federal Rules and this Court's Orders. Plaintiff expressly reserves the right to supplement this response as new information is discovered and once Defendants have completed their related production. Plaintiff objects that the material requested is equally available, if not more available, to Defendants. Plaintiff objects to this interrogatory as duplicative of Interrogatory No. 17.

Doc ID: b631434d03c115995f1b1c4002e6425a45d9ebf0

Subject to and without waiving such objections, Plaintiff responds as follows: Defendants' counsel confirmed that Mr. Braundmeier's photograph became part of Ancestry's Yearbook Database without his consent on August 16, 2021. Ancestry provides a publicly accessible webpage on which non-subscribers may search for Mr. Braundmeier by name and location. See Complaint ¶¶65-66. Further, non-subscribers who search for Mr. Braundmeier receive in response a list of yearbook photographs in the Ancestry database that depict Mr. Braundmeier as a child and Ancestry displays a pop-up soliciting that non-subscribers "Sign Up Now." *Id.* at ¶¶ 68, 70. Ancestry also sends "hint" emails with Plaintiff's info. *Id.*

**INTERROGATORY NO. 17:**     State how Your name, image, identity, likeness, persona, photograph or distinctive appearance was used by Ancestry in "advertisements" as alleged in the Complaint. Complaint ¶¶ 65-66.

**ANSWER:**    Plaintiff objects to this request as it seeks information protected by the attorney client-privilege or work-product doctrines. Discovery is ongoing, and Plaintiff's answer to this request is, in part, dependent on information and documents in Defendants' possession. Plaintiff further objects because the request seeks documents already in the possession, custody, or control of Defendants and/or other third parties and are thus equally, if not more, available to Defendants. Plaintiff objects that this request is impermissibly premature as it calls for expert opinions or testimony. Plaintiff will make his expert disclosures in compliance with the timeframe provided by the Federal Rules and this Court's Orders. Plaintiff expressly reserves the right to supplement this response as new information is discovered and once Defendants have completed their related production. Plaintiff objects that the material requested is equally available, if not more available, to Defendants. Plaintiff objects to this interrogatory as duplicative of Interrogatory No. 16.

Doc ID: b631434d03c115995f1b1c4002e6425a45d9ebf0

Subject to and without waiving such objections, Plaintiff responds as follows: Defendants'
counsel confirmed that Mr. Braundmeier's photograph became part of Ancestry's Yearbook
Database without his consent on August 16, 2021. Ancestry provides a publicly accessible
webpage on which non-subscribers may search for Mr. Braundmeier by name and location. See
Complaint ¶¶65-66. Further, non-subscribers who search for Mr. Braundmeier receive in response
a list of yearbook photographs in the Ancestry database that depict Mr. Braundmeier as a child
and Ancestry displays a pop-up soliciting that non-subscribers "Sign Up Now." *Id.* at ¶¶ 68, 70.
Ancestry also sends "hint" emails with Plaintiff's info. *Id.*

Dated: April 17, 2023               Respectfully Submitted,

By: <u>/s/ *Raina C. Borrelli*</u>
Raina C. Borrelli
Samuel J. Strauss
TURKE & STRAUSS LLP
613 Williamson St., Suite 201
Madison, WI 53703
Telephone: (608) 237-1775
Facsimile: (608) 509-4423
raina@turkestrauss.com
sam@turkestrauss.com

Michael F. Ram (*pro hac vice*)
Marie N. Appel (*pro hac vice*)
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6923
mram@forthepeople.com
mappel@forthepeople.com

Benjamin R. Osborn (*pro hac vice*)
102 Bergen Street
Brooklyn, NY 11201
Telephone: (347) 645-0464
ben@benosbornlaw.com

Doc ID: b631434d03c115995f1b1c4002e6425a45d9ebf0

*Attorneys for Plaintiffs and the Proposed Class*

Doc ID: b631434d03c115995f1b1c4002e6425a45d9ebf0

<u>**CERTIFICATE OF SERVICE**</u>

I, Raina C. Borrelli, hereby certify that on April 17, 2023, I caused the foregoing to be

transmitted by email to the following:

Shon Morgan (*pro hac vice*)
John Wall Baumann (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
jackbaumann@quinnemanuel.com
shonmorgan@quinnemanuel.com

Daniel R. Lombard
QUINN EMANUEL URQUHART & SULLIVAN LLP
191 North Wacker Drive, #2700
Chicago, IL 60606
Telephone: (312) 705-7400
daniellombard@quinnemanuel.com

Christina Aide Henriquez (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
cristinahenriquez@quinnemanuel.com

DATED this 17th day of April, 2023.

