## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

JOSHUA BRAUNDMEIER and KEVIN
WALLACE, on behalf of themselves and all
others similarly situated,

        Plaintiffs,

      v.

ANCESTRY.COM OPERATIONS INC., a
Virginia Corporation; ANCESTRY.COM INC.,
a Delaware Corporation; ANCESTRY.COM
LLC, a Delaware Limited Liability Company;
and DOES 1 through 50, inclusive,

        Defendants.

CASE NO. 1:20-cv-07390

Hon. Jeffrey I. Cummings

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ..................................................................................................1

PROCEDURAL BACKGROUND.............................................................................................1

STATEMENT OF MATERIAL UNDISPUTED FACTS .........................................................3

LEGAL STANDARD................................................................................................................7

ARGUMENT .............................................................................................................................8

I.     THE UNDISPUTED EVIDENCE CONFIRMS ANCESTRY DID NOT USE
PLAINTIFFS' INFORMATION FOR A "COMMERCIAL PURPOSE" .........................8

II.    THE EVIDENCE DEMONSTRATES PLAINTIFFS HAVE NOT SUFFERED
AN INJURY IN FACT TO CONFER ARTICLE III STANDING..................................10

III.   ANY CLAIM PREMISED ON THE MERE AVAILABILITY OF YEARBOOK
RECORDS ON ANCESTRY'S SITE FAILS FOR NUMEROUS REASONS...............11

IV.   PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS WITH THEIR RIGHT
OF PUBLICITY CLAIM................................................................................................14

CONCLUSION........................................................................................................................15

# **TABLE OF AUTHORITIES**

**Page**

## **Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)...........................................................................................7

*Ass'n Ben. Servs., Inc. v. Caremark RX, Inc.*,
493 F.3d 841 (7th Cir. 2007) ...........................................................................14

*Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*,
805 F.2d 663 (7th Cir. 1986) ...........................................................................12

*United States ex rel. Berge v. Bd. of Trustees*,
104 F.3d 1453 (4th Cir. 1997) .........................................................................12

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)...........................................................................................7

*Clark v. City of Lakewood*,
259 F.3d 996 (9th Cir. 2001) ...........................................................................11

*Dart v. Craigslist, Inc.*,
665 F. Supp. 2d 961 (N.D. Ill. 2009) ..............................................................13

*Daugherty v. Harrington*,
906 F.3d 606 (7th Cir. 2018) .............................................................................7

*Dobrowolski v. Intelius, Inc.*,
2018 WL 11185289 (N.D. Ill. May 21, 2018).................................................8

*Fair Hous. Council of Suburban Phila. v. Montgomery Newspapers*,
141 F.3d 71 (3d Cir. 1998)................................................................................7

*Huston v. Hearst Communications, Inc.*,
53 F.4th 1097 (7th Cir. 2022) ...........................................................................9

*Jones v. Dirty World Entm't Recordings LLC*,
755 F.3d 398 (6th Cir. 2014) ...........................................................................14

*Kimzey v. Yelp! Inc.*,
836 F.3d 1263 (9th Cir. 2016) .........................................................................14

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)..............................................................................7, 10, 11

*Mortensen v. First Fed. Savings & Loan Ass'n*,
 549 F.2d 884 (3d Cir. 1977)....................................................................................10, 11

*O'Connor v. Ford Motor Co.*,
 477 F. Supp. 3d 705 (N.D. Ill. 2020) ...................................................................14

*Ridgeway v. Spokeo, Inc.*,
 2023 WL 6795277 (C.D. Cal. Oct. 11, 2023) .....................................................9, 10

*Siegel v. Shell Oil Co.*,
 612 F.3d 932 (7th Cir. 2010) ...............................................................................14

*Skaff v. Meridien N. Am. Beverly Hills, LLC*,
 506 F.3d 832 (9th Cir. 2007) ...............................................................................11

*Sommerfield v. City of Chicago*,
 863 F.3d 645 (7th Cir. 2017) .................................................................................7

*In re Technicool Sys., Inc.*,
 896 F.3d 382 (5th Cir. 2018) ...............................................................................11

