THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSHUA BRAUNDMEIER and KEVIN WALLACE, on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br> vs.<br><br>ANCESTRY.COM OPERATIONS INC., a Virginia Corporation; ANCESTRY.COM INC., a Delaware Corporation; ANCESTRY.COM LLC, a Delaware Limited Liability Company,<br><br>      Defendants. | Case No. 1:20-cv-07390<br><br>Judge Jeffrey I. Cummings |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

**TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT ................................................................................................ 1

II.  ARGUMENT .......................................................................................................................... 1

      B.  Plaintiffs' Proposed Method for Calculating Damages Exactly Matches their Liability Theory. ............................................................................................................................ 7

      C.  If This Court Determines that Third Party Viewership is Relevant, Discovery Should be Re-Opened. ................................................................................................................. 9

      D.  Every Class Member is Identifiable by the Information in their Full Profile. ............. 11

      E.  Ancestry's Potential "Public Affairs" Affirmative Defense Does not Defeat Predominance. ............................................................................................................. 13

III. CONCLUSION ..................................................................................................................... 14

**TABLE OF AUTHORITIES**

**Cases**

*Albanese v. Menounos*,
  218 Cal. App. 4th 923 (Cal. Ct. App. 2013) ................................................................................ 14

*Bonilla v. Ancestry.com Ops. Inc.*,
  574 F. Supp. 3d 582 (N.D. Ill. 2021) .............................................................................................. 6

*Brown v. ACMI Pop Division*,
  375 Ill. App. 3d 276, 873 N.E.2d 954 (2007) ................................................................................ 6

*Dancel v. Groupon, Inc.*,
  949 F.3d 999 (7th Cir. 2019) ........................................................................................................ 12

*Dobrowolski v. Intelius*,
  No. 17-CV-1406, 2018 WL 11185289 (N.D. Ill. May 21, 2018) ............................................. 5, 6

*Downing v. Abercrombie & Fitch*,
  265 F.3d 994 (9th Cir. 2001) ........................................................................................................ 14

*Fischer v. InstantCheckmate LLC*,
  2022 WL 971479 (N.D. Ill. Mar. 31, 2022) ................................................................... 3, 4, 5, 12

*Fry v. Ancestry.com*,
  2023 WL 2631387 (N.D. Ind. Mar. 24, 2023) ................................................................................ 2

*Huston v. Hearst Commc'nc, Inc.*
  53 F.4th 1097 (7th Cir. 2022) ..................................................................................................... 5, 6

*In re Brand Name Prescription Drugs Antitrust Litigation*,
  1995 WL 360526 (N.D. Ill. 1995) ................................................................................................ 10

*In re Sulfuric Acid Antitrust Litig.*,
  231 F.R.D. 351 (N.D. Ill. 2005) .................................................................................................... 10

*Knapke v. PeopleConnect*,
  553 F. Supp. 3d 865 (W.D. Wash. 2021) ....................................................................................... 3

*Lou v. Ma Labs., Inc.*,
  No. 12-CV-05409 WHA (NC), 2013 WL 12328278 (N.D. Cal. Mar. 28, 2013) .................... 10

*Mace v. Van Ru Credit Corp.*,
  109 F.3d 338 (7th Cir. 1997) .......................................................................................................... 8

*Mirfasihi v. Fleet Mortg. Corp.*,
  356 F.3d 781 (7th Cir. 2004) .......................................................................................................... 8

*Montana v. San Jose Mercury News, Inc.*,
 34 Cal. App. 4th 790 (1995) .................................................................................................. 14

*Nolen v. PeopleConnect, Inc.*,
 Case No. 20-cv-9203-EMC, 2023 U.S. Dist. LEXIS 234002 (N.D. Cal. Dec. 14, 2023). 1, 3, 4, 5, 11

*People v. Jones*,
 2023 IL App (1st) 221613-U ................................................................................................. 13

*Ridgeway v. Spokeo, Inc.*,
 2023 WL 6795277 (C.D. Cal. Oct. 11, 2023) .......................................................................... 7

