**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JOSHUA BRAUNDMEIER and KEVIN WALLACE, on behalf of themselves and all similarly situated,** | ) ) ) ) | |
| **Plaintiffs,** | ) ) | **No. 20-cv-7390** |
| **v.** | ) ) | **Judge Jeffrey I. Cummings** |
| **ANCESTRY.COM OPERATIONS, INC., et al.,** | ) ) | |
| **Defendants.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiffs Joshua Braundmeier and Kevin Wallace filed this putative class action against defendants Ancestry.Com Operations, Inc., Ancestry.Com, Inc., and Ancestry.Com LLC (collectively, "Ancestry"), alleging that Ancestry used their names, identities, images, and likenesses to advertise and solicit Ancestry's paid products and services without their consent. Plaintiffs bring claims under the Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1, as well as a derivative claim for unjust enrichment.

Ancestry moves for summary judgment arguing that plaintiffs have not suffered an injury-in-fact sufficient to establish Article III standing because plaintiffs' information was never accessed, viewed, or searched by anyone other than their counsel before they initiated suit. In the alternative, Ancestry asserts that summary judgment is warranted because there is no evidence that Ancestry used plaintiffs' identities for a "commercial purpose" as required by the IRPA, because Ancestry never displayed their information to anyone other than their counsel. Under either argument, Ancestry asserts, plaintiffs' unjust enrichment claim must fall with the related IRPA claim.

1

For the reasons set forth below, the Court finds that third-party viewership of plaintiffs' information is not required to establish standing to bring right of publicity claims under IRPA, such that plaintiffs have articulated a concrete injury sufficient to confer Article III standing. However, the Court further finds that plaintiffs have failed to put forth any evidence from which a reasonable jury could find that Ancestry used their information for a "commercial purpose" under the IRPA because Ancestry never publicly used or "held out" plaintiffs' information. Accordingly, the Court will grant Ancestry's motion, (Dckt. #198).

## I.      LEGAL STANDARD

Summary judgment is appropriate when the moving party shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "A genuine dispute is present if a reasonable jury could return a verdict for the nonmoving party, and a fact is material if it might bear on the outcome of the case." *Wayland v. OSF Healthcare Sys.*, 94 F.4th 654, 657 (7th Cir. 2024); *FKFJ, Inc. v. Vill. of Worth*, 11 F.4th 574, 584 (7th Cir. 2021) (the existence of a factual dispute between the parties will not preclude summary judgment unless it is a genuine dispute as to a material fact); *Hottenroth v. Vill. of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004) (issues of material fact are material if they are outcome determinative).

When the moving party has met that burden, the non-moving party cannot rely on mere conclusions and allegations to concoct factual issues. *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003). Instead, it must "marshal and present the court with the evidence [it] contends will prove [its] case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). To determine whether a genuine issue of material fact exists, all facts and reasonable inferences must be drawn in the light most favorable to the

non-moving party. *King v. Hendricks Cty. Commissioners*, 954 F.3d 981, 984 (7th Cir. 2020). Summary judgment is granted only if "no reasonable trier of fact could find in favor of the non-moving party." *Hoppe v. Lewis Univ.*, 692 F.3d 833, 838 (7th Cir. 2012) (cleaned up).

## II. FACTUAL RECORD

The Court draws the factual record from the parties' pleadings; defendants' Local Rule 56.1 statement of material facts ("DSOF"), (Dckt. #200) and accompanying exhibits, (Dckt. #201-1 to #201-4); plaintiffs' Rule 56.1 statement in opposition to DSOF ("DSOF Resp."), (Dckt. #212); plaintiffs' Rule 56.1 statement of additional facts ("PSAF"), (Dckt. #213) and accompanying exhibits, (Dckt. #219-1 to #219-3); and defendants' response to PSAF ("PSAF Resp."), (Dckt. #224).[1]  The following facts are undisputed unless otherwise noted.

### A. Ancestry's Website

Ancestry is a genealogy company that provides users access to historical records to trace their family histories.  (DSOF Resp. ¶1).  These materials include digitized yearbooks in Ancestry's "Yearbook Database."  (*Id.* ¶2).  There are three types of non-paying customers who