TURKE & STRAUSS LLP

By: */s/ Raina C. Borrelli*
Raina C. Borrelli
raina@turkestrauss.com
TURKE & STRAUSS LLP
613 Williamson St., Suite 201
Madison, WI 53703
Telephone: (608) 237-1775
Facsimile: (608) 509-4423

Doc ID: b631434d03c115995f1b1c4002e6425a45d9ebf0

## <u>VERIFICATION</u>

I, Joshua Braundmeier, state that I am one of the Plaintiffs in this matter; I have read the within and foregoing Answers and Objections to Ancestry's First Set of Interrogatories, know the contents thereof, and believe the same to be true and correct.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

By: _____
                    Joshua Braundmeier

Doc ID: b631434d03c115995f1b1c4002e6425a45d9ebf0

— **EXHIBIT  14** —

Search > Schools, Directories & Church Histories

# U.S., School Yearbooks, 1900-2016



**Search**    ☐ Match all terms exactly

**First & Middle Name(s)**

**Last Name**

|  | Year | Location |
|---|---|---|
| Birth | | —— |
| Lived In | —— | City, County, State, Country |
| Any Event | | City, County, State, Country |

**Keyword**

_e.g. pilot or "Flying Tigers"_ ⌄

**Grade Completed**

**Photo Description**

| | Year |
|---|---|
| Yearbook Date | |

**Search**    Clear search

## Yearbooks never forget.

Find out what your relatives were really like in high school and college with our newly-expanded Yearbooks collection. With more than 500,000 yearbooks and more than 80 million pages, it's a treasure trove of fascinating family details.

## Become a yearbook master.

Get the most out of your yearbook search with these tips.

**Learn more** ⌄

### Browse this collection

To browse this image set, select from the options below.

**State**
Choose... ⌄

**City**
⌄

**School Name**
⌄

**Year**

**Filed Under Seal**

— **EXHIBIT 15** —

**Filed Under Seal**

— **EXHIBIT  16** —

Filed Under Seal


— EXHIBIT  17 —

Video file to be sent via USB

— EXHIBIT  18 —

Video file to be sent via USB

— EXHIBIT  19 —

— **EXHIBIT 20** —

**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JOSHUA BRAUNDMEIER, and KEVIN WALLACE, on behalf of themselves and all others similarly situated, | 1:20-cv-07390-VMK-GAF |
| Plaintiffs, | **PLAINTIFF KEVIN WALLACE'S ANSWERS AND OBJECTIONS TO ANCESTRY'S FIRST SET OF INTERROGATORIES** |
| v. | |
| ANCESTRY.COM OPERATIONS INC., *et al.*, | Judge Virginia M. Kendall |
| Defendants. | Magistrate Judge Gabriel A. Fuentes |

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Kevin Wallace ("Plaintiff") submits the following objections and responses to Defendants Ancestry.com Operations Inc., Ancestry.com Inc., and Ancestry.com LLC's ("Defendants") First Set of Interrogatories.

Plaintiff has responded to these Requests to the best of his present abilities. However, discovery, investigation, and trial preparation in this matter have not been completed and will continue as long as permitted by statute or stipulation. Although Plaintiff is conducting a diligent search and reasonable inquiry to comply with these Requests, as more expressly detailed below, Plaintiff anticipates that, in the course of further investigation and discovery, additional information may be obtained and/or discovered that might affect the responses provided herein. To be clear, an offer to produce documents does not admit that documents exist or are in the possession of Plaintiff. Therefore, the following responses to Defendants' Requests are without prejudice to, and with the express reservation of, Plaintiff's right to introduce documents or information discovered or deemed responsive up to and through the date of trial. However,

1

Doc ID: 29a6c54b6eb9799cbac45e9390cfc3236ec87695

Plaintiff undertakes no duty to supplement these responses, except as expressly set forth below or as is required by the Federal Rules of Civil Procedure.

## **DEFINITIONS**

1.     "You," "Your," or "Plaintiff" shall mean Plaintiff Kevin Wallace and any of their agents, representatives, attorneys, assigns, and any other entities or persons acting or purporting to act on their behalf, including counsel in this matter. The definition of "Plaintiff", "You", and "Your" may change for the purposes of discovery requests if and to the extent Plaintiff amends the Second Amended Complaint to add or remove named plaintiffs.

2.     "Defendants" or "Ancestry" shall mean Defendants Ancestry.com Operations Inc., Ancestry.com Inc., and Ancestry.com LLC, and any of their agents, representatives, and/or any other persons or entities appearing to act on their behalf.

3.     "Action" shall mean the above captioned matter, *Joshua Braundmeier et al. v. Ancestry.com Operations Inc. et al.*, Case No. 1:20-cv-07390.

4.     "Complaint" shall mean the Second Amended Complaint filed in this Action on August 24, 2022.

5.     "Yearbook Records" shall mean the yearbooks at issue in the Complaint.

6.     "Yearbook Information" shall mean anything contained in or that could be derived from the Yearbook Records, including but not limited to photographs, pictures, student names, name of school, school location, grade, estimated age, and school activities.

7.     "Document" is used in the broadest possible sense as interpreted under the Federal Rules of Civil Procedure and encompasses both hard copy documents and electronically stored information. By way of example "documents" includes, without limitation, all originals, copies, and drafts of any written, printed, or graphic matter, and all "writings" as defined in Federal Rule

Doc ID: 29a6c54b6eb9799cbac45e9390cfc3236ec87695

of Evidence 1001, including, without limitation, the following: abstracts, advertisements, agendas, agreements, analyses of any kind, appointment calendars, articles, assignments, audio recordings, blueprints, books, brochures, charts, circulars, compilations, contracts, diaries, letters, email, reports (including reports or notes of telephone or other conversations), memoranda, brochures, books, ledgers, drawings, photographs, videos, specifications, drafts, catalogs, instructions, invoices, bills of materials, minutes, orders, publications, purchase orders, proposals, working papers, text messages, social media communications, and other writings of whatsoever nature, whether on paper or other information storage means, including film and computer memory devices; all drafts prepared in connection with any such writings, whether used or not; and where any such items contain any marking not appearing on the original or are altered from the original, then such items shall be considered to be separate original documents.