*Thompson v. Getty Images (US), Inc.*,
 2013 WL 3321612 (N.D. Ill. July 1, 2013).......................................................8, 9, 10

*Toney v. L'Oreal USA, Inc.*,
 406 F.3d 905 (7th Cir. 2005) ...............................................................................12

## Rules/Statutes

Fed. R. Civ. P. 56(a) ...................................................................................................7

765 ILCS 1075/5................................................................................................. passim

17 U.S.C. § 101.........................................................................................................12

17 U.S.C. § 102.........................................................................................................12

17 U.S.C. § 103.........................................................................................................12

17 U.S.C. § 301(a).....................................................................................................12

47 U.S.C. § 230.........................................................................................................13

Communications Decency Act § 230 ................................................................. passim

Copyright Act........................................................................................................ passim

## PRELIMINARY STATEMENT

Plaintiffs survived the pleading stage by alleging their yearbook records had been used to "advertise" Ancestry's subscription service in "marketing" emails sent to third parties. The undisputed evidence now shows that never occurred. Likewise, although plaintiffs contended their records were searched or viewed by non-subscribers or "free trial" users (which under plaintiffs' theory might have "enticed" visitors to subscribe) *none* of plaintiffs' records were searched or viewed by a prospective subscriber before they filed suit. Plaintiffs thus cannot demonstrate an actionable use for a "commercial purpose" under Illinois' right of publicity law nor any "actual injury" to establish Article III standing.

Further, to the extent plaintiffs pivot to contend their claims are premised on the mere availability of their yearbook records on Ancestry's site (as opposed to incorporation in the challenged "advertisements"), their claims fail for numerous reasons. Absent incorporation in "advertisements," no nexus exists between the alleged use of plaintiffs' identities and an offer of sale, as required to state a claim. Plaintiffs' claims would also be premised solely on distribution of copyrighted books—subjecting the claims not only to preemption by the Copyright Act but also statutory exception for use of identity in a book or other visual work. And because Ancestry did not create the yearbooks, claims premised on mere internet distribution would be barred by section 230 of the Communications Decency Act.

## PROCEDURAL BACKGROUND

Plaintiffs Joshua Braundmeier and Kevin Wallace filed a putative class action based on Ancestry's alleged use of their yearbook records. *See generally* ECF No. 94. Plaintiffs assert a claim for violation of their right of publicity under Illinois' Right of Publicity Act (765 ILCS 1075/1) and a derivative claim for unjust enrichment. *Id.* Plaintiffs concede their "claims are not directed at yearbooks" that appear on Ancestry's site. ECF No. 33 at 14. *Id.* at 15 (claims are not

based on the underlying yearbook records, but instead Ancestry's purported "choice to incorporate content from yearbooks in illegal advertisements"); 20 ("[p]laintiff's claims are not directed at the underlying yearbooks. The claims are directed at Ancestry's use of Plaintiff's photograph and identity in messages and previews to promote website subscriptions"). Instead, their claims are premised on three alleged "uses" of records in a manner plaintiffs claim are "advertisements."

*First,* plaintiffs contend visitors to Ancestry's site who are not paying subscribers or enrolled in a "free trial" can "search for records in Ancestry's Yearbook [Database] and may view a limited portion of the information in those records." ECF No. 94 at ¶¶ 8-10. Plaintiffs allege the results of such a search lead to "promotional pop-up advertisement[s]" prompting the user to "'Sign Up Now' for a paid subscription." *Id.* at ¶ 44. *Second,* plaintiffs allege Ancestry offers a "free trial," during which "users receive access to the same records that are available to paying users," and that the "sole purpose in using [plaintiffs'] names, photographs, images, and likeness . . . in the promotional 'free trial' version of its website is to advertise and promote its paid subscription plans." *Id.* at ¶¶ 120. *Third,* plaintiffs allege—on "information and belief"—that Ancestry has sent "'hint' emails" that contain their names and likenesses that are intended to "entice non-paying users to become paying subscribers by promising access to records about family members." *Id.* at ¶¶ 26, 74, 103.