*Siegel v. ZoomInfo Techs*,
 No. 21-cv-2032, 2021 WL 4306148 (N.D. Ill. Sept. 22, 2021) ............................................ 3, 5

*Tyson Foods, Inc. v. Bouaphakeo*,
 577 U.S. 442 (2016) ............................................................................................................... 13

*Verde v. Confi-Chek, Inc.*,
 2021 WL 4264674 (N.D. Ill. Sept. 20, 2021) .......................................................................... 7

**Statutes**

Illinois Right of Publicity Act, 765 ILCS 1075 ................................................ 2, 3, 5, 6, 7, 8, 9, 13

## I. PRELIMINARY STATEMENT

This case arises from Ancestry's use of students' names and identities to advertise website subscriptions without the consent of the individuals portrayed. On December 14, 2023, Judge Chen conditionally certified a similar case against the owner of the website www.classmates.com. *Nolen v. PeopleConnect, Inc.*, Case No. 20-cv-9203-EMC, Dkt. 261, 2023 U.S. Dist. LEXIS 234002 (N.D. Cal. Dec. 14, 2023). Ancestry's and PeopleConnect's business models are virtually identical. Like PeopleConnect, Ancestry advertises subscriptions by providing free searchable access to a database of personal information gleaned from school yearbooks. Indeed, as shown in Plaintiff's Motion for Class Certification (Dkt. 162, "Mot."), ███████████████████████████████ ███████████████████████████████████████. There is no reason for a different result here. Ancestry's arguments against certification are unpersuasive.

## II. ARGUMENT

**A. Liability Turns on Whether Ancestry Published Infringing Advertisements, not on the Actions of Third Parties Outside Ancestry's Control.**

Ancestry effectively concedes that the facts underlying Plaintiff's liability theory are common between all Class members. Plaintiffs' claims arise from three types of advertisements. *See* Mot § IV(A)(2)(a). With respect to the first type, Ancestry does not dispute that any member of the public can view any Class members' teaser profile by visiting www.ancestry.com and performing a search, and that anyone who does so will see Ancestry's solicitation to "Sign Up Now" to learn more about the Class member. With respect to the second type of advertisement, Ancestry does not dispute that it has published and publicly distributed on its website a full profile about every Class member. *See* Dkt. 94 ("SAC") ¶41; Ex. 3, Godfrey Tr., at 31:20-32:1. And it does not dispute that any free-trial user can view any Class member's full profile by signing in to www.ancestry.com and performing a search. Finally, with respect to the third type of

1

advertisement, Ancestry does not dispute that every Class member's name and personal information is in the dataset from which promotional "hint" emails could be generated at any time.

Ancestry admits it has *published and publicly distributed* advertisements about every Class member. But, Ancestry contends, in some cases the advertisements about a given Class member have not yet been *viewed* by a potential customer on www.ancestry.com. *See* Dkt. 185 ("Opp.") at *9 (arguing that, although Ancestry has published profiles about all Class members, it has not "use[d] yearbook records to advertise" unless and until "free trial users *access[]* those records") (emphasis in original). According to Ancestry, liability under the IRPA turns not on the defendant's choice to publicly hold out a Class member's identity in an advertisement, but rather on a third party's choice to view that advertisement. *See id*.

Ancestry is wrong on the law. As Plaintiffs showed in their Motion, liability turns on the *defendant's commercial use by publishing an advertisement*, not on a third party's choice to view it. The statutory text, case law, this Court's prior rulings, and logic all support this conclusion.

**Statutory Text.** The IRPA defines the use of an identity for a "commercial purpose" as "the public use or holding out of an individual's identity." 765 ILCS 1075/5. Thus, liability turns on the defendant's "holding out" of an identity. Ancestry's teaser profiles and full profiles are openly published and publicly available on www.ancestry.com. Thus, Ancestry "hold[s] out" each Class members' identity to promote website subscriptions. There is nothing in the statute's text to suggest that an extra step is required – *i.e.,* viewership of the advertisement by a third party. This Court should decline Ancestry's invitation to import a non-existent viewership requirement into the IRPA.[1]