---

[1] The Court notes that plaintiffs also filed a "Rule 56(d) Statement of Unavailable Facts" in which they assert that they "do not know whether and to whom Ancestry displayed Plaintiffs' yearbook records to potential customers (visitors, registered users, and free trial users): (1) between December 14, 2020, and August 24, 2022; and (2) after August 2, 2022."  (Dckt. #214 at 1).  However, plaintiffs never filed an affidavit claiming that they could not adequately oppose Ancestry's motion for summary judgment by reason of incomplete discovery as required by Rule 56(d).  Moreover, it is unclear that there would be any point to further discovery given Ancestry's representation – per plaintiffs – that the purportedly unavailable facts are "effectively impossible" to produce.  (Dckt #214 at 2).  (Ancestry disputes plaintiffs' characterization of importance and alleged materiality of these facts.  (Dckt. #223 at 11–12)).  Without the submission of the requisite affidavit, plaintiffs have failed to properly invoke Rule 56(d), and the Court will proceed to rule on the summary judgment motion without further delay.  *See, e.g., Kallal v. CIBA Vision Corp.*, 779 F.3d 443, 446 (7th Cir. 2015) ("Kallal failed, however, to file a Rule 56(d) affidavit explaining why he needed additional discovery.  His failure to do so fully justified the district court's ruling" denying his request for additional discovery); *First Nat'l Bank & Tr. Corp. v. Am. Eurocopter Corp.*, 378 F.3d 682, 694 (7th Cir. 2004) ("Because Inlow Estate failed to submit a Rule 56(f) affidavit, claiming that it could not adequately oppose the motion for summary judgment by reason of incomplete discovery, it was not an abuse of discretion by the district court to rule on the motion for summary judgment before the Inlow Estate was satisfied that all necessary discovery had occurred.") (applying earlier iteration of Rule 56(d)).

might view Ancestry's Yearbook Database: (1) visitors, i.e., those who visit the Ancestry site but do not have a registered account; (2) "registered users," i.e., those who create registered accounts but do not have a free trial or paid subscription; and (3) "free trial users," i.e., those who sign up for a limited-time free trial but do not have a paid subscription. (Dckt. #219-1 at 13).

Some of the digital yearbook records are "searchable," meaning users of Ancestry's site can enter certain search terms in the Yearbook Database, such as a name or location, which will identify yearbook records that might be responsive to those search terms. (DSOF Resp. ¶3).[2]

Certain, though not all, of the records in Ancestry's Yearbook Database are also "hintable." (*Id.* ¶12). This means the yearbook record might be included in a "hint" email sent to users of Ancestry's services to inform the user of a suggested record in which he or she might be interested. (*Id.*).

A user can perform a search by entering keywords in the search bar on the Ancestry's website. (Dckt. #219-1, Tabs 1 and 2). Once the user has entered search terms, Ancestry displays a list of search results, if any, on a new webpage. (*Id.*). The Ancestry website delivers search results in different formats, depending on whether the non-paying customer has signed up for a free trial. (PSAF Resp. ¶1). A search for plaintiff Kevin Wallace in Illinois, conducted by his attorney as a "visitor," returned the following result:

---

[2] Under Rule 56.1 of the Local Rules for the Northern District of Illinois, a party opposing a motion for summary judgment must provide a response that either admits or denies each of the moving party's statements of fact and must support any denials with specific citation to affidavits, parts of the record, or other supporting evidence. *See* N.D.Ill. Local Rule 56.1(b)(3). Where the opposing party fails to identify such materials, the moving party's allegations, where properly supported, will be deemed admitted. *Id.* In certain instances, plaintiffs cite evidence that does not actually dispute defendants' proffered facts. In these instances, Ancestry's facts, where supported, are deemed admitted. Here, plaintiffs attempt to clarify that Ancestry delivers search results in two formats to potential customers dependent on the subscription status of the potential customer. (DSOF Resp. ¶3). Because the Court finds that the evidence cited by plaintiffs does not support their purported denial of this proffered fact, it is deemed admitted. *See* N.D.Ill. Local Rule 56.1(b)(3).



(Dckt. #219-1 at 2). When the visitor hovers over the "View Record" button, the following pop-up appears, which displays a thumbnail version of the individual's photograph and a "sign up now" button that redirects the user to a webpage that displays Ancestry's subscription options:



(*Id.*).  The results are materially the same if a "registered user" conducts the same search.  (*Id.*).

In contrast, a search for former plaintiff Sergio Bonilla—whose claim was time-barred, (Dckt. #96)—as a "free user," displays the individuals' name, yearbook date, school, city and state of school, as well as a hyperlinked "View Record" button that displays a full-resolution version of the individual's photograph.  (Dckt. #219-1 at 3–4).

### B. Plaintiffs' Information on Ancestry's Website

Plaintiff Braundmeier has two yearbook records on Ancestry's website, (DSOF Resp. ¶15), and plaintiff Wallace has twenty-seven, (*id.* ¶16).  Before the filing of this lawsuit, neither plaintiffs' records were ever returned in search results, viewed in a pop-up, or accessed in part or in full by any free trial or other non-paying user other than plaintiffs' counsel.  (DSOF Resp. ¶¶17, 19).[3]  Nor have either plaintiffs' yearbook records ever been included in a "hint" email. (DSOF Resp. ¶¶18, 20).