8. "Communication" shall be construed to the fullest extent under the Federal Rules of Civil Procedure and shall mean, without limitation, the transmittal, disclosure, transfer, or exchange of information (in the form of facts, ideas, inquiries, or otherwise), by any means whatsoever, including orally or in writing, and by any medium whatsoever, including in person, via telephone or via digital or electronic communication.

9. "Identify" or "Describe": (a) When used relating to any natural persons, shall mean to provide, to the extent known, the person's full name, present or last known business address, and phone number. (b) When used relating to any non-natural person, "identify" shall mean to state the name of the business, legal, or governmental entity or association, and the present or last known address and telephone number of such business, legal, or governmental entity or association. (c) When used relating to any Document, "identify" shall mean to give, to the extent then known, the (i) type of Document; (ii) general subject matter; (iii) date of the Document; (iv)

Doc ID: 29a6c54b6eb9799cbac45e9390cfc3236ec87695

author(s), addressee(s) and recipients(s); and (v) Bates numbers if produced in this action. When used relating to any agreement, "identify" shall mean to give, to the extent known, its date and the place where it occurred, and identify all persons who were parties to the agreement and each person who has knowledge of the agreement, and all other persons present when it was made, and the subject matter of the agreement. (e) When used in reference to one or more acts, events, instances, occasions, circumstances, meetings, conversations, allegations, or contentions, shall mean to state all facts concerning the subject matter in detail, including the date and place thereof, to identify the individual participants, to summarize separately for each individual participant what she or he said or did, and to identify each Document or Communication used or prepared in connection therewith or making any reference thereto.

10. "Person" shall mean any natural person or legal entity, including a corporation, partnership, proprietorship, group, association, organization, business entity, governmental body, agency, or trust, and its predecessors, successors or current and former parents, subsidiaries, affiliates, partners, officers, directors, employees, representatives, agents (including attorneys, accountants and investment or other advisors), or any other person or entity acting, or purporting to act, on its behalf.

11. "Refer to," "Relate to," and "Relating to" shall mean concerning, referring to, summarizing, reflecting, constituting, containing, embodying, pertaining to, involved with, mentioning, discussing, consisting of, comprising, showing, commenting upon, evidencing, or describing the subject matter.

## **INSTRUCTIONS**

The following instructions shall apply to each of the Interrogatories herein:

Doc ID: 29a6c54b6eb9799cbac45e9390cfc3236ec87695

1.      Answers to these Interrogatories are to be based upon all knowledge or information available to Plaintiff, including, but not limited to, (1) all information or knowledge derivable from business or other records and (2) all knowledge or information possessed by any Person, including but not limited to, any employee, agent, attorney, expert witness, consultant, representative or other advisor, subject to the instruction, direction, or control of Plaintiff.

2.      You are to answer each Interrogatory by providing all responsive information. If You are unable to answer any of the following Interrogatories fully and completely, after exercising due diligence to secure the information necessary to make full and complete answers, so state. In addition, answer each such Interrogatory to the fullest extent possible, specifying Your knowledge and Your inability to answer the remainder, and state whatever information or knowledge You may have concerning the unanswered portions of the Interrogatory, together with the identity of each Document or source from which more complete information is obtainable.

3.      If You object to any Interrogatory, You should specifically and separately state the reason for the objection so as to permit the Court to determine the legal sufficiency of Your objection or position, and provide the most responsive information You are willing to provide without a court order. If You object to any interrogatory, specify the part to which You object, state Your objections, state all factual and legal justifications that You believe support Your objections, and respond to the remainder to which You do not object.

4.      Pursuant to Fed. R. Civ. P. 26(b)(5), if You withhold otherwise responsive information based on a claim the information is privileged, please provide a privilege log that includes: the nature of the material not disclosed; the date and time the material was created or sent; the identity of each author and recipient; the number of pages, attachments, and exhibits; and all information on which You base Your claim of privilege.

Doc ID: 29a6c54b6eb9799cbac45e9390cfc3236ec87695

5. If Your response to a particular Interrogatory is a statement that You lack the ability to provide a response to that Interrogatory, You must specify whether the inability to provide a response is because the particular item or category of information never existed, has been destroyed, has been lost, misplaced, or stolen, or has never been, or is no longer, in Your possession, custody, or control, in which case the name and address of any Person known or believed by You to have possession, custody, or control of that information or category of information must be identified.

6. If information responsive to any Interrogatory is contained in a Document, please produce any such Document or provide information sufficient to identify any such Document, including Bates number where applicable.