The Court granted in part Ancestry's motion dismiss, leaving only the claim for violation of Illinois' right of publicity statute and a derivative claim for unjust enrichment. ECF No. 57.[1]

---

[1] At the motion to dismiss stage, the named plaintiff in this case was Sergio Bonilla. *See id.* Joshua Braundmeier and Kevin Wallace were later added as named plaintiffs (*see* ECF No. 94) and the Court subsequently entered judgment against Sergio Bonilla on statute of limitations grounds (ECF No. 96). The theories proffered by plaintiffs Braundmeier and Wallace are the same as those advanced by plaintiff Bonilla (ECF No. 94) and the Court's rulings on Ancestry's motion to dismiss are thus equally applicable to their claims.

The Court articulated the narrow theories on which these claims survived Ancestry's pleading-stage challenges. With respect to Article III standing, the Court found "Plaintiff alleges that Ancestry used his image, name, and likeness **in advertisements** intended to profit from subscription services," and that plaintiff had therefore asserted a claim consistent with the common law's right-of-publicity cause of action, which sufficed to confer standing. *Id.* at 8 (emphasis added). The Court found that plaintiff's claims (as pleaded) were not preempted by the Copyright Act because they were not based solely on distribution of "a copyrighted artistic visual work," but further targeted the alleged use of plaintiff's identity "***in Ancestry's advertisements and promotional materials*** for its paid subscription services." *Id.* at 13 (emphasis added) (quotation, citation omitted). The Court engaged in a similar analysis to conclude plaintiff had pleaded around the right of publicity act's exception for "use of an individual's identity in an attempt to portray, describe, or impersonate that individual in a . . . book"—the Court found that plaintiff's claim did not target "the reproduction and hosting of the record," but instead "use of his record ***in advertisements for Ancestry's subscription service***." *Id.* at 13 (emphasis added). With respect to immunity under section 230 of the Communications Decency Act, the Court found that plaintiffs' claims were not premised "on the 'mere reposting' of yearbook records," but instead the alleged use of the records in "advertisements" that "Ancestry created." *Id.* at 9-10.

## STATEMENT OF MATERIAL UNDISPUTED FACTS

**Ancestry's Yearbook Database.** Ancestry is a genealogy company that provides users access to historical records to trace their family histories. *See* Statement of Undisputed Material Facts ("SMF") ¶ 1. These materials include digitized yearbook records in Ancestry's "Yearbook Database." SMF at ¶ 2. Some of these digital yearbook records are "searchable," meaning users of Ancestry's site can enter certain search terms in the Yearbook Database—for example, a name or location—which will identify yearbook records that might be responsive to those search terms.

SMF at ¶ 3.  Any resulting list will vary based on the specific terms entered by the user.  SMF at ¶ 3.  For example, a search for "John Smith" without further qualifiers conducted on January 17, 2023 pulled up a list of 55,271 results, as partially reflected in the screenshot below:



SMF at ¶ 4.  When conducted on February 9, 2024, the same search returned 55,978 records.  SMF at ¶ 5.  On the other hand, a search for "Shon Morgan" in Illinois does not result in any search result list, as reflected in the screenshot below:

SMF at ¶ 6.  The results reflected in these two screenshots do not "exist" in any static form on Ancestry's site and are instead generated only in response to a user's search.  SMF at ¶ 7.  The results displayed vary based on the user-provided inputs.  SMF at ¶ 3.  The same is true of any other search result list on Ancestry's site, including those referenced in plaintiffs' complaint.  SMF at ¶ 8.  Likewise, if a user scrolls over the "View Record" link in a search result list, Ancestry's website will generate a pop-up bubble reflecting a thumbnail of the underlying image, as reflected below:

4



SMF at ¶ 9.  Again, these pop-up bubbles do not exist in a static form on Ancestry's website and are instead generated solely in response to the user's interaction with the site—to the extent Ancestry hosts a record in its database, but no user has ever searched for that record and scrolled over the "View Record" link, the pop-up bubble reflecting a thumbnail image of that record will never have been generated nor displayed for anyone to see.  SMF at ¶¶ 10-11) .