---

[1] Ancestry relies on *Fry v. Ancestry.com*, which concerned Indiana's right of publicity statute. 2023 WL 2631387 (N.D. Ind. Mar. 24, 2023). *Fry* is distinguishable. Unlike the IRPA and analogous right of publicity statutes in California and Ohio, Indiana's right of publicity statute

2

**Case Law**. As discussed in Plaintiff's Motion, many courts analyzing the IRPA and similar state right of publicity statutes have concluded that there is no third-party viewership element. *See Nolen v. PeopleConnect, Inc.*, No. 20-cv-09203-EMC, 2023 U.S. Dist. LEXIS 113630, at *30 (N.D. Cal. June 30, 2023) (Judge Chen, California claims). The right of publicity "does not impose a viewership requirement." *Fischer v. InstantCheckmate LLC*, 2022 WL 971479, at *15 (N.D. Ill. Mar. 31, 2022) (Judge Feinerman, IRPA claims); *see also Siegel v. ZoomInfo Techs*, No. 21-cv-2032, 2021 WL 4306148, at *3 (N.D. Ill. Sept. 22, 2021) (Judge Kocoras, IRPA claims); *Knapke v. PeopleConnect*, 553 F. Supp. 3d 865, 876 (W.D. Wash. 2021) (Judge Pechman, Ohio claims).

Ancestry's attempt to distinguish these cases is unavailing. Having argued that third-party viewership is required, *see* Opp. at *9 (arguing that liability "is contingent on the free trial users *accessing* those records"), Ancestry switches tacks when discussing the case law, attempting to re-cast its argument as being about the *existence* of the webpages in question, rather than their having been viewed or accessed by a third party. *See* Opp. at *12 (attempting to distinguish *Knapke* because *Knapke* held that a right of publicity claim does not require "that members of the public saw the offending image," whereas Ancestry's argument is about "the existence of the alleged advertisements."). This argument fails. First, Ancestry implicitly concedes that advertisements of the second type described in Plaintiffs' complaint – the full profiles available to free trial users – do "exist" in published webpages, even on Ancestry's strained use of that word. Opp. at *9.

---

requires "an act or event that occurs in Indiana," which the Judge in that case interpreted to require a display of the advertisement *to someone in Indiana*. *See id.*; Ind. Code § 32-36-1-1. Thus, the decision in *Fry* illustrates that the Illinois legislature *could have* included a third-party viewership requirement in the statutory text, but – like California's and Ohio's legislatures – chose not to. *See also Nolen v. PeopleConnect, Inc.*, No. 20-cv-09203-EMC, 2023 U.S. Dist. LEXIS 113630, at *18-26 (N.D. Cal. June 30, 2023) (analyzing the decision in *Fry* at length and concluding that "this Court is not convinced by *Fry's* cursory analysis.").

3

Second, *Nolen* rejected the argument that advertisements generated from online search results do not "exist" until a search is performed. The Court wrote:

> PeopleConnect may be correct that, technically, a subscription ad would not be generated until, *e.g.*, a Free Member did a search for a person's name in a yearbook. But that ignores the fact that PeopleConnect's system was *set up* to generate a subscription ad after a search; thus, in a broader sense there was a preexisting subscription ad; it simply was not visually displayed until later.

2023 U.S. Dist. LEXIS 234002, at *25 (N.D. Cal. Dec. 14, 2023). This Court should reach the same conclusion.

Attempting to distinguish the caselaw, Ancestry manufactures distinctions where none exist. Ancestry observes that *Fischer v. Instant Checkmate* "denied certification" of a damages class. Opp. at *13. But Ancestry fails to mention that the *Fischer* court also <u>granted</u> certification of a damages class that exactly parallels the damages Class Plaintiffs propose here: *i.e.*, a class premised on the *potential* display of search results populated from the defendant's database of profiles about individuals. *See* 2022 U.S. Dist. LEXIS 59143 (N.D. Ill. Mar. 31, 2022). *Fischer* certified under Rule 23(b)(3) an "SEO Directory Class," defined as "Illinois residents who were listed in the SEO Directory [during the relevant time period], where such listing included that person's name, age, location(s), and relative(s)." *Id.* at *46-47. As the court noted, "the SEO Directory Class definition, by its terms, does not require that a class member's profile have been displayed to any third-party user." *Id.*, at *15. Further, "[t]he data in the SEO directory is not necessarily shown to any user of Instant Checkmate's website." *Id.*, at *4. Rather, the Class members' claims and entitlement to damages stemmed from the fact that Instant Checkmate "held out" their identities for a commercial purpose by placing their identities in a database from which search results *could* be returned. *See id.*, at *35-36. So too here.[2]