## III.  DISCUSSION

In its motion, Ancestry seeks judgment in its favor as to both counts of plaintiffs' amended complaint.  Ancestry argues that (1) plaintiffs do not have Article III standing to pursue their IRPA claim because they have not demonstrated that their information was accessed, viewed, or searched by anyone other than their counsel; (2) even if plaintiffs have standing, the evidentiary record confirms that Ancestry did not use plaintiffs' information for a "commercial

---

[3] Plaintiffs attempt to dispute this fact by parsing the language to contend the phrase "other non-paying users" encompasses only "free trial" and "registered" users and not visitors to Ancestry's site.  (DSOF Resp. ¶¶17–19).  Plaintiffs' reading is strained.  "User," under any plain reading, means those who "use" Ancestry's website and thus encompasses all types of "users"—"free trial" users, "registered" users, and visitors.  Because the Court finds that the evidence cited by plaintiffs does not support their denial of this proffered fact, it is deemed admitted.  *See* N.D.Ill. Local Rule 56.1(b)(3).  The Court further notes that Ancestry confirms in its reply that the reference is to any "non-paying user of Ancestry's site (whether 'registered,' 'free-trial' or visitor) . . ."  (Dckt. #223 at 8).

purpose" as required by the IRPA because Ancestry did not show their information to anyone other than their counsel; and (3) plaintiffs' unjust enrichment claim must fall with their right of publicity claim.  The Court addresses each of these arguments in turn below.

### A.  Plaintiffs' Alleged Injury is Sufficiently Concrete to Confer Article III Standing

The Court begins, as it must, with Ancestry's challenge to its subject-matter jurisdiction because if this Court lacks jurisdiction, this case must be dismissed.  *Miller v. Sw. Airlines Co.*, 926 F.3d 898, 902 (7th Cir. 2019) ("Subject-matter jurisdiction is the first issue in any case."). To establish Article III standing, a plaintiff must show that he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016). Injury-in-fact is "the first and foremost of standing's three elements, and the plaintiff must show that it suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical."  *Id.* at 338–39 (cleaned up).

Ancestry contends that plaintiffs lack Article III standing because their alleged harms are not sufficiently concrete to demonstrate an injury-in-fact.  In support, Ancestry points out that plaintiffs' information was not accessed, viewed, or searched by anyone other than their counsel before they initiated suit.  Ancestry's argument is unpersuasive.

The Court recently considered a virtually identical argument in *Hoffower v. Seamless Contacts Inc.*, 736 F.Supp.3d 605 (N.D.Ill. 2024), which was issued after the parties submitted their briefing on the present motion.  In *Hoffower*, defendant Seamless, which operated a website that "allow[ed] business professionals to use a real-time search engine to seek information about other businesses and business professionals," argued that the plaintiff lacked standing to pursue her IRPA claim because she had not demonstrated that her information was shown to a

third-party other than her attorney. *Id*. at 612. The *Hoffower* court adopted the reasoning of courts both within and outside of this District which "overwhelmingly concluded" that third-party viewership of the plaintiff's information is not required to establish standing to bring right of publicity claims under IRPA and other similar state statutes. *Id*. at 612–13 (citing *Nasser v. S. Bend Clinic, LLC*, No. 3:23-CV-506 DRL-MGG, 2024 WL 940065, at *8–9 (N.D.Ind. Mar. 5, 2024) (holding that plaintiff had adequately established injury-in-fact by alleging violation of state right of publicity statute); *Wilson v. Ancestry.com LLC*, 653 F.Supp.3d 441, 453 (S.D.Ohio 2023) (same); *Nolen v. PeopleConnect, Inc.*, No. 20-CV-09203-EMC, 2023 WL 4303645, at *5 (N.D.Cal. June 30, 2023) (same)). This Court agrees with the *Hoffower* court's reasoning and the cases on which it relies. Because "an IRPA violation inflicts a concrete injury-in-fact," the Court finds that plaintiffs have articulated a concrete injury sufficient to confer Article III standing. *Lukis v. Whitepages Inc.*, 549 F.Supp.3d 798, 805 (N.D.Ill. 2021).

### B.  No Reasonable Jury Could Find that Ancestry Publicly Used or "Held Out" Plaintiffs' Identities

The Court now turns to Ancestry's arguments regarding the IRPA. The IRPA prohibits the unauthorized use of an individual's identity for "commercial purposes." 765 ILCS 1075/30. A commercial purpose is defined as "the public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; [or] (ii) for purposes of advertising or promoting products, merchandise, goods, or services . . ." 765 ILCS 1075/5.