7. These Interrogatories shall be deemed continuing in nature. You shall supplement Your responses in accordance with Fed. R. Civ. P. 26(e) within a reasonable time if You obtain or become aware of any further information responsive to these Interrogatories.

8. In construing these Interrogatories, the terms "any," "all," "every," and "each" shall be construed to include the other(s) as necessary to bring within the scope of these Interrogatories all information that might otherwise be construed to be outside of the scope of the Interrogatories. In addition, the terms "and," "or," and "and/or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Interrogatories all information that might otherwise be construed to be outside of the scope of the Interrogatories.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1. Plaintiff objects to Defendants' definition of "Yearbook Information" as vague and ambiguous and overbroad, particularly its use of the phrase "anything contained in or that could be derived from the Yearbook Records." Plaintiff will interpret "Yearbook Information" to

Doc ID: 29a6c54b6eb9799cbac45e9390cfc3236ec87695

mean photographs, student names, name of school, and school location from the Yearbook Records.

2.      Plaintiff objects to Defendants' definition of "You" or "Your" as overly broad because it encompasses entities or persons who are not parties to this lawsuit. Plaintiff has no relevant "agents," "representatives," or "assigns" apart from the undersigned counsel, that are pertinent to this lawsuit, and has authorized no other persons or entities to act on his behalf. Plaintiff also objects to Defendants' definition of "You" or "Your" as vague and ambiguous to the extent that it does not define "acting on their behalf." Plaintiff will respond to Defendants' Requests by providing only information and documents available from sources within his possession, custody, or control.

3.      Plaintiff further objects to Defendants' definition of "You" or "Your" and Defendants' Instruction No. 1 to the extent that the references to "attorneys" calls for documents and information protected from discovery by the attorney-client privilege, the attorney work product doctrine, the right of privacy of any person or entity, or any other applicable privilege or protection. Plaintiff will not produce privileged or protected material but will log withheld responsive, privileged documents according to the Agreed Stipulation and Order Governing the Discovery of Electronically Stored Information (Dkt. 67). Plaintiff will respond to Defendants' Requests by providing only information and documents available from sources within his possession, custody, or control.

4.      Plaintiff objects to Instruction No. 4 as inconsistent with the negotiated procedure in the Agreed Stipulation and Order Governing the Discovery of Electronically Stored Information (Dkt. 67), with which Plaintiff will comply.

Doc ID: 29a6c54b6eb9799cbac45e9390cfc3236ec87695

5.      Plaintiff objects to Instruction No. 5 as imposing obligations inconsistent with the Federal Rules of Civil Procedure. Plaintiff is not required by the Federal Rules of Civil Procedure to provide the requested explanation and information.

6.      Plaintiff objects to Defendant's definition of "Ancestry" as overbroad, vague, and ambiguous. Plaintiff does not know who "any of [Ancestry's] agents, representatives, and/or any other persons or entities appearing to act on their behalf" would be and so can, and will, only interpret Ancestry to mean the named Defendants in this action.

## ANSWERS TO INTERROGATORIES

**INTERROGATORY NO. 1:**      Identify all Persons to whom You have granted any license, permission, or authorization to use Your name, likeness, identity, or persona, if any, including but not limited to by contract, gift, conveyance, assignment, devise, or testamentary trust.

**ANSWER:**   Plaintiff objects to the relevance of the requested information as the information, whatever it may be, has no bearing on any claims or defenses in this action. *See Tseng v. PeopleConnect, Inc.*, 2023 WL 2655920 (N.D. Cal. Mar. 27, 2023). Pursuant to 765 ILCS 1075/1 *et seq.,* it was Defendants' obligation to obtain Plaintiff' "written consent" before making commercial use of his name, photographs, likenesses, and personas and, Plaintiff alleges, Defendants failed to obtain that prior written consent. Specifically, Plaintiff alleges "*Ancestry* has not received consent from, given notice to, or provided compensation to the millions of Illinoisans whose names, photographs, biographical information, and identities appear in its Ancestry Yearbook Database" and that "*Ancestry* did not ask the consent of the people whose personal information and photographs it profits from." Complaint at ¶¶ 4, 12. Whether Plaintiff has consented to a different, entirely unrelated entity's use of his personal information is irrelevant to whether Plaintiff gave his consent to Defendants for purposes of "advertising, selling or soliciting

Doc ID: 29a6c54b6eb9799cbac45e9390cfc3236ec87695

the purchase of its subscription services and products." *Id*. at ¶43. Plaintiff objects to this request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it is not limited in time or scope. For example, this request could conceivably include anytime Plaintiff signed a petition, a letter of support, a political endorsement, a website "cookie" related use agreement, HIPPA release at a healthcare institution, a payroll document, etc.

Subject to and without waiving any objections, and to the extent that Plaintiff is able to understand what is sought in this request, and to the best of his recollection, Plaintiff has never knowingly granted any Person any license, permission, or authorization to use his name, likeness, identity, or persona.

**INTERROGATORY NO. 2:** For each Person set forth in Your response to Interrogatory No. 1 separately Describe all facts regarding the nature and circumstances of Your grant of any license, permission or authorization to use Your likeness, identity, or persona, including Identifying any Documents evidencing such license, permission or authorization.