Certain (although not all) records in Ancestry's Yearbook Database are also "hintable." SMF at ¶ 12.  This means the record might be included in a "hint" email sent to someone who has signed up for Ancestry's services to inform the user of a record in which he or she might be interested.  *Id.*   However, records only become "hintable"—and thus will only be included in a "hint" email—when the record is associated with someone who the user has added to his or her "family tree."  SMF at ¶ 13. Without such action by an Ancestry user—*i.e.*, adding the person to a family tree—the record cannot become a part of a "hint" email.  *Id.*

**Plaintiffs' Yearbook Records.**  Joshua Braundmeier and Kevin Wallace base their claims on purported "advertisements" generated using records from their Gillespie Community High School and Flanagan High School yearbooks, respectively.  SMF at ¶ 14.

Before filing this lawsuit, none of these records was ever returned in search results, viewed in a pop-up or accessed in part or in full by any free trial or other non-paying user other than plaintiffs'

counsel.  SMF at ¶¶ 17, 19.  Moreover, none of plaintiffs' yearbook records has ever been included in a "hint" email.  SMF at ¶¶ 18, 20.  Plaintiffs were unable to identify any contrary evidence—they conceded they do not know whether any user has ever searched their names on Ancestry's website, nor whether their yearbook records have ever been included in any email messages sent to any of Ancestry's subscribers.  SMF at ¶ 21.

**Plaintiffs Admitted They Have Not Suffered Actionable Harm.**  Although plaintiffs claim Ancestry's hosting their yearbook records has deprived them the "fair economic value" of their likenesses, each admitted no such "value" exists: neither has tried to sell or monetize his yearbooks, name or likeness, nor do either have any plans to do so.  SMF at ¶¶ 22-23; Dkt. 161-13, at 9 ("Plaintiff has never knowingly granted any Person any license, permission, or authorization to use his name, likeness, identity, or persona.") & Dkt. 161-20, at 9 (same).  Likewise, plaintiffs admitted they do not know of anyone to whom they might sell their yearbook records, or whether anyone would pay for those records were they to attempt to sell them.  SMF at ¶¶ 24-25.

Plaintiffs further admit they have no factual basis to support their contention that Ancestry's use impacted the value of their names or likenesses. SMF at ¶ 26.  Of course, plaintiffs could not contend otherwise—each agreed the yearbooks are not private, others possess copies of the same books, and plaintiffs have made no attempt to restrict what others might do with their own copies.  SMF at ¶ 27.

When pointedly asked to identify any harm from Ancestry's alleged use of his yearbook records, plaintiff Braundmeier stated that he "assum[ed]" Ancestry had sold his yearbook information to third-party advertisers, but admitted he had no evidence Ancestry had done so (and, indeed, it has not).  SMF at ¶ 28.  The only other claimed "harm" Mr. Braundmeier could muster

were feelings of "stress," but he admitted those resulted from his choice to participate in a lawsuit (not from Ancestry's alleged use of his yearbook records). SMF at ¶ 29. Plaintiff Wallace stated only that he "fe[lt] that Ancestry.com has had financial gains" from using his yearbook photographs "on their advertisements," but admitted he does not know whether Ancestry has ever received any "financial gains" from his yearbook records. SMF at ¶ 30.

## **LEGAL STANDARD**

**Summary Judgment.** Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact and if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Conclusory allegations or unsupported speculation are insufficient to preclude the granting of a summary judgment motion. *See Daugherty v. Harrington*, 906 F.3d 606, 611 (7th Cir. 2018); *Sommerfield v. City of Chicago*, 863 F.3d 645, 649 (7th Cir. 2017).

**Article III Injury**. To establish constitutional standing, a plaintiff bears the burden to prove an "injury in fact" that is causally linked to the challenged conduct and would be redressed by a decision in plaintiffs' favor. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Article III standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Fair Hous. Council of Suburban Phila. v. Montgomery Newspapers*, 141 F.3d 71, 74 (3d Cir. 1998).