---

[2] The parallels between this case and *Fischer* do not stop there. *Fischer* declined to certify a narrower class of individuals whose profiles had been displayed in a search result to a third party.

4

The Seventh Circuit's decision in *Huston v. Hearst Commc'nc, Inc.* supports *Fischer's* reading of the IRPA. *See* 53 F.4th 1097, 1100-01 (7th Cir. 2022).³ The Seventh Circuit confirmed that a plaintiff states an IRPA claim when she alleges that "prospective . . . purchasers were able to see her . . . information . . . prior to their purchase." *Id.* at 1100. The Court observed that, "[o]n its face, the [IRPA] prohibits the use or holding out of an individual's identity with the aim of effectuating a sale." *Id.*, at 1101. Therefore, a website's use of an individual's identity in a way that "either accompan[ies] an offer to sell or precede[s] the sale" is a "public use" and a "holding out" of that individual's identity within the meaning of the IRPA. *Id*. The Seventh Circuit observed that, in both *Lukis* and in *Dobrowolski v. Intelius*, No. 17-CV-1406, 2018 WL 11185289, at *3 (N.D. Ill. May 21, 2018), the defendant websites engaged in "public use" and "holding out" because they "held out limited information about the plaintiff to entice a commercial transaction" by publishing a searchable "free preview" of information about the plaintiff, which anyone could access by entering the plaintiff's name in a search bar on the defendants' websites. *Huston*, 53 F.4th at 1100; *see Lukis*, 542 F. Supp. 3d at 835 ("Anyone can search the Whitepages website for a person's name and gain access to free information connected with that name"); *Dobrowolski*, 2018 WL 11185289, at *3 ("When a consumer searches for a person's first and last name . . . an advertisement is automatically generated"). In the case on appeal in *Huston*, by contrast, no aspect

---

*Id.*, at *36-39. Because the defendant claimed that "it cannot be determined from its records which persons' search results were actually selected by a user of the Website," the Court concluded it would be impossible to determine who is a class member. *Id.*, at *37. Here, as in *Fischer*, Ancestry claims it cannot practicably determine which individuals' profiles have been viewed or incorporated in a "hint" email. *See* Mot.; *supra*, § II.C. Ancestry's claim of impracticability is the reason why, thus far, Plaintiffs have not sought to certify an actual-display subclass.

³ Ancestry's falsely claims *Huston* "directly conflicts" with Judge Chen's opinion in *Nolen*, Judge Feinerman's opinion in *Fischer*, Judge Kocoras'* opinion in *Siegel*, and Judge Pechman's opinion in *ZoomInfo*. Opp. at *13. As shown in the main text, Ancestry's misreading of *Huston* gets the case backwards.

of the plaintiff's name and identity was visible until *after* a purchase. *Huston*, 53 F.4th at 1101-02. Therefore, there was no "holding out" and no "use[] to sell or promote" under the IRPA. *Id.*, at 1100.

Here, as in *Lukis* and *Dobrowolski*, Ancestry publicly displays and holds out Class members' identities and low-resolution photographs in profiles it makes available <u>before</u> a purchase is made. Under *Huston*, Ancestry's pre-purchase distribution of profiles is therefore a "commercial use" under the IRPA. *See Huston*, 53 F.4th at 1102 (noting the plaintiff in *Brown v. ACMI Pop Division*, 375 Ill. App. 3d 276, 278, 873 N.E.2d 954, 956 (2007), properly alleged holding out because "it was clear that the plaintiff's identity," represented in "low-resolution or watermarked versions of [their] photographs," "was held out to advertise . . . the high-resolution version of the same image."). Thus, *Huston* supports Plaintiffs' argument.