As used in the IRPA, the term "public use" means that "some substantial number of people saw or were exposed to a person's identity." *Fischer v. Instant Checkmate LLC*, No. 19 C 4892, 2022 WL 971479, at *10 (N.D.Ill. Mar. 31, 2022). Moreover, the term "holding out" under the IRPA means "the representation . . . of an individual's identity on or in connection

with certain activities." *Hoffower*, 736 F.Supp.3d at 613–14 (cleaned up). Plaintiffs do not argue that their information was seen by or exposed to a substantial number of people, and instead concede in their opposition brief that liability under the IRPA in this case "turn[s] on [Ancestry]'s 'holding out' of an identity." (Dckt. #211 at 7). Plaintiffs, predictably, argue that Ancestry holds out their identities, (*id.*), whereas Ancestry asserts that it does not, (Dckt. #199 at 12). The Court agrees with Ancestry.

The *Hoffower* court considered what evidence is sufficient to demonstrate "use" or "holding out" under the IRPA. 736 F.Supp.3d at 613–16. There, the court stated as follows:

> The only evidence Hoffower presents of Seamless displaying her identifying information resulted from her former attorney searching for her name on the Seamless platform. This Court cannot endorse a reading of IRPA that permits a plaintiff to obtain relief based on her own attorney making a direct request for, and then obtaining, the plaintiff's identifying information. And allowing a plaintiff to bring an IRPA claim without the defendant having actually shown or displayed the plaintiff's identifying information would negate the statute's requirement that a violation consists of the defendant's *handling* of that information, specifically the "use" or "holding out" of it.

*Id.* at 615–16 (emphasis in original). Based on the foregoing, the court concluded that Hoffower failed to adduce evidence that would allow a reasonable jury to conclude that Seamless publicly used or held out her identifying information on its platform for commercial purposes, and therefore granted summary judgment in the defendant's favor. *Id.*

The same result is proper here. Like the plaintiff in *Hoffower*, the only evidence plaintiffs present of Ancestry displaying their identifying information is the results of a search conducted by their attorney. And, as the *Hoffower* court concluded, such evidence, without more, is insufficient to raise a genuine factual dispute regarding whether Ancestry "held out" their identities. *Id.* Summary judgment in Ancestry's favor is therefore warranted.

9

The parties, who did not have the benefit of the *Hoffower* case at the time of filing, emphasize other arguments in their briefing. In light of the Court's conclusion that Ancestry has neither publicly used nor "held out" plaintiffs' identities as required by the IRPA, the Court need not reach these arguments, including Ancestry's argument that plaintiffs' identities were not held out in connection "with any 'offer of sale or sale' of Ancestry's subscription service or used to 'advertise' or 'promote' such services." (Dckt. #199 at 13). Nor does the Court need to address plaintiffs' argument that they have standing even if a third-party has not viewed their information because such viewing is "imminent." (Dckt. #211 at 11). As set forth above, plaintiffs have articulated a concrete injury sufficient to confer Article III standing, and even assuming they had not, this argument would not help plaintiffs as the language of the IRPA does not prohibit *potential* commercial use of their information.[4]

### C. Plaintiffs' Derivative Claim for Unjust Enrichment Falls with their IRPA Claim

Finally, Ancestry argues that plaintiffs' unjust enrichment claim must fall with the IRPA claim. "[I]f an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 17 (7th Cir. 2011). Accordingly, plaintiffs' unjust enrichment claim must "fall with the related" IRPA claim. *See, e.g., Mullen v. GLV, Inc.*, 488 F.Supp.3d 695, 713 (N.D.Ill. 2020) ("Unjust enrichment is not a separate cause of action," and is "tied to the fate" of the other claims asserted).

---

[4] Ancestry also seeks summary judgment "to the extent plaintiffs pivot to contend their claims are premised on the mere availability of their yearbook records on Ancestry's site (as opposed to incorporation in the challenged 'advertisements') . . ." (Dckt. #199 at 5). In their opposition, plaintiffs confirm that their "claims arise—as they have throughout this litigation—from Ancestry's use of their identities *to advertise website subscriptions to potential customers*." (Dckt. #211 at 16) (emphasis in original). The Court therefore need not reach this argument.

## CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment, (Dckt. #198), is granted. Because the Court is granting summary judgment on plaintiffs' claims, it denies as moot plaintiffs' motion for class certification, (Dckt. #162), and Ancestry's motion to exclude plaintiffs' expert Michael Naaman pursuant to Federal Rule of Evidence 702, (Dckt. #189).

**DATE:  January 29, 2025**

**Jeffrey I. Cummings**
**United States District Court Judge**