**ANSWER:** Plaintiff objects to the relevance of the requested information as the information, whatever it may be, has no bearing on any claims or defenses in this action. *See Tseng v. PeopleConnect, Inc.*, 2023 WL 2655920 (N.D. Cal. Mar. 27, 2023). Pursuant to 765 ILCS 1075/1 *et seq.,* it was Defendants' obligation to obtain Plaintiff's "written consent" before making commercial use of his name, photographs, likenesses, and personas and, Plaintiff alleges, Defendants failed to obtain that prior written consent. Specifically, Plaintiff alleges "*Ancestry* has not received consent from, given notice to, or provided compensation to the millions of Illinoisans whose names, photographs, biographical information, and identities appear in its Ancestry Yearbook Database" and that "*Ancestry* did not ask the consent of the people whose personal information and photographs it profits from." Complaint at ¶¶ 4, 12. Whether

Doc ID: 29a6c54b6eb9799cbac45e9390cfc3236ec87695

Plaintiff has consented to a different, entirely unrelated entity's use of his personal information is irrelevant to whether Plaintiff gave his consent to Defendants for purposes of "advertising, selling or soliciting the purchase of its subscription services and products." *Id.* at ¶43. Plaintiff objects to this request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it is not limited in time or scope.

Because there is no responsive information to provide in response to Interrogatory No. 1, Plaintiff will not respond to this interrogatory.

**INTERROGATORY NO. 3:** Identify all facts supporting Your allegation that You have suffered an injury that You attribute to Ancestry.

**ANSWER:** Plaintiff objects to this request to the extent it seeks information protected by the attorney client privilege and work product doctrines. Plaintiff also objects to this request as unduly burdensome and overbroad in that it is not limited in terms of scope or time. Discovery is ongoing, and Plaintiff's answer to this request is, in part, dependent on information and documents in Defendants' possession. Plaintiff further objects because the request seeks information that may already be in the possession, custody, or control of Defendants and/or other third parties and would thus be equally, if not more, available to Defendants. Plaintiff objects that this request is impermissibly premature as it calls for expert opinions or testimony. Plaintiff will make his expert disclosures in compliance with the timeframe provided by the Federal Rules and this Court's Orders. Plaintiff expressly reserves the right to supplement this response as new information is discovered and once Defendants have completed their related production.

Subject to and without waiving any objections, Plaintiff identifies the following facts: Plaintiff has suffered actual damages both economic, including actual damages in the amount of the profits Ancestry derived from its unauthorized use, and emotional, by causing Plaintiff worry,

Doc ID: 29a6c54b6eb9799cbac45e9390cfc3236ec87695

uncertainty, and a sense that his privacy has been invaded. Plaintiff has suffered injury through the misappropriation and infringement of his valuable intellectual property without compensation; through the invasion of his privacy rights protected by statute and common law; through Ancestry's unjust profiting from his unauthorized exploitation of his name, persona, and personal information; through Ancestry's violation of his statutorily protected right to control the commercial use of his name and likeness; and through disturbing his peace of mind.

**INTERROGATORY NO. 4:**    Identify every email address, telephone number, and billing address You have used since 2009.

**ANSWER:**    Plaintiff objects to the relevance of the requested information as it has no bearing on any claims or defenses in this action. Plaintiff objects to this request as unduly burdensome and overbroad given the lengthy temporal scope.

**\*\* CONFIDENTIAL – START \*\***

Subject to and without waiving any objections, ███████████████

████████████████████████████████████████████████████

███████████████████████

**\*\* CONFIDENTIAL – END \*\***

**INTERROGATORY NO. 5:**    State Your full name and every name, including any nicknames, You have used in the past.

**ANSWER:**    Plaintiffs respond as follows: Kevin Michael Wallace.

**INTERROGATORY NO. 6:**    State the name and address of each school or other academic institution You have attended.

11

**ANSWER:** Plaintiff objects to the relevance of the requested information as it has no bearing on any claims or defenses in this action. Plaintiff further objects to this request as overbroad as it is not limited in time and scope.

Subject to and without waiving any objections, Plaintiff attended Flanagan High School and Illinois Central College, 1 College Dr, East Peoria, IL 61635.

**INTERROGATORY NO. 7:** List every Person with whom You have shared, or to whom You have released, Your Yearbook Information since the publication of the yearbooks.

**ANSWER:** Plaintiff objects to the relevance of the requested documents as they, whatever they may be, have no bearing on any claims or defenses in this action. Pursuant to 765 ILCS 1075/1 *et seq.*, it was Defendants' obligation to obtain Plaintiff' "written consent" before making commercial use of his name, photographs, likenesses, and personas and, Plaintiff alleges, Defendants failed to obtain that prior written consent. Plaintiff objects to this request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it is not limited in time or scope. The use of the undefined words "share" and "release" renders this request vague and ambiguous and overbroad. Plaintiff is unable to search for responsive documents and the universe would include, under Defendants' overbroad definition of Yearbook Information, any document that contained Plaintiff's name or photograph, in addition to other undefined data points. Plaintiff interprets this request to seek only those documents, if any, showing that Plaintiff authorized the release of his own Yearbook Records or Yearbooks. To the extent this request seeks documents showing Plaintiff "released" or "shared" his "Yearbook Information" (under either Defendant or Plaintiff's definition of this term), Plaintiff will not respond because it is irrelevant, overbroad, and unduly burdensome.