**ARGUMENT**

I. **THE UNDISPUTED EVIDENCE CONFIRMS ANCESTRY DID NOT USE PLAINTIFFS' INFORMATION FOR A "COMMERCIAL PURPOSE"**

Illinois' right of publicity statute defines "commercial purpose" as "the public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; (ii) for purposes of advertising or promoting products, merchandise, goods, or services; or (iii) for the purpose of fundraising." 765 ILCS 1075/5. Thus, as relevant here, plaintiffs must demonstrate public use or holding out of their identities either (1) "on or in connection with" an offer for sale or sale of Ancestry's services; or (2) in "advertising" or "promot[ions]" for Ancestry's services. *See id.* Plaintiffs cannot prove either.

Under plaintiffs' own theories, the only alleged "connection" between plaintiffs' identities and any offer of sale—or use in purported "advertisements" or "promotions"—requires non-paying users to engage with plaintiffs' yearbook records in specific ways: *if* those users "hover" over the record, they would be given the chance to "Sign Up Now" for an Ancestry subscription; and *if* those users received a "hint" for plaintiffs' records (and *if* they chose to click on it) they would be given the same opportunity. ECF No. 94 at ¶¶ 44, 45, 122.[2] Absent such user

---

[2] Although plaintiffs also base their claims on "free trial" users having accessed their records (ECF No. 94 at ¶ 134), they fail to identify any "connection" between their identities and an offer of sale in that context (*e.g.,* akin to the "Sign Up Now" prompts other users might see). *See generally* ECF No. 94. To the contrary, plaintiffs concede "'Free trial' users receive access to the same records that are available to paying users." *Id.* at ¶ 120. As courts have correctly recognized, a right of publicity claim must be premised on use of a plaintiff's identity "to promote a *separate* product." *Dobrowolski v. Intelius, Inc.*, 2018 WL 11185289, at *3 (N.D. Ill. May 21, 2018) ("The plaintiffs' identities are not used to promote a separate product—they are used because plaintiffs' identities are part of the product offered for sale."). *See also Thompson v. Getty Images (US), Inc.*, 2013 WL 3321612, at *2 (N.D. Ill. July 1, 2013) (allegation that defendant "displays a preview of the exact thing it seeks to sell—a photograph" did not state an IRPA claim). Because any alleged "use" in connection with a "free trial" is undisputedly a "preview of the exact thing [Ancestry] seeks to sell," *id.*, it cannot provide the basis for a right of publicity claim. Indeed, there is no dispute that Ancestry may sell access to its database. It therefore makes no sense to say Ancestry cannot give away access to that database—as its free-trial access does. In all events, the evidence demonstrates plaintiffs' yearbook records were *not* accessed by any "free trial" users—any hypothetical "connection" with an offer of sale is thus disproved by the evidence. SMF at ¶¶ 17-20.

engagement, the "advertisements" that purportedly associate plaintiffs' identities with an offer of sale *do not exist*. SMF at ¶¶ 7-13.

Here, the undisputed evidence shows none of plaintiffs' yearbook records were ever accessed, viewed, or searched by anyone other than their counsel before they initiated suit; none of their records appeared in any "hint" emails; and plaintiffs admit they cannot identify any contrary evidence. SMF at ¶¶ 18, 20. Thus, plaintiffs cannot demonstrate their records were ever connected with any "offer of sale or sale" of Ancestry's subscription service or used to "advertise" or "promote" such services.