**This Court's Prior Rulings**. The IRPA protects "each individual's right" "to choose whether and how to use [their] identity for commercial purposes." 765 ILCS 1075/10. In denying Ancestry's Rule 12(b)(1) motion to dismiss, this Court recognized that denial of this "right to choose" is the fundamental injury that both the IRPA and its common-law predecessor are meant to prevent. *See Bonilla v. Ancestry.com Ops. Inc.,* 574 F. Supp. 3d 582, 591 (N.D. Ill. 2021) (analyzing the history of the common law tort and IRPA to conclude Plaintiffs alleged Article III injury because they alleged denial of their "right to prevent others from using one's name or picture for commercial purposes without consent") (cleaned up). Plaintiffs and the Class members have the right to prevent Ancestry from using their identities for commercial purposes. *See id.* Ancestry cannot meaningfully dispute that its purpose in making their profiles available to non-subscribers is commercial. Accordingly, under the IRPA, Plaintiffs and the Class have the right to prevent Ancestry from making their profiles available as a means of attracting subscriptions.

6

**Logic.** Ancestry's misreading of the IRPA would make a defendant's liability turn not on its own actions, but rather on the actions of a third party. The same act – publishing an advertisement making nonconsensual use of an identity – could be both illegal and legal, depending on whether a third party saw it. That is not, and cannot logically be, the law.[4]

Finally, even were third-party viewing required, Plaintiffs have shown that viewing by a member of the public is imminent, because Ancestry's advertisements using their identities are openly displayed on the Internet. Further, Plaintiffs' full profiles are part of the product Ancestry's existing subscribers and trial users use every day. Those who own intellectual property, as Plaintiffs own their names and personas, have the right to exclude others from distributing an infringing product. *See, e.g.*, *Apple Inc. v. Samsung Elecs. Co.*, 801 F.3d 1352, 1365 (Fed. Cir. 2015) (intellectual property holder has the "statutory right to exclude" others from "making, using, selling, developing, advertising, or importing" infringing material); *Flava Works, Inc. v. Gunter*, 689 F.3d 754, 757 (7th Cir. 2012) (uploading copyrighted material to the Internet is infringement giving rise to a claims). Ancestry is currently "using," "selling," and "advertising" with Plaintiffs' names and identities. Plaintiffs are therefore currently experiencing the very harm the IRPA is designed to redress.

**B. Plaintiffs' Proposed Method for Calculating Damages Exactly Matches their Liability Theory.**

The IRPA provides for statutory minimum damages in the amount of $1,000 for each Illinois resident whose identity has been held out for commercial purposes without their consent. 765 ILCS 1075/40. As discussed above, each Class member has an IRPA claim because Ancestry

---

[4] Ancestry also relies on *Verde v. Confi-Chek, Inc.*, 2021 WL 4264674 (N.D. Ill. Sept. 20, 2021) and *Ridgeway v. Spokeo, Inc.*, 2023 WL 6795277 (C.D. Cal. Oct. 11, 2023). Both decisions are in tension with the weight of authority and reasoning laid out here and in Plaintiff's Motion and, for those reasons, Plaintiffs believe both to be wrongly decided.

7

is "holding out" each Class members' identity in an advertisement that is publicly available by searching www.ancestry.com. Thus, it is easy to establish who is a Class member entitled to a statutory award. Any Illinois resident for whom a search of their name returns a teaser profile or full profile that matches their name, school, and year of attendance is a Class member entitled to damages. The proposed Class definition is drafted accordingly.

Ancestry's argument that Plaintiff's damages theory is "untethered" to their liability theory is simply a rehash of its argument regarding third-party viewership. *See* Opp. at *21. Ancestry again falsely claims that its liability under the IRPA turns not on Ancestry's publication and "holding out" of Class members' identities, but rather on third parties' viewing of the advertisements. *See id.* This argument again mischaracterizes Plaintiff's liability theory. Because liability turns on Ancestry's conduct in holding out – not on a third-party's conduct in viewing – every Illinois resident for whom Ancestry published an infringing advertisement within the limitations period is entitled to a statutory damages award. Thus, contrary to Ancestry's assertion, Plaintiffs' proposed method for calculating damages precisely matches Plaintiffs' liability theory.