Doc ID: 29a6c54b6eb9799cbac45e9390cfc3236ec87695

Subject to and without waiving any objections, to the best of his recollection, Plaintiff has not knowingly authorized the release of his own Yearbook Records or Yearbooks that he appeared in.

**INTERROGATORY NO. 8:** For each Person set forth in Your response to Interrogatory No. 7, separately Describe the date, facts, and circumstances surrounding the sharing or releasing of Your Yearbook Information.

**ANSWER:** Plaintiff objects to the relevance of the requested documents as they, whatever they may be, have no bearing on any claims or defenses in this action. Pursuant to 765 ILCS 1075/1 *et seq.*, it was Defendants' obligation to obtain Plaintiff' "written consent" before making commercial use of his name, photographs, likenesses, and personas and, Plaintiff alleges, Defendants failed to obtain that prior written consent. Plaintiff objects to this request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it is not limited in time or scope. The use of the undefined words "share" and "release" renders this request vague and ambiguous and overbroad. Plaintiff is unable to search for responsive documents and the universe would include, under Defendants' overbroad definition of Yearbook Information, any document that contained Plaintiff's name or photograph, in addition to other undefined data points. Plaintiff interprets this request to seek only those documents, if any, showing that Plaintiff authorized the release of his own Yearbook Records or Yearbooks. To the extent this request seeks documents showing Plaintiff "released" or "shared" his "Yearbook Information" (under either Defendant or Plaintiff's definition of this term), Plaintiff will not respond because it is irrelevant, overbroad, and unduly burdensome.

Because there is no responsive information to provide in response to Interrogatory No. 7, Plaintiff will not respond to this interrogatory.

Doc ID: 29a6c54b6eb9799cbac45e9390cfc3236ec87695

**INTERROGATORY NO. 9:** Identify any account You have had with any website that permits the searching of names or pictures, including but not limited to, PeopleConnect, ClassMates, and e-Yearbook.

    **ANSWER:** Plaintiff objects to the relevance of the requested information as the information, whatever it may be, has no bearing on any claims or defenses in this action. Plaintiff objects to this request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it is not limited in time or scope, particularly this request's use of the phrases "any account" and "any website." Plaintiff also objects that this request is vague and ambiguous on account of Defendants not defining the terms "permits the searching of names or pictures." Plaintiff also objects that this request's use of the phrase "permits the searching of names or pictures" renders the request vague and ambiguous and overbroad. Plaintiff will interpret this interrogatory to be seeking whether Plaintiff has created an account with a website that permits the searching of yearbooks or yearbook records.

    Subject to and without waiving any objections, Plaintiff has not created any such account.

**INTERROGATORY NO. 10:** State whether You have ever searched for any Person, including but not limited to Yourself, on any website that permits searching for names or pictures, including any websites relating to genealogy or heritage, and describe all facts regarding the circumstances of each search, including the dates of each search, the website You used to search, and each Person You searched for.

    **ANSWER:** Plaintiff objects to the relevance of the requested information as the information, whatever it may be, has no bearing on any claims or defenses in this action. Plaintiff objects to this request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it is not limited in time or scope, particularly this request's use of the phrases

Doc ID: 29a6c54b6eb9799cbac45e9390cfc3236ec87695

"any Person," "any website," and "any websites." Plaintiff also objects that this request's use of the phrase "permits searching for names or pictures" renders the request vague and ambiguous and overbroad. Plaintiff will interpret this interrogatory to be seeking whether Plaintiff has ever searched genealogy and heritage websites.

Subject to and without waiving any objections, to the best of his recollection, Plaintiff has not searched for any Person on any genealogy or heritage website.

**INTERROGATORY NO. 11:** Identify all Documents evidencing or constituting any agreement or contract You made relating to Your Yearbook Records, if any.

**ANSWER:** Plaintiff objects to the relevance of the requested information as the information, whatever it may be, has no bearing on any claims or defenses in this action. Pursuant to 765 ILCS 1075/1 *et seq.*, it was Defendants' obligation to obtain Plaintiff's "written consent" before making commercial use of his name, photographs, likenesses, and personas and, Plaintiff alleges, Defendants failed to obtain that prior written consent. Specifically, Plaintiff alleges "Ancestry has not received consent from, given notice to, or provided compensation to the millions of Illinoisans whose names, photographs, biographical information, and identities appear in its Ancestry Yearbook Database" and that "Ancestry did not ask the consent of the people whose personal information and photographs it profits from." Complaint at ¶¶ 4, 12. Whether Plaintiff has consented to a different, entirely unrelated entity's use of his personal information is irrelevant to whether Plaintiff gave his consent to Defendants for purposes of "advertising, selling or soliciting the purchase of its subscription services and products." *Id.* at ¶43. Plaintiff objects to this request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it is not limited in time or scope.