The Seventh Circuit recently addressed a similar situation in *Huston v. Hearst Communications, Inc.*, 53 F.4th 1097 (7th Cir. 2022). There, the plaintiff asserted a right of publicity claim based on use of her identity in the defendant's mailing lists, which it sold to its customers for a fee. *Id.* at 1099. However, the defendant's customers were unable to see the plaintiff's information until after they had purchased a subscription. *Id.* at 1100-01. The Seventh Circuit rejected the plaintiff's claim, holding she could not plausibly allege any "connection" with the offer of sale (or sale) when her identity was revealed only after the sale was consummated. *Id.*

Although *Huston* turned on different temporal circumstances, the result followed from the lack of required *connection* between the alleged use and the attempted sale. 765 ILCS 1075/5. Just as no "connection" exists where the identity of a plaintiff is revealed after the sale (as in *Huston*), no salient "connection" exists here where a plaintiff's name or image (*i.e.*, the yearbook record) is *never* used in conjunction with the purported offer for sale (*i.e.,* the prompt to sign up for a paid subscription), as here. Likewise, plaintiffs cannot raise a triable issue that their records were held out or used "for purposes of advertising or promoting" Ancestry's subscription services when the very "advertisements" on which they rely undisputedly never existed. *See, e.g.,*

*Thompson*, 2013 WL 3321612 at *2 ("The statute's commercial purpose requirement does not prohibit the mere sale of someone's photograph. Rather, the IRPA prohibits the use of an individual's image to promote or entice the purchase of some other product"); *Ridgeway v. Spokeo, Inc.*, 2023 WL 6795277, at *4-5 (C.D. Cal. Oct. 11, 2023) ("the teaser profile does not even exist until someone searches for a given individual—at which point it is generated and presented . . . [defendant] could not have caused Ridgeway's indicia of identity to be used, much less used to sell its products or services, if no one has actually searched for Ridgeway's profile").

## II.  THE EVIDENCE DEMONSTRATES PLAINTIFFS HAVE NOT SUFFERED AN INJURY IN FACT TO CONFER ARTICLE III STANDING

A threshold requirement to sue in federal court is Article III standing, which requires, among other things, that the plaintiff suffered a concrete harm. *Lujan*, 504 U.S. at 560-61. Where a defendant raises a factual challenge to jurisdiction—as opposed to a facial challenge based on the allegations in the complaint—"no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Mortensen v. First Fed. Savings & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

At the pleading stage, the Court found plaintiffs sufficiently alleged an injury based on the alleged use of their likenesses for "commercial purposes"—specifically, allegations that "Ancestry used [plaintiffs'] image, name, and likeness ***in advertisements*** intended to profit from subscription services," and that plaintiff had therefore asserted a claim consistent with the common law's right-of-publicity cause of action. *Id.* at 8 (emphasis added). As shown above (Part I), the challenged uses never occurred. Nor do plaintiffs have any evidence to suggest otherwise. Thus, they cannot

10

meet their burden to demonstrate jurisdiction exists here.  *See Mortensen*, 549 F.2d at 891.[3]

## III.  ANY CLAIM PREMISED ON THE MERE AVAILABILITY OF YEARBOOK RECORDS ON ANCESTRY'S SITE FAILS FOR NUMEROUS REASONS

Plaintiffs have repeatedly disclaimed any challenge to Ancestry's provision of access to their yearbook records as part of Ancestry's database of genealogical information.  *See, e.g.,* ECF No. 33 at 14 (conceding their "claims are not directed at yearbooks" that appear on Ancestry's site); 15 (contending the claims are not based on the underlying yearbook records, but instead Ancestry's purported "choice to incorporate content from yearbooks in illegal advertisements"); 20 ("[p]laintiff's claims are not directed at the underlying yearbooks. The claims are directed at Ancestry's use of Plaintiff's photograph and identity in messages and previews to promote website subscriptions").  In turn, this Court relied on plaintiffs' narrow articulation of their claims to allow them to proceed past the pleading stage.  *See* ECF No. 57.  Although plaintiffs should be barred from doing so,[4] to the extent they attempt to pivot to argue the mere availability of their records on Ancestry's site—whether or not they were ever part of the challenged "advertisements"—can support their right of publicity claim, any such argument would fail for numerous reasons.