Moreover, Ancestry incorrectly characterizes Plaintiffs' damages model – which seeks the award of $1,000 to each Illinois resident whose name and personal information appears in a searchable profile on www.ancestry.com – as "fluid recovery." Opp. at *22. "Fluid recovery" or "cy pres" refers to a situation in which the class members receive no monetary recovery, and instead the damages award is either "diverted to a related purpose," such as a charity, or credited to a reduction in ongoing charges. *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781 (7th Cir. 2004); *see also Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 345 (7th Cir. 1997) ("fluid recovery is a procedural device that distributes money damages either through a market system (*e.g.*, by reducing charges that were previously excessive), or through project funding (the project being

8

designed to benefit the members of the class)"). That is not what Plaintiffs propose here. Plaintiffs seek the award of monetary damages in the amount of $1,000 to each Class member.

### C. If This Court Determines that Third Party Viewership is Relevant, Discovery Should be Re-Opened.

As shown above, third-party viewership is not an element of an IRPA claim, nor is it required for Article III standing. However, should this Court determine that Class members' claims are meaningfully different depending on whether their teaser profiles or hint emails have been viewed, it should re-open discovery. Should third-party viewership be deemed relevant at this stage in the case, Plaintiffs are entitled to discover which Class members' names and identities have been viewed by third parties.

As Plaintiffs explained in their Motion, Plaintiffs asked which Class members' identities have been viewed by third parties. Mot. § IV(A)(3). But Ancestry refused to answer. *Id*. (citing Exs. 17 & 18). Ancestry claimed that, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.*[5]

It is a well-established principle that a defendant cannot avoid relevant discovery by appealing to the burden created by its own poor record-keeping. A defendant's claim of burden does not excuse production "where, as here, the costliness of the discovery procedure involved . . . is a product of the defendant's record-keeping scheme over which the [plaintiffs have] no control." *In re Brand Name Prescription Drugs Antitrust Litigation*, 1995 WL 360526,

---

[5] Ancestry admits it is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Conveniently for Ancestry's arguments, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Compare* Opp. at *6; *with* Exs. 17 & 18 (Weis and Yetter Decls.).

9

at *1 (N.D. Ill. 1995) (Kocoras, J.) (quotation omitted); *see also In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 351, 362 (N.D. Ill. 2005) ("To allow a defendant whose business generates massive records to frustrate discovery by creating an inadequate filling system [here, by not creating an adequate indexing system], and then claiming undue burden, would defeat the purposes of the discovery rules."); *Lou v. Ma Labs., Inc.*, No. 12-CV-05409 WHA (NC), 2013 WL 12328278, at *2 (N.D. Cal. Mar. 28, 2013) (citation omitted) ("The fact that a corporation has an unwieldy record keeping system which requires it to incur heavy expenditures of time and effort to produce requested documents is an insufficient reason to prevent disclosure of otherwise discoverable information."). Yet this is the position Ancestry has taken. Ancestry argues that, because ███████ ███████████████████████████████████████████████████████████████████████████████ ███████████████, Plaintiffs and the Class must now suffer the consequences. *See* Ex. 17 (declaration of Ancestry employee claiming that, ███████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████████ ███████). But under the law, Ancestry's failure to keep tidy records – a choice over which Plaintiffs had no control – is not a legally valid excuse.

Ancestry's position regarding burden is especially cynical given that, <u>*after*</u> refusing to tell Plaintiffs which Class members' identities have been viewed by third-parties, Ancestry filed legal briefs going all-in on the argument that third-party viewership is crucial to Plaintiffs' claims. *See* Opp.; Motion for Summary Judgment (Dkts. 179 [stricken], 198 [as refiled]). Ancestry claimed its record-keeping was too poor to establish certain facts in one moment; then turned around and claimed those same facts were the crux of Plaintiffs' legal claims in the next.