15

Doc ID: 29a6c54b6eb9799cbac45e9390cfc3236ec87695

Subject to and without waiving any objections, Plaintiff answers as follows: Plaintiff cannot recall any occasions when he made an agreement or contract relating to his yearbook record.

**INTERROGATORY NO. 12:**　　Identify and describe each instance that You requested that any information about You, including but not limited to Your name, age, photograph, club membership or descriptions of public activities, be removed from a publicly available database, website, catalog, or directory.

　　**ANSWER:**　Plaintiff objects to this request as overbroad and unduly burdensome in that it is not limited in temporal scope and relates to "any information." Plaintiff objects to the request as overbroad, unduly burdensome, and seeking information not relevant to the claims and defenses in this action. Plaintiff's claims, including those under 765 ILCS 1075/1 *et seq.*, do not require a person to actively protect his or her privacy in the way this request suggests. Rather, a defendant is required to ask for prior written consent.

　　Subject to and without waiving any objections, to the extent Plaintiff is able to understand this request, Plaintiff answers as follows: apart from the filing of this lawsuit, Plaintiff cannot recall any occasions when he requested that his personal information be removed from any publicly available website.

**INTERROGATORY NO. 13:**　　Identify every social media account or profile that You maintain, including but not limited to LinkedIn, Facebook, Twitter, Instagram, TikTok, Twitch, Vimeo, Tumblr, Pintrest, Google+, Snapchat, Reddit, Myspace, YouTube, Tinder, or Flickr.

　　**ANSWER:**　Plaintiff objects to the relevance of the requested information as the information, whatever it may be, has no bearing on any claims or defenses in this action. *See Tseng v. PeopleConnect, Inc.*, 2023 WL 2655920 (N.D. Cal. Mar. 27, 2023). Pursuant

16

Doc ID: 29a6c54b6eb9799cbac45e9390cfc3236ec87695

to 765 ILCS 1075/1 *et seq.,* it was Defendants' obligation to obtain Plaintiff's "written consent" before making commercial use of his name, photographs, likenesses, and personas and, Plaintiff alleges, Defendants failed to obtain that prior written consent. Specifically, Plaintiff alleges "Ancestry has not received consent from, given notice to, or provided compensation to the millions of Illinoisans whose names, photographs, biographical information, and identities appear in its Ancestry Yearbook Database" and that "Ancestry did not ask the consent of the people whose personal information and photographs it profits from." Complaint at ¶¶ 4, 12. Whether Plaintiff has consented to a different, entirely unrelated entity's use of his personal information is irrelevant to whether Plaintiff gave his consent to Defendants for purposes of "advertising, selling or soliciting the purchase of its subscription services and products." *Id.* at ¶43. Plaintiff objects to this request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it is not limited in time or scope. Plaintiff also objects that this request is vague and ambiguous on account of Defendants not defining the term "maintain." Plaintiff objects to the term "Pintrest" as unintelligible.

Accordingly, Plaintiff will not respond to this interrogatory.

**<u>INTERROGATORY NO. 14:</u>** Identify by date every time You, including through Your counsel, have visited the website www.ancestry.com.

**ANSWER:** Plaintiff objects to this request as it seeks information protected by the attorney client-privilege or work-product doctrines, and Plaintiff will not respond to this part of the interrogatory. Plaintiff also objects to this request to the extent that it seeks information which is equally available to Defendants.

Subject to and without waiving such objections, Plaintiff has not visited the website ancestry.com.

Doc ID: 29a6c54b6eb9799cbac45e9390cfc3236ec87695

**INTERROGATORY NO. 15:**      Identify the Person(s) who took the screenshots in the Complaint and state the date(s) those screenshots were taken.

    **ANSWER:**    Plaintiff objects to this request as it seeks information protected by the attorney client-privilege or work-product doctrines, and Plaintiff will not respond to this part of the interrogatory.

     Subject to and without waiving such objections, Plaintiff has never used, or created an account, with Ancestry.

**INTERROGATORY NO. 16:**      Identify every record containing Your name, appearance, likeness, photograph, image, identity, persona, or distinctive appearance that appears on ancestry.com and that You contend has been used in a manner that violates Your right of publicity.

    **ANSWER:**    Plaintiff objects to this request as it seeks information protected by the attorney client-privilege or work-product doctrines. Discovery is ongoing, and Plaintiff's answer to this request is, in part, dependent on information and documents in Defendants' possession. Plaintiff further objects because the request seeks documents already in the possession, custody, or control of Defendants and/or other third parties and are thus equally, if not more, available to Defendants. Plaintiff objects that this request is impermissibly premature as it calls for expert opinions or testimony. Plaintiff will make his expert disclosures in compliance with the timeframe provided by the Federal Rules and this Court's Orders. Plaintiff expressly reserves the right to supplement this response as new information is discovered and once Defendants have completed their related production. Plaintiff objects that the material requested is equally available, if not more available, to Defendants. Plaintiff objects to this interrogatory as duplicative of Interrogatory No. 17.