---

[3]   Even could plaintiffs present evidence their yearbook records were "used" in this manner *after* filing their complaint (they cannot), this would not suffice for Article III standing, which instead depends on the facts as they existed when the claim was initiated.  *See, e.g., Lujan*, 504 U.S. at 571 ("The existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed.") (quotation, citation omitted); *In re Technicool Sys., Inc.*, 896 F.3d 382, 386 (5th Cir. 2018) ("Furlough asserts he has standing because he is *now* a creditor. But this argument proves too little, too late. Now matters not. . . . Furlough cannot . . . establish standing retroactively."); *Clark v. City of Lakewood*, 259 F.3d 996, 1006 (9th Cir. 2001) ("Standing is determined by the facts that exist at the time the complaint is filed."); *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 839 n.5 (9th Cir. 2007) ("Standing must exist at the time the action is filed and cannot be established by showing later actions").

[4]   Judicial estoppel precludes such changes in position where, as here, (1) the party's later position is clearly inconsistent with its earlier position, (2) the party succeeded in persuading the court to accept that earlier position, and (3) the party seeking to assert the inconsistent position derives an unfair advantage if not estopped.  *Id.*

11

**First,** as shown above, absent "use" in the manner plaintiffs challenge, they cannot point to any connection with an offer of sale, nor any inclusion in "advertising" or "promotional" materials—the evidence shows what plaintiffs characterize as "advertisements" incorporating their identities *never existed* and thus cannot support their claims. *See* Part I.

**Second,** the federal Copyright Act provides the exclusive means to protect against publication, reproduction or display of copyrightable works such as photos and compilations. 17 U.S.C. § 301(a).[5] *See also Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 674 (7th Cir. 1986) (plaintiffs' right of publicity claim preempted where it was equivalent to an assertion of copyright over the telecasts of their performances); *Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 910 (7th Cir. 2005) (to avoid preemption, a claim must challenge "conduct other than reproduction, adaptation, publication, performance, and display" of a copyrighted work). At the pleading stage, the Court declined to find preemption because plaintiffs' claims were not based on distribution of "a copyrighted artistic visual work," and instead targeted the alleged use of plaintiff's identity "***in Ancestry's advertisements and promotional materials*** for its paid subscription services." ECF No. 57 at 13 (emphasis added) (quotation, citation omitted). Having failed to raise a triable issue that such "advertisements and promotional materials" exist, to the extent plaintiffs shift their theory to challenge the mere publication or display of their yearbook records as part of Ancestry's database, there would be nothing to

---

[5]  Plaintiffs have never contested the yearbooks at issue are "copyrightable" within the meaning of the Copyright Act. Nor could they. *See* 17 U.S.C. §§ 102-103 (copyright protection for "original works of authorship fixed in any tangible medium of expression," including "compilations"). The yearbooks are "fixed" in a tangible medium of expression within the meaning of the Act because their "embodiment in a copy . . . is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration." 17 U.S.C. § 101. In any event, even if the yearbooks were not entitled to copyright protection (they are), the scope of preemption is broader than the scope of copyright protection—"the shadow actually cast by the Act's preemption is notably broader than the wing of its protection." *United States ex rel. Berge v. Bd. of Trustees*, 104 F.3d 1453, 1463 (4th Cir. 1997).

"qualitatively distinguish [their right of publicity] claim from the rights protected by the Copyright Act," and their claim would therefore be preempted. *See id.*

**Third,** the right of publicity statute exempts liability where an individual's identity is used to portray the individual in a "book, article, . . . or other . . . visual . . . work." 765 Ill. Comp. Stat. 1075/35(b)(1). Plaintiffs previously evaded this exception by arguing their claim did not target "the reproduction and hosting of the record," but instead the "use of [the] record ***in advertisements for Ancestry's subscription service***." ECF No. 57 at 13 (emphasis added). Should plaintiffs now argue their claims are premised on "reproduction and hosting" of their records, their claim would plainly be premised on use of their identities as they appear in a book or other visual work and would thus fall within this exception.