10

Plaintiffs have not yet pursued a motion to compel because, as shown above, Plaintiffs do not believe third-party viewership is relevant. However, should this Court disagree with Plaintiffs regarding the relevance of third-party viewership, Ancestry should be compelled to provide the already-requested information regarding which Class members' identities have been viewed.

**D. Every Class Member is Identifiable by the Information in their Full Profile.**

Ancestry argues that some Class members may not be uniquely identifiable in the first and third types of advertisement (*i.e.* the teaser profiles Ancestry distributes to non-account holders, and the hint emails it sends to non-account holders and free-trial users). According to Ancestry, in some cases, the information in teaser profiles – first name, last name, city of school attendance, and low-resolution photograph – is not enough because multiple people with the same name may have attended schools in the same state. Opp. at *16.

This argument fails because the information in the second type of advertisement – the full profiles shown to free trial users – *is* sufficient to identify each Class member. And the first and third types of advertisement are directly linked to the second: clicking on the "See your hint" button in a "hint" email, or on the "Sign up Now" button in a teaser profile, brings the user to a paywall that requires the purchase of a subscription in order to see the full profile. *See* SAC ¶¶10, 12. As shown in Plaintiff's Motion, each free trial profile identifies the Class member shown by name, school, year of attendance, and estimate birth year. *See* SAC ¶41 (showing free trial advertisement for former plaintiff Sergio Bonilla, which identifies him by first and last name ("Sergio Bonilla"); yearbook date ("1995"); school ("Central High School"); school location ("Omaha, Nebraska, USA"); and estimated age at the time of the photograph ("Abt 16")). Ancestry does not dispute that this information is sufficient to identify each Class member "to an ordinary, reasonable viewer." 765 ILCS 1075/5. Nor could it. Many courts have found the identifiability element satisfied based on similar information. *See, e.g.*, *Nolen*, 2023 U.S. Dist. LEXIS 234002

11

(N.D. Cal. Dec. 14, 2023) (conditionally certifying class when class members could be identified by via searches on defendant's website, which returned the class member's name, school, and year of attendance). In *Fischer v. InstantCheckmate LLC*, the court emphasized that the defendant people-search website "displays name, age, location(s), and relative(s) on the search results page precisely *because* those attributes allow a user to identify the *particular* person for whom the user is searching." 2022 WL 971479, at *8 (N.D. Ill. Mar. 31, 2022) (emphasis in original). So too here: Ancestry's full profiles about Class members include names, schools, estimated ages, and locations, precisely because those attributes allow the searcher to identify the person for whom they are searching.

Ancestry's identifiability argument fails to address the second type of advertisement – *i.e.*, the full profile advertisements shown to free trial users. Ancestry argues that some "yearbook . . . pages" available on Ancestry.com "have only a list of student names." Opp. at *17 (citing Dkt. 186, Godfrey Decl. ¶20, showing a screenshot). This is irrelevant, because Plaintiff's claims have nothing to do with index pages like the one shown in Mr. Godfrey's declaration. Rather, as plead in the SAC and further elucidated in Plaintiff's Motion, the Class members are those "whose names and yearbook photographs are or were searchable on the Ancestry.com website" – *i.e.*, those for whom a search of their name returns a full profile like the one shown for Mr. Bonilla in the Complaint. An individual whose name is simply listed on an index page of a yearbook in Ancestry's database is not a Class member (unless they are also the subject of a searchable profile like the one for Mr. Bonilla).

That each full profile identifies each Class member by their <u>real name</u> distinguishes *Dancel v. Groupon, Inc.*, 949 F.3d 999 (7th Cir. 2019). In *Dancel*, the identifiability issue turned on whether "a person's [Instagram] username [is] a part of her identity." *Id.*, at 1002. The Seventh

12

Circuit observed that under the IRPA, a person's "Name" is an "attribute" of their "identity." *Id.*, at 1008 (quoting 765 ILCS 1075/5). Further, "Name" is a defined term, meaning "the actual name or other name by which an individual is known." *Id.*, at 1008 (quoting 765 ILCS 1075/5). Instagram usernames, which are assumed names used only in the context of a single website, do not always qualify. *See id*, at 1009-10. Here, unlike in *Dancel*, it is undisputed that Ancestry's teaser profiles use "the actual name . . . by which an individual is known," not a username used only in the context of a single website. *See* 765 ILCS 1075/5. Accordingly, *Dancel* is inapposite.