Doc ID: 29a6c54b6eb9799cbac45e9390cfc3236ec87695

Subject to and without waiving such objections, Plaintiff responds as follows: Defendants' counsel confirmed photographs from Mr. Wallace's yearbook are searchable on Ancestry.com. Ancestry provides a publicly accessible webpage on which non-subscribers may search for Mr. Wallace by name and location. Further, non-subscribers who search for Mr. Wallace receive in response a list of yearbook photographs in the Ancestry database that depict Mr. Wallace as a child and Ancestry displays a pop-up soliciting that non-subscribers "Sign Up Now." Ancestry also sends "hint" emails with Plaintiff's info.

**<u>INTERROGATORY NO. 17:</u>**     State how Your name, image, identity, likeness, persona, photograph or distinctive appearance was used by Ancestry in "advertisements" as alleged in the Complaint. Complaint ¶¶ 94-95.

**ANSWER:**     Plaintiff objects to this request as it seeks information protected by the attorney client-privilege or work-product doctrines. Discovery is ongoing, and Plaintiff's answer to this request is, in part, dependent on information and documents in Defendants' possession. Plaintiff further objects because the request seeks documents already in the possession, custody, or control of Defendants and/or other third parties and are thus equally, if not more, available to Defendants. Plaintiff objects that this request is impermissibly premature as it calls for expert opinions or testimony. Plaintiff will make his expert disclosures in compliance with the timeframe provided by the Federal Rules and this Court's Orders. Plaintiff expressly reserves the right to supplement this response as new information is discovered and once Defendants have completed their related production. Plaintiff objects that the material requested is equally available, if not more available, to Defendants. Plaintiff objects to this interrogatory as duplicative of Interrogatory No. 16.

Doc ID: 29a6c54b6eb9799cbac45e9390cfc3236ec87695

Subject to and without waiving such objections, Plaintiff responds as follows: Defendants' counsel confirmed photographs from Mr. Wallace's yearbook are searchable on Ancestry.com. Ancestry provides a publicly accessible webpage on which non-subscribers may search for Mr. Wallace by name and location. Further, non-subscribers who search for Mr. Wallace receive in response a list of yearbook photographs in the Ancestry database that depict Mr. Wallace as a child and Ancestry displays a pop-up soliciting that non-subscribers "Sign Up Now." Ancestry also sends "hint" emails with Plaintiff's info.

Dated: April 17, 2023

Respectfully Submitted,

By: /s/ *Raina C. Borrelli*
Raina C. Borrelli
Samuel J. Strauss
TURKE & STRAUSS LLP
613 Williamson St., Suite 201
Madison, WI 53703
Telephone: (608) 237-1775
Facsimile: (608) 509-4423
raina@turkestrauss.com
sam@turkestrauss.com

Michael F. Ram (*pro hac vice*)
Marie N. Appel (*pro hac vice*)
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6923
mram@forthepeople.com
mappel@forthepeople.com

Benjamin R. Osborn (*pro hac vice*)
102 Bergen Street
Brooklyn, NY 11201
Telephone: (347) 645-0464
ben@benosbornlaw.com

Doc ID: 29a6c54b6eb9799cbac45e9390cfc3236ec87695

*Attorneys for Plaintiffs and the Proposed Class*

Doc ID: 29a6c54b6eb9799cbac45e9390cfc3236ec87695

## CERTIFICATE OF SERVICE

I, Raina C. Borrelli, hereby certify that on April 17, 2023, I caused the foregoing to be

transmitted by email to the following:

> Shon Morgan (*pro hac vice*)
> John Wall Baumann (*pro hac vice*)
> QUINN EMANUEL URQUHART & SULLIVAN LLP
> 865 S. Figueroa Street, 10th Floor
> Los Angeles, CA 90017
> Telephone: (213) 443-3000
> jackbaumann@quinnemanuel.com
> shonmorgan@quinnemanuel.com
>
> Daniel R. Lombard
> QUINN EMANUEL URQUHART & SULLIVAN LLP
> 191 North Wacker Drive, #2700
> Chicago, IL 60606
> Telephone: (312) 705-7400
> daniellombard@quinnemanuel.com
>
> Christina Aide Henriquez (*pro hac vice*)
> QUINN EMANUEL URQUHART & SULLIVAN LLP
> 555 Twin Dolphin Drive, 5th Floor
> Redwood Shores, CA 94065
> Telephone: (650) 801-5000
> cristinahenriquez@quinnemanuel.com

DATED this 17th day of April, 2023.

> TURKE & STRAUSS LLP
>
> By: */s/ Raina C. Borrelli*
> Raina C. Borrelli
> raina@turkestrauss.com
> TURKE & STRAUSS LLP
> 613 Williamson St., Suite 201
> Madison, WI 53703
> Telephone: (608) 237-1775
> Facsimile: (608) 509-4423

Doc ID: 29a6c54b6eb9799cbac45e9390cfc3236ec87695

## <u>VERIFICATION</u>

I, Kevin Wallace state that I am the Plaintiff/one of the Plaintiffs in this matter; I have read the within and foregoing Plaintiff Kevin Wallace's Responses to Ancestry's First Set of Interrogatories, know the contents thereof, and believe the same to be true and correct.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

By: _____

Kevin Wallace

Filed Under Seal

— EXHIBIT  21 —