**Finally,** section 230 of the Communications Decency Act immunizes companies from claims arising from the publication of content created by third parties. 47 U.S.C. § 230(c)(1) ("[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider"); *Dart v. Craigslist, Inc.*, 665 F. Supp. 2d 961, 965-69 (N.D. Ill. 2009) ("Section 230 preempts contrary state law claims with certain inapplicable exceptions"). There is no dispute Ancestry is "an interactive computer service." *See* 47 U.S.C. § 230(f)(2) (defining "interactive computer service" to mean one that "provides or enables computer access by multiple users to a computer server"); ECF No. 33 at 13-15. Nor can plaintiffs dispute Ancestry did not create the yearbooks on which their claims are premised. SMF at ¶ 31; *see also* ECF No. 33 at 13-15. Instead, plaintiffs earlier avoided section 230's immunity by contending their claims are premised on "records and advertisements Ancestry created, not the underlying yearbooks." ECF No. 33 at 13-15; *See also* ECF No. 57 at 9-10 (finding section 230 did not bar plaintiffs' claims because they were not premised "on the 'mere reposting'

of yearbook records," but instead the alleged use of the records in "advertisements" that "Ancestry created" to "entice potential customers to subscribe to its services."). The evidence now shows the "content" created by Ancestry on which they previously relied (the purported "advertisements") *never existed*. Any claim they may now try to assert would necessarily be premised on Ancestry's publication of third-party content and barred by section 230 of the Communications Decency Act. *See, e.g., Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1270 (9th Cir. 2016) ("Yelp is not liable for disseminating . . . [user-generated] content in essentially the same format to a search engine, as this action does not change the origin of the third-party content."); *Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 415-16 (6th Cir. 2014) (selecting and republishing user-generated content is not "creation or development.").

## IV. PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS WITH THEIR RIGHT OF PUBLICITY CLAIM

"[I]f an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim." *Cleary*, 656 F.3d at 517. Accordingly, courts consistently reason that where the underlying claim fails, the unjust enrichment claim must also fail. *E.g., Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) ("unjust enrichment claim [was] not viable" where it was based on a failed underlying statutory claim); *Ass'n Ben. Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007) ("where the plaintiff's claim of unjust enrichment is predicated on the same allegations of fraudulent conduct that support an independent claim of fraud, resolution of the fraud claim against the plaintiff is dispositive of the unjust enrichment claim as well"); *O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 720 (N.D. Ill. 2020) ("Plaintiff's unjust enrichment claim fails because it is premised on the same conduct underlying Plaintiff's legally deficient ICFA claim").

Indeed, this Court previously recognized that plaintiffs' unjust enrichment claim is premised on the same allegedly wrongful conduct that underlies their right of publicity claim. *See* ECF No. 57 at 19 ("Because the Court finds that Plaintiff can proceed on his I[R]PA claim [ ], his claim for unjust enrichment also survives"); ECF No. 96 at 10 ("Because [plaintiff's] I[R]PA claim no longer stands, his unjust-enrichment claim falls as well."). Accordingly, plaintiffs' unjust enrichment claim must "fall with the related" IRPA claim. *See* Dkt. 57 at 19 ("where 'an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim'") (quoting *Cleary*, 565 F.3d at 517).

## CONCLUSION

Discovery has shown the narrow theories on which plaintiffs' claims survived the pleading stage are entirely unsupported by the evidence. No factual basis supports plaintiffs' right of publicity claim and their derivative unjust enrichment claim must fail with it. Judgment should be entered in Ancestry's favor.

Dated:  March 11, 2024

Respectfully submitted,

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By: /s/ Shon Morgan
    Shon Morgan

Shon Morgan (*pro hac vice*)
John W. Baumann (*pro hac vice*)
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
shonmorgan@quinnemanuel.com
jackbaumann@quinnemanuel.com

Daniel Lombard
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
(312) 705-7400
daniellombard@quinnemanuel.com

Cristina Henriquez (*pro hac vice*)
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
(650) 801-5000
cristinahenriquez@quinnemanuel.com

*Attorneys for Defendants Ancestry.com*
*Operations Inc., Ancestry.com Inc., and*
*Ancestry.com LLC*

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, hereby certify that on March 11, 2024, I caused a true and correct copy of the foregoing to be filed electronically with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to counsel of record via the Court's CM/ECF automated filing system.

*/s/ Shon Morgan*        
Shon Morgan