### E. Ancestry's Potential "Public Affairs" Affirmative Defense Does not Defeat Predominance.

Predominance is rarely defeated simply because affirmative defenses may be available against individual members. As the Supreme Court wrote in *Tyson Foods, Inc. v. Bouaphakeo*, when "one or more of the central issues . . . predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as . . . affirmative defenses." 577 U.S. 442, 453 (2016). The "news, public affairs, or sports broadcast" exception to liability under the IRPA is an affirmative defense for which Ancestry bears the burden of proof. *See* 765 ILCS 1075/35 (text of exception); *People v. Jones*, 2023 IL App (1st) 221613-U, ¶ 32 (where, as here, the statutory text "removes certain acts" from liability, "[t]his language and structure . . . make the exception an affirmative defense"). Ancestry fails to show how the potential availability of this defense defeats predominance.

Ancestry argues that some Class members are "public figures," Opp. at *20, and therefore Ancestry's publication of profiles containing their names and photographs as children to promote subscriptions is a "use of an individual's identity for non-commercial purposes, including any news, public affairs, or sports broadcast." *See* 765 ILCS 1075/35. On the contrary, while some Class members are public figures, this does not elevate the information in their teaser profiles to

13

the status of "news" or "public affairs," nor does it erase the fact that Ancestry publishes their profiles for the commercial purpose of selling subscriptions. The "public interest" or "public affairs" exception "rests on the right of the public to know and the freedom of the press to tell it." *Montana v. San Jose Mercury News, Inc.*, 34 Cal. App. 4th 790, 793 (1995) (analyzing a parallel exception to California's right of publicity statute). The content must "significantly contribute to a matter of public interest." *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001). It is far from clear that Ancestry can demonstrate the information in its profiles "significantly contribute[s] to" matters of public interest simply because the subject of the profile is a public official. For example, Barack Obama is a public official. *See* Dkt. 186 at ¶21. But Ancestry's use of his photographs as a child to sell subscriptions is not newsworthy, nor does it concern public affairs. *See Albanese v. Menounos*, 218 Cal. App. 4th 923, 934 (Cal. Ct. App. 2013) ("No authority supports the . . . proposition that anything said or written about a public figure . . . involves a public issue.").

### III. CONCLUSION

For the reasons above, Plaintiffs respectfully request the Court GRANT their Motion to certify the Class pursuant to Rules 23(b)(3) and 23(b)(2) or, alternatively, under Rule 23(c)(4).

Dated: March 21, 2024                      Respectfully Submitted,

By: /s/ *Raina C. Borrelli*
    Raina C. Borrelli
    Samuel J. Strauss
    TURKE & STRAUSS LLP
    613 Williamson St., Suite 201
    Madison, WI 53703
    Telephone: (608) 237-1775
    Facsimile: (608) 509-4423
    raina@turkestrauss.com
    sam@turkestrauss.com

Benjamin R. Osborn (*pro hac vice*)
LAW OFFICE OF BENJAMIN R. OSBORN
102 Bergen Street
Brooklyn, NY 11201
Telephone: (347) 645-0464
ben@benosbornlaw.com

Michael F. Ram (*pro hac vice*)
Marie N. Appel (*pro hac vice*)
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6923
mram@forthepeople.com
mappel@forthepeople.com

*Attorneys for Plaintiffs and the Proposed Class*

## **CERTIFICATE OF SERVICE**

I, Raina C. Borrelli, hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record via the ECF system.

DATED this 21st day of March, 2024.

                TURKE & STRAUSS LLP

                By: */s/ Raina C. Borrelli*
                      Raina C. Borrelli
                      raina@turkestrauss.com
                      TURKE & STRAUSS LLP
                      613 Williamson St., Suite 201
                      Madison, WI 53703
                      Telephone: (608) 237-1775
                      Facsimile: (608) 509-4423